## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SUJEIL PEÑA-TORRES; JOSE E. BLASCO-JUSINO; LUCERO RODRIGUEZ-FERNANDEZ; LISA M. TORRES-COLON; JOFFRE E. GOMEZ-FRONTERA; ZABDIEL A. NIEVES-RIVERA; ENNY DE JESUS-UREÑA; LORAIMA M. ROSADO VILLAFAÑE; PAOLA M. PROSPER-CRESPO | CIVIL NO. 19-1707 |
| PLAINTIFFS | RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES |
| VS. | |
| UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ORIEN L. TULP, his spouse JANE DOE and the conjugal partnership between them; CARLA M. KONYK, her spouse JOHN DOE and the conjugal partnership between them; MANUEL JOSE ORTIZ-BUSTILLO, his spouse JANE DOE and the conjugal partnership between them; YANIRE BUSTILLO, her spouse JOHN DOE and the conjugal partnership between them; DANIELA CABRERA-PUJADAS, her spouse JOHN DOE and the conjugal partnership between them; KAREN BALDWIN, her spouse JOHN DOE and the conjugal partnership between them; INSURANCE COMPANY XYZ; COMPANY ABC; JOHN & JANE DOE. | TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW, Sujeil Peña-Torres, Jose E. Blasco-Jusino, Lucero Rodriguez-Fernandez, Lisa M. Torres-Colon, Joffre E. Gomez-Frontera, Zabdiel A. Nieves-Rivera Enny de Jesus-Ureña, Loraima M. Rosado-Villafañe and Paola M. Prosper-Crespo** (jointly referred as "Plaintiffs"), through the undersigned attorneys and very respectfully states, alleges and prays as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs are first and second year medical students whom applied and studied at the Puerto Rico Branch ("PR Branch") of the University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT"). The joint owners of USAT are Orien L. Tulp ("Tulp") and Carla M. Konyk ("Konyk"). The Directors and Officers of USAT were composed by Tulp, Konyk, Manuel José Ortiz-Bustillo ("Ortiz"), Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera") and Karen Baldwin ("Baldwin") (jointly referred as "USAT Officers"), amongst other unknown persons[1].

2.      The USAT Officers, as representatives of USAT, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961, *et seq.* when they incurred in a pattern of fraudulent activities during approximately 2017 up until late 2018/early 2019. During this time period, the USAT Officers coordinated and directed fraudulent mail and wire transfers between Colorado, Puerto Rico and other states. These fraudulent mail and wire transfers consisted of 1) falsely representing to the Plaintiffs that the PR Branch of USAT is a licensed and accredited medical school for first and second year medical students pursuant to the requirements of the Educational Commission for Foreign Medical Graduates ("ECFMG"), 2)

---

[1] The Plaintiffs' reserve the right to amend the complaint if any new identification evidence is discovered during the course of the discovery of the case at bar.

falsely representing information by omitting or not disclosing that the PR Branch of USAT was only a licensed and accredited medical school pursuant to ECFMG for medical students who were on their third- and fourth-year clinical rotation, 3) falsely representing the nature of the PR Branch of USAT to the Plaintiffs, other first and second year medical students ("other RICO victims"), other medical education and regulatory agencies ("Regulatory Agencies"), and banking institutions ("Banks") in a scheme with intent to defraud, 4) falsely representing the nature of the PR Branch of USAT in order to receive payment in exchange for education in medicine, and 5) falsely representing information by omitting and not disclosing that the education received by the Plaintiffs and other Rico Victims did not qualify for the medical licensing examinations pursuant to ECFMG.

3.     These patterns of fraudulent activities incurred by USAT and the USAT Officers (jointly referred to as "Defendants") caused injuries to the Plaintiffs, such as economic and emotional damages.

4.     Plaintiffs file this civil action against the Defendants for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961 *et seq.* Additionally, Plaintiffs file this civil action against the Defendants for Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq.*; Material Breach of Contract pursuant to Articles 1206 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et seq.*; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142[2].

5.     Plaintiffs seek compensatory, punitive, double, treble and liquidated damages and equitable and injunctive relief for Defendants' actions. In addition, Plaintiffs reserves the right

---

[2] Plaintiffs' reserve the right to amend the complaint if any new identification evidence is discovered during the course of the discovery of the case at bar.

for any other specific remedies that restore them to the position that they would have held in the absence of Defendants' actions

## JURISDICTION AND VENUE

6.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to RICO, 18 USC sec. 1961 *et seq*.

7.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico law claims arising from the same nucleus of operative facts. Specifically, Plaintiffs file this civil action against the Defendants for Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq*. of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq*.; Material Breach of Contract pursuant to Articles 1206 *et seq*. of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et seq*.; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142. Plaintiff reserves the right to amend/modify the Complaint based on further facts to be discovered.

8.      Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district.

## PARTIES

9.      During 2017 and 2018, the Plaintiffs were student applicants and students at the USAT PR Branch. Plaintiffs are all U.S. citizens and residents of the Commonwealth of Puerto Rico. The Plaintiffs are as follows:

a. Sujeil Peña-Torres ("Peña") is of legal age, student, single, domiciled and resident of San Juan, Puerto Rico. Peña's address is the following: Urb. Venus Gardens Calle Peliux 771, San Juan PR 00926.

b. Jose E. Blasco-Jusino ("Blasco") is of legal age, student, single, domiciled and resident of Ponce, Puerto Rico. Blasco's address is the following: 1369 Urb. Mercedita Calle Bonita, Ponce PR 00717.

c. Lucero Rodriguez-Fernández ("Rodriguez") is of legal age, student, single, domiciled and resident of Toa Baja, Puerto Rico. Rodriguez' address is the following: Con.Paseo Abril, Apt. 1205, Toa Baja, PR 00949.

d. Lisa M. Torres-Colon ("Torres") is of legal age, student, single, domiciled and resident of Villalba, Puerto Rico. Torres' address is the following: Urb. La Vega Calle C #85, Villalba, PR 00766.

e. Joffre E. Gómez-Frontera ("Gomez") is of legal age, student, single, domiciled and resident of Maricao, Puerto Rico. Gomez' address is the following: Bo. Indiera Alta, RR01 Km 31.1, Mailbox 4620, Maricao, PR 00606.

f. Zabdiel A. Nieves-Rivera ("Nieves") is of legal age, student, single, domiciled and resident of San German, Puerto Rico. Nieves' address is the following: #79 Calle Paz, H2 Urb. Paseos del Valle, San German, PR 00683-9211.

g. Enny de Jesús-Ureña ("de Jesus") is of legal age, student, single, domiciled and resident of Bayamon, Puerto Rico. de Jesus' address is the following: Calle Julia AN1, Urb. Villa Rica, Bayamon, PR 00959.

h. Loraima M. Rosado-Villafañe ("Rosado") is of legal age, student, single, domiciled and resident of Jayuya, Puerto Rico. de Jesus' address is the following: Carr. 144, Km. 1 HM0, Bo. Rio Grande, Jayuya, PR 00664.

i. Paola M. Prosper-Crespo ("Prosper") is of legal age, student, single, domiciled and resident of Mayaguez, Puerto Rico. de Jesus' address is the following: Paraiso de Mayaguez, Calle Serenidad 193, Mayaguez, PR 00680.

10. According to information and belief, Defendant University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT") are the names of various legal entities or associations created and owned jointly by Tulp and Konyk. All these entities are private legal entities that are wholly owned and managed by both Tulp and Konyk for the purposes of providing medical education. USAT is an alter ego of Tulp and Konyk, whom both are personally liable for any and all responsibilities incurred by USAT. The different addresses held out by these different entities are the following: 1) PO Box 506, South Mayfield Estate Drive, Olveston, Montserrat, British West Indies, 2) 3442 Ash St., Denver, CO, 80207, 3) 4288 Youngfield St., Wheat Ridge, CO 80033, 4) PO Box 364 364363, San Juan, PR 00936-4363, 5) 598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

11. According to information and belief, Defendant Tulp is the joint owner, Professor and President of USAT. His current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Tulp has a spouse, Jane Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

12.     According to information and belief, Defendant Konyk is the joint owner, Vice President and Director of Administration and Finances of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Konyk has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

13.     According to information and belief, Defendant Ortiz is Director and Dean of the PR Branch of USAT. His current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Ortiz has a spouse, Jane Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

14.     According to information and belief, Defendant Bustillo is the Registrar and Human Resources Supervisor of the PR Branch of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Bustillo has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

15.     According to information and belief, Defendant Cabrera is the Clinical Coordinator- Student Affairs of the PR Branch of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Cabrera has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

16.     According to information and belief, Defendant Baldwin is an Administrator of USAT located in Colorado. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Baldwin has a spouse, John

Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

17.     Co-Defendant, Insurance Company XYZ ("Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants', specifically to cover said contractual claims. Their current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

18.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' acts or omissions of which Plaintiff is complaining. Their Current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

19.     Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' acts or omissions of which Plaintiff is complaining. Their Current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

## THE FACTS

20.     According to information and belief, Tulp and Konyk created USAT to be a medical school dedicated to providing education for medical students pursuing their medical license.

21.     According to information and belief, Tulp and Konyk established USAT around the year of 2003.

22.     According to information and belief, Tulp and Konyk founded USAT at the Caribbean island of Montserrat, a British Overseas Territory.

23.     According to information and belief, Tulp and Konyk sought credentials and licenses for USAT from the Government of Montserrat, a British Overseas Territory.

24.     According to information and belief, Tulp and Konyk created different legal entities with different names throughout the years such as: University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT").

25.     According to information and belief, all these different entities were jointly owned and operated by Tulp and Konyk.

26.     According to information and belief, Tulp and Konyk, under the veil of USAT, operated some "satellite" USAT sites, promoting the medical school in other territories and states.

27.     According to information and belief, Tulp and Kony created these "satellite" USAT sites in the following locations: 1) Tampa, FL, 2) Miami, FL, 3) Baltimore, MD, and 4) Dallas/Fort Worth, TX.

28.     According to information and belief, these "satellite" sites were created prior to 2017, when allegedly the Montserrat Volcano forced USAT to abandon its main campus and create these "satellite" sites in other locations.

29.     According to information and belief, ECFMG generally requires that the first- and second-year medical students must personally attend a main campus setting in order to be eligible for medical license examinations.

30.     According to information and belief, ECFMG temporarily granted USAT to operate these "satellite" sites without requiring the first- and second-year students to personally attend a main campus.

31.     According to information and belief, ECFMG still required that USAT comply with the condition in the future with other prospective first- and second-year students to personally attend the USAT main campus.

32.     According to information and belief, Tulp and Konyk contacted Ortiz, who is from Puerto Rico prior to the year of 2017.

33.     According to information and belief, Tulp, Konyk and Ortiz agreed to establish a USAT PR Branch in Puerto Rico around the year of 2017 as an extension of the main campus and/or main campus of USAT.

34.     According to information and belief, Tulp, Konyk and Ortiz knowingly agreed to open an USAT PR Branch in Puerto Rico in 2017 as a college of medicine whereas students must personally attend classes in compliance with ECFMG standards.

35.     However, according to information and belief, Tulp, Konyk and Ortiz knowingly opened a USAT PR Branch in Puerto Rico in 2017 in violation of ECFMG because they did not seek the proper license and/or credentials to open an extension of the main campus and/or main campus of USAT.

36.     According to information and belief, Tulp, Konyk and Ortiz knowingly opened a school for medicine to assist first- and second-year medical students when in fact said school of medicine would not allow first and second year medical student be eligible to take the medical licensing examination pursuant to the requirements of ECFMG.

37.     According to information and belief, Tulp, Konyk and Ortiz sought the assistance of Bustillo, Cabrera and Baldwin to assist in administrating the USAT PR Branch as an extension of main campus and/or main campus even though it did not have the license and/or credentials to be able to assist first- and second-year medical students to be eligible to take the medical licensing examination pursuant to the requirements of ECFMG.

38.     According to information and belief, Tulp, Konyk, Ortiz, Bustillo, Cabrera and Baldwin ("USAT Officers") actively sought to recruit potential first year and second year students while omitting the prospective students that the USAT PR Branch did not have the proper licenses and/or accreditations necessary.

39.     According to information and belief, after the USAT Officers obtained medical applicants for the USAT PR Branch, the USAT Officers falsely informed the Regulatory Agencies that the medical applicants were from other "satellite" sites described in paragraph 27, instead from the USAT PR Branch.

40.     According to information and belief, the USAT Officers falsely represented to the Plaintiffs and other RICO victims that the USAT PR Branch was a licensed and accredited medical school because it was an extension of the main campus and/or main campus of USAT.

41.     According to information and belief, the USAT Officers falsely represented to the Plaintiffs and other RICO victims that the USAT PR Branch would assist them to gain credits in order to be eligible for the medical licensing examinations pursuant to ECFMG.

42.     According to information and belief, the USAT Officers directed the beforementioned false representations via interstate mail and wire transfers to the Plaintiffs and other RICO victims.

43.     According to information and belief, the USAT Officers induced the Plaintiffs and other RICO victims to enter into various transactions in order to pay for the education at the USAT PR Branch.

44.     According to information and belief, the USAT Officers induced some Plaintiffs to directly pay USAT for the medical education at the USAT PR Branch.

45.     According to information and belief, the USAT Officers falsely represented to some Plaintiffs that said direct payments were for a valid reason, that is, to obtain medical education at the USAT PR Branch for the purpose of being eligible for the medical licensing examination pursuant to ECFMG.

46.     According to information and belief, the USAT Officers persuaded some Plaintiffs and other RICO victims to seek financial assistance by requesting student loans from Banks.

47.     According to information and belief, the USAT Officers falsely represented to the Plaintiffs, the other RICO victims and the Banks that the student loans were for a valid reason, that is, to obtain medical education at the USAT PR Branch for the purpose of being eligible for the medical licensing examination pursuant to ECFMG.

48.     According to information and belief, the USAT Officers did not disclose and omitted to the Plaintiffs, the other RICO victims and the Banks that the medical education at the USAT PR Branch would not assist Plaintiffs and other RICO victims to be eligible for the medical licensing examinations pursuant to ECFMG.

49.     According to information and belief, the Banks that issued the student loans directed said payment to USAT and not to the Plaintiffs or other RICO victims.

50.     According to information and belief, the USAT Officers received the student loan payments "on behalf" of the Plaintiff and the other RICO Victims.

51.     According to information and belief, the USAT Officers falsely represented to the Plaintiffs and other RICO victims, invoices regarding medical education costs and expenses.

52.     According to information and belief, the USAT Officers falsely created medical education costs and expenses which were not necessary for the first- and second-year medical education.

53.     According to information and belief, the USAT Officers falsely created medical education costs and expenses in a scheme to defraud the Plaintiffs, the other RICO victims and the Banks.

54.     According to information and belief, the USAT Officers knowingly participated in this scheme with intent to defraud by using mail or interstate wire in furtherance of the fraudulent scheme.

55.     This scheme to defraud occurred approximately from early 2017 until present time.

56.     In or around September of 2018, the Plaintiffs and other RICO victims were studying and preparing to take the medical licensing examination pursuant to the ECFMG.

57.     In or around September of 2018, the Plaintiffs and other RICO victims began the process in order to take the medical licensing examination pursuant to the ECFMG.

58.     During the process to take the medical licensing examination, ECFMG requires the applicants to submit information under penalty of perjury via an affidavit detailing their medical school information, including additional information such as attendance.

59.   Specifically, ECFMG requires the applicants to submit the information that the medical students physically attended their medical classes at a main campus.

60.   According to information and belief, in or around September of 2018, other RICO victims personally sent affidavits to the ECFMG detailing their medical education at the USAT PR Branch as an extension of the main campus and/or main campus of USAT.

61.   According to information and belief, in or around September of 2018, the ECFMG informed the other RICO Victims that they were not eligible for the medical licensing exam pursuant to ECFMG.

62.   According to information and belief, in or around September of 2018, the ECFMG informed the other RICO Victims that they were not eligible for the medical licensing exam because the USAT PR Branch was not licensed and accredited pursuant to the requirements of ECFMG.

63.   According to information and belief, in or around September of 2018, the ECFMG informed the other RICO Victims that the information provided in the affidavits were inconsistent with the information provided by USAT, because USAT never informed ECFMG that the USAT PR Branch was an extension of main campus and/or main campus.

64.   According to information and belief, in or around September of 2018, the ECFMG informed the other RICO Victims that the information provided in the affidavits were inconsistent with the information provided by USAT, because USAT only informed ECFMG that their main branch is located in Montserrat.

65.   In or around September of 2018, the Plaintiffs were notified of the ECFMG irregularities and their denial to other RICO victims because they were not eligible to take the medical licensing exam.

66.     In or around September of 2018, USAT Officials notified the Plaintiffs and other RICO victims of the ECFMG irregularities.

67.     Around September 24th of 2018, USAT Officials notified the Plaintiffs of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities.

68.     In that September 26th telephone conference, Tulp and the attorneys of USAT addressed the Plaintiff's concerns regarding the ECFMG process to be able to take the medical license examination.

69.     During that September 26th telephone conference, Tulp instructed the Plaintiffs to falsely inform ECFMG that the Plaintiffs took their medical classes at the Montserrat main campus.

70.     Once the Plaintiffs heard from USAT Officials to submit false information to ECFMG, the Plaintiffs began to investigate the inconsistent statements made by the USAT Officials.

71.     During September, October and November of 2018, the Plaintiffs and other RICO Victims sent numerous communications to Defendants inquiring as to why they could not take the medical licensing examination.

72.     During September, October and November of 2018, the USAT Officials dodged and evaded questions by the Plaintiffs and other RICO victims regarding their lack of eligibility for the medical license examinations.

73.     During October of 2018, Ortiz sent an e-mail to Plaintiffs and other RICO victims instructing them to not use their personal e-mails and only use USAT e-mails for "internal communications".

74.     During early November of 2018, the USAT Officials instructed the Plaintiffs and other RICO Victims to not send additional information to ECFMG outside the instructions of USAT.

75.     During early November of 2018, the USAT Officials instructed the Plaintiffs and other RICO Victims to send all information regarding ECFMG to Konyk, who would then refer Plaintiffs and other RICO Victims to USAT's attorney.

76.     During early November of 2018, the USAT Officials also tried to invite the Plaintiffs and other RICO Victims to transfer to start again at other medical schools suggested by USAT.

77.     On November 8th of 2018, Ortiz sent an e-mail to the Plaintiffs and other RICO Victims regarding ECFMG's decision to find the Plaintiffs and other RICO Victims not eligible for the medical licensing examination. In that e-mail, Ortiz falsely represented to Plaintiffs and other RICO Victims that the Defendants were "surprised" by ECFMG's decision.

78.     Subsequent to this e-mail Plaintiffs and other RICO victims demanded a physical meeting with Ortiz to discuss face to face these surprising events.

79.     On November 16th, 2018, USAT Officials sent an electronic mail to some Plaintiffs invoking a meeting on that same date at around 5:30 pm.

80.     However, the meeting was delayed until 10 pm, when Ortiz arrived.

81.     Between 5:30 pm and 10 pm, some of the Plaintiffs and other RICO victims met with a Mr. Santiago, whom was identified as another USAT official.

82.     During the meeting with Mr. Santiago, the Plaintiffs and other RICO victims established a line of questions for Ortiz to answer on behalf of USAT concerning the following: 1)USAT PR Branch's licensing and/or certification status as an extension of main campus and/or

main campus, 2) USAT PR Branch's status with ECFMG, 3) USAT PR Branch's finances and student loan program, and 4) what were USAT PR Branch's plan to attend the Plaintiff's and other RICO victims' concerns as described above.

83.     When Ortiz arrived at 10 pm, Plaintiffs' line of questions were answered again evasively and without any concrete answers.

84.      Ultimately, the November 16th, 2018 meeting did not produce any results.

85.     Another meeting was held by Ortiz on December 18th, 2018 to try to resolve the Plaintiffs' and other RICO victim's situation.

86.     Ortiz physically met with Plaintiffs and other RICO victims at the Mall of San Juan in late 2018.

87.     During said meeting, Ortiz admitted to the Plaintiffs and other RICO victims that they should not bother going to the other medical schools suggested by USAT.

88.     Additionally, Ortiz admitted during the meeting that USAT lawyers advised him to not speak about USAT's activities for approximately five years.

89.     When the Plaintiffs and other RICO victims asked what he meant about not speaking about USAT activities for approximately five years, Ortiz admitted that the USAT lawyers advised him to not testify as to anything until the statute of limitations runs out.

90.     During December of 2018, the Plaintiffs noticed that USAT Officials vacated the USAT PR Branch premises and took most of the Plaintiffs and other RICO members medical school documents to an unknown location.

91.     Presently, the Plaintiffs have not been able to take the medical licensing examination based on the medical education taken at the USAT PR Branch.

92.     The Plaintiffs paid USAT and the USAT Officials for their medical education believing that the same qualified for taking the medical licensing examination pursuant to ECFMG.

93.     However, the Plaintiffs and other RICO Victims were fraudulently induced by the Defendants into applying, studying and paying for a medical education at the USAT PR Branch which does not qualify for any medical licensing examination.

94.     The Defendants orchestrated the scheme to defraud with the knowledge to deceive Plaintiffs by means of false or fraudulent pretenses, representations, promises or other deceptive conduct.

95.     Specifically, the Defendants falsely represented that the USAT PR Branch was licensed and certified to assist the Plaintiffs to be eligible for the medical licensing examination pursuant to the ECFMG.

96.     The Defendants followed this scheme from early 2017 until present time, when the Plaintiffs and other RICO Victims were notified that they were not eligible to take the medical licensing examination pursuant to the ECFMG.

97.      The Defendants knowingly and frequently used mails and interstate wire in furtherance of the fraudulent scheme.

98.     Specifically, the Defendants sent regular mails and electronic mails with USAT Brochures and Information which induced Plaintiffs to understand that USAT PR Branch had its proper licenses and credentials because it was an extension of the main campus and/or main campus of USAT.

99.     This information induced Plaintiffs to enter into a transaction and pay USAT for taking classes and credits at the USAT PR Branch because they understood that it was an extension of the main campus and/or main campus USAT.

100.     This understanding was based on the representations that they had to physically attend medical classes at the USAT PR Branch.

101.     Defendants also directed mail and interstate wire transfers with Banks in furtherance of the scheme.

102.     Defendants requested that the Banks give Plaintiffs and other RICO Victims student loans to pay for the USAT PR Branch medical education, even though Defendants had knowledge that it was neither licensed or certified under ECFMG.

103.     Finally, Defendants fabricated certain costs and expenses when they directed invoices to the Plaintiffs and the other RICO Victims, demanding more payment in order to issue USAT transcripts.

104.     Plaintiffs and Other RICO Victims contend that they do not owe any more in student loans to Defendants, because the Defendants received the same.

105.     Based on the before mentioned facts, the Defendants have incurred in acts and omissions that have caused damages to the Plaintiffs.

106.     USAT Officials are agents who are duly authorized by USAT, who committed and/or cooperated with the acts or omissions in the course and scope of her agency relationship, thus imposing liability to USAT.

107.     USAT had knowledge of the USAT Officials' acts or omissions. USAT did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT

Officials. The Defendants allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to pay for a medical education.

108.    USAT had knowledge of the USAT Officials' acts or omissions. USAT did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. The Defendants allowed the USAT Officials to materially breach their contractual obligation to the Plaintiffs after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

109.    Company ABC was the parent company or an affiliated company of the Defendants. Company ABC had knowledge of the USAT Officials' acts or omissions. Company ABC did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. Company ABC allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to receive monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG. Company ABC allowed the USAT Officials to materially breach their contractual obligation to the Plaintiffs after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

110.    John & Jane Doe had knowledge of the USAT Officials' acts or omissions. John & Jane Doe did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. John & Jane Doe allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to receive monetary payments. John & Jane Doe allowed Mr. Feldesman to materially breach his contractual obligation to the Plaintiff after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

111. At the time of these incidents, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said claims. Said insurance policy was in force at the time of the incidents.

112. Plaintiffs have suffered economic and emotional damages based on Defendants intentional and/or knowingly acts in violation of RICO.

113. Plaintiffs seek treble damages (triple damages) for their economic and emotional damages, plus payment of interest.

114. Plaintiffs seek demand for the rescission of the agreement entered with Defendants.

115. The Defendants are liable for all the Plaintiffs' damages.

## FIRST CAUSE OF ACTION

## RICO ACT

116. Plaintiff re-alleges each allegation stated in the preceding paragraphs as if fully set forth herein.

117. As described above, Plaintiffs suffered an injury due to Defendants' actions in violation of RICO.

118. As described above, Defendants' conduct and participation demonstrates that they were operating and managing the false representations made by USAT.

119. As described above, Defendants falls under the definition of an enterprise as defined by RICO.

120. As described above, Defendants demonstrated a frequent pattern of racketeering as defined by RICO.

121.    As described above, Defendants engaged in a scheme to defraud with the specific intent to defraud.

122.    As a result of Defendants' violation of RICO, Defendants are liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

123.    The economic and emotional damages suffered by the Plaintiffs are estimated at no less than nine million dollars ($9,000,000.00).

124.    Additionally, the Defendants are liable for treble damages that are estimated at no less than twenty-seven million dollars ($27,000,000.00).

**SECOND CAUSE OF ACTION**

**FRAUDULENT INDUCEMENT,**

**OR IN ALTERNATIVE, BREACH OF CONTRACT**

125.    Plaintiffs re-allege each and every allegation stated in the preceding paragraphs as if fully set forth herein.

126.    The Defendants obtained the Plaintiffs' consent to enter into an agreement with Defendants through deceptive means.

127.    Defendants used false words and/or insidious machinations in order to induce the Plaintiffs to enter into an agreement with Defendants, which without the existence of false words and insidious machination the Plaintiff would not have entered in said contract.

128.    Defendants knowingly did not disclose to Plaintiffs the lack licenses and credentials of the USAT PR Branch and that USAT did not comply with rules pursuant to ECFMG.

129.    Defendants falsely represented to Plaintiffs the costs and expenses taken during the USAT PR Branch community.

130.    In the alternative that the Defendants are not found to have fraudulently induced the Plaintiffs, the Defendants entered into a valid contract with the Plaintiffs.

131.    A valid contract exists because the Plaintiffs and Defendants consented to bind themselves with regard to one another, in which Plaintiffs would pay Defendants a sum amount of money in exchange for Defendants services

132.    As a result of Defendants' fraudulent inducement, or in the alternative, breach of contract, Defendants are liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

133.    The economic and emotional damages suffered by the Plaintiffs are estimated at no less than nine million dollars ($9,000,000.00).

### THIRD CAUSE OF ACTION

### TORTS DAMAGES

134.    Plaintiffs re-allege each and every allegation stated in the preceding paragraphs as if fully set forth herein.

135.    Defendants' actions constitute an act or omission which caused damage to Plaintiffs. Said act or omission was incurred due to fault or negligence.

136.    All Defendants are liable to Plaintiffs pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

137.    Defendants are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

138.    John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

139.    John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

140.    Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

141.    Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

142.    Defendants' actions as subsidiary company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

143.    Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

144.    All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

145.    As a result thereof, Defendants' are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less four million five hundred thousand dollars ($4,500,000.00).

## FIFTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

146.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

147.    Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

### SIXTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

148.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

149.    Defendants' are liable to Plaintiff for attorney's fees and costs under relevant federal law.

150.    Defendants' are liable for prejudgment interest pursuant to federal rules and law.

### PRAYER

Wherefore, all allegations considered, Plaintiffs prays that judgment be entered in their favor and against all Defendants', specifically:

1.  Granting Plaintiffs' Complaint against Defendants. This Court should grant Plaintiffs complaint and find that the Defendants are liable to the Plaintiffs based on the RICO Act, Fraudulent Inducement, or in the alternative Breach of Contract and tort civil action pursuant to Article 1802 of the Puerto Rico Civil Code.

2.  An order directing Defendants to reinstate Plaintiff to his former position and to cease and desist of any further wrongful conduct.

3.  Awarding compensatory, statutory, treble and liquidated damages pursuant to federal law which establishes attorney's fees, costs and any other legal or equitable relief as the Court deems appropriate.

4.  Awarding Plaintiff lost benefits, both past and future.

5.  Awarding Plaintiff, the amounts before mentioned in the Complaint.

6.  Awarding Plaintiff compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142.

7.  Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

8.  Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 23rd day of July, 2019.

_**S/VICTOR M. RIVERA-RIOS**_
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com