IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| PEÑA-TORRES, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNIVERSITY OF SCIENCE, ARTS AND )<br>TECH, et al., )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 19-cv-01707-WGY<br><br>**RE:** RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**UNDER FED. R. CIV. P. 56**

**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendants University of Science, Arts and Technology ("USAT"), Orien L. Tulp, Carla M. Konyk, and Karen Baldwin state:

Defendants are due summary judgment for three reasons: (1) Plaintiffs claim Defendant USAT is "the enterprise" under 18 U.S.C. § 1962(c); (2) Plaintiffs do not establish either closed-ended continuity or open-ended continuity required for a "pattern" under section 1962(c); and (3) Plaintiffs fail to show "racketeering activity" required under section 1962(c).

## Introduction

1.  Orien L. Tulp and Carla M. Konyk founded the University of Science, Arts and Technology ("USAT") in the British Overseas Territory of Montserrat in September 2003. In the same month, the Government of Montserrat licensed USAT;

and, later that year, the private, nonprofit Educational Commission for Foreign Medical Graduates listed USAT as a medical school on the directory it controlled, the International Medical Education Directory ("IMED"). Defendants' Exhibit A, Government of Montserrat License to USAT.

2.     After 350 years of quiet, the Soufrière Hills Volcano on Montserrat erupted in 1995. Since this historic eruption, supplemental volcanic and seismic events continue to this day. The area of Montserrat is just over 39 square miles, the southern two-thirds of the Island that was once home to the airport, the government headquarters, and a medical school is now an uninhabitable exclusion zone buried under the pyroclastic flows from the volcano.

3.     Due to the explosive and unpredictable nature of the volcano, the size of the island, and lack of infrastructure to move people off the island, USAT's medical school license includes a provision to conduct instruction off-island. Defendants' Ex. A, Section 8.13; Defendants' Exhibit B, Letter, dated 17 October 2018, from Government of Montserrat to Educational Commission for Foreign Medical Graduates.

4.     USAT established temporary interim lecture conference sites. USAT never claimed, nor does it claim, to have established any permanent or university-owned premises in the United States. USAT established a dedicated satellite transmitter station on its Montserrat campus to facilitate transmission of lectures via a secure Small Platform Online Course, or SPOC, network that continues to the present.

5.     The Montserrat Government's evacuation order following the eruption on January 8, 2007, was USAT's reason to relocate its activities off-island. Defendants'

Ex. A, Section 8.13; Defendants' Ex. B; *contra* Second Amended Complaint ("2d Am. Compl."), ¶¶ 28-38, 40-49, 51, 52, 55-60, ECF No. 43. Other medical schools in the Caribbean, and medical schools in other foreign countries, were reported to be conducting collegiate activities in the United States before and after USAT was founded in 2003. For example, several "off-shore," defined as outside of the United States and Canada, medical programs were being conducted in Florida, Georgia, Pennsylvania, Illinois, and New Hampshire as early as 2002, with many continuing to the present.

6.    USAT remained listed in good standing on the International Medical Education Directory ("IMED"), even after the evacuation required establishing alternative sites off the island of Montserrat. In 2015, Educational Commission for Foreign Medical Graduates ("ECFMG"), through one of its subsidiaries, reorganized the IMED and created the World Directory of Medical Schools ("WDOMS"). After the change from IMED to WDOMS, USAT remained listed as a fully recognized medical school.

7.    Being listed on IMED and its successor, WDOMS, matters because it signals medical students who study at off-shore medical schools that, if they complete their medical studies at the listed medical school, and meet other requirements set by ECFMG, then they will be eligible to take a three-part examination. If they pass the three-part examination, then they are eligible to apply to be matched to a medical residency program in the United States. A graduate of a foreign medical school, who is not a citizen of the United States, must also apply for a visa. The U.S. Department of State has designated ECFMG as the sponsor for J-1 visas for all exchange visitor

3

physicians who participate in clinical training.

8.  From its inception in 2003 through 2018, USAT had a favorable and unblemished relationship with ECFMG and its previous two Presidents and CEOs during that period.

9.  USAT had no reason to expect the rules it had complied with for 15 years would be interpreted differently under the new President and CEO of ECFMG, who took office in 2016. USAT's assessment concerning ECFMG interpreting ECFMG's rules remained true until late 2018, when ECFMG began to interpret its rules differently and in a manner that harmed USAT and USAT's students. The reasons for this change are unclear to Defendants.

10.  In September and updated in October 2018, ECFMG placed a negative statement about USAT on WDOMS. Simultaneously stated on USAT's WDOMS page was that only medical degrees obtained from USAT between the following period, from 2003-2018, are acceptable to the United States and Canada. And "students and graduates of this medical school [USAT] are eligible to apply to ECFMG for ECFMG Examination and Certification, provided that : 'For medical school students officially enrolled in this school, the graduation years are listed below as 'current'; and 'For graduates of this medical school, their graduation year is included in the graduation years listed below … 2003-2018.'"

11.  The nine Plaintiffs were first- or second-year medical students at USAT when ECFMG imposed this change in 2018. The students would be able to transfer their credits from USAT to other medical schools, and ECFMG would recognize the

academic credits for the work they completed at USAT through 2018. Yet, if a student chose to complete his or her medical education at USAT, which would occur after 2018, then ECFMG would not recognize the graduate as "eligible to apply to ECFMG for ECFMG Certification and for examination" for any credits completed after 2018 ("ECFMG eligibility").

12.   The basis for the Plaintiffs' complaint against Defendants is this change ECFMG declared in 2018, which limits "ECFMG eligibility" to graduation years from USAT to the span from 2003 through 2018. Neither USAT nor the other Defendants claimed that ECFMG eligibility continued after 2018.

13.   Therefore, Plaintiffs' complaint is against ECFMG, not USAT and the other Defendants, because ECFMG under different leadership decided in 2018 to inter-pret its rules and regulations differently. USAT had no reason to anticipate these changes and, in the preceding 15-year span of operation, had hundreds of graduates who were eligible to sit for the three-part examination and who then went on to apply and secure residency posts in the United States, Canada, and Puerto Rico.

## RICO

14.   Plaintiffs bring a private cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs first cite the statutory scheme, 18 U.S.C. §§ 1961-1968, and next cite 18 U.S.C. § 1962. 2d Am. Compl. ¶¶ 3. 2), 5, 7; and 133, 143, ECF No. 43. Defendants will treat Plaintiffs' claims as brought under 18 U.S.C. §§ 1961(1)(B) and (5), 1962(a)-(d), and 1964(c).

15.   Plaintiffs' first claim is for violation of 18 U.S.C. § 1962; and Plaintiffs allege

Defendants are liable for "treble … damages," likely under 18 U.S.C. § 1964(c). 2d Am. Compl. ¶ 133.

### 18 U.S.C. § 1962(a)

16.  Section 1962(a) prohibits a person who has received income from a pattern of racketeering activity to invest that income in any enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). Plaintiffs "must show a nexus between the claimed violations and injury." *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015) (citations omitted). "The injury 'must flow from the use or investment of racketeering income.'" *Id.*; *see also Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993) ("the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves"). "'[A]lleging an injury solely from the predicate racketeering acts themselves is not sufficient because § 1962(a) does not prohibit those acts.'" *Id.*

17.  Plaintiffs do not show that Defendants used any part of the income to acquire an interest in or operate "the [alleged] enterprise, USAT." 2d Am. Compl. ¶ 3. 2). And, Plaintiffs do not explain how the use or investment of racketeering income injured Plaintffs.

### 18 U.S.C. § 1962(b)

18.  Section 1962(b) prohibits a person to acquire an interest in a business directly or indirectly through racketeering activity. 18 U.S.C. § 1962(b). Like section 1962(a),

**6**

it is insufficient to allege that the Defendants harmed the Plaintiffs directly through the predicate acts. The injury must be the result of the Defendants use of racketeering activity to gain an interest in or control of an enterprise. *See Compagnie De Reassurance*, 57 F.3d at 92; *Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp. 3d 447, 459 (D.P.R. 2015).

19.   Plaintiffs offer no facts to show how Defendants used racketeering activity to acquire an interest in or control of "the enterprise, USAT." 2d Am. Compl. ¶ 3. 2).

### 18 U.S.C. § 1962(c)

20.   "To state a RICO claim [under 18 U.S.C. § 1962(c)], [P]laintiffs must allege four elements: '(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.'" *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005) (citations omitted).

### Enterprise

21.   "The word 'person,' as used in the statute to describe one who 'conducts' an 'enterprise,' does not apply to the enterprise itself." *Arzuaga-Collazo v. Oriental Federal Sav. Bank*, 913 F.2d 5, 6 (1st Cir. 1990) (construing 18 U.S.C. § 1962(c)). "An 'enterprise' does not 'conduct or participate ... in the conduct of' that same enterprise's affairs." *Id.* "Rather, only some 'person' other than the 'enterprise' can conduct or help conduct that enterprise's affairs." *Id.* "Hence the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *Id.* (citing *Odishelidze v. Aetna Life & Casualty Co.*, 853 F.2d 21, 23-24 (1st Cir. 1988) (parenthetical omitted); *Schofield v. First Commodity Corp. of Boston*, 793

F.2d 28, 29-30 (1st Cir. 1986) ("holding that investor could not bring RICO claim against commodities firm that had allegedly defrauded her")). As the person alone, and not the enterprise, is liable under section 1962(c), the "person" and "enterprise" must be separate entities. *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 399-402 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985).

22.   Plaintiffs allege the unlawful "enterprise" is USAT and name USAT as a Defendant, thus making USAT the "person," along with its co-Defendants, Plaintiffs charge with conducting USAT's affairs. 2d Am. Compl. ¶ 3. 2). Therefore, the "enterprise" element under section 1962(c) fails.

### Pattern of Racketeering

23.   "The 'pattern of racketeering' element requires at least two acts of racketeering that occurred within ten years of each other." *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 293 (D.P.R. 2015) (citing 18 U.S.C. § 1961(5)). "The Supreme Court has held that the pattern element additionally requires a showing that 'the racketeering predicates are related, *and* that they amount to or pose a threat of continued activity.'" *Id.* (emphasis in original) (quoting *Giuliano v. Fulton*, 399 F.3d 381, 386-87 (1st Cir. 2005) (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989))).

24.   Continuity, or "continued activity," is either "closed-ended" or "open-ended." "Closed-ended" continuity refers to a closed period of repeated conduct. *H.J.*, 492 U.S. at 241. In contrast, a plaintiff may allege "open-ended" continuity without waiting for a long-term pattern to develop, *Giuliano*, 399 F.3d at 387.

### Closed-Ended Continuity

25. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the [closed-ended continuity] requirement[s]." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). The First Circuit has not pronounced a bright-line rule stating the time span necessary to show closed-ended continuity. The First Circuit, however, has held that a period of racketeering activity lasting 21 months does not satisfy the closed-ended continuity requirements. *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19-20 (1st Cir. 2000).

26. The nine Plaintiffs allege a scheme to defraud began in 2010. 2d Am. Compl. ¶¶ 3. 2)-5), 41, 42, 48-55, 59, 104, 113, 128, 130, 131. The change in ECFMG eligibility stated in ¶ 10., above, of this Memorandum, occurred in September 2018 and was updated in October 2018. This time-frame matches Plaintiffs' claim. 2d Am. Compl. ¶ 68. Defendants and ECFMG notified Plaintiffs in September and October 2018 that ECFMG eligibility of students at and graduates of USAT would continue through December 31, 2018. This allotted the students time to begin the process of transferring to other medical schools, or to choose to complete their studies at USAT.

27. This is not fraud. This is ECFMG, an outside organization, interpreting its rules differently than it had interpreted them for the previous 15 years.

28. Had ECFMG interpreted its rules during the alleged period of fraudulent activity, allegedly beginning in 2010, as ECFMG began to interpret its rules in late 2018, then USAT and ECFMG would have given such notice to all applicants of the status of students at and graduates of USAT as to ECFMG eligibility.

29.  Finally, if those who control ECFMG believed USAT had been violating ECFMG's rules since 2010, then ECFMG would have so stated on USAT's WDOMS page and, for students at and graduates of USAT, reduced the span of ECFMG eligibility from 2003-2010, not as the span truly is: from 2003-2018.

30.  Nine Plaintiffs affected during a period of less than four months, mid-September 2018 through December 31, 2018, does not establish closed-ended continuity.

### Open-Ended Continuity

31.  "In order to satisfy open-ended continuity, a plaintiff must show that the racketeering acts 'are part of an ongoing entity's regular way of doing business' or that they include a 'specific threat of repetition extending indefinitely into the future.'" *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 295 (D.P.R. 2015) (quoting *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991))).

32.  The ability of potential students to read the information on USAT's WDOMS page is part of the application process of reasonable potential student when applying to an off-shore medical school. USAT's policy is to inform potential students of ECFMG eligibility. The information about ECFMG eligibility and eligibility in Canada of students at and graduates of USAT is notice to applicants to USAT.

33.  USAT's notice to applicants and potential students about Canadian and ECFMG eligibility, and the information on USAT's WDOMS web page about

10

ECFMG eligibility, are part of USAT's "regular way of doing business" and this regular way of doing business precludes a "specific threat of repetition [of allegedly operating a scheme to defraud from] extending indefinitely into the future."

34.  Therefore, the Plaintiffs do not state facts that establish open-ended continuity.

35.  As Plaintiffs do not state facts that establish either closed-ended or open-ended continuity, the "pattern of racketeering" element under section 1962(c) fails.

**Racketeering Activity**

36.  "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) to mean any act which is indictable under any of the following provisions … including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of racketeering activity, of which the last act had to occur within ten years of the first act. 18 U.S.C. § 1961(5).

37.  Plaintiffs allege Defendants committed mail and wire fraud. 2d Am. Compl. ¶¶ 46, 58, 105, and 106. Yet, Plaintiffs do not state "the time, place and content of the alleged acts of mail and wire fraud." *Trinidad v. IDI Holdings PR, Inc.*, 708 F. Supp. 2d 137, 144 (D.P.R. 2005) (citing *North Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir. 2001) ("RICO plaintiff must state 'the time, place and content of the alleged mail and wire communications perpetrating' the fraud"); *Giuliano v. Fulton*, 399 F.3d 388-389 (1st Cir. 2005) (same)).

38.  As Plaintiffs do not state facts establishing racketeering activity, the

"racketeering activity" element under section 1962(c) fails.

**18 U.S.C. § 1962(d)**

39.   Section 1962(d) proscribes conspiring to violate section 1962(a), (b), or (c). To prove a RICO conspiracy, a plaintiff must show (1) the existence of an enterprise; (2) that each defendant knowingly joined the enterprise; and (3) that each defendant agreed to commit, or in fact committed, two or more predicate acts. *See Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 41 (1st Cir. 1991); *see also United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir. 1988), *cert. denied,* 488 U.S. 852 (1988).

40.   As stated in ¶¶ 14.-40., above, of this Memorandum, Plaintiffs have shown no facts to support a claim that Defendants violated either 18 U.S.C. § 1962(a), (b), or (c). Therefore, Plaintiffs do not state facts that establish Defendants violated section 1962(d).

## State Law Claims

### Fraudulent Inducement, Or In the Alternative, Breach of Contract

41.   Plaintiffs allege Defendants fraudulently induced Plaintiffs to agree to attend USAT. 2d Am. Compl. ¶¶ 8, 136-144. "[T]he party alleging fraud has the burden of presenting evidence which is 'strong, clear, unchallengeable, convincing, and conclusive, since a mere preponderance of the evidence is not sufficient to establish the existence of fraud in [Puerto Rico].'" *Puerto Rico Electric Power Authority v. Action Refund,* 515 F.3d 57, 66 (1st Cir. 2008) (citing *Prado Alvarez v. R.J. Reynolds Tobacco Co.,* 313 F. Supp. 2d 61, 77 (D.P.R. 2004) (quoting *F.C.Imports, Inc. v. First Nat'l Bank of Boston, N.A.,* 816 F. Supp. 78, 87 (D.P.R. 1993)), aff'd, 405 F.3d 36 (1st

Cir. 2005)).

**42.**   Plaintiffs do not present strong, clear, unchallengeable, convincing, and conclusive evidence that Defendants committed fraud. Therefore, this cause of action fails.

**43.**   Defendants did not breach its contracts with Plaintiffs. Defendants' Exhibits C-K, executed USAT Fee Schedules, PDF pages 17, 27, 37, 48, 58, 69, 80, 91, 102. Defendants and ECFMG notified Plaintiffs in September and October 2018 that ECFMG eligibility of students at and graduates of USAT would continue through December 31, 2018. This allotted the students time to begin the process of transferring to other medical schools, or to choose to complete their studies at USAT.

## Unjust Enrichment

**44.**   Plaintiffs allege Defendants were unjustly enriched. 2d Am. Compl. ¶¶ 5, 8. Unjust enrichment doctrine does not apply where a legal provision exists that excludes its application, such as the existence of a contract that expresses the intentions of the parties. *Andújar v. Commonwealth*, 22 P.R. Offic. Trans. 774, 787, 122 D.P.R. 817 (1988); *Garriga, Hijo, Inc. v. Condominio Marbella del Caribe Oeste*, 143 P.R. Dec. 927, 934 (1997) ("between [the parties] there exists a contract; the doctrine of unjust enrichment does not apply") (court's translation). Unjust enrichment doctrine does not apply because the Plaintiffs executed contracts with USAT. Defendants' Exhibits C-K, executed USAT Fee Schedules, PDF pages 17, 27, 37, 48, 58, 69, 80, 91, 102.

**Torts**

45.   Plaintiffs allege Defendants are liable for an act or omission which harmed Plaintiffs, and fault or negligence caused the act or omission. 2d Am. Compl. ¶¶ 5, 8, 145-148, 155-156.

46.   Defendants did not breach their duty to Plaintiffs and therefore did not harm Plaintiffs by negligence. Rather, Defendants specifically performed under its contracts with Plaintiffs, as Defendants provided Plaintiffs an opportunity to study medicine. Plaintiffs executed contracts with USAT. Defendants' Exhibits C-K, executed USAT Fee Schedules, PDF pages 17, 27, 37, 48, 58, 69, 80, 91, 102. ECFMG caused any tort damages Plaintiffs incurred after December 31, 2018, when ECFMG began to interpret its rules differently and in a manner that harmed USAT and USAT's students.

WHEREFORE, Defendants urge this Court to find there are material facts Plaintiffs cannot prove and, therefore, it is proper for this Court to enter summary judgment in favor of Defendants.

Respectfully submitted January 2, 2021.

s/ Chris Paulsen

Attorney for Defendants
 USAT, Tulp, Konyk, and Baldwin
Local Counsel, Lcdo. Amexis J. Bonilla-Nieves
URB ROSEVILLE
96 calle Radiante
San Juan, PR 00926-8635
ajbnlaw@gmail.com
939-439-0487
chris@paulsenlaw.com
303-284-9800

14

**CERTIFICATE OF SERVICE**

I certify that on January 2, 2021, the above Defendants' Motion For Summary Judgment Under Fed. R. Civ. P. 56 And Memorandum Of Law In Support Thereof was filed with the Clerk of Court and Plaintiffs' attorney, Victor M. Rivera-Rios, by electronic service and the electronic service was reported as complete.


s/ Amexis J. Bonilla-Nieves
Lcdo. Amexis J. Bonilla-Nieves
USDC-PR Bar No. 225909

15