## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SUJEIL PEÑA-TORRES; ET ALS** | CIVIL NO. 19-1707 |
| PLAINTIFFS | |
| VS. | RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); |
| **UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ET ALS** | FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES |
| | TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

## OMNIBUS RESPONSE IN OPPOSITION TO DOCKET 55 MOTION FOR SUMMARY JUDGMENT AND DOCKET 73 MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COMES NOW, the Plaintiffs Sujeil Peña-Torres, Jose E. Blasco-Jusino, Lucero Rodriguez-Fernandez, Lisa M. Torres-Colon, Joffre E. Gomez-Frontera, Zabdiel A. Nieves-Rivera Enny de Jesus-Ureña, Loraima M. Rosado-Villafañe and Paola M. Prosper-Crespo** (jointly referred as "Plaintiffs") through their undersigned attorneys and very respectfully state, allege and pray as follows:

### INTRODUCTION

This Court should deny University of Science, Arts and Technology ("USAT"), Orien L. Tulp ("Tulp"), Carla M. Konyk ("Konyk"), Karen Baldwin ("Baldwin") (jointly "Co-Defendants") Docket 55 Motion for Summary Judgment and Manuel José Ortiz-Bustillo ("Ortiz"), and Yanire Bustillo ("Bustillo") (jointly "Default Co-Defendants") Docket 73 Motion to Dismiss, because the Plaintiffs proffer sufficient evidence of the material facts that support the causes of

actions pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961, *et seq,* Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq.*; Material Breach of Contract pursuant to Articles 1206 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et seq.*; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

## FACTUAL BACKGROUND

I.    THE EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, ITS POLICIES AND PROCEDURES

Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization based in Philadelphia, Pennsylvania. ECFMG promotes quality health care for the public by certifying international medical graduates ("IMG") for entry into U.S. graduate medical education, and by participating in the evaluation and certification of other physicians and health care professionals nationally and internationally. In other words, ECFMG was established to screen IMG who were coming to the United States seeking residency programs and turns into graduate medical education. (See page 64 of Exhibit 18) (See page 247 line 21 to page 248 line 1 of Exhibit 18).

ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for entry into graduate medical education and healthcare systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, (iii) verifying credentials and providing other services to health care professionals worldwide, and (iv) provide international access to testing and evaluation programs. (See page 64 of Exhibit 18).

2

To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school. (See pages 73-75 of Exhibit 18).

An "international medical school" is "an education facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country." (See page 66 of Exhibit 18).

If an international medical school has a branch campus outside the country where its primary campus is purportedly located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country." (See page 66 of Exhibit 18).

Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate. (See pages 73-75 of Exhibit 18).

This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school. (See pages 73-75 of Exhibit 18).

ECFMG's Policies and Procedures Regarding Irregular Behavior define "irregular behavior" to include: all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program,

ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG. Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG. (See page 92 of Exhibit 18).

ECFMG's Policies and Procedures Regarding Irregular Behavior provide: "Examples of irregular behavior include, but are not limited to, submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual; failing to comply with United States Medical Licensing Examination or ECFMG policies, procedures, and/or rules; falsification of information on applications, submissions, or other materials to ECFMG; taking an examination when not eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals." (See page 92, 93-94 of Exhibit 18). (See page 267 line 9 to line 14 of Exhibit 18).

Irregular behavior charges can be brought against any individuals who are involved in the process of application for ECFMG certification or "any other person that would or could subvert the examination, certification or other processes programs or services of ECFMG," including medical school officials. (See page 92 of Exhibit 18). (See page 414 line 24 to page 415 line 3, page 418 line 22 to page 419 line 7 of Exhibit 18).

ECFMG's Policies and Procedures Regarding Irregular Behavior describe ECFMG's process for investigating suspected irregular behavior, determining whether an individual engaged in irregular behavior, and taking appropriate action if a finding of irregular behavior is made. (See page 92-96 of Exhibit 18).

II.     THE ENTERPRISE, THE CONDUCT, THE PATTERN OF RACKETEERING

ACTIVITIES: USAT AND ITS OFFICIALS' FALSE REPRESENTATIONS TO PLAINTIFFS IN ORDER TO RECEIVE PAYMENT FOR AN INVALID MEDICAL EDUCATION

A. USAT First Contact and Representations

Sujeil Peña-Torres ("Peña"), Jose E. Blasco-Jusino ("Blasco"), Lucero Rodriguez-Fernández ("Rodriguez"), Lisa M. Torres-Colon ("Torres"), Joffre E. Gómez-Frontera ("Gomez") Zabdiel A. Nieves-Rivera ("Nieves"), Enny de Jesús-Ureña ("de Jesus") Loraima M. Rosado-Villafañe ("Rosado") and Paola M. Prosper-Crespo ("Prosper") (jointly "Plaintiffs") were all searching for a medical school to apply in order to get into a career in medicine:

a. Peña was searching for a medical school around May 3rd, 2017. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Peña ("Declaration of Peña")- Page 1 of Exhibit 1).

b. Blasco was searching for a medical school around February of 2017. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Blasco ("Declaration of Blasco")- Page 1 of Exhibit 2).

c. Prosper was searching for a medical school around July of 2017. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Prosper ("Declaration of Prosper")- Page 1 of Exhibit 3).

d. Rosado was searching for a medical school around May 29, 2018. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Rosado ("Declaration of Rosado")- Page 1 of Exhibit 4).

e. Torres was searching for a medical school around July 19th, 2017. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Torres

("Declaration of Torres")- Page 1 of Exhibit 5).

f. Gomez was searching for a medical school around May 29th, 2018. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Gomez ("Declaration of Gomez")- Page 1 of Exhibit 6).

g. Rodriguez was searching for a medical school around March 3rd, 2018. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Rodriguez ("Declaration of Rodriguez")- Page 1 of Exhibit 7).

h. De Jesus was searching for a medical school around 2017. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of De Jesus ("Declaration of De Jesus")- Page 1 of Exhibit 8).

i. Nieves was searching for a medical school around May 29, 2018. (See paragraph 3 of the Unsworn Declaration under Penalty of Perjury of Nieves ("Declaration of Nieves")- Page 1 of Exhibit 9).

Plaintiffs were contacted by persons who represented themselves as officials of the medical school known as USAT, and accredited college of medicine in Puerto Rico:

a. Peña was contacted and interviewed by Manuel Jose Ortiz-Bustillo ("Ortiz") and Daniela Cabrera-Pujada ("Cabrera") on or around July 8th of 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Peña- Page 1 of Exhibit 1).

b. Blasco met Ortiz at the Hilton Garden Miami Airport Hotel West Doral in Miami, FL on or around July 12th, 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT

6

is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Blasco- Page 1 of Exhibit 2).

c.  Prosper was contacted by Cabrera on or around July of 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Prosper- Page 1 of Exhibit 3).

d.  Rosado was contacted by Ortiz and Cabrera on or around June 1st of 2018. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Rosado- Page 1 of Exhibit 4).

e.  Torres was contacted by Cabrera on or around July, 21st, 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Torres- Page 1 of Exhibit 5).

f.  Gomez was contacted by Ortiz and Cabrera, whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-5 of the Unsworn Declaration of Gomez- Page 1 of Exhibit 6).

g.  Rodriguez applied online to the USAT PR campus on April 4th, 2018. Between April and May of 2018, she was contacted by Ortiz and Damaris Frias ("Frias") whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of Rodriguez- Page 1 of Exhibit 7).

    h. De Jesus searched for information about USAT and requested application requirements around December of 2017. She was contacted by Ortiz, Frias and Yanire Bustillo ("Bustillo"), whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-6 of the Declaration of De Jesus- Page 1 of Exhibit 8).

    i. Nieves was contacted by Ortiz and Cabrera, whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See paragraph 4-5 of the Declaration of Nieves- Page 1 of Exhibit 9).

Plaintiffs received various materials regarding USAT, such as brochures, applications and enrollment agreements, which made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

    a. Peña received these materials on July 8th, 2017. (See paragraph 7 of the Declaration of Peña- Page 1 of Exhibit 1) (See Pages 8-19 of Exhibit 1).

    b. Blasco received these materials between February and June 21st, 2017. (See paragraph 7 of the Declaration of Blasco- Page 1 of Exhibit 2). (See Pages 8-18 of Exhibit 2).

    c. Prosper received these materials on August 1st, 2017. (See paragraph 7 of the Declaration of Prosper- Page 1 of Exhibit 3).

    d. Rosado received these materials on June 1st, 2018. (See paragraph 7 of the Declaration of Rosado- Page 1 of Exhibit 4). (See Pages 15-21 of Exhibit 4).

    e. Torres received these materials on August 9th, 2017. (See paragraph 7 of the

Declaration of Torres- Page 1 of Exhibit 5). (See Pages 8-23 of Exhibit 5).

f.  Gomez received these materials on June 1st, 2018. (See paragraph 6 of the Unsworn Declaration of Gomez- Page 1 of Exhibit 6).

g.  Rodriguez received these materials on March 3rd, 28th and April 4th of 2018. (See paragraph 7 of the Declaration of Rodriguez- Page 1 of Exhibit 7). (See Pages 6-11 of Exhibit 7).

h.  De Jesus received these materials on January 2nd, 2018. (See paragraph 7 of the Declaration of De Jesus- Page 1 of Exhibit 8). (See Pages 7 of Exhibit 8).

i.  Nieves received these materials on June 1st, 2018. (See paragraph 6 of the Declaration of Nieves- Page 1 of Exhibit 9). (See Pages 5-8 of Exhibit 8).

Based on the various materials and the representations, the Plaintiffs understood that Orien L. Tulp ("Tulp") is the President of USAT, Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT, Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, Bustillo is the Registrar & Human Resource Supervisor and Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico. Therefore, Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all USAT officials and representatives. (See paragraphs 8-10 of the Declaration of Peña – Pages 1-2 Exhibit 1) (See paragraphs 8-10 of the Declaration of Blasco – Pages 1-2 Exhibit 2) (See paragraphs 8-10 of the Declaration of Prosper – Pages 1-2 Exhibit 3) (See paragraphs 8-10 of the Declaration of Rosado – Pages 1-2 Exhibit 4) (See paragraphs 8-10 of the Declaration of Torres – Pages 1-2 Exhibit 5) (See paragraphs 7-9 of the Declaration of Gomez – Pages 1-2 Exhibit 6) (See paragraphs 8-10 of the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See paragraphs 8-10 of the Declaration of

De Jesus – Pages 1-2 Exhibit 8) (See paragraphs 7-9 of the Declaration of Nieves – Pages 1-2 Exhibit 9) (See pages 8, 10, 16, 34, 38, 43-44, 46, 51-52, 58-59, 67, 72, 78, 91-92, 94-95 of Exhibit 1) (See pages 9, 11, 13, 46-47, 59, 62-63, 71, 73, 76, 78, 89 of Exhibit 2) (See pages 7-8, 27-28, 30, 37-40 of Exhibit 3) (See page 5 of Exhibit 4) (See pages 7, 16, 20, 22, 38-41, 45-46, 49-51 of Exhibit 5) (See page 5 of Exhibit 6) (See pages 15, 18, 21, 23 of Exhibit 7) (See pages 7, 10-11, 13, 19, 21, 28, 33  of Exhibit 8) (See page 5 of Exhibit 9).

Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs understood that 1) USAT was accredited by the ECFMG so that USAT students may be able to take the United States Medical Licensing Examinations, and 2) being a student of USAT would allow the Plaintiffs to take the United States Medical Licensing Examinations. Additionally, the Plaintiffs understood that USAT operated satellite campuses or schools and had its main Administrative Office at other states in the United States, such as in Puerto Rico, Florida, Maryland, Texas, and Colorado. (See paragraphs 11-14 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 11-14 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 11-14 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 11-14 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 11-14 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 10-13 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 11-14 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 11-14 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 10-13 of the Declaration of Nieves – Pages 2 Exhibit 9) (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 78 of Exhibit 1) (See pages 9, 12-14 of Exhibit 2). (See pages 7-8, 28 of Exhibit 3).

B.  USAT Enterprise, Conduct and Pattern of Racketeering Activity

The Plaintiffs understood that the USAT officials have been working at USAT for some

time and that based on their representations, USAT's purpose was to provide the Plaintiffs an education in medicine if they applied to be a medical student. In consideration of USAT providing Plaintiffs the education of medicine, USAT would then request payments from the Plaintiffs. The USAT Officials made representations that once the payments would be received, USAT would provide the education in medicine and the Plaintiffs would be able to take the United States Medical Licensing Examinations. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs were induced and made the decision to apply to USAT, thinking that the Plaintiffs were going to receive a valid medical education in Puerto Rico and will be later be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 15-19 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 15-19 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 15-19 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 15-19 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 15-19 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 14-18 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 15-19 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 15-19 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 14-18 of the Declaration of Nieves – Pages 2 Exhibit 9)

Plaintiffs submitted all the required documents and required payments to USAT in order to apply.

     a.  Peña submitted all the required documents and required payments on July 11th, 2017 and August 2nd, 2017. (See paragraph 20 of the Declaration of Peña- Page 2 of Exhibit 1)

     b.  Blasco submitted all the required documents and required payments on June

15th, 2017 and July 11th, 2017. (See paragraph 20 of the Declaration of Blasco-Page 3 of Exhibit 2).

c.  Prosper submitted all the required documents and required payments on June 27th, 2017 and July 19th, 2017. (See paragraph 20 of the Declaration of Prosper-Page 2 of Exhibit 3).

d.  Rosado submitted all the required documents and required payments on June 4th, 2018. (See paragraph 20 of the Declaration of Rosado- Page 2 of Exhibit 4).

e.  Torres submitted all the required documents and required payments August 10-30, 2017. (See paragraph 20 of the Declaration of Torres- Page 2 of Exhibit 5).

f.  Gomez submitted all the required documents and required payments on June 4th, 2018. (See paragraph 19 of the Unsworn Declaration of Gomez- Page 2 of Exhibit 6).

g.  Rodriguez submitted all the required documents and required payments on April 4th, May 4th, June 4th, October 4th and November 4th of 2018. (See paragraph 20 of the Declaration of Rodriguez- Page 3 of Exhibit 7).

h.  De Jesus submitted all the required documents and required payments on January 2nd, 2018. (See paragraph 20 of the Declaration of De Jesus- Page 3 of Exhibit 8).

i.  Nieves submitted all the required documents and required payments on June 4th, 2017. (See paragraph 19 of the Declaration of Nieves- Page 2 of Exhibit 9).

Plaintiffs received a letter from Tulp which informed the Plaintiffs that they were admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of

scientific and medical education. The letter indicated that Plaintiffs must pay no less than five thousand four hundred dollars ($5,400.00) per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00).

a. Peña received the letter on July 12th, 2017. (See paragraph 21 of the Declaration of Peña- Page 3 of Exhibit 1) (See page 16 of Exhibit 1).

b. Blasco received the letter on June 21st, 2017. (See paragraph 21 of the Declaration of Blasco- Page 3 of Exhibit 2). (See page 13 of Exhibit 2).

c. Prosper received the letter on July 19th, 2017. (See paragraph 21 of the Declaration of Prosper- Page 3 of Exhibit 3). (See pages 8 of Exhibit 2).

d. Rosado received the letter on June 4th, 2018. (See paragraph 21 of the Declaration of Rosado- Page 3 of Exhibit 4).

e. Torres received the letter on September 14th, 2017. (See paragraph 21 of the Declaration of Torres- Page 3 of Exhibit 5). (See Page 7 of Exhibit 5).

f. Gomez received the letter on June 4th, 2018. (See paragraph 20 of the Unsworn Declaration of Gomez- Page 2-3 of Exhibit 6). (See Page 5 of Exhibit 6).

g. Rodriguez received the letter on April 17th, 2018. (See paragraph 21 of the Declaration of Rodriguez- Page 3 of Exhibit 7).

h. De Jesus received the letter on January 8th, 2018. (See paragraph 21 of the Declaration of De Jesus- Page 3 of Exhibit 8). (See Page 10 of Exhibit 8).

i. Nieves received the letter on June 4th, 2018. (See paragraph 20 of the Declaration of Nieves- Page 2-3 of Exhibit 9).

The letter from Tulp which informed the Plaintiffs that they were admitted to the medical doctor program of USAT, informed the Plaintiffs that the mailing address of the USAT campus in PR is PO Box 364363, San Juan, PR, 00936-4363. (See page 16 of Exhibit 1). (See pages 8 of Exhibit 2). (See Page 7 of Exhibit 5). (See Page 5 of Exhibit 6). (See Page 10 of Exhibit 8).

The mailing address of PO Box 364363, San Juan, PR, 00936-4363 is the same mailing address used by Metropolitan Innovative Group, Inc. Metropolitan Innovative Group, Inc. is a corporation that was being operated by Ortiz, whom has been representing himself as an USAT Official. (See Exhibit 11).

Once the Plaintiffs were admitted by USAT, USAT Officials from both Puerto Rico and Colorado came to attend the White Coat Ceremony making the representation that the Plaintiffs were going to start a valid medical education in Puerto Rico and they were going to be able to apply for and take the United States Medical Licensing Examinations. (See Photographic Evidence of the Event- Exhibit 10) (See paragraph 22 of the Declaration of Peña – Page 3 Exhibit 1) (See paragraph 22 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraph 22 of the Declaration of Prosper – Page 3 Exhibit 3) (See paragraph 22 of the Declaration of Torres – Page 3 Exhibit 5) (See paragraph 21 of the Declaration of Gomez – Page 3 Exhibit 6) (See paragraph 22 of the Declaration of Rodriguez – Page 3 Exhibit 7) (See paragraph 22 of the Declaration of De Jesus – Page 3 Exhibit 8) (See paragraph 21 of the Declaration of Nieves – Page 3 Exhibit 9)

Once the Plaintiffs were admitted by USAT, the USAT officials oriented the Plaintiffs as to the manner of payments and the possibility of taking out a loan. Except for Peña and Rodriguez, the USAT officials assisted the Plaintiffs in submitting a loan application with SouthEast Bank ("SB") in order to pay USAT. On different dates, the Plaintiffs submitted a loan application to SB, which were accepted and they provided a personal loan to the Plaintiffs. However, SB disbursed

14

the personal loan and wire transferred said loan directly to the offices of USAT located in Colorado. The Plaintiffs did not receive the personal loan directly, but instead had to request USAT to deliver them or deduct certain sum amounts from the personal loan. The USAT officials located in Colorado were the ones that had full control of the SB loan money.

On June 18th-22nd, 2017, USAT officials assisted Blasco to submit a loan application with SB. Blasco's loan application was accepted and SB provided a personal loan for the sum amount of $60,000.00. Between September 1, 2017 and December 1, 2017, SB disbursed Blasco's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Blasco's admission until September of 2018, USAT deducted and received the sum amount of $28,695.00 for providing what Blasco understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-30 of the Declaration of Blasco- Page 3 of Exhibit 2). (See pages 20-50 of Exhibit 2).

On August 1st, 2017, USAT officials assisted Prosper to submit a loan application with SB. Prosper's loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between September 1, 2017 and December 1, 2017, SB disbursed Prosper's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Prosper's admission until September of 2018, USAT deducted and received the sum amount of $22,500.00 for providing what Prosper understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Prosper- Page 3 of Exhibit 3). (See pages 9-30 of Exhibit 3).

On June 4th and July 13th 2018, USAT officials assisted Rosado to submit a loan application

15

with SB. Rosado's loan application was accepted and SB provided a personal loan for the sum amount of $50,000.00. Between August 15th to August 25th of 2018, SB disbursed Rosado's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Rosado's admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Rosado understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 22-30 of the Declaration of Rosado- Page 3 of Exhibit 4).

On February 14th, 2018, USAT officials assisted Torres to submit a loan application with SB. Torres' loan application was accepted and SB provided a personal loan for the sum amount of $38,000.00. Between April 2nd to August 25th of 2018, SB disbursed Torres' personal loan by directed them directly to the offices of USAT in Colorado. From the date of Torres' admission until September of 2018, USAT deducted and received the sum amount of $23,300.00 for providing what Torres understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Torres- Page 3 of Exhibit 5). (See Pages 27-36 of Exhibit 5).

On June 4th-July 13th of 2018, USAT officials assisted Gomez to submit a loan application with SB. Gomez's loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between August 15th to August 25th of 2018, SB disbursed Gomez's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Gomez's admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Gomez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 22-30 of the Unsworn Declaration of Gomez- Page 3 of Exhibit 6). (See Pages 6-

16

8 of Exhibit 6).

On January 8th of 2018, USAT officials assisted De Jesus to submit a loan application with SB. De Jesus' loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between February 19th, 2018, SB disbursed De Jesus' personal loan by directed them directly to the offices of USAT in Colorado. From the date of De Jesus' admission until September of 2018, USAT deducted and received the sum amount of $26,000.00 for providing what De Jesus understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of De Jesus- Page 3 of Exhibit 8). (See Page 11-14, 26-31 of Exhibit 8).

From June 4th to July 13th of 2018, USAT officials assisted Nieves to submit a loan application with SB. Nieves' loan application was accepted and SB provided a personal loan for the sum amount of $46,237.50. Between August 15th to August 25th of 2018 of 2018, SB disbursed Nieves' personal loan by directed them directly to the offices of USAT in Colorado. From the date of Nieves' admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Nieves understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 22-30 of the Declaration of Nieves- Page 2-3 of Exhibit 9).

Peña and Rodriguez opted to pay USAT directly in exchange for providing medical education.

Peña paid the following: On July 11th of 2017, Peña paid the amount of $125 corresponding to USAT application fee. On August 2nd of 2017, Peña paid the amount of $6,000 corresponding to USAT One Time Matriculation Fee ($600), Tuition of Semester August 2017 to December 2017 ($4,900) and Anatomy Lab Fee ($500). On January 24th of 2018, Peña paid the amount of $4,000

corresponding to USAT Semester of January 2018 to May 2018. Then on April 3rd of 2018, Peña paid $400 corresponding to USAT Semester January 18 to May 2018. On May 16th of 2018, Peña paid the amount of $5,400 corresponding to USAT Summer classes, including $500 corresponding to a pending balance of the Semester January 2018 to May 2018. On September 25th of 2018, Peña paid the amount of $4,900 corresponding to USAT Semester August 2018 to December 2018. From the date of Peña's admission until September of 2018, USAT had received the sum amount of $25,725, for providing what Peña understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Peña- Pages 3 of Exhibit 1).

Rodriguez paid the following: On June 4th 2018, Rodriguez paid $125 for the application fee. On October 5th, 2018, Rodriguez paid $600 for enrollment fee and $1,400 for tuition. On August 14th, 2018, Rodriguez paid $1,800 for tuition. From the date of Rodriguez's admission until September of 2018, USAT had received the sum amount of $3,925, for providing what Rodriguez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-27 of the Declaration of Rodriguez- Page 3 of Exhibit 7).

When the Plaintiffs received USAT invoices asking for payments to be made or USAT Receipts to Confirm Payments received, all for providing what the Plaintiffs thought was a valid education of medicine in Puerto Rico, USAT invoices and USAT receipts requested that the payments be either mailed or wire transferred to USAT's Administration Office at Colorado. (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 83-88 of Exhibit 1) (See pages 58, 84 of Exhibit 2). (See pages 31 of Exhibit 3). (See pages 9,14, 17 of Exhibit 4). (See pages 25-26, 56-57 of Exhibit 5). (See pages 12-14, 19-20, 24 of Exhibit 7). (See pages 23, 42 of Exhibit 8).

C.    ECFMG's discovery of USAT's False Representations to ECFMG of USAT's

Enterprise, Conduct and Pattern of Racketeering Activity and the Plaintiffs' Injury

In July and August of 2018, ECFMG received information indicating that USAT was

offering classes in Miami, Florida. (See pages 155-160 of Exhibit 18).

On August 21, 2018, D. Scott Mealey, ECFMG's Manager of Medical Education

Resources & Operations Support, sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp,
> It has recently come to the attention of the Educational
> Commission for Foreign Medical Graduates (ECFMG) that USAT
> in Montserrat is operating a satellite (or branch) campus in Miami,
> Florida. In order for students and graduates of an international
> medical school, such as USAT, to have eligibility to apply for
> ECFMG Certification, ECFMG policy requires confirmation from
> the appropriate government authority in the branch campus country
> that the branch campus is authorized to operate as a medical school
> in such branch campus country. In light of this, ECFMG requests
> that USAT provide documentation from the United States
> Department of Education and/or the Florida Department of
> Education confirming that USAT's Miami branch campus is
> authorized to operate as a medical school in the United States. This
> documentation should cover the whole time period that the USAT
> Miami branch campus has been in operation. (See page 161 of
> Exhibit 18). (See page 282 line 9 to line 18, page 319 line 4 to page
> 320 line 11 of Exhibit 18).

The letter asked Dr. Tulp to provide the requested documentation "confirming that USAT's

Miami branch campus is authorized to operate as a medical school in the United States" by

September 3, 2018. (See page 161 of Exhibit 18).

ECFMG never received documentation showing that USAT is authorized to conduct

education in the United States. (See page 283 line 6 to line 9 of Exhibit 18).

Later on August 21, 2018, Dr. Tulp responded to Mr. Mealey via email, writing:

> Dear Mr. Mealey
> This is incorrect information. The Miami location is an
> information and testing site only, where a pre-usmle examination

[an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination. I hope this will clarify your concern. (See page 162 of Exhibit 18); (See page 323 line 16 to page 325 line 8 of Exhibit 18).

Between August 21, 2018 and September 14, 2018, ECFMG received information that USAT was providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida and Dallas, Texas. (See page 165 of Exhibit 18).

On September 14, 2018, Kara Corrado, ECFMG's Vice President for Operations, sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp:
> This is a follow-up to our August 21, 2018 letter in which ECFMG requested information from you about the University of Science, Arts & Technology (USAT) Faculty of Medicine's satellite (or branch) campus in Miami, FL. In response, you indicated, 'The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may [be] administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.' We thank you for your quick reply.'
> ECFMG has since received information that USAT is providing medical education lectures not only at its Miami site, but also at sites in Tamp, FL, and Dallas, TX.
> It is critical that ECFMG ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements. Therefore, ECFMG continues its review of this matter. This letter is to advise you that, as part of its review, ECFMG has reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT.
> Effective today, USAT students and graduates seeking services related to ECFMG Certification, including registration for USMLE examinations, release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status

20

> Reports to residency programs, must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG. Services will not be provided to individuals who do not complete the affidavit. ECFMG has provided instructions about this process directly to the students and graduates. JA0102; *see* JA0216 (Injunction Hr'g Tr. 41:5-13 ("We had had information that USAT was operating a campus in the United States in Florida. And Dr. Tulp had indicated that that was not correct. So we still were getting information contrary to that. So we decided to send the affidavit to the students to get information from the students about where they actually did their basic sciences.")). (See page 165 of Exhibit 18). (See page 279 line 5 to line 13 of Exhibit 18).

ECFMG sent an affidavit to USAT students and graduates seeking ECFMG services, asking them to certify under penalty of perjury and under penalty of a finding of irregular behavior (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses. (See page 182 of Exhibit 18).

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat. (See pages 237-238 of Exhibit 18).

There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students." (See page 256 line 7 to line 16 of Exhibit 18).

Between August and October of 2018, the Plaintiffs were studying and applying to take the United States Medical Licensing Examinations. After the Plaintiffs applied, ECFMG requested the Plaintiffs to submit information under penalty of perjury via an affidavit to describe the USAT medical school information and asking whether the Plaintiffs had physically attended the USAT medical classes at Montserrat. During those months, the Plaintiffs were informed by ECFMG that they were not eligible for the United States Medical Licensing Examination. (See paragraph 32-34 of the Declaration of Peña – Page 4 Exhibit 1) (See paragraphs 32-34 of the Declaration of

21

Blasco – Page 4 Exhibit 2) (See paragraphs 32-34 of the Declaration of Prosper – Page 4 Exhibit 3) (See paragraphs 32-34 of the Declaration of Torres – Pages 3-4 Exhibit 5)

On September of 2018, the Plaintiffs were notified by the USAT Officials of the ECFMG irregularities. On September 24th of 2018, the USAT Officials notified the Plaintiffs of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities. On September 26th of 2018, a telephone conference was held with Tulp and the attorneys of USAT to address the Plaintiffs and other students' concerns regarding the denial to take the United States Medical Licensing Examination. During that September 26th telephone conference, Tulp instructed the Plaintiffs and the other students to falsely inform ECFMG that the Plaintiffs and the other students took the USAT medical education at the Montserrat main campus. Tulp made the representation that ECFMG had been provided false information regarding USAT students and the USAT location of colleges of medicine. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9)

After this telephone conference, the Plaintiffs began to send numerous communications to the USAT Officials inquiring as to why the Plaintiffs could not take the United States Medical Licensing Examination. During September, October and November of 2018, the USAT Officials dodged and evaded questions by the Plaintiffs and other students regarding their lack of eligibility for the United States Medical Licensing Examination. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration

of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

During early November of 2018, the USAT Officials instructed the Plaintiffs and the other students to not send additional information to ECFMG outside the instructions of USAT. During early November of 2018, the USAT Officials instructed the Plaintiffs and the other students to send all information regarding ECFMG to Konyk, who would then refer the Plaintiffs and the other students to USAT's attorney. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado – Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9)

During September of 2018, Konyk, Tulp and Baldwin emailed the Plaintiffs and the other students that they will resolve our situation as to taking United States Medical Licensing Examination. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

On December 24th, 2018, USAT frivolously filed a lawsuit against ECFMG. This judicial proceeding was dismissed on the merits by the United States District Court for the Eastern District Court of Pennsylvania. The judgment was confirmed by the United States Court of Appeals for the Third Circuit. (See Exhibits 13-22).

In essence, USAT did not comply with the ECFMG requirements to operate the branch

23

campus in Puerto Rico because USAT was not auithorized to operate as a medical school in the Puerto Rico because it did not meet the medical education eligibility requirements to practice medicine in Puerto Rico. (See page 66 of Exhibit 18).

Unfortunately, the Plaintiffs' medical education from USAT was not accepted by other medical schools. All applications made for Schools of Medicine in the US by the Plaintiffs were rejected and they did not accept the USAT medical education. Therefore, the Plaintiffs had to start their medical education again because this situation. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

Based on the above, USAT received a the beforementioned sum amounts from the Plaintiffs via mail and wire fraud, without providing a valid medical education in Puerto Rico. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

USAT incurred in mail and wire fraud by receiving various beforementioned sum amounts from the Plaintiffs for providing an invalid medical education that resulted in the Plaintiffs' inability to take the United States Medical Licensing Examinations. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the

Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

All the USAT Officials participated in the false representation via mail and wire fraud when they represented that USAT would provide a valid medical education and the Plaintiffs would be able to take the United States Medical Licensing Examinations. USAT falsely represented, via mail and wire fraud, to the Plaintiffs and many other students throughout 2017 and 2018 that it would provide a valid medical education and the Plaintiffs would be able to take the United States Medical Licensing Examinations. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9)

However, the reality is that USAT did not provide to the Plaintiffs and the other students a valid medical education, which resulted in the Plaintiffs being unable to take the United States Medical Licensing Examinations. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

<b>LEGAL ARGUMENT</b>

**I.    THE COURT SHOULD DENY DEFENDANTS' DOCKET 55 MOTION FOR SUMMARY JUDGMENT AND DOCKET 73 MOTION TO DISMISS**

The Court should deny Defendants' Dockets 55 Motion for Summary Judgment and Docket 73 Motion to Dismiss because genuine issues of material facts exist. The evidence submitted in the record demonstrates to this Court that issues as to genuine material facts exist.

A district court evaluates the facts of a motion for summary judgment in the light most favorable to the nonmoving party. *Houlton Citizens' Coal. v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir. 1999). Summary judgment is warranted only if the record discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). "To be genuine, a factual dispute must be built on a solid foundation — a foundation constructed from materials of evidentiary quality." *Nieves-Romero v. United States*, 715 F.3d 375, 378 (1st Cir. 2013); *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative" will not defeat a summary judgment motion that complies with Local Rule 56 and Fed. R. Civ. P. 56. Rogan v. City of Boston, 267 F. 3d    24, 27(1st Cir. 2001).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Poulis-Minott v. Smit*h, 388 F.3d 354, 361 (1st Cir. 2004) (citing *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995)). "In marshaling the facts for this purpose we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however, that we ought to draw unreasonable inferences or credit bald assertions, empty conclusions, rank

conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA,* Inc., 486 F.3d 1, 8 (1st Cir. 2007).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). See also, *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments"); *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment"); *Perez-Trujillo v. Volvo Car Corp.,* 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); *Molina Quintero v. Caribe G.E. Power Breakers, Inc.,* 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005).

**THE EVIDENCE INFERS *PRIMA FACIE* RICO CIVIL CLAIM**

This court will note that the Plaintiffs evidence in the record may give reasonable inference to meet the *prima facie* case elements for a RICO Civil Claim.Specifically, the evidence submitted in the record may give reasonable inference to meet the *prima facie* case elements for RICO because the Plaintiffs have sufficient evidence to infer that USAT's actions: 1) caused an injury to the Plaintiffs, 2) based on the conduct, 3) of USAT as an enterprise, 4) through a pattern, and 5)

of racketeering activity.

### THE RICO STATUTE

First, 18 USCS sec. 1964 (c) states:

> (c)  Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [18 USCS § 1962]. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

Second, 18 USCS sec. 1962 states:

> **(b)**  It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> **(c)**  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> **(d)**  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

RICO's expansive reach provides a generous private right of action — successful plaintiffs are entitled to triple damages if they can prove they were "injured in [their] business or property by reason of a violation of section 1962." *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 527 (1st Cir. 2015). 18 U.S.C. § 1964(c).

### THE BURDEN OF PROOF OF A RICO CIVIL CLAIM

To prove a civil RICO claim, a plaintiff must prove: (1) injury caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity. *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005).

### 1. **Did the Plaintiffs suffer an injury?**

In this case, it can be shown that the Plaintiffs have shown an injury.

Plaintiffs paid USAT the certain sum amounts with the intent to receive valid medical education in Puerto Rico in order to take the United States Medical Licensing Examinations. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

On June 18th-22nd, 2017, USAT officials assisted Blasco to submit a loan application with SB for the sum amount of $60,000.00. Blasco paid USAT the sum amount of $28,695.00 for providing what Blasco understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-30 of the Declaration of Blasco- Page 3 of Exhibit 2). (See pages 20-50 of Exhibit 2).

On August 1st, 2017, USAT officials assisted Prosper to submit a loan application with SB for the sum amount of $45,000.00. Prosper paid USAT the sum amount of $22,500.00 for providing what Prosper understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Prosper- Page 3 of Exhibit 3). (See pages 9-30 of Exhibit 3).

On June 4th and July 13th 2018, USAT officials assisted Rosado to submit a loan application

with SB for the sum amount of $50,000.00. Rosado paid USAT the sum amount of $18,990.00 for providing what Rosado understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 22-30 of the Declaration of Rosado- Page 3 of Exhibit 4).

On February 14th, 2018, USAT officials assisted Torres to submit a loan application with SB for the sum amount of $38,000.00. Torres paid USAT the sum amount of $23,300.00 for providing what Torres understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Torres- Page 3 of Exhibit 5). (See Pages 27-36 of Exhibit 5).

On June 4th-July 13th of 2018, USAT officials assisted Gomez to submit a loan application with SB for the sum amount of $45,000.00. Gomez paid USAT the sum amount of $18,990.00 for providing what Gomez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 22-30 of the Unsworn Declaration of Gomez- Page 3 of Exhibit 6). (See Pages 6-8 of Exhibit 6).

On January 8th of 2018, USAT officials assisted De Jesus to submit a loan application with SB for the sum amount of $45,000.00. De Jesus paid USAT the sum amount of $26,000.00 for providing what De Jesus understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of De Jesus- Page 3 of Exhibit 8). (See Page 11-14, 26-31 of Exhibit 8).

From June 4th to July 13th of 2018, USAT officials assisted Nieves to submit a loan application with SB for the sum amount of $46,237.50. Nieves paid USAT the sum amount of $18,990.00 for providing what Nieves understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

(See paragraphs 22-30 of the Declaration of Nieves- Page 2-3 of Exhibit 9).

Peña paid USAT via mail or wire transfer the following: On July 11th of 2017, Peña paid the amount of $125 corresponding to USAT application fee. On August 2nd of 2017, Peña paid the amount of $6,000 corresponding to USAT One Time Matriculation Fee ($600), Tuition of Semester August 2017 to December 2017 ($4,900) and Anatomy Lab Fee ($500). On January 24th of 2018, Peña paid the amount of $4,000 corresponding to USAT Semester of January 2018 to May 2018. Then on April 3rd of 2018, Peña paid $400 corresponding to USAT Semester January 18 to May 2018. On May 16th of 2018, Peña paid the amount of $5,400 corresponding to USAT Summer classes, including $500 corresponding to a pending balance of the Semester January 2018 to May 2018. On September 25th of 2018, Peña paid the amount of $4,900 corresponding to USAT Semester August 2018 to December 2018. In summary, Peña paid USAT the sum amount of $25,725, for providing what Peña understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-31 of the Declaration of Peña- Pages 3 of Exhibit 1).

Rodriguez paid USAT via mail or wire transfer the following: On June 4th 2018, Rodriguez paid $125 for the application fee. On October 5th, 2018, Rodriguez paid $600 for enrollment fee and $1,400 for tuition. On August 14th, 2018, Rodriguez paid $1,800 for tuition. In summary, Rodriguez paid USAT the sum amount of $3,925, for providing what Rodriguez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 23-27 of the Declaration of Rodriguez- Page 3 of Exhibit 7).

Although Plaintiffs paid USAT for what they thought was a valid medical education, the Plaintiffs suffered an injury because the medical education provided by USAT was not accepted

31

by other medical schools. Additionally, USAT's invalid medical education resulted in the Plaintiffs inability to take the United States Medical Licensing Examination. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

### 2. Did USAT and the USAT officials engage in conduct as an enterprise?

With regards to conduct, RICO section 1962(c)'s "conduct" element requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). The United States Supreme Court interprets this element to mean that a defendant must "participate[] in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).

In this case, USAT and the USAT officials engaged in a conduct to participate of an enterprise because they were operating and managing the USAT Campus in Puerto Rico and the Administration office in Colorado.

USAT Officials represented themselves as officials USAT, the accredited college of medicine in Puerto Rico. The Plaintiffs were contacted by Ortiz, Cabrera, Frias and Bustillo, whom all represented represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

Plaintiffs received various materials regarding USAT, such as brochures, applications and enrollment agreements, which made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states. The Plaintiffs received all of these in different dates throughout 2017-2018. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

### 3. __Was USAT and the USAT Officials an enterprise?__

With regards to enterprise, a section 1962(c) RICO civil claim must include a properly alleged "enterprise." RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The United States Supreme Court interprets an "associated in fact enterprise" as one that has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).

In this case, based on the various materials and the representations, the Plaintiffs understood that Tulp is the President of USAT, Konyk is the Vice-President and Director of Administration and Finances of USAT, Baldwin is the Administrator of USAT, Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, Bustillo is the Registrar & Human Resource Supervisor and Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico. Based on these representations of the USAT officials, the Plaintiffs

understood that the USAT officials have been working at USAT for some time and that based on their representations, USAT's purpose was to provide the Plaintiffs an education in medicine if they applied to be a medical student. In consideration of USAT providing Plaintiffs the education of medicine, USAT would then request payments from the Plaintiffs. The USAT Officials made representations that once the payments would be received, USAT would provide the education in medicine and the Plaintiffs would be able to take the United States Medical Licensing Examinations. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs were induced and made the decision to apply to USAT, thinking that the Plaintiffs were going to receive a valid medical education in Puerto Rico and will be later be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 15-19 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 15-19 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 15-19 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 15-19 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 15-19 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 14-18 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 15-19 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 15-19 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 14-18 of the Declaration of Nieves – Pages 2 Exhibit 9).

This understanding of the Plaintiffs meet the United States Supreme Court interprets an "associated in fact enterprise" as one that has "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

**4. Did the USAT engage in a pattern of racketeering activity?**

34

To establish a "pattern," RICO requires a plaintiff to show that at least two acts of racketeering occurred within ten years of each other. 18 U.S.C. § 1961(5). The United States Supreme Court adds to the "pattern" element a requirement "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). This is known as the "continuity plus relationship" standard. *Efron v. Embassy Suites (P.R.), Inc*., 223 F.3d 12, 15 (1st Cir. 2000). A plaintiff can satisfy the continuity requirement in one of two ways: open continuity or closed continuity. *H.J*., 492 U.S. at 241.

Closed continuity involves "a series of related predicates extending over a substantial period of time." *Id*. at 242. If a plaintiff alleges only a few predicate acts, or acts that span only a few weeks or months, then closed continuity is not established. *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 529 (1st Cir. 2015). But if "the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that common sense compels a conclusion of continuity, closed-ended continuity should be found." Id. (quoting *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005)). For example, in *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446-47 (1st Cir. 1990), ninety-five alleged racketeering acts over a four and one-half year period were sufficient, without more, to find closed continuity.

Other cases, though, fall somewhere in the middle because the "duration and extensiveness of the alleged conduct does not easily resolve the issue." *Giuliano*, 399 F.3d 381, at 387 (1st Cir. 2005). In those squishier cases, we look to other "indicia of continuity," id.; for instance, whether the defendants were involved in multiple schemes, as opposed to "one scheme with a singular objective"; whether the scheme affected many people, or only a "closed group of targeted victims"; and whether the scheme had the potential to last indefinitely, instead of having a "finite nature."

35

Efron, 223 F.3d at 18-19. While these specific factors are ones we have considered in the past, at the end of the day, we just take a "natural and commonsense approach to RICO's pattern element," id. at 18 (citing *H.J. Inc.*, 492 U.S. at 237), to determine whether the specific fact pattern of the case before us suggests the "kind of broad or ongoing criminal behavior at which the RICO statute was aimed," *Efron*, 223 F.3d at 18.

Even in the absence of closed continuity, a plaintiff can still demonstrate a "pattern" by showing a "threat of" future criminal activity — that is, "a realistic prospect of continuity over an open-ended period yet to come." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991). "This approach necessitates a showing that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." Id. (quotations omitted).

RICO specifically enumerates what kinds of illegal acts count as "racketeering," and includes in that category of crimes extortion and mail and wire fraud. See 18 U.S.C. § 1961(1). RICO provides that "racketeering activity" includes violations of the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1)(B); see 18 U.S.C. §§ 1341, 1343.

With regards to mail fraud, 18 USC 1341 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier

according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing" 18 USC 1341

With regards to wire fraud, 18 USC 1343 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. 18 USC 1343

A plaintiff must "go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006) (quoting *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001)).

In this case, based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs understood that 1) USAT was accredited by the ECFMG so that USAT students may be able to take the United States Medical Licensing Examinations, and 2) being a student of USAT would allow the Plaintiffs to take the United States Medical Licensing Examinations. Additionally, the Plaintiffs understood that USAT operated satellite campuses or schools and had its main Administrative Office at other states in the United States, such as in Puerto Rico, Florida, Maryland, Texas, and Colorado. (See paragraphs 11-14 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 11-14 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 11-14 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 11-14 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 11-14 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 10-13 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 11-14 of the Declaration of Rodriguez – Pages 2 Exhibit 7)

(See paragraphs 11-14 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 10-13 of the Declaration of Nieves – Pages 2 Exhibit 9) (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 78 of Exhibit 1) (See pages 9, 12-14 of Exhibit 2). (See pages 7-8, 28 of Exhibit 3).

Plaintiffs paid USAT the certain sum amounts with the intent to receive valid medical education in Puerto Rico in order to take the United States Medical Licensing Examinations. (See the Declaration of Peña –Exhibit 1) (See the Declaration of Blasco –Exhibit 2) (See the Declaration of Prosper –Exhibit 3) (See the Declaration of Rosado –Exhibit 4) (See the Declaration of Torres –Exhibit 5) (See the Declaration of Gomez –Exhibit 6) (See the Declaration of Rodriguez – Pages 1-2 Exhibit 7) (See the Declaration of De Jesus –Exhibit 8) (See the Declaration of Nieves –Exhibit 9).

When the Plaintiffs received USAT invoices asking for payments to be made or USAT Receipts to Confirm Payments received, all for providing what the Plaintiffs thought was a valid education of medicine in Puerto Rico, USAT invoices and USAT receipts requested that the payments be either mailed or wire transferred to USAT's Administration Office at Colorado. (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 83-88 of Exhibit 1) (See pages 58, 84 of Exhibit 2). (See pages 31 of Exhibit 3). (See pages 9,14, 17 of Exhibit 4). (See pages 25-26, 56-57 of Exhibit 5). (See pages 12-14, 19-20, 24 of Exhibit 7). (See pages 23, 42 of Exhibit 8).

Unbeknownst to the Plaintiffs, ECFMG was unaware of USAT's representations. ECFMG only allows an international medical school that has a branch campus outside the country where its primary campus is purportedly located, if "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine

in the branch campus country." (See page 66 of Exhibit 18).

Between August 21, 2018 and September 14, 2018, ECFMG received information that USAT was providing medical education lectures in Puerto Rico, Miami, Tampa, Florida and Dallas, Texas. (See page 165 of Exhibit 18).

ECFMG never received documentation showing that USAT is authorized to conduct education in the United States. (See page 283 line 6 to line 9 of Exhibit 18).

Tulp responded to Mr. Mealey via email, writing:

> Dear Mr. Mealey
>
> This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
>
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination. I hope this will clarify your concern. (See page 162 of Exhibit 18); (See page 323 line 16 to page 325 line 8 of Exhibit 18).

This representation of Tulp to ECFMG directly contradicts the various materials and the representations made by the USAT Officials on behalf of USAT. All these representations demonstrated that Plaintiffs understood that USAT operated satellite campuses or schools and had its main Administrative Office at other states in the United States, such as in Puerto Rico, Florida, Maryland, Texas, and Colorado. With these satellite campuses or schools 1) USAT was accredited by the ECFMG so that USAT students may be able to take the United States Medical Licensing Examinations, and 2) being a student of USAT would allow the Plaintiffs to take the United States Medical Licensing Examinations. (See paragraphs 11-14 of the Declaration of Peña – Pages 2

Exhibit 1) (See paragraphs 11-14 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 11-14 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 11-14 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 11-14 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 10-13 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 11-14 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 11-14 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 10-13 of the Declaration of Nieves – Pages 2 Exhibit 9) (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 78 of Exhibit 1) (See pages 9, 12-14 of Exhibit 2). (See pages 7-8, 28 of Exhibit 3).

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat. (See pages 237-238 of Exhibit 18). There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students." (See page 256 line 7 to line 16 of Exhibit 18).

Based on the beforementioned facts, the Plaintiffs have proven the "pattern," because the Plaintiffs have shown more than 300 acts of racketeering occurred within ten years of each other. 18 U.S.C. § 1961(5). Tulp admitted that he had been doing this pattern of activity for approximately fifteen (15) years, whereas no students took basic science courses in Montserrat, and that Tulp did not prove that the United States campuses were authorized. (See Exhibit 12- Whereas in 2007 and 2012 it was found that Tulp did not have students at Montserrat).

The Plaintiffs' evidence proves closed continuity because USATs and the USAT Officials' actions have been "a series of related predicates extending over a substantial period of time.", that is fifteen years. *Id*. at 242.

Even if this Court does not find closed continuity, the Plaintiffs' prove open ended continuity because USAT and USAT's officials actions had an "indicia of continuity," id.; for instance, in that USAT and the USAT officials were involved in multiple schemes, as opposed to "one scheme with a singular objective", of continuing to recruit students to their United States campuses in Florida, Texas, Puerto Rico and Maryland, demonstrating that it would have affected many potential students, and USAT's scheme had the potential to last indefinitely, instead of having a "finite nature." *Efron*, 223 F.3d at 18-19. USAT and the USAT Officials had a "pattern" by showing a "threat of" future criminal activity — that is, "a realistic prospect of continuity over an open-ended period yet to come." *Feinstein v. Resolution Trust Corp*., 942 F.2d 34, 45 (1st Cir. 1991). "This approach necessitates a showing that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." Id. (quotations omitted).

Finally, Plaintiffs have provided sufficient evidence that meets the illegal acts of racketeering, that includes in that category of crimes extortion and mail and wire fraud. See 18 U.S.C. § 1961(1).18 U.S.C. § 1961(1)(B); see 18 U.S.C. §§ 1341, 1343.

When the Plaintiffs received USAT invoices asking for payments to be made or USAT Receipts to Confirm Payments received, all for providing what the Plaintiffs thought was a valid education of medicine in Puerto Rico, USAT invoices and USAT receipts requested that the payments be either mailed or wire transferred to USAT's Administration Office at Colorado. (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 83-88 of Exhibit 1) (See pages 58, 84 of Exhibit 2). (See pages 31 of Exhibit 3). (See pages 9,14, 17 of Exhibit 4). (See pages 25-26, 56-57 of Exhibit 5). (See pages 12-14, 19-20, 24 of Exhibit 7). (See pages 23, 42 of Exhibit 8).

**THE EVIDENCE INFERS *PRIMA FACIE* FRAUDULENT INDUCEMENT CLAIM**

41

This Court will note that the Plaintiffs evidence in the record may give reasonable inference to meet the *prima facie* case elements for Fraudulent Inducement.

Under Civil Law, the English language notion of "bad faith" is encapsulated by the concept of "*dolo*." *Canales v. Pan American*, 12 P.R. Offic. Trans. 411, 112 P.R.Dec. 329, 340 (1982). "Dolo entails a malicious intent to do harm, and is thus differentiated from mere negligence*." Event Producers, Inc. v. Tyser & Co.,* 854 F. Supp. 35, 38 (D.P.R. 1993) citing 19 Q.M. Scaevola, Codigo Civil, 617 (2d Ed.1957). Under Puerto Rico contract law, bad faith ("*dolo*") can be manifested in the performance of an obligation. 31 P.R.Laws Ann. Tit. 31 § 3018; *Marquez v. Torres Campos,* 11 P.R. Offic. Trans. 1085, 111 P.R.Dec. 854 (1982). A party acts with bad faith ("*dolo*") when it "knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation." *Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler,* 92 F.Supp.2d 8, 18 (D.P.R. 2000). It is the voluntary and conscious breach of a legal duty. *Marquez*, 111 P.R.Dec. at 865. Moreover, bad faith ("dolo") is never presumed. See *Miranda Soto v. Mena Ero*, 9 P.R. Offic. Trans. 628, 109 P.R.Dec. 473, 478 (1980); *Mayaguez Corp. v. Betancourt*, 2002 TSPR 23, 156 P.R.Dec. 234, 2002 Juris P.R. 29 (2002). Whoever asserts the claim of bad faith ("*dolo*") has the burden of proof and may prove it either directly or through circumstantial evidence, like any other fact. Id.

To succeed in its claim of bad faith ("dolo"), Plaintiffs have to prove that USAT and the USAT Officials knowingly and intentionally avoided compliance with their duties to provide authorized medical education.

Based on the same evidence concerning Tulp's false representations to ECFMG, stating that he did not operate any United States Medical schools, directly contradicts the various materials and the representations made by the USAT Officials on behalf of USAT. All these representations

42

demonstrated that Plaintiffs understood that USAT operated satellite campuses or schools and had its main Administrative Office at other states in the United States, such as in Puerto Rico, Florida, Maryland, Texas, and Colorado. With these satellite campuses or schools 1) USAT was accredited by the ECFMG so that USAT students may be able to take the United States Medical Licensing Examinations, and 2) being a student of USAT would allow the Plaintiffs to take the United States Medical Licensing Examinations. (See paragraphs 11-14 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 11-14 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 11-14 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 11-14 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 11-14 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 10-13 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 11-14 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 11-14 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 10-13 of the Declaration of Nieves – Pages 2 Exhibit 9) (See pages 8-22, 32, 39, 42, 47, 51, 53, 55, 61, 63, 65, 70, 74, 76, 78 of Exhibit 1) (See pages 9, 12-14 of Exhibit 2). (See pages 7-8, 28 of Exhibit 3).

Therefore, this evidence infers that USAT and the USAT Officials knowingly and intentionally avoided compliance with their duties to provide authorized medical education.

**THE EVIDENCE INFERS *PRIMA FACIE* BREACH OF CONTRACT**

This Court will note that the Plaintiffs evidence in the record may give reasonable inference to meet the *prima facie* case elements for breach of contract.

Under Puerto Rico law, the elements of a cause of action for breach of contract are 1) a valid contract and 2) a breach by one of the parties to the contract. *Torres*, 523 F. Supp. 2d at 152. Moreover, "[i]n order for an action for damages caused by nonperformance of contract to prosper, it is not sufficient that the plaintiff establish the nonfulfillment of the obligation, but it is also

necessary that he establish the real and positive existence of the damages caused." *Fagot Rodriguez v. Republic of Costa Rica,* 139 F. Supp. 2d 173, 197 (D.P.R. 2001) (citing Perez v. Sampedro, 86 P.R.R. 498, 86 P.R. Dec. 526 (1962)); see also *Computec Sys. Corp. v. Gen. Automation, Inc.,* 599 F. Supp. 819, 826-27 (D.P.R. 1984).

A valid contract was created when the Plaintiffs understood that the USAT officials have been working at USAT for some time and that based on their representations, USAT's purpose was to provide the Plaintiffs an education in medicine if they applied to be a medical student. In consideration of USAT providing Plaintiffs the education of medicine, USAT would then request payments from the Plaintiffs. The USAT Officials made representations that once the payments would be received, USAT would provide the education in medicine and the Plaintiffs would be able to take the United States Medical Licensing Examinations. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs were induced and made the decision to apply to USAT, thinking that the Plaintiffs were going to receive a valid medical education in Puerto Rico and will be later be able to apply for and take the United States Medical Licensing Examinations. (See paragraphs 15-19 of the Declaration of Peña – Pages 2 Exhibit 1) (See paragraphs 15-19 of the Declaration of Blasco – Pages 2 Exhibit 2) (See paragraphs 15-19 of the Declaration of Prosper – Pages 2 Exhibit 3) (See paragraphs 15-19 of the Declaration of Rosado – Pages 2 Exhibit 4) (See paragraphs 15-19 of the Declaration of Torres – Pages 2 Exhibit 5) (See paragraphs 14-18 of the Declaration of Gomez – Pages 2 Exhibit 6) (See paragraphs 15-19 of the Declaration of Rodriguez – Pages 2 Exhibit 7) (See paragraphs 15-19 of the Declaration of De Jesus – Pages 2 Exhibit 8) (See paragraphs 14-18 of the Declaration of Nieves – Pages 2 Exhibit 9).

The Defendants breached the contract when the Defendants did not provide valid medical education which affected the Plaintiffs ability to take the United States Medical Licensing Examinations.

## THE EVIDENCE INFERS *PRIMA FACIE* DAMAGES CLAIM

This Court will note that the Plaintiffs evidence in the record may give reasonable inference to meet the *prima facie* case elements for damages.

The existence of liability under Article 1802 requires (1) an act or omission caused through fault or negligence, (2) a damage suffered, and (3) a causal nexus between the damage and the other party's wrongful or negligent act. *Montalban v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 795-96, 1993 Juris P.R. No. 26, 1993 WL 840023 (1993); *Elba A.B.M. v. Univ. of P.R.*, 125 D.P.R. 294, 308, 1990 Juris P.R. No. 13, 1990 WL 658047 (1990).

Based on the evidence above, the Defendants acts or omissions to not get authorized at the United States to provide valid medical education, caused the injuries of the Plaintiffs for not being able to take the United States Medical Licensing Examinations.

## THE EVIDENCE INFERS *PRIMA FACIE* UNJUST ENRICHMENT CLAIM

In the alternative to all, if this Honorable Court finds no other claims stated above, this Court will note that the Plaintiffs evidence in the record may give reasonable inference to meet the *prima facie* case elements for unjust enrichment.

The five elements of an unjust enrichment claim are: "1) Occurrence of an enrichment. 2) A correlative loss (impoverishment). 3) A connection between the loss (impoverishment) and the enrichment. 4) Absence of cause to justify the enrichment. 5) Lack of a legal provision which precludes application of an enrichment without cause." *Ortiz Andujar v. E.L.A.,* 122 P.R. Dec. 817, 22 P.R. Offic. Trans. 774, 780 (1988) (Ortiz).

USAT enriched themselves by receiving payments from the Plaintiffs. The Plaintiffs paid for an invalid medical education, thus suffering a loss. USAT's acts to enrich itself are connected to Plaintiffs' loss. There is no absence of cause to justify this enrichment if the Plaintiffs were seeking a valid medical education.

## CONCLUSION

Based on the above, this Court should deny Co-Defendants Docket 55 Motion for Summary Judgment and Default Co-Defendants Docket 73 Motion to Dismiss, because the Plaintiffs proffer sufficient evidence of the material facts that support the causes of actions pursuant to the RICO, 18 USC sec. 1961, *et seq,* Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq.*; Material Breach of Contract pursuant to Articles 1206 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et seq.*; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

**WHEREFORE**, for all the foregoing reasons, it is a respectfully requested for this Honorable Court to 1) **DENY** Defendants Docket 55 Motion for Summary Judgment and Docket 73 Motion to Dismiss, 2) **SET** the date for trial in order for the jury to adjudicate the issues concerning the RICO claims and all other claims, and 3) **ORDER** any other relief it deems just.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on the 31st of March, 2021.

ATTORNEY FOR THE PLAINTIFFS

*S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com