**EXHIBIT 14**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

For the reasons set forth in the attached memorandum of law, Defendants Educational

Commission for Foreign Medical Graduates ("ECFMG") and Dr. William W. Pinsky, by and

through their undersigned counsel, move to dismiss Plaintiff's Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6) for failure to state any claim against ECFMG or Dr. Pinsky.


Dated: January 22, 2019                    Respectfully submitted,

                                           */s/ Elisa P. McEnroe*
                                           Elisa P. McEnroe, PA Bar No. 206143
                                           Matthew D. Klayman, PA Bar No. 319105
                                           MORGAN, LEWIS & BOCKIUS, LLP
                                           1701 Market Street
                                           Philadelphia, PA  19103-2921
                                           Telephone:    +1.215.963.5917
                                           Facsimile:    +1.215.963.5001
                                           elisa.mcenroe@morganlewis.com
                                           matthew.klayman@morganlewis.com

                                           *Attorneys for the Educational Commission for*
                                           *Foreign Medical Graduates and Dr. William*
                                           *W. Pinsky*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or U.S. mail:

> TOMMY SWATE
> 403 WILD PLUM
> HOUSTON, TX 77013
>
> WILLIAM C. REIL
> 1515 MARKET ST SUITE 1200
> PHILADELPHIA, PA 19102
> 215-564-1635
> Fax: 215-564-4292
> Email: billreillaw@gmail.com
>
> *Attorneys for Plaintiff*

DATED:  January 22, 2019                    */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) ) | |
| Plaintiff, | ) ) | Case No. 2:18-cv-05540-WB |
| v. | ) ) ) | Hon. Wendy Beetlestone |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES and DR. WILLIAM W. PINSKY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

January 22, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:     +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

## TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................................... 1

II.  Background ........................................................................................................... 1

    A.   The Educational Commission for Foreign Medical Graduates............................. 1

    B.   Dr. Orien L. Tulp and USAT ............................................................................... 2

    C.   ECFMG Investigates Allegations of Unauthorized USAT Operations in
    the United States. ................................................................................................. 2

    D.   ECFMG Modifies Its Sponsor Note for USAT in the World Directory of
    Medical Schools. .................................................................................................. 4

    E.   Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded.......... 5

    F.   Dr. Tulp Sues ECFMG and Moves for Injunctive Relief. .................................... 6

III. Legal Standard ...................................................................................................... 6

IV.  Argument .............................................................................................................. 7

    A.   Dr. Tulp Has Not Stated A Claim for Tortious Interference. ............................... 7

    B.   Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent
    Misrepresentation................................................................................................ 10

    C.   Dr. Tulp Has Not Stated A Claim for Abuse of Process. .................................... 13

    D.   Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for
    Deprivation of Due Process. ............................................................................... 15

    E.   Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky................................... 19

V.   Conclusion ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................6, 7

*Bahleda v. Hankison Corp.*,
323 A.2d 121 (Pa. Super. 1974)...............................................................................9

*Barnum v. Milbrook Care Ltd. Partnership*,
850 F. Supp. 1227 (S.D.N.Y. 1994).........................................................................7

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972)................................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6

*Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*,
574 F.3d 214 (3d Cir. 2009)..............................................................................18, 19

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*,
946 F. Supp. 2d 402 (E.D. Pa. 2013) .......................................................................8

*Brown v. Fed'n of State Med. Bds.*,
No. 82-7398, 1985 WL 1659 (N.D. Ill. May 31, 1985)..........................................17

*Byers v. Intuit, Inc.*,
No. 07-4753, 2009 WL 948651 (E.D. Pa. March 18, 2009).....................................7

*Elias v. ECFMG*,
No. C-82-08, 2010 WL 4340640 (N.J. Super. Nov. 4, 2010)....................15, 17, 18

*Fed. Deposit Ins. Corp. v. Mallen*,
486 U.S. 230 (1988)................................................................................................19

*Feingold v. State Farm Mutual Ins. Co.*,
No. 1573 EDA 2015, 2016 WL 4690712 (Pa. Super. June 24, 2016)....................14

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).............................................................................1, 6, 8

*Gibbs v. Ernst*,
647 A.2d 882 (Pa. 1994) ........................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

*Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*,
119 A.3d 1070 (Pa. Super. 2015)........................................................................11, 13

*Gonzaga Univ. v. Doe*,
536 U.S. 2731 (2002)....................................................................................................13

*Grayson v. Mayview State Hospital*,
293 F.3d 103 (3d Cir. 2002).........................................................................................20

*Joyce v. Erie Ins. Exchange*,
74 A.3d 157 (Pa. Super. 2013)......................................................................................12

*Klemow v. Time Inc.*,
352 A.2d 12 (Pa. 1976).................................................................................................12

*LeDonne v. Kessler*,
389 A.2d 1123 (Pa. Super. 1978)..................................................................................12

*Lerner v. Lerner*,
954 A.2d 1229 (Pa. Super. 2008)..................................................................................13

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
983 A.2d 652 (Pa. 2009) ..............................................................................................12

*Loftus v. SEPTA*,
843 F. Supp. 981 (E.D. Pa. 1994) .................................................................................16

*Lum v. Bank of America*,
361 F.3d 217 (3d Cir. 2004)............................................................................................7

*Matthews v. Eldridge*,
424 U.S. 319 (1976).................................................................................................18, 19

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
24 F.3d 519 (3d Cir. 1994).......................................................................................16, 17

*Neopart Transit, LLC v. CBM N.A. Inc.*,
314 F. Supp. 3d 628 (E.D. Pa. 2018) .............................................................................9

*Nicholas v. Pa. State Univ.*,
227 F.3d 133 (3d Cir. 2000)..........................................................................................15

*Opoku v. ECFMG*,
574 F. App'x 197 (3d Cir. 2014) .............................................................................15, 16

*Osei v. Temple Univ.*,
518 F. App'x. 86 (3d Cir. 2013) ...................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

*Phillips v. Selig*,
    959 A.2d 420 (Pa. Super. 2008)...................................................................................8, 9

*Plasko v. City of Pottsville*,
    852 F. Supp. 1258 (E.D. Pa. 1994) ...........................................................................7, 11, 13

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)..................................................................................................15, 20

*Rockman v. Aciukewicz*,
    No. 1434 MDA 2013, 2014 WL 10937492 (Pa. Super. Apr. 1, 2014)...................................14

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)...........................................................................................20

*Schmoltze v. County of Berks*,
    No. 99-cv-1069, 2000 WL 62600 (E.D. Pa. January 14, 2000)................................................14

*Shiner v. Moriarty*,
    706 A.2d 1228 (Pa. Super. 1998)...............................................................................13, 14

*Simply Snackin, Inc. v. S-L Distributors*,
    No. 17-cv-0381, 2017 WL 6039734 (M.D.Pa. Dec. 6, 2017) .....................................................9

*Staudinger v. ECFMG*,
    No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) .......................................................16

*Synthes, Inc. v. Emerge Med., Inc.*,
    No. 11-1566, 2014 WL 2616824 (E.D.Pa June 11, 2014)..........................................................9

*Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*,
    No. 13-3946, 2015 WL 667077 (E.D. Pa. Feb. 13, 2015) .......................................................15

*In re Thorne's Estate*,
    25 A.2d 811 (Pa. 1942) ...................................................................................................12

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*,
    20 A.3d 468 (Pa. 2011) ...............................................................................................9, 10

*West v. Atkins*,
    487 U.S. 42 (1988)...........................................................................................................20

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)............................................................................................7

**Statutes and Rules**

42 U.S.C. § 1983.................................................................................................................15, 20

## TABLE OF AUTHORITIES

**Page(s)**

Federal Education Records Protection Act, 20 U.S.C. § 1232g ....................................................13

Federal Rule of Civil Procedure 8 .............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1, 6, 7, 20

**Other Authorities**

U.S. Const. amend. XIV .....................................................................................................15, 18

Restatement (Second) of Torts § 772, cmt. b................................................................................10

5B Wright & Miller, Federal Practice and Procedure, § 1357 (3d 2004) ......................................7

## I.    INTRODUCTION

Plaintiff Dr. Orien L. Tulp sued the Educational Commission for Foreign Medical Graduates ("ECFMG")—a private non-profit organization that certifies whether international medical graduates ("IMGs") have met minimum requirements to be eligible for residency programs in the United States—and ECFMG's President and CEO Dr. William W. Pinsky. Through this lawsuit, Dr. Tulp is trying to force ECFMG to recognize the University of Science, Arts and Technology ("USAT") of Montserrat—a school owned and run by Dr. Tulp—as a legitimate *foreign* medical school, despite ECFMG's findings that USAT provided medical education at unauthorized satellite locations *in the United States* and that Dr. Tulp lied to ECFMG about those locations.

Though Dr. Tulp is apparently frustrated with the actions taken by ECFMG as a consequence of his own misconduct, that does not mean that he has stated any viable claim against ECFMG or Dr. Pinsky.  To the contrary, Dr. Tulp's Complaint is deficient as a matter of law and cannot be resuscitated through amendment; Dr. Tulp fails to allege facts supporting key elements of his claims and many of the allegations in the Complaint are plainly and directly contradicted by the documents attached to the Complaint as exhibits or referenced therein.

Because Dr. Tulp has failed to state any claim against ECFMG or Dr. Pinsky, this Court should dismiss Plaintiff's Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    BACKGROUND[1]

### A.    The Educational Commission for Foreign Medical Graduates

ECFMG is a private not-for-profit corporation that promotes quality health care for the

---

[1] In ruling on a motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

public by certifying physicians who received their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical education. Compl. ¶ 4. At times the Complaint mistakenly conflates ECFMG Certification with a license to practice medicine. *See id.* But ECFMG Certification is merely a necessary precursor to admission into many U.S. graduate medical education programs. ECFMG Certification signals to directors of accredited residency and fellowship programs that an IMG has satisfied certain minimum eligibility requirements; it is not a license for an IMG to practice medicine in the United States. *See id.* (recognizing that ECFMG Certification allows an IMG to "start the process of being licensed as a physician in the United States"). ECFMG is not an accrediting agency and does not purport to accredit international medical schools. *See* Compl. Ex. E.

Dr. Pinsky is the President and CEO of ECFMG.

**B.      Dr. Orien L. Tulp and USAT**

Dr. Orien L. Tulp is the President and CEO of the University of Science, Arts, and Technology ("USAT"), which is alleged to be located in Montserrat. Compl. ¶¶ 1, 10. It is alleged that he has an ownership interest in USAT. *Id.* ¶¶ 1, 10. USAT has its administrative office in the United States and allegedly offers courses to students in both Montserrat and the United States. *Id.* ¶ 1.

**C.      ECFMG Investigates Allegations of Unauthorized USAT Operations in the United States.**

On August 21, 2018, ECFMG advised Dr. Tulp of allegations that USAT was operating a

---

210–11 (3d Cir. 2009). Accordingly, the "Background" set forth herein assumes the truth of Plaintiff's "well-pleaded facts" and does not accept as true the allegations in the Complaint that constitute no more than "legal conclusions." Defendants' Opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction (ECF No. 12) sets forth a more detailed description of the factual background that does not assume the truth of Plaintiff's allegations.

campus in Miami and that ECFMG had no documentation from the proper U.S.-based authorities authorizing such a campus. *See* Compl. ¶ 12 & Ex. F. ECFMG advised Dr. Tulp that "in order for students and graduates of an international medical school, such as USAT to have eligibility to apply for ECFMG Certification," ECFMG policy requires confirmation that the appropriate government authority in the branch campus country authorized the operation of that medical school. Compl. Ex. F. Consistent with its policy, ECFMG requested that USAT "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States." *Id*.

> Later that day, Dr. Tulp responded to ECFMG via email:
>
> This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
>
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination.

*See* Compl. ¶ 13 & Ex. F.

On October 18, 2018, in light of additional information ECFMG received confirming USAT's unauthorized campuses in the United States, ECFMG advised Dr. Tulp that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements." *See* Compl. Ex. F. As part of the ongoing review, ECFMG informed Dr. Tulp that it had contacted USAT students and graduates to collect information on their attendance at USAT and that ECFMG "would require USAT students and graduates [seeking ECFMG services] to complete an affidavit,

3

attesting to the accuracy of the medical school information provided to ECFMG." *Id*. ECFMG provided the affidavit only to those USAT students and graduates who submitted a formal application to ECFMG to engage in the ECFMG Certification process. *See* Compl. Ex. D ("Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification . . . you must complete the attached affidavit . . . ."). The affidavit asked the USAT students and graduates to certify under penalty of perjury and under penalty of a finding of "irregular behavior" (a designation in ECFMG's policies for conduct subversive to ECFMG) (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses. *Id.* Many USAT students submitted affidavits to ECFMG indicating that they took USAT classes in the United States. Compl. Ex. F. ECFMG also received a copy of the 2018 USAT Lecture Conference Schedule showing lectures occurring in Florida and Texas, with graduation to occur in Miami, Florida. *See id*. There were no lectures or graduations scheduled for Montserrat. *Id.*

During the investigation into USAT's activities in the United States, ECFMG also discovered that Dr. Tulp had provided false information to ECFMG regarding the attendance dates of some USAT students in connection with their United States Medical Licensing Examination ("USMLE") applications. *Id*.

**D.    ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools.**

As ECFMG continued to receive additional information confirming that USAT was operating campuses in the United States without disclosing those campuses to ECFMG and without proof of authority from the proper authorities, ECFMG announced that students graduating from USAT as of January 1, 2019 or later would no longer be eligible for ECFMG Certification or to register for USMLE examinations as a step toward ECFMG Certification. *See* Compl. Ex.

4

B.  This information was published as a Sponsor Note in the World Directory of Medical Schools. *See id.*

### E.  Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded.

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he individually and in his capacity as an official at USAT engaged in irregular behavior by providing false information to ECFMG.  *See* Compl. Ex. F.  The letter advised Dr. Tulp that the ECFMG Medical Education Credentials Committee, a sub-committee of ECFMG's Board of Trustees, would hold a hearing to address the allegations of irregular behavior on November 28, 2018.  *Id.*  Before the hearing, Dr. Tulp and his counsel were sent the file that was to be reviewed by the Credentials Committee.  *See* Compl. Ex. E.  Dr. Tulp was also notified that he was permitted to make a personal appearance before the Credentials Committee and to submit additional documents for consideration.  Compl. Exs. E, F.

At the hearing, Dr. Tulp offered no testimony, no witnesses, and no evidence whatsoever.  Compl. ¶ 15.  Dr. Tulp admits that he presented no evidence at the hearing, but he does ***not*** allege that he was denied the opportunity to present evidence or argument to the Credentials Committee.  The hearing was adjourned shortly after it began, with Dr. Tulp having failed to provide any evidence explaining or clarifying why the evidence previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular behavior.

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior.  *See* Compl. Ex. A.  As a result, and consistent with its policies, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the

5

ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." *Id.*

### F. Dr. Tulp Sues ECFMG and Moves for Injunctive Relief.

On December 24, 2018, Dr. Tulp filed suit against ECFMG and Dr. Pinsky, alleging various tort claims and violations of due process. The crux of Plaintiff's Complaint is his allegation that ECFMG has attempted to shutdown USAT by sanctioning Dr. Tulp, refusing to allow USAT students to take necessary medical examinations, and refusing to release test scores for students who have already paid for such examinations. Compl. ¶ 10.

Dr. Tulp also filed a Motion for Preliminary and/or Permanent Injunction on January 2, 2019, and Defendants filed their Opposition on January 10, 2019. Presently, ECFMG moves to dismiss Dr. Tulp's case in its entirety with prejudice pursuant to Rule 12(b)(6).

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Rather, to survive a motion to dismiss, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). The Court thus must conduct a two-part analysis. *Fowler*, 578 F.3d at 210. The Court must first accept Plaintiff's factual allegations as true, and disregard legal conclusions or mere recitations of the elements. *Id.* at 210–11. The Court must then determine whether the facts alleged make out a "plausible" claim for relief. *Id.* at 211.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004); *see Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also* 5B Wright & Miller, Federal Practice and Procedure, § 1357 (3d 2004) (noting that courts have ignored a pleading's "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," or "sweeping legal conclusions cast in the form of factual allegations.").  Similarly, "[w]hen allegations in a complaint are contradicted by the materials appended to or referenced in the complaint, 'the document controls and the court need not accept as true the allegations of the complaint.'" *Byers v. Intuit, Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. March 18, 2009) (citing *Barnum v. Milbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)); *see also Plasko v. City of Pottsville*, 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable . . . where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves.").  The pleading standard of Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## IV.   ARGUMENT

Plaintiff's efforts to attack in federal court both the Credentials Committee's decision and ECFMG's policies—tailored to address the public interest in accurately assessing the qualifications of IMGs—fall far short of stating any viable claim against ECFMG or Dr. Pinsky. The Complaint consists largely of unsupported legal conclusions and exaggerated characterizations.  It should be dismissed in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.   Dr. Tulp Has Not Stated A Claim for Tortious Interference.

Dr. Tulp alleges that ECFMG tortiously interfered with "the educational contract between

the students of USAT, the University, and Dr. Tulp" by sending blank affidavits to USAT students as part of the ECFMG Certification process and by updating the ECFMG Sponsor Note for USAT in the World Directory of Medical Schools.  Compl. ¶¶ 10, 20, 22.  Dr. Tulp's tortious interference claim fails.

To prove tortious interference with an existing or prospective contract, a plaintiff must establish:

> (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)).  Dr. Tulp's tortious interference claim should be dismissed because he has not plausibly pleaded the existence of an existing or prospective contractual relationship and has not pleaded the absence of a justification or privilege.

*First*, Dr. Tulp has alleged no facts supporting the conclusory allegation that he has existing or prospective contractual relationships with USAT students.  Compl. ¶¶ 20, 22; *see also Fowler*, 578 F.3d at 210 (directing Courts to disregard formulaic recitation of the elements of a cause of action).  Because Dr. Tulp is the plaintiff in this lawsuit, he can only bring a claim for tortious interference based on a contract to which he is (or expects to be) a party.  *BP Envtl. Servs.*, 946 F. Supp. 2d at 412 ("To satisfy this first element, a plaintiff must show that it is reasonably probable that, but for the wrongful acts of the defendant, *the plaintiff* would have had a contractual relationship with a third party" (emphasis added)).  Other than Dr. Tulp's conclusory allegations regarding his contracts with *unidentified USAT students*, the Complaint contains no allegations or exhibits demonstrating the existence of any such relationship.  Moreover, it is implausible that a medical school President would enter into separate contractual relationships with its students,

when the students presumably contract with the school itself on issues such as tuition, fees, and services. A prospective contractual relationship is "something less than a contractual right, [yet] something more than mere hope." *Phillips*, 959 A.2d at 428. Dr. Tulp has not alleged that his purported contractual relationship with USAT students extends beyond a mere hope. *See Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 639 (E.D. Pa. 2018) (dismissing tortious interference claim when allegations on whether there was a prospective contractual relationship was based solely on historical relationship with clients and optimism that plaintiff could win prospective clients through bidding process).

**Second**, Dr. Tulp has not sufficiently alleged that ECFMG lacked a privilege or justification to act as it did, *i.e.*, that its actions "were improper under the circumstances presented." *Phillips*, 959 A.2d at 429. In determining whether alleged interference was "improper or not," consideration is given to numerous factors, including:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 (Pa. 2011). Dr. Tulp fails to allege that ECFMG had no privilege or justification and fails to address the factors enumerated above. This is fatal to his claim, as the absence of a privilege or justification "is an element of the cause of action which must be pleaded" by the plaintiff. *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 WL 2616824, at *19 (E.D.Pa June 11, 2014) (quoting *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122–23 (Pa. Super. 1974)); *see also Simply Snackin, Inc. v. S-L Distributors*, No. 17-cv-0381, 2017 WL 6039734, at *7 (M.D.Pa. Dec. 6, 2017) (dismissing claim because "merely stating that Defendant's conduct was 'without justification'" was insufficient). Indeed, the allegations and exhibits of the Complaint demonstrate that ECFMG's actions were ***proper*** in light

9

of ECFMG's well-supported findings that USAT has not proven it is a *bona fide* international medical school and that Dr. Tulp lied to ECFMG about USAT's operations in the United States. Compl. ¶¶ 10, 12; Compl. Exs. A, D, E, F.

*Third*, the information contained in the Sponsor Note about USAT and the affidavits sent to USAT students is true—Plaintiff has not alleged otherwise as discussed in Section IV.D—and "[t]here is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another." Restatement (Second) of Torts § 772, cmt. b. Indeed, "courts in a majority of states"—including Pennsylvania—"have held that an action for tortious interference may not be based on truthful statements." *Walnut St. Assocs.*, 20 A.3d at 479 & n.13. Because the Sponsor Note and the affidavits contain only *truthful* information (*e.g.*, that beginning on January 1, 2019, USAT students and graduates would not be eligible for ECFMG Certification), they cannot constitute tortious interference. *Id.*

### B.       Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent Misrepresentation.

Dr. Tulp alleges that ECFMG is liable for fraudulent or negligent misrepresentation because it supposedly (a) misrepresented itself as a government agency, and (b) placed misleading information about USAT in the World Directory of Medical Schools. Compl. ¶ 45. Plaintiff again fails to support these claims with sufficient factual allegations, requiring dismissal.

To prevail on a claim for fraudulent misrepresentation, Dr. Tulp must demonstrate:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (internal citations omitted). To prevail on a claim for negligent misrepresentation, he must prove "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known its falsity; (3) with an intent

10

to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015). Dr. Tulp has failed to state a claim against ECFMG for either fraudulent or negligent misrepresentation.

*First*, Dr. Tulp has failed to allege any actionable misrepresentation. This alone is a basis to dismiss his claims of fraudulent and negligent misrepresentation. Regarding his contention that ECFMG misrepresented itself as a government agency, none of the ECFMG correspondence Dr. Tulp attaches to his Complaint reflect any representation by ECFMG that it is a government agency. *See* Compl. Exs A, D, E, F; *see also Plasko v. City of Pottsville,* 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable . . . where no facts are alleged to support or *where the allegations are contradiccted by the facts themselves*.") (emphasis added). Moreover, the absence of a disclaimer in ECFMG's correspondence and affidavit that ECFMG is a private party—a disclaimer Plaintiff implausibly alleges was necessary—certainly does not constitute a representation that ECFMG *is* a governmental entity. Regarding the second alleged misrepresentation—the Sponsor Note published in the World Directory of Medical Schools—Dr. Tulp has not alleged how it was false. The Sponsor Note said only that: "As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations as a step toward ECFMG Certification," and that some USAT students and graduates would be subject to enhanced procedures in order to be eligible for ECFMG Certification related services. *See* Compl. Ex. B. There is nothing untrue or false about this statement.

11

***Second***, Dr. Tulp has not alleged that (a) he, personally, relied on ECFMG's alleged misrepresentations to his detriment, or (b) the alleged misrepresentations were made knowingly or with the intent to mislead him. As "[t]he successful maintenance of a cause of action for fraud includes, *inter alia*, a showing that **the plaintiff** acted in reliance **on the defendant's misrepresentations**," the Court should dismiss these misrepresentation claims. *Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) (emphasis added); *see Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009) (same). Even on a generous reading of the Complaint, the only reliance on alleged misrepresentations that is potentially alluded to is that of **USAT students or prospective students**, which is insufficient as a matter of law for **Dr. Tulp** to state a misrepresentation claim. *See Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 167 (Pa. Super. 2013) (dismissing misrepresentation claim for failure to "allege that the recipient of the misrepresentation was the individual or entity damaged as a proximate result of reasonable reliance upon the misrepresentation"). And even if Dr. Tulp could claim that he relied on any alleged misrepresentations, which he does not, his claims would still fail because such reliance could not possibly be reasonable or justifiable. *See, e.g.*, *LeDonne v. Kessler*, 389 A.2d 1123, 1129–30 (Pa. Super. 1978) (ruling that a plaintiff's reliance on a representation cannot be justifiable if the plaintiff had personal knowledge that the representation was false). It is not plausible that the President and CEO of a medical school, with vast exposure to the ECFMG Certification process, would believe any of the alleged misrepresentations—especially when correspondence shows he received information about ECFMG's background and status as a private, non-profit organization and was familiar with ECFMG's investigation of USAT. Compl. Ex. E; *see also In re Thorne's Estate*, 25 A.2d 811, 816 (Pa. 1942) ("No one is deceived by a declaration he disbelieves.").

12

***Third***, Dr. Tulp has not sufficiently alleged that ECFMG failed to make a reasonable investigation, as is necessary to establish liability under Dr. Tulp's negligent misrepresentation claim. *See Gongloff Contracting*, 119 A.3d at 1076. Dr. Tulp alleges ECFMG has "never requested any curricula, student records, or any documentation from USAT." Compl. ¶ 17. This is plainly contrary to the allegations of Dr. Tulp's own Complaint and contrary to the wealth of correspondence referenced by the Complaint. *See* Compl. ¶¶ 36, 45(d) & Exs A, D, E, F. Accordingly, the Court can disregard Dr. Tulp's contradictory allegation and dismiss his negligent misrepresentation claim. *See Plasko,* 852 F. Supp. at 1262.

### C. Dr. Tulp Has Not Stated A Claim for Abuse of Process.

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)). Dr. Tulp has not alleged any of these elements, so his abuse of process claim must also be dismissed.[2]

Dr. Tulp has not alleged that ECFMG used any legal process against him. At most, Dr. Tulp characterizes the blank affidavits sent to USAT students as part of their application for ECFMG Certification as "tantamount to a subpoena duces tecum without first having a legal proceeding." Compl. ¶ 25. As the text of the affidavit shows, the affidavit was intended for USAT students and graduates "seeking a service or services related to ECFMG certification." Compl.

---

[2] Dr. Tulp also alleges in conclusory fashion that ECFMG is liable for violating the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g. This baseless allegation fails for a number of reasons, including that the U.S. Supreme Court has held that private parties like Dr. Tulp may not sue to enforce that statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 29091 (2002). Defendants do not read Plaintiff's Complaint as alleging a claim based on FERPA, and if this Court finds otherwise (and finds that claim is somehow sufficient), Defendants would respectfully request an opportunity to present argument to the Court.

13

Ex. D.  Further, the affidavit made clear to USAT students and graduates seeking ECFMG Certification that "attesting to the accuracy of [their] medical school attendance . . .  will facilitate ECFMG's review" of their application.  *Id.*  Requesting that an applicant complete a notarized form as part of an application is not the use—let alone abuse—of legal process.  *See Rockman v. Aciukewicz*, No. 1434 MDA 2013, 2014 WL 10937492, at *6 (Pa. Super. Apr. 1, 2014) ("Neither correspondence nor an affidavit is legal process," especially when the affidavit is never used in litigation); *see also Schmoltze v. County of Berks*, No. 99-cv-1069, 2000 WL 62600, at *8 (E.D. Pa. January 14, 2000) ("[T]he word 'process' as used in the tort of abuse of process encompasses the entire range of procedures incident to the ***litigation*** process.") (emphasis added) (citing *Shiner*, 706 A.2d at 1237).

Furthermore, Dr. Tulp has not alleged how ECFMG's use of the affidavit (1) differs from the purpose for which it was designed, or (2) or has caused him harm.  It is implausible that ECFMG's primary purpose in sending out these affidavits was anything other than to make sure it had adequate, truthful information to certify foreign medical school graduates for study in the United States—a purpose Dr. Tulp acknowledges.  *See* Compl. ¶ 2.  Determining the "accuracy of [their] medical school attendance" was necessary to help ECFMG ascertain whether certification of these applicants would be proper, especially in light of the false information Dr. Tulp was providing to ECFMG about USAT's locations and the attendance dates of USAT students and graduates.  Compl. Ex. A, Ex. D.  Dr. Tulp has not sufficiently alleged that the use of this affidavit deviated from this intended purpose.  *See Feingold v. State Farm Mutual Ins. Co.*, No. 1573 EDA 2015, 2016 WL 4690712, at *6 (Pa. Super. June 24, 2016) (affirming dismissal of abuse of process claim despite plaintiff's allegations that pleadings and motions were filed to "harass and vex" plaintiff when there was no explanation on how the challenged documents "were used to

14

accomplish anything they were not designed for").  Finally, although he contends that the affidavits were distributed "to intimidate USAT students," "coerce information from students," and "gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp," such contentions do not identify any actionable harm.  Compl. ¶¶ 10, 45(b), 45(d).

### D.     Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for Deprivation of Due Process.

In Counts Two and Four of the Complaint, Dr. Tulp identifies a list of alleged procedural deficiencies in how ECFMG conducted Dr. Tulp's irregular behavior hearing and alleges that ECFMG violated Dr. Tulp's and USAT students' due process rights.[3]  *See* Compl. ¶¶ 35, 36, 41, 58.  Dr. Tulp has not, however, stated a viable § 1983 claim against Defendants for three reasons.

*First*, ECFMG is not a state actor, and the due process requirements of the Fourteenth Amendment apply only to state actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).  Multiple courts, including the Third Circuit and Courts in this District have previously held that ***ECFMG is not a state actor*** and that its functions ***do not constitute state action***.  *See, e.g.*, *Opoku v. ECFMG*, 574 F. App'x 197, 201 (3d Cir. 2014) ("Grese and ECFMG, a private not-for-profit organization, are private parties and not state actors."); *Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim."); *Elias v. ECFMG*, No. C-82-08, 2010 WL 4340640, at *1 (N.J. Super. Nov. 4, 2010) (finding insufficient evidence "to

---

[3] Dr. Tulp refers in passing, without any explanation, to an alleged violation of "substantive due process."  Compl. ¶ 58.  He has not identified how ECFMG's actions implicate a fundamental right subject to this protection.  *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) ("Whether a certain property interest [is worthy of protection under the substantive due process clause] . . .  depends on whether that interest is 'fundamental' under the United States Constitution.").  Absent some effect on a fundamental right, the action at issue "is entirely outside the ambit of substantive process."  *Id.* at 142.

15

establish that the ECFMG is a state actor"); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing § 1983 claims because ECFMG is not a state actor and does not act under the color of state law).

As ECFMG is a private actor, based on this overwhelming authority, the next question is whether ECFMG's actions can be viewed as state actions because they are "fairly attributable" to the state. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994). The U.S. Supreme Court has identified only three possible ways for private action to be attributable to the state and therefore constitute state action: (1) "if the private party acted with the help of or in concert with state officials," (2) "when the private party has been 'delegated a power traditionally exclusively reserved to the State,'" or (3) "if 'there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may be fairly treated as the state itself.'" *Id.* (internal citations omitted).

ECFMG's actions do not meet any of these tests, despite Dr. Tulp's conclusory allegations that they do. *See* Compl. ¶¶ 4–7. ECFMG did not act or conspire with a state actor to carry out its actions. *See Opoku*, 74 F. App'x at 201 ("Liability would only attach if a private party conspired with a state actor" and vague allegations of conspiracy between ECFMG and a state actor are not sufficient); *Loftus v. SEPTA*, 843 F. Supp. 981, 983–84 (E.D. Pa. 1994). Nor were ECFMG's actions delegations of "a power traditionally exclusively reserved to the State." *McKeesport Hosp.*, 24 F.3d 519 at 525. Rather, its actions were limited sanctions tied to ECFMG's role in assessing the qualifications of IMGs and certifying their readiness to enter the U.S. graduate medical education system, which is not a power exclusive to the state. *See Staudinger*, 1993 WL 138954, at *4; *see also McKeesport Hosp.*, 24 F.3d at 525 ("The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state action."). And

16

despite Dr. Tulp's contention that there is a sufficiently close nexus between ECFMG's actions and state medical boards to establish state action, this is not the case. "ECFMG is not a subdivision of or affiliated with any governmental entity, its Board of Trustees receives no funding from any governmental entity . . . and it sets its own standards for an [IMG]'s eligibility to take the United States Medical Licensing Examination (USMLE)." *Elias*, 2010 WL 4340640, at *1; *see McKeesport Hosp.*, 24 F.3d at 525 ("The ACGME is self-governed and financed, and its standards are independently set; the state Board simply recognizes and relies upon its expertise."). That state medical boards rely on ECFMG Certifications does not render ECFMG a state actor. *See Brown v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) (holding that ECFMG is "not [a] state agenc[y]" and "do[es] not participate in a state activity" because "[t]he actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests" and "[t]he state boards are at most [ECFMG's] consumers").[4]

*Second*, even if ECFMG's actions constituted state actions, which they do not, Dr. Tulp's due process claims also fail because he has not identified a sufficient liberty or property interest of which he has been deprived. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). ECFMG's

---

[4] Dr. Tulp's suggestion that ECFMG is "estopped from denying that it is a government or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect [sic] was placed on the affidavits sent to thousands of USAT students" is baseless. Compl. ¶¶ 37–38. ECFMG sent affidavits only to those USAT students and graduates who were "seeking a service or services related to ECFMG Certification." Compl. Ex. D. Such students are familiar with the role ECFMG certification plays for IMGs seeking to enter U.S. graduate medical education and have had prior access to ECFMG's resources. ECFMG never presented itself as a government or quasi-governmental entity.

decision not to accept documents signed by Dr. Tulp, especially given Dr. Tulp's history of falsehoods, does not implicate any liberty or property concerns which would trigger due process protections. Nor do USAT students have any property right to ECFMG Certification. *See Elias*, 2010 WL 4340640, at *3 (applicant for ECFMG certification did not have a right to a medical license as "a protected right in a professional license comes into existence only after a license has been obtained").

*Third*, even if ECFMG actions were state actions and did implicate interests protected by the Fourteenth Amendment—again, they do not—Dr. Tulp would still not succeed on his due process claims because he was afforded due process, as is clear from the allegations of Dr. Tulp's Complaint and the materials attached thereto. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citations omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

Dr. Tulp received prior notification of the allegations against him and concerns about USAT. *See* Compl. Exs. E, F. Dr. Tulp and USAT were both invited to submit whatever explanation or evidence they thought were necessary to address ECFMG's concerns regarding the irregularities concerning USAT's operations in the United States and Dr. Tulp's misrepresentations regarding same. *See id.* Dr. Tulp also received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior, was provided with copies of ECFMG's policies and procedures, and was sent a copy of the materials to be reviewed by the Credentials Committee in assessing the allegations against him. *See* Compl. Exs. A, E, F. This constitutes ample notice of the accusations made against him and how they would be resolved. *See, e.g.*, *Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 221–

22 (3d Cir. 2009) (holding that a discharged employee was given "constitutionally sufficient notice of the reasons" his dismissal was sought when he was provided with multiple disciplinary memos which described the bad conduct and what body would decide whether dismissal was appropriate).

Moreover, Dr. Tulp had an opportunity to appear personally before the Credentials Committee with an attorney of his choosing. *See* Compl. Exs. A, E, & F; *see also Matthews*, 424 U.S. at 334, 344–346 (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place). And even if Dr. Tulp had not been given a hearing, there is no constitutional right to present oral responses at a formal hearing. *See Biliski*, 574 at 222 ("There is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247–48 (1988))).

Process was afforded to Dr. Tulp. For this reason, and because Dr. Tulp has not identified a valid liberty or property interest or alleged facts establishing that ECFMG is a state actor, dismissal of Dr. Tulp's due process claims is warranted. *See also Osei v. Temple Univ.*, 518 F. App'x 86, 88–89 (3d Cir. 2013) (affirming dismissal of due process claim when allegations showed Plaintiff was given "notice of the charges," "an explanation of the evidence" against him, and "an opportunity to present his side of the story.")

### E.      Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky.

Dr. Tulp's sole claim against Dr. Pinsky is for a due process violation. For the reasons set forth above, Dr. Tulp has failed to state a due process claim against either Defendant, and Count 4 should be dismissed. With respect to Dr. Pinsky, Dr. Tulp's allegations are especially deficient and dismissal is particularly warranted. Dr. Tulp has made no allegations that Dr. Pinsky is a state actor, that Dr. Pinsky acted under color of state law, or that Dr. Pinsky's actions constituted state

action as is required for § 1983 liability based on a violation of due process. *See West v. Atkins*, 487 U.S. 42, 48–49 (1988); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

Moreover, Dr. Tulp's own description of Dr. Pinsky's actions demonstrate that there is no viable claim against Dr. Pinsky. Dr. Tulp alleges that Dr. Pinsky sent a letter on December 14, 2018 in which Dr. Pinsky communicated the determination of the *Credentials Committee* that Dr. Tulp "was banned from submitting any documents or having any dealings with the ECFMG on behalf of behalf of USAT or otherwise." Compl. ¶¶ 51–52. There are *no* allegations that the letter announcing the Credentials Committee's decision is in itself a due process violation. To the extent that Plaintiff alleges that "Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG," this is not sufficient to show § 1983 liability. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131–34 (3d Cir. 2010) (affirming dismissal of § 1983 claim as allegation that an individual developed and authorized actions taken against plaintiff without more was a conclusory assertion that was "not entitled to the assumption of truth"). Accordingly, given the limited scope of Dr. Pinsky's involvement as alleged in the Complaint, even if some claim remains against ECFMG, Plaintiff has failed to show that he is entitled to relief from Dr. Pinsky, and dismissal of this sole claim against Dr. Pinsky is appropriate.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dr. Tulp's Complaint does not state any claim upon which relief can be granted. Moreover, because the defects in the Complaint cannot be cured by amendment, Defendants ask that the dismissal be with prejudice. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

20

Dated: January 22, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:       +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates and Dr. William
W. Pinsky*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## [PROPOSED] ORDER

**AND NOW**, this ___ day of _____ 2019, upon consideration of Defendants' Motion to

Dismiss Plaintiff's Complaint, **IT IS HEREBY ORDERED** that the Motion to Dismiss Plaintiff's

Complaint is **GRANTED**. The Complaint is **DISMISSED with prejudice**.

BY THE COURT:

_____

Beetlestone, J.