**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SUJEIL PEÑA-TORRES; JOSE E. BLASCO-JUSINO; LUCERO RODRIGUEZ-FERNANDEZ; LISA M. TORRES-COLON; JOFFRE E. GOMEZ-FRONTERA; ZABDIEL A. NIEVES-RIVERA; ENNY DE JESUS-UREÑA; LORAIMA M. ROSADO VILLAFAÑE; PAOLA M. PROSPER-CRESPO; WENDOLY M. VAZQUEZ OLIVERAS | CIVIL NO. 19-1707 |
| **PLAINTIFFS** | RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); |
| **VS.** | FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES |
| UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ORIEN L. TULP, his spouse JANE DOE and the conjugal partnership between them; CARLA M. KONYK, her spouse JOHN DOE and the conjugal partnership between them; MANUEL JOSE ORTIZ-BUSTILLO, his spouse JANE DOE and the conjugal partnership between them; YANIRE BUSTILLO, her spouse JOHN DOE and the conjugal partnership between them; DANIELA CABRERA-PUJADAS, her spouse JOHN DOE and the conjugal partnership between them; KAREN BALDWIN, her spouse JOHN DOE and the conjugal partnership between them; INSURANCE COMPANY XYZ; COMPANY ABC; JOHN & JANE DOE. | TRIAL BY JURY DEMANDED |
| **DEFENDANTS** | |

**THIRD AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW,** Sujeil Peña-Torres, Jose E. Blasco-Jusino, Lucero Rodriguez-Fernandez, Lisa M. Torres-Colon, Joffre E. Gomez-Frontera, Zabdiel A. Nieves-Rivera Enny de Jesus-Ureña, Loraima M. Rosado-Villafañe, Paola M. Prosper-Crespo and Wendoly M. Vazquez Oliveras (jointly referred as "Plaintiffs"), through the undersigned attorneys and very respectfully states, alleges and prays as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs are part of various medical students whom applied and studied at the Puerto Rico Branch ("PR Branch") of the University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT").

2.      USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States. The joint owners of USAT are Orien L. Tulp ("Tulp") and Carla M. Konyk ("Konyk"). The Directors and Officers of USAT were composed by Tulp, Konyk, Manuel José Ortiz-Bustillo ("Ortiz"), Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera") and Karen Baldwin ("Baldwin") (jointly referred as "USAT Officers"), amongst other unknown persons[1].

3.      The USAT and the USAT Officers (jointly "Defendants") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961, *et seq.* because

1) Defendants caused injuries to the Plaintiffs and various other medical students ("RICO victims") because they received money from RICO victims, including Plaintiffs, whom would incur in loans from banking institutions ("Banks") that would be given directly to the Defendants based on the false representation that

---

[1] The Plaintiffs reserve the right to amend the complaint if any new identification evidence is discovered during the course of the discovery of the case at bar.

2

they could provide medical school education to any persons within the United States when in fact the couldn't,

2) the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from United States Regulatory Agencies ("Regulatory Agencies"),

3) USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified,

4) the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed

3

or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education,

5) during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the Educational Commission for Foreign Medical Graduates ("ECFMG") because USAT is not considered a licensed and certified medical school in the United States.

4. These patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damages.

5. Plaintiffs file this civil action against the Defendants for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961 *et seq.* Additionally, Plaintiffs file this civil action against the Defendants for Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq.*; Material Breach of Contract pursuant to Articles 1206 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et*

*seq.*; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142[2].

6.     Plaintiffs seek compensatory, punitive, double, treble and liquidated damages and equitable and injunctive relief for Defendants' actions. In addition, Plaintiffs reserves the right for any other specific remedies that restore them to the position that they would have held in the absence of Defendants' actions

## JURISDICTION AND VENUE

7.     The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to RICO, 18 USC sec. 1961 *et seq.*

8.     Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico law claims arising from the same nucleus of operative facts. Specifically, Plaintiffs file this civil action against the Defendants for Fraudulent Inducement ("*Dolo*") pursuant to Articles 1217 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3404 *et seq.*; Material Breach of Contract pursuant to Articles 1206 *et seq.* of Puerto Rico's Civil Code, 31 LPRA secs. 3371 *et seq.*; Unjust Enrichment and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142. Plaintiff reserves the right to amend/modify the Complaint based on further facts to be discovered.

9.     Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district.

## PARTIES

---

[2] Plaintiffs' reserve the right to amend the complaint if any new identification evidence is discovered during the course of the discovery of the case at bar.

5

10.     The Plaintiffs were student applicants and students at the USAT PR Branch. Plaintiffs are all U.S. citizens and residents of the Commonwealth of Puerto Rico. The Plaintiffs are as follows:

1) Sujeil Peña-Torres ("Peña") is of legal age, student, single, domiciled and resident of San Juan, Puerto Rico. Peña's address is the following: Urb. Venus Gardens Calle Peliux 771, San Juan PR 00926.

2) Jose E. Blasco-Jusino ("Blasco") is of legal age, student, single, domiciled and resident of Ponce, Puerto Rico. Blasco's address is the following: 1369 Urb. Mercedita Calle Bonita, Ponce PR 00717.

3) Lucero Rodriguez-Fernández ("Rodriguez") is of legal age, student, single, domiciled and resident of Toa Baja, Puerto Rico. Rodriguez' address is the following: Con.Paseo Abril, Apt. 1205, Toa Baja, PR 00949.

4) Lisa M. Torres-Colon ("Torres") is of legal age, student, single, domiciled and resident of Villalba, Puerto Rico. Torres' address is the following: Urb. La Vega Calle C #85, Villalba, PR 00766.

5) Joffre E. Gómez-Frontera ("Gomez") is of legal age, student, single, domiciled and resident of Maricao, Puerto Rico. Gomez' address is the following: Bo. Indiera Alta, RR01 Km 31.1, Mailbox 4620, Maricao, PR 00606.

6) Zabdiel A. Nieves-Rivera ("Nieves") is of legal age, student, single, domiciled and resident of San German, Puerto Rico. Nieves' address is the following: #79 Calle Paz, H2 Urb. Paseos del Valle, San German, PR 00683-9211.

7) Enny de Jesús-Ureña ("de Jesus") is of legal age, student, single, domiciled and resident of Bayamon, Puerto Rico. de Jesus' address is the following: Calle Julia AN1, Urb. Villa Rica, Bayamon, PR 00959.

8) Loraima M. Rosado-Villafañe ("Rosado") is of legal age, student, single, domiciled and resident of Jayuya, Puerto Rico. Rosado's address is the following: Carr. 144, Km. 1 HM0, Bo. Rio Grande, Jayuya, PR 00664.

9) Paola M. Prosper-Crespo ("Prosper") is of legal age, student, single, domiciled and resident of Mayaguez, Puerto Rico. Prosper's address is the following: Paraiso de Mayaguez, Calle Serenidad 193, Mayaguez, PR 00680.

10) Wendoly M. Vazquez Oliveras ("Vazquez") is of legal age, student, single, domiciled and resident of Santa Isabel, Puerto Rico. Vazquez's address is the following: Urb. Pradera del Sur 803, Calle Caobo, Santa Isabel, PR 00757.

11. The Plaintiffs are part of a larger class of and are suing as representative of the other RICO Victims whom all been defrauded by the Defendants. The Plaintiffs' causes of actions can be joined by all other members that are considered RICO Victims because: 1) Plaintiffs' common questions of law or fact are the same as all other RICO Victims, Plaintiffs' claims or defenses are typical of the claims or defenses of the RICO Victims, and the Plaintiffs will fairly and adequately protect the interests of the RICO Victims[3].

12. According to information and belief, Defendant University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT") are the names of various legal entities or associations created and owned jointly by Tulp and Konyk.

---

[3] Plaintiffs' attorney has been recently contacted by other RICO Victims and intends to file a motion pursuant to Rule 23 of the Federal Rules of Civil Procedure.

All these entities are private legal entities that are wholly owned and managed by both Tulp and Konyk for the purposes of providing medical education. USAT is an alter ego of Tulp and Konyk, whom both are personally liable for any and all responsibilities incurred by USAT. The different addresses held out by these different entities are the following: 1) PO Box 506, South Mayfield Estate Drive, Olveston, Montserrat, British West Indies, 2) 3442 Ash St., Denver, CO, 80207, 3) 4288 Youngfield St., Wheat Ridge, CO 80033, 4) PO Box 364 364363, San Juan, PR 00936-4363, 5) 598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

13.     According to information and belief, Defendant Tulp is the joint owner, Professor and President of USAT. His current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Tulp has a spouse, Jane Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

14.     According to information and belief, Defendant Konyk is the joint owner, Vice President and Director of Administration and Finances of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Konyk has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

15.     According to information and belief, Defendant Ortiz is Director and Dean of the PR Branch of USAT. His current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Ortiz has a spouse, Jane Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

8

16.     According to information and belief, Defendant Bustillo is the Registrar and Human Resources Supervisor of the PR Branch of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Bustillo has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

17.     According to information and belief, Defendant Cabrera is the Clinical Coordinator- Student Affairs of the PR Branch of USAT. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Cabrera has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

18.     According to information and belief, Defendant Baldwin is an Administrator of USAT located in Colorado. Her current address is unknown. On information and belief, the Plaintiffs incorporate by reference the five addresses used by USAT. Baldwin has a spouse, John Doe, and they have a conjugal partnership between them. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

19.     Co-Defendant, Insurance Company XYZ ("Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants', specifically to cover said contractual claims. Their current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

20.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' acts or omissions of which Plaintiff

9

is complaining. Their Current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

21. Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' acts or omissions of which Plaintiff is complaining. Their Current address is unknown. Plaintiffs reserve the right to amend the Complaint once more information is discovered.

**THE FACTS**

I.     THE EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, ITS POLICIES AND PROCEDURES

22. Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization based in Philadelphia, Pennsylvania. ECFMG promotes quality health care for the public by certifying international medical graduates ("IMG") for entry into U.S. graduate medical education, and by participating in the evaluation and certification of other physicians and health care professionals nationally and internationally. In other words, ECFMG was established to screen IMG who were coming to the United States seeking residency programs and turns into graduate medical education.

23. ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for entry into graduate medical education and healthcare systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, (iii) verifying credentials and providing other services to health care professionals worldwide, and (iv) provide international access to testing and evaluation programs.

10

24.     To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school.

25.     An "international medical school" is "an education facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country."

26.     If an international medical school has a branch campus outside the country where its primary campus is purportedly located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."

27.     Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate.

28.     This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school.

29.     ECFMG's Policies and Procedures Regarding Irregular Behavior define "irregular behavior" to include: all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International

11

Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG. Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG.

30.     ECFMG's Policies and Procedures Regarding Irregular Behavior provide: "Examples of irregular behavior include, but are not limited to, submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual; failing to comply with United States Medical Licensing Examination or ECFMG policies, procedures, and/or rules; falsification of information on applications, submissions, or other materials to ECFMG; taking an examination when not eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals."

31.     Irregular behavior charges can be brought against any individuals who are involved in the process of application for ECFMG certification or "any other person that would or could subvert the examination, certification or other processes programs or services of ECFMG," including medical school officials.

32.     ECFMG's Policies and Procedures Regarding Irregular Behavior describe ECFMG's process for investigating suspected irregular behavior, determining whether an individual engaged in irregular behavior, and taking appropriate action if a finding of irregular behavior is made.

II.     THE ENTERPRISE, THE CONDUCT, THE PATTERN OF RACKETEERING ACTIVITIES: USAT AND ITS OFFICIALS' FALSE REPRESENTATIONS TO PLAINTIFFS IN ORDER TO RECEIVE PAYMENT FOR AN INVALID MEDICAL EDUCATION

A.  USAT First Contact and Representations

33.     Sujeil Peña-Torres ("Peña"), Jose E. Blasco-Jusino ("Blasco"), Lucero Rodriguez-Fernández ("Rodriguez"), Lisa M. Torres-Colon ("Torres"), Joffre E. Gómez-Frontera ("Gomez") Zabdiel A. Nieves-Rivera ("Nieves"), Enny de Jesús-Ureña ("de Jesus") Loraima M. Rosado-Villafañe ("Rosado"), Paola M. Prosper-Crespo ("Prosper") and Wendoly M. Vazquez Oliveras ("Vazquez") (jointly "Plaintiffs") were all searching for a medical school to apply in order to get into a career in medicine:

   a.  Peña was searching for a medical school around May 3rd, 2017.

   b.  Blasco was searching for a medical school around February of 2017.

   c.  Prosper was searching for a medical school around July of 2017.

   d.  Rosado was searching for a medical school around May 29, 2018.

   e.  Torres was searching for a medical school around July 19th, 2017.

   f.  Gomez was searching for a medical school around May 29th, 2018.

   g.  Rodriguez was searching for a medical school around March 3rd, 2018.

   h.  De Jesus was searching for a medical school around 2017.

   i.  Nieves was searching for a medical school around May 29, 2018.

   j.  Vazquez was searching for a medical school around September of 2017.

34.     Plaintiffs were contacted by persons who represented themselves as officials of the medical school known as USAT, and accredited college of medicine in Puerto Rico:

   a.  Peña was contacted and interviewed by Manuel Jose Ortiz-Bustillo ("Ortiz") and Daniela Cabrera-Pujada ("Cabrera") on or around July 8th of 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

13

b. Blasco met Ortiz at the Hilton Garden Miami Airport Hotel West Doral in Miami, FL on or around July 12th, 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

c. Prosper was contacted by Cabrera on or around July of 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

d. Rosado was contacted by Ortiz and Cabrera on or around June 1st of 2018. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

e. Torres was contacted by Cabrera on or around July, 21st, 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

f. Gomez was contacted by Ortiz and Cabrera, whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

g. Rodriguez applied online to the USAT PR campus on April 4th, 2018. Between April and May of 2018, she was contacted by Ortiz and Damaris Frias ("Frias") whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

h. De Jesus searched for information about USAT and requested application requirements around December of 2017. She was contacted by Ortiz, Frias and Yanire Bustillo ("Bustillo"), whom represented themselves as officials of the

14

medical school known as USAT and that USAT is an accredited college in Puerto Rico.

    i. Nieves was contacted by Ortiz and Cabrera, whom represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

    j. Vazquez was contacted and interviewed by Ortiz and Cabrera on or around November of 2017. Both Ortiz and Cabrera represented themselves as officials of the medical school known as USAT and that USAT is an accredited college in Puerto Rico.

35. Plaintiffs received various materials regarding USAT, such as brochures, applications and enrollment agreements, which made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

    a. Peña received these materials on July 8th, 2017.

    b. Blasco received these materials between February and June 21st, 2017.

    c. Prosper received these materials on August 1st, 2017.

    d. Rosado received these materials on June 1st, 2018.

    e. Torres received these materials on August 9th, 2017.

    f. Gomez received these materials on June 1st, 2018.

    g. Rodriguez received these materials on March 3rd, 28th and April 4th of 2018.

    h. De Jesus received these materials on January 2nd, 2018.

    i. Nieves received these materials on June 1st, 2018.

    j. Vazquez received these materials on November of 2017.

36. Based on the various materials and the representations, the Plaintiffs understood

15

that Orien L. Tulp ("Tulp") is the President of USAT, Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT, Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, Bustillo is the Registrar & Human Resource Supervisor and Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico. Therefore, Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all USAT officials and representatives.

37. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs understood that 1) USAT was accredited by the ECFMG so that USAT students may be able to take the United States Medical Licensing Examinations, and 2) being a student of USAT would allow the Plaintiffs to take the United States Medical Licensing Examinations. Additionally, the Plaintiffs understood that USAT operated satellite campuses or schools and had its main Administrative Office at other states in the United States, such as in Puerto Rico, Florida, Maryland, Texas, and Colorado.

B. USAT Enterprise, Conduct and Pattern of Racketeering Activity

38. The Plaintiffs understood that the USAT officials have been working at USAT for some time and that based on their representations, USAT's purpose was to provide the Plaintiffs an education in medicine if they applied to be a medical student. In consideration of USAT providing Plaintiffs the education of medicine, USAT would then request payments from the Plaintiffs. The USAT Officials made representations that once the payments would be received, USAT would provide the education in medicine and the Plaintiffs would be able to take the United States Medical Licensing Examinations. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, the Plaintiffs were induced and made the decision

16

to apply to USAT, thinking that the Plaintiffs were going to receive a valid medical education in Puerto Rico and will be later be able to apply for and take the United States Medical Licensing Examinations.

39.    Plaintiffs submitted all the required documents and required payments to USAT in order to apply.

a.    Peña submitted all the required documents and required payments on July 11th, 2017 and August 2nd, 2017.

b.    Blasco submitted all the required documents and required payments on June 15th, 2017 and July 11th, 2017.

c.    Prosper submitted all the required documents and required payments on June 27th, 2017 and July 19th, 2017.

d.    Rosado submitted all the required documents and required payments on June 4th, 2018.

e.    Torres submitted all the required documents and required payments August 10-30, 2017.

f.    Gomez submitted all the required documents and required payments on June 4th, 2018.

g.    Rodriguez submitted all the required documents and required payments on April 4th, May 4th, June 4th, October 4th and November 4th of 2018.

h.    De Jesus submitted all the required documents and required payments on January 2nd, 2018.

i.    Nieves submitted all the required documents and required payments on June 4th, 2017.

17

j. Vazquez submitted all the required documents and required payments on December of 2017.

40. Plaintiffs received a letter from Tulp which informed the Plaintiffs that they were admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of scientific and medical education. The letter indicated that Plaintiffs must pay no less than five thousand four hundred dollars ($5,400.00) per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00).

a. Peña received the letter on July 12th, 2017.

b. Blasco received the letter on June 21st, 2017.

c. Prosper received the letter on July 19th, 2017.

d. Rosado received the letter on June 4th, 2018.

e. Torres received the letter on September 14th, 2017.

f. Gomez received the letter on June 4th, 2018.

g. Rodriguez received the letter on April 17th, 2018.

h. De Jesus received the letter on January 8th, 2018.

i. Nieves received the letter on June 4th, 2018.

j. Vazquez received the letter on January of 2018.

41. The letter from Tulp which informed the Plaintiffs that they were admitted to the medical doctor program of USAT, informed the Plaintiffs that the mailing address of the USAT campus in PR is PO Box 364363, San Juan, PR, 00936-4363.

42. The mailing address of PO Box 364363, San Juan, PR, 00936-4363 is the same

18

mailing address used by Metropolitan Innovative Group, Inc. Metropolitan Innovative Group, Inc. is a corporation that was being operated by Ortiz, whom has been representing himself as an USAT Official.

43. Once the Plaintiffs were admitted by USAT, USAT Officials from both Puerto Rico and Colorado came to attend the White Coat Ceremony making the representation that the Plaintiffs were going to start a valid medical education in Puerto Rico and they were going to be able to apply for and take the United States Medical Licensing Examinations.

44. Once the Plaintiffs were admitted by USAT, the USAT officials oriented the Plaintiffs as to the manner of payments and the possibility of taking out a loan. Except for Peña and Rodriguez, the USAT officials assisted the Plaintiffs in submitting a loan application with SouthEast Bank ("SB") in order to pay USAT. On different dates, the Plaintiffs submitted a loan application to SB, which were accepted and they provided a personal loan to the Plaintiffs. However, SB disbursed the personal loan and wire transferred said loan directly to the offices of USAT located in Colorado. The Plaintiffs did not receive the personal loan directly, but instead had to request USAT to deliver them or deduct certain sum amounts from the personal loan. The USAT officials located in Colorado were the ones that had full control of the SB loan money.

    a. On June 18th-22nd, 2017, USAT officials assisted Blasco to submit a loan application with SB. Blasco's loan application was accepted and SB provided a personal loan for the sum amount of $60,000.00. Between September 1, 2017 and December 1, 2017, SB disbursed Blasco's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Blasco's admission until September of 2018, USAT deducted and received the sum amount of $28,695.00 for providing what Blasco understood was a valid

medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

b. On August 1st, 2017, USAT officials assisted Prosper to submit a loan application with SB. Prosper's loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between September 1, 2017 and December 1, 2017, SB disbursed Prosper's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Prosper's admission until September of 2018, USAT deducted and received the sum amount of $22,500.00 for providing what Prosper understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

c. On June 4th and July 13th 2018, USAT officials assisted Rosado to submit a loan application with SB. Rosado's loan application was accepted and SB provided a personal loan for the sum amount of $50,000.00. Between August 15th to August 25th of 2018, SB disbursed Rosado's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Rosado's admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Rosado understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

d. On February 14th, 2018, USAT officials assisted Torres to submit a loan application with SB. Torres' loan application was accepted and SB provided a personal loan for the sum amount of $38,000.00. Between April 2nd to August

20

25th of 2018, SB disbursed Torres' personal loan by directed them directly to the offices of USAT in Colorado. From the date of Torres' admission until September of 2018, USAT deducted and received the sum amount of $23,300.00 for providing what Torres understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

e. On June 4th-July 13th of 2018, USAT officials assisted Gomez to submit a loan application with SB. Gomez's loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between August 15th to August 25th of 2018, SB disbursed Gomez's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Gomez's admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Gomez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

f. On January 8th of 2018, USAT officials assisted De Jesus to submit a loan application with SB. De Jesus' loan application was accepted and SB provided a personal loan for the sum amount of $45,000.00. Between February 19th, 2018, SB disbursed De Jesus' personal loan by directed them directly to the offices of USAT in Colorado. From the date of De Jesus' admission until September of 2018, USAT deducted and received the sum amount of $26,000.00 for providing what De Jesus understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the

United States Medical Licensing Examinations.

g. From June 4th to July 13th of 2018, USAT officials assisted Nieves to submit a loan application with SB. Nieves' loan application was accepted and SB provided a personal loan for the sum amount of $46,237.50. Between August 15th to August 25th of 2018 of 2018, SB disbursed Nieves' personal loan by directed them directly to the offices of USAT in Colorado. From the date of Nieves' admission until September of 2018, USAT deducted and received the sum amount of $18,990.00 for providing what Nieves understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

h. In or around December of 2017 and/or February of 2018, USAT officials assisted Vazquez to submit a loan application with SB. Vazquez's loan application was accepted and SB provided a personal loan for the sum amount of $35,000.00. In February of 2018 of 2018, SB disbursed Vazquez's personal loan by directed them directly to the offices of USAT in Colorado. From the date of Vazquez's admission until September of 2018, USAT deducted and received the sum amount of $35,000.00for providing what Vazquez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

i. Peña and Rodriguez opted to pay USAT directly in exchange for providing medical education.

j. Peña paid the following: On July 11th of 2017, Peña paid the amount of $125 corresponding to USAT application fee. On August 2nd of 2017, Peña paid the

22

amount of $6,000 corresponding to USAT One Time Matriculation Fee ($600), Tuition of Semester August 2017 to December 2017 ($4,900) and Anatomy Lab Fee ($500). On January 24th of 2018, Peña paid the amount of $4,000 corresponding to USAT Semester of January 2018 to May 2018. Then on April 3rd of 2018, Peña paid $400 corresponding to USAT Semester January 18 to May 2018. On May 16th of 2018, Peña paid the amount of $5,400 corresponding to USAT Summer classes, including $500 corresponding to a pending balance of the Semester January 2018 to May 2018. On September 25th of 2018, Peña paid the amount of $4,900 corresponding to USAT Semester August 2018 to December 2018. From the date of Peña's admission until September of 2018, USAT had received the sum amount of $25,725, for providing what Peña understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

k. Rodriguez paid the following: On June 4th 2018, Rodriguez paid $125 for the application fee. On October 5th, 2018, Rodriguez paid $600 for enrollment fee and $1,400 for tuition. On August 14th, 2018, Rodriguez paid $1,800 for tuition. From the date of Rodriguez's admission until September of 2018, USAT had received the sum amount of $3,925, for providing what Rodriguez understood was a valid medical education in medicine in Puerto Rico and to be able to apply for and take the United States Medical Licensing Examinations.

45. When the Plaintiffs received USAT invoices asking for payments to be made or USAT Receipts to Confirm Payments received, all for providing what the Plaintiffs thought was a

23

valid education of medicine in Puerto Rico, USAT invoices and USAT receipts requested that the payments be either mailed or wire transferred to USAT's Administration Office at Colorado.

46.    Therefore, all payments made by the Plaintiffs, either personally or via the personal loan of SB, were mailed and wire transferred to USAT's Administration Office at Colorado, that is, via interstate.

C.    ECFMG's discovery of USAT's False Representations to ECFMG of USAT's Enterprise, Conduct and Pattern of Racketeering Activity and the Plaintiffs' Injury

47.    In July and August of 2018, ECFMG received information indicating that USAT was offering classes in Miami, Florida.

48.    On August 21, 2018, D. Scott Mealey, ECFMG's Manager of Medical Education Resources & Operations Support, sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp,
> It has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida. In order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country. In light of this, ECFMG requests that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

49.    The letter asked Dr. Tulp to provide the requested documentation "confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States" by September 3, 2018.

50.    ECFMG never received documentation showing that USAT is authorized to

24

conduct education in the United States.

51.     Later on, August 21, 2018, Dr. Tulp responded to Mr. Mealey via email, writing:

> Dear Mr. Mealey
> This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination. I hope this will clarify your concern.

52.     Between August 21, 2018 and September 14, 2018, ECFMG received information that USAT was providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida and Dallas, Texas.

53.     On September 14, 2018, Kara Corrado, ECFMG's Vice President for Operations, sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp:
> This is a follow-up to our August 21, 2018 letter in which ECFMG requested information from you about the University of Science, Arts & Technology (USAT) Faculty of Medicine's satellite (or branch) campus in Miami, FL. In response, you indicated, 'The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may [be] administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.' We thank you for your quick reply.'
> ECFMG has since received information that USAT is providing medical education lectures not only at its Miami site, but also at sites in Tamp, FL, and Dallas, TX.
> It is critical that ECFMG ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements. Therefore, ECFMG continues its review of this matter. This letter is to advise you that, as part of its review, ECFMG has reached out to

25

students and graduates of USAT in order to collect information from them regarding their attendance at USAT.

Effective today, USAT students and graduates seeking services related to ECFMG Certification, including registration for USMLE examinations, release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG. Services will not be provided to individuals who do not complete the affidavit. ECFMG has provided instructions about this process directly to the students and graduates. JA0102; *see* JA0216 (Injunction Hr'g Tr. 41:5-13 ("We had had information that USAT was operating a campus in the United States in Florida. And Dr. Tulp had indicated that that was not correct. So we still were getting information contrary to that. So we decided to send the affidavit to the students to get information from the students about where they actually did their basic sciences.")).

54. ECFMG sent an affidavit to USAT students and graduates seeking ECFMG services, asking them to certify under penalty of perjury and under penalty of a finding of irregular behavior (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.

55. More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.

56. There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students."

57. Between August and October of 2018, the Plaintiffs were studying and applying to take the United States Medical Licensing Examinations. After the Plaintiffs applied, ECFMG requested the Plaintiffs to submit information under penalty of perjury via an affidavit to describe the USAT medical school information and asking whether the Plaintiffs had physically attended

the USAT medical classes at Montserrat.

58. During those months, the Plaintiffs were informed by ECFMG that they were not eligible for the United States Medical Licensing Examination.

59. On September of 2018, the Plaintiffs were notified by the USAT Officials of the ECFMG irregularities. On September 24th of 2018, the USAT Officials notified the Plaintiffs of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities. On September 26th of 2018, a telephone conference was held with Tulp and the attorneys of USAT to address the Plaintiffs and other students' concerns regarding the denial to take the United States Medical Licensing Examination. During that September 26th telephone conference, Tulp instructed the Plaintiffs and the other students to falsely inform ECFMG that the Plaintiffs and the other students took the USAT medical education at the Montserrat main campus. Tulp made the representation that ECFMG had been provided false information regarding USAT students and the USAT location of colleges of medicine.

60. After this telephone conference, the Plaintiffs began to send numerous communications to the USAT Officials inquiring as to why the Plaintiffs could not take the United States Medical Licensing Examination. During September, October and November of 2018, the USAT Officials dodged and evaded questions by the Plaintiffs and other students regarding their lack of eligibility for the United States Medical Licensing Examination.

61. During early November of 2018, the USAT Officials instructed the Plaintiffs and the other students to not send additional information to ECFMG outside the instructions of USAT. During early November of 2018, the USAT Officials instructed the Plaintiffs and the other students to send all information regarding ECFMG to Konyk, who would then refer the Plaintiffs and the other students to USAT's attorney.

62.     During September of 2018, Konyk, Tulp and Baldwin emailed the Plaintiffs and the other students that they will resolve our situation as to taking United States Medical Licensing Examination.

63.     On December 24th, 2018, USAT frivolously filed a lawsuit against ECFMG. This judicial proceeding was dismissed on the merits by the United States District Court for the Eastern District Court of Pennsylvania. The judgment was confirmed by the United States Court of Appeals for the Third Circuit.

64.     In essence, USAT did not comply with the ECFMG requirements to operate the branch campus in Puerto Rico because USAT was not authorized to operate as a medical school in the Puerto Rico because it did not meet the medical education eligibility requirements to practice medicine in Puerto Rico.

65.     Unfortunately, the Plaintiffs' medical education from USAT was not accepted by other medical schools. All applications made for Schools of Medicine in the US by the Plaintiffs were rejected and they did not accept the USAT medical education. Therefore, the Plaintiffs had to restart their medical education again at other schools because of the false representations made by the USAT Officials.

66.     Based on the above, USAT received all the beforementioned sum amounts from the Plaintiffs via mail and wire fraud, without providing a valid medical education in Puerto Rico.

67.     USAT incurred in mail and wire fraud by receiving various beforementioned sum amounts from the Plaintiffs for providing an invalid medical education that resulted in the Plaintiffs' inability to take the United States Medical Licensing Examinations.

68.     All the USAT Officials participated in the false representation via mail and wire fraud when they represented that USAT would provide a valid medical education and the Plaintiffs

28

would be able to take the United States Medical Licensing Examinations. USAT falsely represented, via mail and wire fraud, to the Plaintiffs and many other students throughout 2017 and 2018 that it would provide a valid medical education and the Plaintiffs would be able to take the United States Medical Licensing Examinations.

69.     However, the reality is that USAT did not provide to the Plaintiffs and the other students a valid medical education, which resulted in the Plaintiffs being unable to take the United States Medical Licensing Examinations.

70.     Presently, the Plaintiffs have not been able to take the medical licensing examination.

71.     The Plaintiffs paid USAT and the USAT Officials for their medical education believing that the they were licensed and certified.

72.     However, the Plaintiffs and other RICO Victims were fraudulently induced by the Defendants into applying, studying and paying for a medical education at the USAT PR Branch which does not qualify for any medical licensing examination.

73.     The Defendants orchestrated the scheme to defraud with the knowledge to deceive Plaintiffs by means of false or fraudulent pretenses, representations, promises or other deceptive conduct.

74.     Specifically, the Defendants falsely represented that the "satellite" schools were licensed and certified to assist the Plaintiffs to be eligible for the medical licensing examinations.

75.     The Defendants knowingly and frequently used interstate mail and wire transfer in furtherance of the fraudulent scheme.

76.     Specifically, the Defendants requested payments for the "medical education" via interstate mail and wire transfer, requesting that all payments be made to USAT at the Colorado

29

office, inducing the Plaintiffs and other RICO Victims to understand that it was paying for a proper medical education because USAT had its proper licenses and certification.

77. Defendants also directed mail and interstate wire transfers with Banks in furtherance of the scheme.

78. Defendants requested that the Banks give Plaintiffs and other RICO Victims student loans to pay for the USAT PR Branch medical education, even though Defendants had knowledge that it was neither licensed or certified.

79. Finally, Defendants fabricated certain costs and expenses when they directed invoices to the Plaintiffs and the other RICO Victims, demanding more payment for additional services for the "medical education"

80. Based on the before mentioned facts, the Defendants have incurred in fraudulent acts in violation of RICO which have caused damages to the Plaintiffs.

81. USAT Officials are agents who are duly authorized by USAT, who committed and/or cooperated with the acts or omissions in the course and scope of her agency relationship, thus imposing liability to USAT.

82. USAT had knowledge of the USAT Officials' acts or omissions. USAT did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. The Defendants allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to pay for a medical education.

83. USAT had knowledge of the USAT Officials' acts or omissions. USAT did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. The Defendants allowed the USAT Officials to materially breach their contractual obligation to

30

the Plaintiffs after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

84. Company ABC was the parent company or an affiliated company of the Defendants. Company ABC had knowledge of the USAT Officials' acts or omissions. Company ABC did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. Company ABC allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to receive monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG. Company ABC allowed the USAT Officials to materially breach their contractual obligation to the Plaintiffs after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

85. John & Jane Doe had knowledge of the USAT Officials' acts or omissions. John & Jane Doe did not take any proper action to rectify and/or avoid the acts or omissions incurred by the USAT Officials. John & Jane Doe allowed the USAT Officials to fraudulently induce the Plaintiffs into entering into an agreement with USAT in order to receive monetary payments. John & Jane Doe allowed Mr. Feldesman to materially breach his contractual obligation to the Plaintiff after receiving monetary payments in exchange for the medical education that did not comply with the licensing and requirements pursuant to ECFMG.

86. At the time of these incidents, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said claims. Said insurance policy was in force at the time of the incidents.

87. Plaintiffs have suffered economic and emotional damages based on Defendants intentional and/or knowingly acts in violation of RICO.

31

88. Plaintiffs seek treble damages (triple damages) for their economic and emotional damages, plus payment of interest.

89. Plaintiffs seek demand for the rescission of the agreement entered with Defendants.

90. The Defendants are liable for all the Plaintiffs' damages.

## FIRST CAUSE OF ACTION

## RICO ACT

91. Plaintiff re-alleges each allegation stated in the preceding paragraphs as if fully set forth herein.

92. As described above, Plaintiffs suffered an injury due to Defendants' actions in violation of RICO. Defendants caused injuries to the Plaintiffs and various other medical students ("RICO victims") because they received money from RICO victims, including Plaintiffs, whom would incur in loans from banking institutions ("Banks") that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States,

93. As described above, Defendants' conduct and participation demonstrates that they were operating and managing the false representations made by USAT.

94. As described above, Defendants falls under the definition of an enterprise as defined by RICO.

95. USAT officers were part of an enterprise because their purpose was to continue to recruit RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the RICO victims and Banks, even though the RICO victims would later not be allowed to take

32

medical examinations from Regulatory Agencies and they continued to incur in these fraudulent actions for approximately a decade,

96. As described above, Defendants demonstrated a frequent pattern of racketeering as defined by RICO.

97. For approximately a decade the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were certified to provide medical education in the United States when in reality they were not certified and the RICO victims were barred to be able to take medical examinations from Regulatory Agencies because the Defendants were not certified to provide said medical educations, during the summer of each year for approximately a decade the Defendants falsely represented to the RICO victims that to be admitted in the medical school they could take out loans from Banks, such that every June and July of each year for approximately a decade the Defendants would provided false representations to Banks and RICO victims so that the Banks would wire transfer to USAT bank accounts the loans under the false pretense that it was for the payment of the tuition and any other expenses of a certified medical institution; USAT would inform the RICO Victims that the USAT Bank Accounts were in the name of the students but USAT Officers would have control of the same in order to deduct payment for either the tuition and fabricated expenses for the medical education of the RICO Victims, including the Plaintiff, even though later on the RICO Victims to their surprise would be notified that they were unable to take medical examinations of the Regulatory Agencies such as the Educational Commission for Foreign Medical Graduates ("ECFMG") because USAT is not considered a certified medical school in the United States.

98. As described above, Defendants engaged in a scheme to defraud with the specific intent to defraud.

99.     As a result of Defendants' violation of RICO, Defendants are liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

100.     The economic and emotional damages suffered by the Plaintiffs are estimated at no less than nine million dollars ($9,000,000.00).

101.     Additionally, the Defendants are liable for treble damages that are estimated at no less than twenty-seven million dollars ($27,000,000.00).

## SECOND CAUSE OF ACTION

## FRAUDULENT INDUCEMENT,

## OR IN ALTERNATIVE, BREACH OF CONTRACT

102.     Plaintiffs re-allege each and every allegation stated in the preceding paragraphs as if fully set forth herein.

103.     The Defendants obtained the Plaintiffs' consent to enter into an agreement with Defendants through deceptive means.

104.     Defendants used false words and/or insidious machinations in order to induce the Plaintiffs to enter into an agreement with Defendants, which without the existence of false words and insidious machination the Plaintiff would not have entered in said contract.

105.     Defendants knowingly did not disclose to Plaintiffs the lack licenses and credentials of the USAT PR Branch and that USAT did not comply with rules pursuant to ECFMG.

106.     Defendants falsely represented to Plaintiffs the costs and expenses taken during the USAT PR Branch community.

107.     In the alternative that the Defendants are not found to have fraudulently induced the Plaintiffs, the Defendants entered into a valid contract with the Plaintiffs.

34

108. A valid contract exists because the Plaintiffs and Defendants consented to bind themselves with regard to one another, in which Plaintiffs would pay Defendants a sum amount of money in exchange for Defendants services

109. As a result of Defendants' fraudulent inducement, or in the alternative, breach of contract, Defendants are liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

110. The economic and emotional damages suffered by the Plaintiffs are estimated at no less than nine million dollars ($9,000,000.00).

### THIRD CAUSE OF ACTION

### TORTS DAMAGES

111. Plaintiffs re-allege each and every allegation stated in the preceding paragraphs as if fully set forth herein.

112. Defendants' actions constitute an act or omission which caused damage to Plaintiffs. Said act or omission was incurred due to fault or negligence.

113. All Defendants are liable to Plaintiffs pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

114. Defendants are vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

115. John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

116. John & Jane Does are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

117. Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

118. Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

119. Defendants' actions as subsidiary company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

120. Therefore, Company ABC is vicariously liable for damages caused by the Defendants in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

121. All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

122. As a result thereof, Defendants' are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less four million five hundred thousand dollars ($4,500,000.00).

## FIFTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

123. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

124. Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

## SIXTH CAUSE OF ACTION

36

## ATTORNEYS FEES AND PREJUDGMENT INTEREST

125. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

126. Defendants are liable to Plaintiff for attorney's fees and costs under relevant federal law.

127. Defendants are liable for prejudgment interest pursuant to federal rules and law.

## PRAYER

Wherefore, all allegations considered, Plaintiffs prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiffs' Complaint against Defendants. This Court should grant Plaintiffs complaint and find that the Defendants are liable to the Plaintiffs based on the RICO Act, Fraudulent Inducement, or in the alternative Breach of Contract and tort civil action pursuant to Article 1802 of the Puerto Rico Civil Code.

2. An order directing Defendants to reinstate Plaintiff to his former position and to cease and desist of any further wrongful conduct.

3. Awarding compensatory, statutory, treble and liquidated damages pursuant to federal law which establishes attorney's fees, costs and any other legal or equitable relief as the Court deems appropriate.

4. Awarding Plaintiff lost benefits, both past and future.

5. Awarding Plaintiff, the amounts before mentioned in the Complaint.

6. Awarding Plaintiff compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142.

37

7. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

8. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and I hereby certify that I served the foregoing to the non CM/ECF Participants, Manuel Jose Ortiz-Bustillo and Yanire Bustillo, via their electronic mail addresses of ortizbustillo@yahoo.com and Yanirebustillo@hotmail.com.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico, on this 16th day of December, 2022.

*/S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Tel: (787) 727-5710
Fax: (787) 268-1835
Cel: (787) 565-3477
E-Mail: victorriverarios@rcrtrblaw.com
        info.vrr@rcrtrblaw.com