**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| PEÑA-TORRES, et al., | ) ) ) | CIVIL ACTION NO. 3:19-cv-01707-WGY |
| Plaintiffs, | ) ) | **RE:** RACKETEER INFLUENCED |
| v. | ) ) ) | AND CORRUPT ORGANIZA-TIONS ACT (RICO); FRAUD-ULENT INDUCEMENT; |
| UNIVERSITY OF SCIENCE, ARTS AND TECH, et al., | ) ) ) | BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES |
| Defendants. | ) ) ) | TRIAL BY JURY DEMANDED |

**DEFENDANTS' ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants University of Science, Arts and Technology ("USAT"), Orien L. Tulp ("Tulp'), Carla M. Konyk ("Konyk"), and Karen Baldwin state:

At the motion hearing the Court conducted on December 15, 2022, the Court granted Plaintiffs' motion to file Plaintiff's Third Amended Complaint. Plaintiffs filed Plaintiffs' Third Amended Complaint on December 16, 2022, Under Fed. R. Civ. P. 12(a)(4)(A), Defendants timely file their Answer on December 30, 2022.

**PRELIMINARY STATEMENT**

1.    Admitted that the ten Plaintiffs enrolled in the USAT College of Medicine between June 2017 and July 2018. Admitted that the Government of Montserrat included by name "Medical College of London" on the agreement the Government of Montserrat issued to USAT on September 26, 2003, licensing USAT. Denied that USAT is known as the "University of Science, Arts and Tech" as Plaintiffs have so

denominated USAT since the inception of this case on July 23, 2019. Denied that USAT is also known as or has ever operated under the name "Medical College of London" as an error by the Government of Montserrat precluded the listing of "Medical College of London" as an alternative name of USAT on the International Medical Education Directory or World Directory of Medical Schools. Denied that USAT is also known as or has ever operated under the name "Malina Medical College" or "Metropolitan Innovative Group."

2.     Admitted that the Government of Montserrat licensed USAT as a medical school to conduct medical education both on Montserrat and in alternative locations USAT deemed appropriate for as long a period as USAT deemed appropriate, including distance instruction through USAT's secure Small Platform Online Course, SPOC, network. Denied to the extent Plaintiffs imply that the Educational Commission of Foreign Medical Graduates did not certify students or graduates of the College of Medicine of USAT to complete the multiple-part United States Medical Licensing Examination, USMLE®, ("USMLE") from the inception of USAT in 2003 through 31 December 2018. Admitted that Defendant Dr. Tulp and Defendant Konyk jointly own USAT; Defendant Dr. Manuel José Ortiz Bustillo ("Ortiz") directed USAT in Puerto Rico; Defendants Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera"), and Karen Baldwin ("Baldwin") were or are hourly employees or contractors of USAT. Denied that "other unknown persons" exist for the purpose of this lawsuit.

**3.**     Admitted that Plaintiffs allege that while Defendants Tulp, Konyk, Ortiz, Bustillo, Cabrera, and Baldwin were working for Defendant USAT all Defendants together, "jointly," meaning with Defendant USAT, violated 18 U.S.C. § 1961, *et seq.*, is an implausible claim under *Bessette v. Avco Fin. Serv. Inc.*, 230 F.3d 439, 449 (1st Cir. 2000).

**1)**  Denied as no Defendant harmed or injured Plaintiffs in this case. Denied that Plaintiffs are "RICO victims." For all purposes of this case, including Defendants' Answer, only the ten named Plaintiffs in this case are Plaintiffs; "various other medical students" are not parties to this case; and no Defendant harmed or injured "various other medical students" or other parties who are not parties to this case. Admitted that Plaintiffs were students at the College of Medicine of USAT; the bargained-for exchange of the contract each Plaintiff had with USAT was Plaintiffs paid to USAT fees, costs, and tuition and USAT provided medical education to each Plaintiff. Eight Plaintiffs used student loans to pay USAT, two students did not use student loans to pay USAT, and USAT deposited those funds from all Plaintiffs in USAT's bank account. From the inception of USAT in 2003 through 31 December 2018, USAT medical students and medical graduates were certified to take the USMLE, a required step eventually to practice medicine in the United States; successfully completing the USMLE is not required to practice medicine in Puerto Rico. USAT, Montserrat, LLC, registered in Puerto Rico as a for-profit limited liability company in May 2017, whose purpose is medical education and graduate education in Puerto Rico. Denied that USAT was not allowed to conduct classes in the United

3

States based on USAT's contact with the Florida Department of Education in 2007 and 2018 as the Florida Department of Education instructed USAT that USAT was not required to register with the Florida Department of Education as USAT, like many other medical schools based outside of the United States, could use facilities in Florida to conduct medical education distance learning, administrative activities, and recruiting in Florida.

**2)** Denied that Defendant USAT is also the enterprise as it is implausible that USAT can be the Defendant and the enterprise. "The unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *Arzuaga-Collazo v. Oriental Federal Sav. Bank*, 913 F.2d 5, 6 (1st Cir. 1990) (construing 18 U.S.C. § 1962(c)).

**3)** Denied. ECFMG changed ECFMG's policy in August 2018 and asserted that policy against Defendant USAT in October 2018, after Plaintiffs became medical students at Defendant USAT. The activities Plaintiffs describe are the "USAT Officers" acting on behalf of the Medical College of USAT and carrying out their regular duties for the enterprise, Defendant USAT, which includes communicating with students. Such communications were not false representations to Plaintiffs when Plaintiffs were students. To be eligible to take USMLE Step 1, Plaintiff had to be currently enrolled both at the time that Plaintiff applied and on Plaintiff's test day, Plaintiffs had to have completed at least two years of medical school, and Plaintiffs had to have completed the basic medical science component of the medical school curriculum by the beginning of each Plaintiff's eligibility period. No Plaintiff

4

satisfied these criteria. Further, rather than assuming an interest-bearing private student loan, Defendant USAT offered Plaintiffs, medical students, the choice of the interest-free payment plan process Defendant USAT conducted. The only bank from which Plaintiffs assumed their interest-bearing EdMed private student loans was SouthEast Bank. SouthEast Bank, like other private lenders of education loans, transferred the loan amount to the institution, Defendant USAT. Defendant USAT withheld the correct amount for the tuition, fees, and costs and remitted the remainder to the student. Defendant USAT was unable to learn how three Plaintiffs wanted funds disbursed before those three Plaintiffs became parties to this suit and no longer spoke to Defendant USAT. Defendant USAT holds those funds and waits for the three Plaintiffs to state how they wish those funds disbursed. By "USAT" Plaintiffs mean Defendant USAT and Defendant USAT would have operated through Defendant Tulp, Defendant Konyk, and Defendant Baldwin, or USAT Officers, to accomplish what Plaintiffs allege; and USAT Officers do not constitute an association-in-fact enterprise separate from Defendant USAT. Further, Plaintiffs allege all of the funds Defendant USAT received are racketeering activity in the form of mail fraud and wire fraud. Plaintiffs name jointly as Defendants, [Defendant] USAT, the enterprise, and "the USAT Officers." 3d Am. Compl., ¶ 3. Thus, Plaintiffs allege the racketeering activity and Defendant USAT, the enterprise, and other Defendants are merged, an implausible allegation under *United States v. Turkette*, 452 U.S. 576, 583 (1981). *See* Plaintiffs' RICO Case Statement, ECF No. 123-1, page 28.

5

**4)** Denied. The Government of Montserrat had not signed the agreement with an accrediting body, CAAM-HP because the Government of Montserrat is the accrediting authority of Defendant USAT. The Government of Montserrat licensed Defendant USAT on 26 September 2003. Students who had met the criteria to take USMLE Step 1 by 31 December 2018 were authorized to apply to take USMLE Step 1; and medical graduates who graduated from Defendant USAT by 31 December 2018 are authorized to apply to take USMLE Step 1 through 2024. ECFMG does not require foreign medical schools to be accredited until 2024, unless ECFMG decides ECFMG wants a foreign medical school to be accredited by an entity other than the government that licensed the foreign medical school. The license allows Defendant USAT to establish off-campus lecture and administrative sites as Defendant USAT needed. ECFMG's change of policy in August 2018 harmed Defendant USAT. The activities Plaintiffs describe are the Defendants, which Plaintiffs have defined jointly as Defendant USAT, the enterprise, and the Defendant "USAT Officers," acting on behalf of Defendant USAT and carrying out their regular duties for the enterprise, Defendant USAT, which includes communicating with students who request information from Defendant USAT. Such communications were not false representations to Plaintiffs during Plaintiffs' tenures as medical students at Defendant USAT.

**5)** Denied. ECFMG credits academic work medical students completed at Defendant USAT before 31 December 2018. Therefore, during Plaintiffs' tenures as medical students at Defendant USAT, Defendant USAT was "licensed and certified" to

deliver medical education that would satisfy the institutional requirements for medical students to take USMLE Step 1; and Defendant USAT and other Defendants made no false representations to Plaintiffs. ECFMG has never prohibited medical students at Defendant USAT from distance learning transmitted through Defendant USAT's SPOC network.

Plaintiffs, applicants to Defendant USAT, were asked on their applications how the applicants planned to finance their medical educations. The EdMed loan from SouthEast Bank was not always an option. Not all students opted to assume an interest-bearing bank loan, because Defendant USAT directly offered to students an interest-free option through Defendant USAT's payment-plan process. SouthEast Bank required co-signers for students who alone could not qualify for the EdMed loan. The EdMed loan was a student loan from a private lender, SouthEast Bank, only for education, not other, purposes and SouthEast Bank did what other lenders of student loans did: SouthEast Bank disbursed the loan proceeds to the institution, Defendant USAT, and Defendant USAT would then submit any tuition overage intended for accommodation, books, and other necessary supplies directly to the medical student, which Defendant USAT always did. See Defs' Ex. A, Cancelled Checks of Loan Proceeds Refunds. Defendant USAT could not refund some of the loan funds to three Plaintiffs because Plaintiffs instituted this lawsuit before Defendant USAT could ask Plaintiffs how they wished Defendant USAT to disburse the funds. Also, three Plaintiffs owe funds to Defendant USAT. Defendant USAT allowed, but did not encourage, students or applicants to assume any loans from a specific lender.

Defendant USAT always worked with students on tuition payment issues, including merit scholarships when a student passed the USMLE on the first attempt, or other forms of excellence in scholarship. Defendant USAT offers students the choice to use Defendant USAT's interest-free payment plan process, rather than assume an interest-bearing private student loan, such as the EdMed loan from SouthEast Bank. Defendant USAT tried to limit the amount of an EdMed loan from SouthEast Bank to a medical student of Defendant USAT to $60,000.00. SouthEast Bank, however, would loan up to $250,000.00 to a medical student.

The disadvantage of Defendant USAT's interest-free loan payment plan process, from the perspective of the eight Plaintiffs who instead chose the EdMed interest-bearing bank loan, is those eight Plaintiffs would not have received refunds of student loan proceeds ranging from $18,420.00 to $72,630.00, a total of $247,185.00. Defs' Ex. A, summarized at pages 9, 16, 21, 27, 32, 41, 46, and 50.

**4.** Denied that "patterns of fraudulent activities" exist. Denied that Defendants injured Plaintiffs'. Denied that Defendants caused economic damages to Plaintiffs. Denied as implausible that Defendants caused emotional damages to Plaintiffs, claimed in this paragraph and in paragraphs 87, 88, 100, and 110, as this allegation violates precedent as emotional damages are unavailable in a RICO case. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted).

5.      Denied that Defendants have violated 18 U.S.C. §§ 1961-1968. Denied that Defendants have violated: Articles 1217 *et seq.* of Puerto Rico's Civil Code, LPRA §§ 3404 *et seq.*, Fraudulent Inducement; Articles 1206 *et seq.* of Puerto Rico's Civil Code, LPRA §§ 3371 *et seq.*, Material Breach of Contract; Article 1802 of Puerto Rico's Civil Code, LPRA § 5141, Unjust Enrichment; and Article 1803 of Puerto Rico's Civil Code, LPRA §§ 5142, Tort Damages.

6.      Denied that Defendants are liable to Plaintiffs for any monetary damages characterized in any form; particularly including Plaintiffs' claim for emotional damages, in paragraphs 4, 87, 88, 100, and 110, under Plaintiffs' RICO claim as emotional damages are unavailable and are, therefore, implausible relief under binding precedent. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted). Denied that Defendants have caused any harm to Plaintiffs that is grounds for any form of equitable or injunctive relief.

## JURISDICTION AND VENUE

7.      Admitted jurisdiction is proper in the United States District Court for the District of Puerto Rico under 28 U.S.C. § 1331.

8.      Admitted that this Court could invoke the Court's supplemental jurisdiction over Plaintiffs' state court claims: Articles 1217 *et seq.* of Puerto Rico's Civil Code, LPRA §§ 3404 *et seq.*, Fraudulent Inducement; Articles 1206 *et seq.* of Puerto Rico's Civil Code, LPRA §§ 3371 *et seq.*, Material Breach of Contract; Article 1802 of Puerto Rico's Civil Code, LPRA § 5141, Unjust Enrichment; and Article 1803 of Puerto

9

Rico's Civil Code, LPRA § 5142, Tort Damages. Defendants, again, deny having violated any of these articles of Puerto Rico's Civil Code.

9. Admitted venue can be proper in the United States District Court for the District of Puerto Rico under both 28 U.S.C. § 1391(a), because the locus of some of the facts Plaintiffs allege is Puerto Rico, and 18 U.S.C. § 1965(a).

## PARTIES

10. Admitted the ten Plaintiffs were medical students at USAT. Defendants are without information sufficient to form a belief regarding the truth that Plaintiffs are only residents of the Commonwealth of Puerto Rico as at least one Plaintiff claimed to USAT to be a resident of states or commonwealths of the United States.

1) Admitted that Sujeil Peña-Torres was a USAT medical student and the address Plaintiff states in paragraph 10 1) matches the address in USAT's records of Peña-Torres. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 1) and therefore deny the allegations.

2) Admitted that Jose E. Blasco-Jusino was a USAT medical student. Defendants are without information sufficient to form a belief regarding the truth of the allegation regarding Blasco-Jusino's address and the remaining allegations contained in paragraph 10 2) and therefore deny the allegations.

3) Admitted that Lucero Rodriguez-Fernández was a USAT medical student. Defendants are without information sufficient to form a belief regarding the truth of

10

the allegation regarding Rodriguez-Fernández's address and the remaining allegations contained in paragraph 10 3) and therefore deny the allegations.

4) Admitted that Lisa M. Torres-Colon was a USAT medical student and the address Plaintiff states in paragraph 10 4) matches the address in USAT's records of Torres-Colon. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 4) and therefore deny the allegations.

5) Admitted that Joffre E. Gómez-Frontera was a USAT medical student and the address Plaintiff states in paragraph 10 5) matches the address in USAT's records of Gómez-Frontera. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 5) and therefore deny the allegations.

6) Admitted that Zabdiel A. Nieves-Rivera was a USAT medical student and the address Plaintiff states in paragraph 10 6) matches the address in USAT's records of Nieves-Rivera. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 6) and therefore deny the allegations.

7) Admitted that Enny de Jesus-Ureña was a USAT medical student. Defendants are without information sufficient to form a belief regarding the truth of the allegation regarding de Jesus-Ureña's address and the remaining allegations contained in paragraph 10 7) and therefore deny the allegations.

8) Admitted that Loraima M. Rosado-Villafañe was a USAT medical student. Defendants are without information sufficient to form a belief regarding the truth of the allegation regarding Rosado-Villafañe's address and the remaining allegations contained in paragraph 10 8) and therefore deny the allegations.

9) Admitted that Paola M. Prosper-Crespo was a USAT medical student and the address Plaintiff states in paragraph 10 9) matches the address in USAT's records of Prosper-Crespo. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 9) and therefore deny the allegations.

10) Admitted that Wendoly M. Vazquez Oliveras was a USAT medical student and the address Plaintiff states in paragraph 10 10) matches the address in USAT's records of Vazquez Oliveras. Defendants are without information sufficient to form a belief regarding the truth of the remaining allegations contained in paragraph 10 10) and therefore deny the allegations.

11. Denied that "Plaintiffs are part of a larger class and are suing as representatives of the other RICO Victims." The Court ruled on December 15, 2022, this case is limited to the ten Plaintiffs named and is not nor shall it be a class-action suit.

12. Denied that Defendant "University of Science, Arts and Tech" is the correct name of the Defendant. The correct name is University of Science, Arts and Technology (Montserrat) Ltd. (USAT). The Government of Montserrat never registered the name "Medical College of London (MCL)" and Defendant USAT has never used that name. Defendants deny that Defendant USAT is formally or informally known

**12**

as: "Malina Medical College"; or "Metropolitan Innovative Group, Inc.". Defendants deny that Defendant USAT is the alter ego of Defendant Tulp or Defendant Konyk or both. Defendants deny that Defendant USAT received mail at "PO Box 364 364363, San Juan, PR 00936-4363. Defendant USAT admits it receives mail at PO Box 506, South Mayfield Estate Drive, Olveston, Montserrat, MSR1350 British West Indies.

13.    Defendant Tulp denies that he receives mail at the five addresses listed in Third Amended Complaint ("3d Am. Compl."), ¶ 12. Defendant Tulp denies he has a spouse named "Jane Doe." Defendant Tulp admits he is the joint owner of, a Professor at, and the President of Defendant USAT.

14.    Defendant Konyk denies that she receives mail at the five addresses listed in 3d Am. Compl., ¶ 12. Defendant Konyk denies she has a spouse named "John Doe." Defendant Konyk admits she is the joint owner, Vice President and Director of Administration and Finances of Defendant USAT.

15.    Defendants deny that Defendant Ortiz receives mail at the five addresses listed in 3d Am. Compl., ¶ 12. Defendants are without information sufficient to form a belief regarding the truth of the allegation that Defendant Ortiz has a spouse and, therefore, deny it. Defendants admit Defendant Ortiz was the Director and Dean of Defendant USAT in Puerto Rico.

16.    Defendants deny that Defendant Bustillo receives mail at the five addresses listed in 3d Am. Compl., ¶ 12. Defendants are without information sufficient to form a belief regarding the truth of the allegation that Defendant Bustillo has a spouse

**13**

and, therefore, deny it. Defendants admit Defendant Bustillo was the Registrar and Human Resources Director for Defendant USAT in Puerto Rico.

17. Defendants deny that Defendant Cabrera receives mail at the five addresses listed in 3d Am. Compl., ¶ 12. Plaintiffs may post mail to Defendant Cabrera through her Attorney at Law Offices 356 Fortaleza Street, Second Floor, San Juan, PR 00901. Defendants are without information sufficient to form a belief regarding the truth of the allegation that Defendant Cabrera has a spouse and, therefore, deny it. Defendants admit Defendant Cabrera was the Clinical Coordinator-Student Affairs for Defendant USAT in Puerto Rico.

18. Defendant Baldwin denies that she receives mail at the five addresses listed in 3d Am. Compl., ¶ 12. Defendant Baldwin denies she has a spouse named "John Doe." Defendant Konyk admits she is an Administrator of Defendant USAT.

19. Defendants deny the allegations in paragraph 19. Defendant USAT will determine whether an insurance policy exists; and, if an insurance policy does exist, then the insurance policy shall speak for itself.

20. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 20 and therefore deny them. The only company or corporate entity in this litigation is Defendant USAT.

21. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 21 and therefore deny them. The only Defendants in this litigation are those now named in the 3d Am. Compl.

**THE FACTS**

14

## I.   THE EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, ITS POLICIES AND PROCEDURES

**22.**   Defendants deny the allegations of paragraph 22. ECFMG only processes applications from international medical graduates for application for post-graduate training (residency) and for the pre-qualifying United States Medical Licensing Examination, USMLE®, ("USMLE") via the National Board for Medical Examinations as a convenience to those organizations. ECFMG claims to "promote quality health care." Yet, in Defendants' experience, ECFMG has never completed a primary source verification of applications of any individual applicant from USAT as ECFMG employees no registrars. The applicant completes the application and payment requirements, and identity is verified by Web Notary, not the respective medical school. This is believed to represent a significant loophole in the "verification" process ECFMG conducts. However, for a resident of Puerto Rico to register with the Puerto Rico Medical board, ECFMG certification was not a requirement in 2017-2018, when the ten Plaintiffs were enrolled at USAT. Other international medical schools also had offices in Puerto Rico, including at least one school each from Antigua and the Dominican Republic in 2018. As both schools, like Defendant USAT, used clinical sites in Puerto Rico for the last two years of their respective programs and for language issues. Many clinical sites in the United States discourage speaking a non-English language during training. Even if both patient and medical student speak the same foreign language, fluency in English is required. Also, the

15

USMLE is conducted only in English and this sometimes discourages non-English-speaking applicants.

23.    Denied to the extent that ECFMG's responsibilities are self-proclaimed and ECFMG changes its policies, including those regarding accreditation of international medical schools, at ECFMG's "sole discretion." Defendants' Answer Exhibit C, pages 64 and 65. ECFMG certifies that an applicant has graduated from an international medical school listed on ECFMG's WDOMS website. ECFMG does not visit international medical schools. ECFMG only verifies that ECFMG recognizes the international medical school from which the medical student has graduated; or, in the past, the medical student has completed two academic years of medical study at an international medical school ECFMG recognizes. The ECFMG does not require medical schools to be accredited, nor do most state medical boards, because successfully completing the USMLE determines that the medical student or graduate possesses the required minimal expertise.

24.    Denied as this allegation is misleading. ECFMG collects administrative information, not academic information *per se*. Upon information and belief, ECFMG does not employ registrars for the purposes Plaintiffs allege and ECFMG has no specific criterion as to what specific courses a medical student must have completed successfully, but only that a medical student must have completed basic sciences and two academic years of medical school before registering to take USMLE Step 1. ECFMG's definition of two academic years as opposed to two calendar years is unclear. Sometimes, ECFMG accepts the two academic years a student reports and

sometimes ECFMG does not accept what the student reports. Note that two academic years are less time than two calendar years as Defendant USAT and most medical schools in the Caribbean conduct three academic semesters per year.

25. Admitted. Defendant USAT established and maintains Defendant USAT's campus in Montserrat. USAT can deliver of basic medical sciences from Montserrat by USAT's SPOC network thereby negating any requirement for additional campuses.

26. Denied as this allegation is misleading. Plaintiffs quote ECFMG policy that changed in August 2018 and ECFMG officially asserted that changed policy against Defendant USAT in October 2018. ECFMG was founded in 1956 and ECFMG changed its policy 62 years later, in 2018. Defs' Answer Ex. B, page 56. Defendant USAT did not establish an additional campus or "branch campus" as that term is defined under the four-prong test stated in 34 CFR 600.2. USAT registered as a business entity to deliver medical education in Puerto Rico and for the convenience of administrative purposes, as other international medical schools with similar programs that use recognized clinical training sites in medical facilities in Puerto Rico that authorities in Puerto Rico approve for such uses.

27. Admitted. Defendants state further that the medical board of Puerto Rico did not require ECFMG certification in 2017-2018, when the Plaintiffs were medical students at Defendant USAT.

28.  Admitted. Defendants state further that Defendant USAT is what Plaintiffs characterize as a "*bona fide* international medical school" and Defendant USAT has been so since the inception of Defendant USAT on September 26, 2003.

29.  Admitted that Plaintiffs partially state an ECFMG policy. Defendants state further that this is a vague policy ECFMG states. ECFMG has produced no evidence, including the production of documents that show any Defendant, including Defendant Tulp and Defendant USAT, has committed "irregular behavior." Defendant Tulp has never applied for any service ECFMG offers. Rather, "irregular behavior" is ECFMG's policy, or in-house tool, ECFMG may use to permanently disqualify an applicant by blocking all future aspirations of an applicant labeled as having committed "irregular behavior." ECFMG applies this policy without warning against an entity or individual and, historically, ECFMG has never withdrawn the label once applied. Neither Defendant USAT nor Defendant Tulp is aware of having submitted incorrect information on behalf of any student. When the medical student completes the medical student's own application it is the responsibility of the medical student to verify what the medical student has submitted to ECFMG.

30.  Admitted that Plaintiffs partially state an ECFMG policy. Defendants further state what Plaintiffs quote is not possible as a medical student completes the student's own application for services ECFMG offers or requires. Defendants are unaware of any medical student of Defendant USAT who may have submitted an application to ECFMG when a student was ineligible to submit such an application

18

to ECFMG. The medical board of Puerto Rico did not require ECFMG certification in 2017-2018, when the Plaintiffs were medical students at Defendant USAT.

31.   Admitted that Plaintiffs partially state an ECFMG policy. Upon information and belief, Defendants state that irregular behavior allegations and designations are unique to the ECFMG. Though ECFMG may offer the accused a hearing, where the accused is denied the right to present evidence in defense, ECFMG does not require ECFMG to conduct a hearing before ECFMG labels an accused as having committed "irregular behavior." Then, ECFMG disseminates the blackened name of the accused to domestic and foreign medical boards.

32.   Denied as ECFMG's description of ECFMG's investigation process is vague.

## II.   THE ENTERPRISE, THE CONDUCT, THE PATTERN OF RACKETEERING ACTIVITIES: USAT AND ITS OFFICIALS' FALSE REPRESENTATIONS TO PLAINTIFFS IN ORDER TO RECEIVE PAYMENT FOR AN INVALID MEDICAL EDUCATION

### A. USAT First Contact and Representations

33.   Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraphs 33 a.-j. and, therefore, deny them.

a.   Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 a. and, therefore, deny them.

b.   Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 b. and, therefore, deny them.

**19**

**c.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 c. and, therefore, deny them.

**d.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 d. and, therefore, deny them.

**e.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 e. and, therefore, deny them.

**f.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 f. and, therefore, deny them.

**g.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 g. and, therefore, deny them.

**h.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 h. and, therefore, deny them.

**i.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 i. and, therefore, deny them.

**j.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 33 j. and, therefore, deny them.

34. Denied. Defendants are without information sufficient to form a belief regarding the truth of the allegations in paragraphs 34 a.-j. and, therefore, deny them as Defendants do not know in what order the alleged contact occurred. Further, Defendants have never claimed that an accrediting body approved by the Liaison Committee of Medical Education, LCME®, ("LCME") in the United States accredited Defendant USAT because Defendant USAT's license from the Government of

20

Montserrat was the accreditation of Defendant USAT that ECFMG recognized through 31 December 2018. Defs' Answer Ex. C, pages 59-60. Defendant USAT was institutionally accredited by AAHEA (USA), ASIC-UP (UK), and programmatically accredited by AICP (clinical psychotherapy, USA) in 2017-2018 when Plaintiffs were enrolled at Defendant USAT. Defendant USAT did not claim Puerto Rico had accredited Defendant USAT. The activities Plaintiffs describe are the "USAT Officers" acting on behalf of Defendant USAT and carrying out their regular duties for the enterprise, Defendant USAT. Employees, or "USAT Officers" or "officials of the medical school," acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise and claiming those activities are distinct, and the basis for a RICO claim, is implausible. *Bessette v. Avco Fin. Serv. Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) (citations omitted).

    **a.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 a. and, therefore, deny them.

    **b.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 b. and, therefore, deny them.

    **c.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 c. and, therefore, deny them.

    **d.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 d. and, therefore, deny them.

**e.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 e. and, therefore, deny them.

**f.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 f. and, therefore, deny them.

**g.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 g. and, therefore, deny them.

**h.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 h. and, therefore, deny them.

**i.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 i. and, therefore, deny them.

**j.**    Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 34 j. and, therefore, deny them.

**35.**    Denied. Defendants are without information sufficient to form a belief regarding the truth of the allegations in paragraphs 35 a.-j. and, therefore, deny them as Defendants do not know precisely when and what documents each Plaintiff is claiming to have received from Defendant USAT. Further, Defendants incorporate Defendants narration of the accreditation of Defendant USAT in paragraph 34; and Defendant USAT's license from the Government of Montserrat was the accreditation of Defendant USAT that ECFMG recognized through 31 December 2018. Defs' Answer Ex. C, pages 59-60. Defendant USAT did not claim Puerto Rico had accredited Defendant USAT. Puerto Rico knew Defendant USAT was delivering medical education in Puerto Rico.

22

23

**a.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 a. and, therefore, deny them.

**b.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 b. and, therefore, deny them.

**c.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 c. and, therefore, deny them.

**d.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 d. and, therefore, deny them.

**e.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 e. and, therefore, deny them.

**f.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 f. and, therefore, deny them.

**g.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 g. and, therefore, deny them.

**h.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 h. and, therefore, deny them.

**i.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 i. and, therefore, deny them.

**j.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 35 j. and, therefore, deny them.

**36.** Denied. Defendants are not all "USAT Officials" as some of the Defendants were or are employees or contractors who worked for or work for Defendant USAT.

23

**37.** Admitted that when Plaintiffs were admitted to Defendant USAT, and through 31 December 2018, medical students at and medical graduates of Defendant USAT's College of Medicine would be able, upon completing the prerequisites, to take the steps of the USMLE and that successfully completing the steps of the USMLE is part of the requirement to be licensed eventually to practice medicine in the United States. The medical board of Puerto Rico does not require a medical student or a medical graduate to be ECFMG certified. A satellite campus or administrative office is not a branch campus as defined under the four-prong test stated in 34 CFR 600.2. Further, ECFMG allows the distance learning Defendant USAT offers medical students through Defendant USAT's SPOC network.

### B. USAT Enterprise, Conduct and Pattern of Racketeering Activity

**38.** Denied. Defendant USAT would provide a medical education only to a student Defendant USAT accepted to attend Defendant USAT in exchange for fees, costs, and tuition. Defendant USAT did not guarantee that a medical student would qualify to take the steps of the USMLE as the student must first complete the required academic work and the administrators of USMLE must accept the application of the medical student before the administrators of USMLE allow a medical student to take USMLE Step 1. Plaintiffs did receive a portion of a valid medical education from Defendant USAT prior to Plaintiffs' personal choices to discontinue their medical studies. Had Plaintiffs continued, they likely could have applied to take the examination in Puerto Rico, completed a residency in Puerto Rico, and practiced medicine in Puerto Rico. Plaintiffs independently decided to withdraw or

**24**

discontinue their medical studies without requesting counseling from Defendant USAT.

**39.** Denied. Defendants are without information sufficient to form a belief regarding the truth of the allegations in paragraphs 39 a.-j. and, therefore, deny them as Defendants do not know precisely when each Plaintiff submitted documents to Defendant USAT. Admitted that each Plaintiff was a medical student at the College of Medicine of Defendant USAT.

**a.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 a. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

**b.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 b. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

**c.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 c. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

**d.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 d. and, therefore, deny them.

Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

e. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 e. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

f. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 f. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

g. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 g. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

h. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 h. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

i. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 i. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

**j.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 39 j. and, therefore, deny them. Admitted that Plaintiff was a medical student at the College of Medicine of Defendant USAT.

40. Denied. The tuition rate varied. For example, the tuition rate for some applicants was $4,900.00 per semester and for other applicants the tuition rate was $5,400.00. Further denied as a letter of admission letter would have the signature block of Defendant Tulp, but Defendant Tulp did not sign any of the letters of admission.

**a.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 a. and, therefore, deny them. Defendant USAT's letter of admission is dated 01 July 2017.

**b.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 b. and, therefore, deny them. Defendant USAT's letter of admission is dated 21 June 2017.

**c.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 c. and, therefore, deny them. Defendant USAT's letter of admission is dated 19 July 2017.

**d.** Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 d. and, therefore, deny them. Defendant USAT's letter of admission is dated 01 May 2017.

27

**e.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 e. and, therefore, deny them. Defendant USAT's letter of admission is dated 12 September 2017.

**f.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 f. and, therefore, deny them. Defendant USAT's letter of admission is dated 01 May 2018.

**g.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 g. and, therefore, deny them. Defendant USAT's letter of admission is dated 17 April 2018.

**h.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 h. and, therefore, deny them. Defendant USAT's letter of admission is dated 05 January 2018.

**i.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 i. and, therefore, deny them. Defendant USAT's letter of admission is dated 01 May 2018.

**j.**  Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 40 j. and, therefore, deny them. Defendant USAT's letter of admission is dated 05 January 2018.

41.  Denied. The mailing address where Defendant USAT received mail is stated on the letterhead. Further denied as an admission letter would have the signature block of Defendant Tulp, but Defendant Tulp signed none of the letters of admission.

**42.** Denied. Defendants are without information sufficient to form a belief regarding the truth of the allegations in paragraph 42 and, therefore, deny them as the "Metropolitan Innovative Group" was never associated with Defendants. Defendants were unaware that Defendant Ortiz chose to receive mail for the "Metropolitan Innovative Group" at the same post office box number as Defendant USAT. Defendant USAT did not control where "Metropolitan Innovative Group" received mail and Defendant USAT collected no mail posted to "Metropolitan Innovative Group."

**43.** Denied. Students of Defendant USAT were eligible to take USMLE Step 1 and the examination of the medical board of Puerto Rico provided the students were academically qualified to take those examinations. Being a medical student of Defendant USAT did not prevent a student from taking those examinations. If a student was prevented from taking those examinations, then the cause was ECFMG's policy change in August 2018. A student group, not Defendants including Defendant USAT, organized the "White Coat Ceremony" and conducted the ceremony at the Teatro Municipal de Cayey. Defendant Tulp, recovering from back surgery, reluctantly attended because of the intense pressure to do so Defendant Ortiz applied.

**44.** Denied. Plaintiffs, applicants to Defendant USAT, were asked on their applications how the applicants planned to finance their medical educations. The EdMed loan from SouthEast Bank was not always an option. Not all students opted to assume an interest-bearing bank loan, because Defendant USAT directly offered to students an interest-free option through Defendant USAT's payment-plan process. SouthEast Bank required co-signers for students who alone could not qualify for the

29

EdMed loan. The EdMed loan was a student loan from a private lender, SouthEast Bank, only for education, not other, purposes and SouthEast Bank did what other lenders of student loans did: SouthEast Bank issued the loans to the institution, Defendant USAT, and Defendant USAT would then submit any tuition overage intended for accommodation, books, and other necessary supplies directly to the medical student, which USAT always did. See Defs' Ex. A, Cancelled Checks of Loan Proceeds Refunds. Defendant USAT could not refund some of the loan funds to three Plaintiffs because Plaintiffs instituted this lawsuit before Defendant USAT could ask Plaintiffs how they wished Defendant USAT to disburse the funds. Also, three Plaintiffs owe funds to Defendant USAT. Defendant USAT allowed, but did not encourage, students or applicants to assume any loans from a specific lender. Defendant USAT always worked with students on tuition payment issues, including merit scholarships when a student passed the USMLE on the first attempt, or other forms of excellence in scholarship. Defendant USAT tried to limit the amount of an EdMed loan from SouthEast Bank to a medical student of Defendant USAT to $60,000.00. SouthEast Bank, however, would loan up to $250,000.00 to a medical student.

    **a.**   Denied. Plaintiff Blasco-Jusino applied for and assumed interest-bearing student loans in the amount of $120,000.00, not $60,000.00, as Plaintiff alleges. Defs' Ex. A, pages 9-15; ECF No. 78-3, pages 20-45. Plaintiff paid $21,470.00 in tuition to Defendant USAT. Plaintiff failed to state to Defendant USAT how Plaintiff wished Defendant USAT to disburse $26,595.00. Defendant USAT refunded to

30

Plaintiff $72,630.00. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

     **b.** Denied. Plaintiff Prosper-Crespo applied for and assumed an interest-bearing student loan in the amount of $45,000.00. Defs' Ex. A, pages 16-20. Plaintiff paid $22,670.00 in tuition to Defendant USAT. Defendant USAT refunded to Plaintiff $23,055.00. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

     **c.** Denied. Plaintiff Rosado Villafañe applied for and assumed an interest-bearing student loan in the amount of $50,000.00. Defs' Ex. A, pages 21-26. Plaintiff paid $19,115.00 in tuition to Defendant USAT. Defendant USAT refunded to Plaintiff $31,010.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

31

**d.** Denied. Plaintiff Torres-Colon applied for and assumed an interest-bearing student loan in the amount of $38,000.00. Defs' Ex. A, pages 27-31. Plaintiff paid $16,915.00 in tuition to Defendant USAT. Plaintiff owes Defendant USAT $5.955.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

**e.** Denied. Plaintiff Gomez-Frontera applied for and assumed an interest-bearing student loan in the amount of $45,000.00. Defs' Ex. A, pages 32-36. Plaintiff paid $19,825.00 in tuition to Defendant USAT. Plaintiff failed to state to Defendant USAT how Plaintiff wished Defendant USAT to disburse $6,880.00. Defendant USAT refunded to Plaintiff $18,420.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

**f.** Denied. Plaintiff de Jesus-Ureña applied for and assumed an interest-bearing student loan in the amount of $45,000.00. Defs' Ex. A, pages 41-45. Plaintiff paid $13,300.00 in tuition to Defendant USAT. Defendant USAT refunded to Plain-

tiff $32,425.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

g.   Denied. Plaintiff Nieves-Rivera applied for and assumed an interest-bearing student loan in the amount of $45,000.00. Defs' Ex. A, pages 46-49. Plaintiff paid $12,810.70 in tuition to Defendant USAT. Plaintiff failed to state to Defendant USAT how Plaintiff wished Defendant USAT to disburse $7,400.00. Defendant USAT refunded to Plaintiff $24,915.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

h.   Denied. Plaintiff Vazquez Oliveras applied for and assumed an interest-bearing student loan in the amount of $35,000.00. Defs' Ex. A, pages 50-54. Plaintiff paid $13,695.00 in tuition to Defendant USAT. Plaintiff owes Defendant USAT $4,000.00. Plaintiff never applied to take the examinations as Plaintiff alleges. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic

33

credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

i.   Admitted that neither Plaintiff Peña-Torres nor Plaintiff Rodriguez-Fernandez assumed student loans.

j.   Denied. Plaintiff Peña-Torres paid $21,075.00 in tuition to Defendant USAT. Defs' Ex. A, pages 5-8. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

k.   Denied. Plaintiff Rodriguez-Fernandez paid $3,925.00 in tuition to Defendant USAT. Defs' Ex. A, pages 37-40. Plaintiff owes Defendant USAT $11,395.00. The academic work Plaintiff completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024. Plaintiff discontinued studying at Defendant USAT and did not graduate from Defendant USAT.

45.   Admitted to the extent that Defendant USAT uses the banking system in the United States, including Puerto Rico. Denied is the implication that using the banking system in the United States, including Puerto Rico, for business purposes establishes mail fraud or wire fraud or a pattern of racketeering activity. Defendants

34

state further ECFMG's policy change in August 2018 caused any harm Plaintiffs incurred. The academic work Plaintiffs completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit, if any, the institution will accept. Graduates of Defendant USAT were eligible to take USMLE Step 1 until 2024.

46. Admitted to the extent that Defendant USAT uses the banking system in the regular course of business in the United States, including Puerto Rico. Denied is the implication that using the banking system in the United States, including Puerto Rico, for business purposes establishes mail fraud, wire fraud, or a pattern of racketeering activity.

**C. ECFMG's discovery of USAT's False Representations to ECFMG of USAT's Enterprise, Conduct and Pattern of Racketeering Activity and the Plaintiffs' Injury**

47. Denied. ECFMG failed to identify the source of the allegation that ECFMG created and Plaintiffs subsequently adopted. ECFMG found no "branch campus" or "campus" in Florida operated by Defendant USAT as ECFMG President Dr. William W. Pinsky testified on 6 February 2019. ECFMG continues to fail to present proof of its claim that Defendant USAT operated a "branch campus" or "campus" in Florida.

48. Denied. Defendant USAT's campus is in Montserrat. What Defendant USAT allegedly did in Florida is irrelevant to Defendant USAT conducting medical education in Puerto Rico. Plaintiffs omit the fruitless 2017 e-mail correspondence between Scott Mealey and the Florida Department of Education. Dissatisfied with this out-

35

come, ECFMG declared a new rule in August 2018 that ECFMG could impose or not

against a medical school–this is far outside the limits of what ECFMG has stated is

ECFMG's purpose of checking the credentials of international medical graduates.

Rather, this activity is ECFMG acting as a type of unregulated, unrecognized ac-

crediting body, a purpose for which ECFMG was not constituted. Caribbean medical

schools conduct medical classes and clinical training in the United States and

ECFMG has not punished those schools. Further, ECFMG views disfavorably what

ECFMG perceives as the proliferation of medical schools in the Caribbean that

many medical students born in the United States attend. Shiffer, Boulet, Cover, and

Pinsky, *Advancing the Quality of Medical Education Worldwide: ECFMG's 2023*

*Medical School Accreditation Requirement*, 105 J. Med. Reg. No. 4, 8, 11 (2019).

49.    Denied. Defendant Tulp responded to Scott Mealey and reminded Mr.

Mealey that Defendant USAT's license from the Government of Montserrat, which

is also the accrediting authority of Defendant USAT, allowed Defendant USAT to

establish off-campus lecture and administrative sites as needed. Further, this is ir-

relevant to Defendant USAT conducting medical education in Puerto Rico.

50.    Denied. The Florida Department of Education's lack of stating to ECFMG

that Defendant USAT was violating a Florida statute confirms that Defendant

USAT was not violating a Florida statute. What ECFMG alleges Defendant USAT

did in Florida is irrelevant to Defendant USAT conducting medical education in

Puerto Rico. Further, ECFMG President William Pinsky, MD, testified on 6 Febru-

36

ary 2019 that ECFMG itself never found that Defendant USAT had established a "campus" or "branch campus" in Florida.

**51.** Admitted. Mr. Mealey has failed to respond to Defendant Tulp.

**52.** Denied. A site is not a "campus" or "branch campus;" and Defendant USAT operated within the bounds of the license issued to Defendant USAT by the accrediting authority, the Government of Montserrat in 2003. Defendant USAT is without knowledge that any employee or agent of ECFMG ever visited Defendant USAT's campus in Montserrat as it is not within the purview of ECFMG to visit the campuses of international medical schools. Further, this is irrelevant to Defendant USAT conducting medical education in Puerto Rico.

**53.** Denied. Plaintiffs adopt ECFMG's correspondence. Institutions, including Defendant USAT, sometimes require a medical student to pass a proctored pre-USMLE before proceeding to clinical training and to help the medical student prepare for USMLE Step 1. Medical students have the option of taking the pre-USMLE under a proctor of Defendant USAT or a proctor the medical student chose at a location convenient to the medical student, such as a public library with internet access or a recognized testing site, which is the same process by which the USMLE is administered.

ECFMG conducted an internal review of the affidavits ECFMG allegedly received. ECFMG never sent an ECFMG reviewer to consult Defendant USAT. ECFMG allegedly sent blank affidavit forms to medical students and threatened to seek to have medical students charged with perjury if the medical students supplied

"incorrect" information. To reinforce the threat, ECFMG's Kara Corrado included "JD" after her surname to mislead and intimidate the medical students to believe Ms. Corrado was one of ECFMG's attorneys. Ms. Corrado was not in 2018 and is not now listed as an attorney by the Pennsylvania Supreme Court.

Since 2008, Defendant USAT has been able to deliver primary medical lectures in basic sciences via Defendant USAT's SPOC network; and ECFMG never commented on or inquired about Defendant USAT's system of distance learning. ECFMG states no policy on the means by which an institution, including Defendant USAT, delivers education to its medical students. It is beyond ECFMG's purview to dictate to institutions how to conduct their academic programs, including how institutions deliver education to their medical students. Note, however, that ECFMG claims to verify the credentials of international medical graduates, yet, upon information and belief, ECFMG does not employ one registrar to perform primary source verification of the credentials ECFMG requires international medical graduates to submit to ECFMG.

54. Denied. Defendants are without information sufficient to form a belief regarding the truth of the allegations contained in paragraph 54 and, therefore, deny them as ECFMG never produced copies of the alleged affidavits or requested Defendant USAT confirm or deny the information supplied to ECFMG in these alleged affidavits.

55. Denied. Plaintiffs downloaded 741 pages of documents from another case involving Defendant USAT and ECFMG, wherein Defendant USAT sued for relief

from the harm ECFMG caused directly to USAT and, at most, derivatively to the medical students of the College of Medicine of Defendant USAT. Plaintiffs attempted to use the 741 pages as exhibits to support Plaintiffs' untimely filed response to Defendant USAT's motion for summary judgment. Nowhere in those 741 pages are found these 300 affidavits that allegedly exist. Yet, Plaintiffs rely on evanescent documents Plaintiffs do not know the contents of, do not possess, and cannot produce, because ECFMG never produced these alleged documents, to allege that Defendant USAT has committed fraud and engaged in a pattern of racketeering.

56. Denied. For the sake of argument, students of Defendant USAT supplied information to Defendant USAT when students applied to attend Defendant USAT. Years later, students could give ECFMG different information from what those students stated about the same subject to Defendant USAT because students simply forgot. So, Defendant Tulp, quoting what the applicant, later student, stated to Defendant USAT, supplied to ECFMG information student had forgotten student stated years before; and student forgetfulness, not fraud, more likely explains discrepancies in student answers, given years apart. Again, however, this is compounding speculation as Plaintiffs rely on documents Plaintiffs allege exist, and Plaintiffs have not produced these alleged documents. Yet, Plaintiffs rely on evanescent documents Plaintiffs do not know the contents of, do not possess, and cannot produce, because ECFMG never produced these alleged documents.

57. Denied. ECFMG did not supply such a request to Defendant USAT. No Plaintiff was qualified by 31 December 2018 to take USMLE Step 1 as no Plaintiff

had completed the basic sciences required to be completed before taking USMLE Step 1. ECFMG changed ECFMG's policy in August 2018. From inception of Defendant USAT on 26 September 2003, or ECFMG's inception in 1956, ECFMG showed no interest in where a foreign or international medical student physically attended a medical school lecture; and ECFMG never required that such a student only attend a medical school lecture on the grounds or at the "campus" of that foreign medical school. Basic sciences in medical education are constant and, axiomatically, do not change depending on the country in which, or the ship on which, the medical student learns those basic sciences. Students of foreign medical schools who wish to practice in the United States, however, complete their clinical training in the United States. In October 2018, ECFMG officially asserted ECFMG's August 2018 policy change against Defendant USAT. Thus, until October 2018, it was never a requirement that ECFMG could choose to apply that students attend instruction while physically on the island of Montserrat, as Defendant USAT has been able to deliver lectures since 2008 via Defendant USAT's SPOC network.

58.   Denied. Plaintiffs imply Plaintiffs were not eligible to take USMLE Step 1 because Defendant USAT violated ECFMG's new, arbitrary, and capricious policy established in August 2018. No Plaintiff satisfied the following criteria. To be eligible to take USMLE Step 1, Plaintiffs had to be currently enrolled in medical school both at the time that Plaintiffs applied and on Plaintiffs' test days, Plaintiffs had to have completed at least two years of medical school, and Plaintiffs had to have com-

**40**

pleted the basic medical science component of the medical school curriculum by the beginning of Plaintiffs' eligibility periods.

59. Denied. Defendant USAT or other Defendants did not advise Plaintiffs to lie to ECFMG about any matter. ECFMG posted negative information about Defendant USAT on Defendant USAT's webpage that WDOMS maintains on the WDOMS website before ECFMG had concluded any investigation of Defendant USAT and over two months before Defendant USAT appeared at a severely truncated hearing. Defendant Konyk conducted the telephone conference on 24 September 2018 and guided students who had questions about completing documents ECFMG had sent to students, if the students chose to complete the documents. Defendant Konyk reminded students that a portion of the basic sciences lecture conferences occurred on-line and a portion of those conferences were conducted at lecture conference sites in the United States because of safety concerns caused by volcanic activity on Montserrat and recent hurricanes in the Caribbean.

60. Denied. Defendant USAT communicated to Plaintiffs all information ECFMG gave to Defendant USAT, though this was almost no information. To the extent that any Plaintiff sent the same e-mail multiple times over a short period to Defendant USAT or to any Defendant, then Defendant USAT or any Defendant would only have responded to such e-mail if Defendant USAT or any Defendant had new information to communicate to any Plaintiff. Further, no Plaintiff had met the criteria to be eligible to take USMLE Step 1.

61.     Denied. Defendant USAT did not advise Plaintiffs not to comply with requests from ECFMG. Defendant USAT advised Plaintiffs who asked to speak with an attorney to contact Defendant USAT's attorneys as those attorneys offered to assist Plaintiffs as Plaintiffs requested. No Plaintiff, however, contacted Defendant USAT's attorneys to mitigate any problem Plaintiffs perceived ECFMG's change of policy in August 2018 caused. ECFMG, when contacted by medical students of Defendant USAT, advised those medical students that if those medical students could not graduate before by 31 December 2018, then to transfer to another school.

62.     Admitted. However, ECFMG ceased in September 2018 effectively to communicate with Defendant USAT. Further, it was each Plaintiff's duty to satisfy the criteria required to take USMLE Step 1; and Defendant Konyk, Defendant Tulp or Defendant Baldwin could not satisfy the criteria required to take USMLE Step 1 in the stead of each Plaintiff. To be eligible to take USMLE Step 1, Plaintiff had to be currently enrolled both at the time that Plaintiff applied and on Plaintiff's test day, Plaintiffs had to have completed at least two years of medical school, and Plaintiffs had to have completed the basic medical science component of the medical school curriculum by the beginning of each Plaintiff's eligibility period. No Plaintiff satisfied these criteria.

63.     Denied. Defendant USAT sued ECFMG because ECFMG directly caused harm to Defendant USAT and because ECFMG's action only indirectly harmed the medical students of the College of Medicine of Defendant USAT.

42

**64.** Denied. No Plaintiff had satisfied that criteria to take USMLE Step 1. Medical graduates of Defendant USAT who graduated by 31 December 2018 can take USMLE Step 1 through the year 2024. Defendant USAT registered to conduct medical education in Puerto Rico and ECFMG did not claim Defendant USAT was violating the new policy ECFMG established in August 2018 when Defendant USAT conducted medical education in Puerto Rico. ECFMG has not claimed Defendant USAT violated ECFMG policy by the distance learning Defendant USAT accomplishes through Defendant USAT's SPOC network. Defendant USAT provided medical education to medical students at much lower tuition rates than other Caribbean medical schools and extremely low tuition rates compared with medical schools in the United States. ECFMG itself has stated that the United States requires more medical doctors to provide care, while ECFMG works at cross-purposes to limit the number of physicians who emigrate to the United States. This is not for safety or because the foreign-educated physicians are less capable than their U.S.-educated counterparts as all physicians must pass USMLE, but to limit the competition U.S.-educated physicians face in the healthcare marketplace. Defendant USAT registered to conduct medical education in Puerto Rico and ECFMG did not claim Defendant USAT was violating the new policy ECFMG established in August 2018.

**65.** Denied. Plaintiffs have mitigated no damages Plaintiffs' allege as few medical schools in the United States accept transfer credits from international or foreign medical schools. No Plaintiff satisfied the criteria to take USMLE Step 1 by 31 December 2018. Plaintiffs supply no documents to show Plaintiffs enrolled in any oth-

43

er medical school. ECFMG would count as valid the academic work Plaintiffs completed through 31 December 2018 as medical students at Defendant USAT. The representations Defendant USAT made to applicants who became medical students of Defendant USAT were true during the tenure of all Plaintiffs' tenures at Defendant USAT and those representations were true through 31 December 2018, based on ECFMG's August 2018 policy change. Medical students who transferred from Defendant USAT needed official transcripts from Defendant USAT to transfer to other medical schools such as these medical schools in the Caribbean, with some of those Caribbean medical schools also operating in the United States: American University of the Caribbean; University of Health Sciences Antigua; International University of Health Sciences in St. Kitts; JFK University School of Medicine in Curaçao; Caribbean Medical University in Curaçao; American International School of Medicine in Guyana and State of Georgia, United States of America; Georgetown American School of Medicine in Guyana and State of Georgia, United States of America; Washington University of Health and Science in Belize; St. James University School of Medicine Anguilla; and All Saints School of Medicine, Dominica.

66. Denied. Plaintiffs received a "valid medical education" as ECFMG would count as valid the academic work Plaintiffs completed through 31 December 2018 as medical students at Defendant USAT. The academic work Plaintiffs completed at Defendant USAT by 31 December 2018 is transferable to another institution, but another institution decides what academic credit the institution will accept. By "USAT," Plaintiffs mean Defendant USAT and Defendant USAT would have oper-

44

ated through Defendant Tulp, Defendant Konyk, and Defendant Baldwin to accomplish what Plaintiffs allege. Further, Plaintiffs allege the funds Defendant USAT received are racketeering activity as mail fraud and wire fraud. Plaintiff name jointly as Defendants, USAT, the enterprise, and "the USAT Officers." 3d Am. Compl., ¶ 3. Thus, Plaintiffs allege the racketeering activity and Defendant USAT, the enterprise, and other Defendants are merged, an implausible allegation under *United States v. Turkette*, 452 U.S. 576, 583 (1981). *See* Plaintiffs' RICO Case Statement, ECF No. 123-1, page 28.

67. Denied. To be eligible to take USMLE Step 1, Plaintiffs had to be enrolled both when Plaintiffs applied and on Plaintiffs' test days, Plaintiffs had to have completed at least two years of medical school, and Plaintiffs had to have completed the basic medical science component of the medical school curriculum by the beginning of each Plaintiff's eligibility period. No Plaintiff satisfied these criteria. Further, rather than assuming an interest-bearing private student loan, Defendant USAT offered Plaintiffs, medical students, the choice of the interest-free payment plan process Defendant USAT conducted. By "USAT," Plaintiffs mean Defendant USAT and Defendant USAT would have operated through Defendant Tulp, Defendant Konyk, and Defendant Baldwin to accomplish what Plaintiffs allege. Further, Plaintiffs allege the funds Defendant USAT received are racketeering activity as mail fraud and wire fraud. Plaintiffs name jointly as Defendants, [Defendant] USAT, the enterprise, and "the USAT Officers." 3d Am. Compl., ¶ 3. Thus, Plaintiffs allege the racketeering activity and Defendant USAT, the enterprise, and other Defendants are

merged, an implausible allegation under *United States v. Turkette,* 452 U.S. 576, 583 (1981). *See* Plaintiffs' RICO Case Statement, ECF No. 123-1, page 28.

68.   Denied. Defendant USAT provided a "valid medical education" to Plaintiffs during Plaintiffs tenure at Defendant USAT. Defendant USAT nor other Defendants as employees, "USAT Officers," "officials of the medical school," or "USAT Officials" acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, including communicating with applicants or medical students, did not falsely represent any facts to Plaintiffs. What Defendant USAT and other Defendants communicated to Plaintiffs was that medical students who successfully completed their basic sciences would be academically qualified to take USMLE Step 1. The activities Plaintiffs describe are the "USAT Officials" acting on behalf of the Medical College of Defendant USAT and carrying out their regular duties for the enterprise, USAT. Employees, "USAT Officers," "officials of the medical school," or USAT Officials" acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise and claiming those activities are distinct, and the basis for a RICO claim, is implausible. *Bessette v. Avco Fin. Serv. Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) (citations omitted).

69.   Denied. If "other students" exist for purposes of this litigation, then several hundred medical graduates of Defendant USAT have been accepted into post-graduate training in over 40 jurisdictions in the United States, including Puerto Rico, from 2003 to the present. No Plaintiff was qualified by 31 December 2018 to take

USMLE Step 1 as no Plaintiff had completed the basic sciences required to be completed before taking USMLE Step 1. Defendant USAT did provide Plaintiffs "a valid medical education," each Plaintiff is individually responsible for the use to which each Plaintiff put Plaintiff's medical education. Further, whether Plaintiffs are now in 2022, or soon will be in 2023, not be able to take USMLE Step 1 is irrelevant as Plaintiffs could have completed the basic sciences during the last four years.

70. Denied. No Plaintiff was qualified by 31 December 2018 to take USMLE Step 1 as no Plaintiff had completed the basic sciences required to be completed before taking USMLE Step 1. Further, whether Plaintiffs are now in 2022, or soon will be in 2023, not be able to take USMLE Step 1 is irrelevant as Plaintiffs could have completed the basic sciences during the last four years.

71. Denied. Plaintiffs imply Defendant USAT was not "licensed and certified." From inception on 26 September 2003, Defendant USAT was and is now licensed to conduct a program of medical education and was approved to do so during the entire duration of Plaintiffs enrollment, from 2017 through 31 December 2018, as medical students at Defendant USAT.

72. Denied. No "other RICO Victims" exist. Plaintiffs reviewed the materials Plaintiffs requested from Defendant USAT and Plaintiffs elected to apply to and attend medical school at Defendant USAT. The representations Defendant USAT made to Plaintiffs were all true at the time Defendant USAT made those representations. All medical school students who graduated from Defendant USAT on or before 31 December 2018 were deemed qualified to take the steps of the USMLE and

47

the examination administered by the medical board of Puerto Rico. To the best of Defendant Tulp's knowledge, all graduates of Defendant USAT who have applied to take the examination administered by the medical board of Puerto Rico have been approved.

73.    Denied. Defendant USAT is licensed with the authority to grant MBBS and MD degrees from 26 September 2003 to the present. All representations of any type Defendant USAT made to Plaintiffs were true when the representations were made and those representations were made before ECFMG changed its policy in August 2018. Medical students who graduated from Defendant USAT on or before 31 December 2018 successfully obtained their medical education from qualified, seasoned professors at a reasonable tuition cost.

74.    Denied. A satellite is not a "'satellite' school." All medical school students who graduated from Defendant USAT on or before 31 December 2018 were deemed qualified to take the steps of the USMLE and the examination administered by the medical board of Puerto Rico.

75.    Denied. Defendant USAT would have accepted a payment from a medical student through any conventional means the medical student, Plaintiff, chose. That Defendant USAT has an administrative office in Colorado and Defendant USAT has a bank account where it deposits funds and such activity does not constitute a "scheme" to commit mail fraud or wire fraud as receiving funds and disbursing funds is a regular business practice.

48

**76.** Denied. Defendant USAT accepts payments from medical students through any conventional means medical students, Plaintiffs, chose or choose. That Defendant USAT has an administrative office in Colorado and Defendant USAT has a bank account where it deposits funds and such activity does not constitute mail fraud or wire fraud as receiving funds and disbursing funds is a regular business practice. The Government of Montserrat licensed Defendant USAT as a medical school in 2003 and the Government of Montserrat is also the accrediting authority of Defendant USAT. Defs' Answer Ex. C, page 59. ECFMG's policy change in August 2018 directly caused harm to Defendant USAT, not some act by Defendant USAT.

**77.** Denied. Defendant USAT has not engaged in a "scheme." Private lenders of student loans, including SouthEast Bank, send the loan to the institution, Defendant USAT, not the international medical student, Plaintiffs, to ensure the funds are used to pay tuition, costs, and fees before the remainder is returned to the lender or disbursed to the medical student. Receiving funds by mail or electronic funds transfer is not an act of racketeering, it is a business practice.

**78.** Denied. Defendant USAT is licensed and accredited by the Government of Montserrat. Defendant USAT was unable to be accredited by CAAM-HP because the Government of Montserrat did not sign the agreement with CAAM-HP to be an outside accrediting agency of Defendant USAT, the medical school whose main campus is on Montserrat. Defendant USAT offered medical students the choice of the interest-free payment plan process Defendant USAT conducted or the Ed Med

loan, the interest-bearing private medical student loan from SouthEast Bank. Defendant USAT allowed medical students to use such bank loans only as a last resort and only if the student requested to use such a bank loan. Even then, Defendant USAT tried to limit the amount of the loan to $60,000, though SouthEast Bank would allow much larger amounts, up to a cumulative total of $250,000.00 per student. The drawback of the interest-free loan from Defendant USAT is that the eight Plaintiffs who instead chose the EdMed interest-bearing bank loan would not have received from $18,420.00 to $72,630.00, a total of $247,185.00, in student loan proceeds refunded to those eight Plaintiffs. Defs' Ex. A, summarized at pages 9, 16, 21, 27, 32, 41, 46, and 50.

79. Denied. Defendant USAT did not fabricate certain costs and expenses. Defendant USAT advised Plaintiffs of the tuition, fees, and costs in the fee schedule and letters of admission each Plaintiff received from Defendant USAT. Defendant USAT collected no amount greater from any Plaintiff than what each Plaintiff owed Defendant USAT in the bargained-for exchange for the medical education each Plaintiff received from Defendant USAT.

80. Denied. Defendants have not committed fraudulent acts. Plaintiffs have suffered no harm or damages other than the harm or damages Plaintiffs have failed to mitigate. If Plaintiffs have suffered any harm or damages, then ECFMG's policy change in August 2018 is the cause.

81. Denied. It is inappropriate to use *respondeat superior* to accomplish indirectly what 18 U.S.C. § 1962(c) directly denies as Congress desired to insulate legiti-

mate businesses from liability. *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 33 (1st Cir. 1986). This flawed approach is no more than a recasting of the argument for direct liability. *Id*. Plaintiffs make the implausible argument that Defendant USAT is vicariously responsible for the acts of Defendants.

82.    Denied. Defendant USAT nor other Defendants as employees, or "USAT Officers" or "officials of the medical school," acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, including communicating with applicants or medical students, did not fraudulently induce Plaintiffs to attend the College of Medicine of USAT. Rather, what Defendant USAT and Defendants communicated to applicants and students was true when the information was communicated to the applicants and students.

83.    Denied. Plaintiffs allege Defendant USAT and the other Defendants are merged into one entity. Defendants as employees, or "USAT Officers" or "officials of the medical school," acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise. *Bessette v. Avco Fin. Serv. Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) (citations omitted). Defendants only carried on their duties as officers or employees or contractors of Defendant USAT and that is an implausible basis for a RICO claim. Defendant USAT did comply with ECFMG policy; ECFMG changed its policy in August 2018. Defs' Answer Ex. B, page 56.

84.    Denied. The only company or corporate entity in this litigation that Plaintiffs allege harmed Plaintiffs is Defendant USAT. Defendant USAT does not have a par-

ent company or affiliated company, including Company ABC, and Plaintiffs have no grounds to assert such an entity exists.

85.   Denied. This allegation is meaningless. Mr. Feldesman was a defendant in a case by Plaintiffs' counsel, *Concilio de Salud Integral de Loiza, Inc. v. Feldesman, Tucker, Leifer, Fidell, LLP et al.*, No. 3:17-cv-01410-DRD (D. P.R. filed Mar. 29, 2017). Defendant USAT delivered the medical education for the tuition, fees, and costs for which Plaintiffs bargained.

86.   Denied. Defendants deny the allegations in this paragraph. Defendant USAT will determine whether an insurance policy exists; and, if an insurance policy does exist, then the insurance policy shall speak for itself.

87.   Denied that Defendants are liable to Plaintiffs for any monetary damages characterized in any form in paragraph 6; including Plaintiffs' claim for emotional damages in this paragraph, 87, and in paragraphs 4, 88, 100, and 110, under Plaintiffs' RICO claim as emotional damages are unavailable and are, therefore, implausible relief under binding precedent. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted).

88.   Denied that Defendants are liable to Plaintiffs for any monetary damages characterized in any form in paragraph 6; including Plaintiffs' claim for emotional damages in this paragraph, 88, and in paragraphs 4, 87, 100, and 110, under Plaintiffs' RICO claim as emotional damages are unavailable and are, therefore, implausible relief under binding precedent. *See Van Schaick v. Church of Scientology of*

*California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted). Defendants further deny having violated Plaintiffs' RICO claims and Defendants are, therefore, not liable for treble damages under 18 U.S.C. § 1964(c) and interest.

89.    Denied as Plaintiffs state no ground upon which to demand rescission of the contracts between each Plaintiff and Defendant USAT because Defendant USAT delivered the medical education to each Plaintiff in exchange for tuition Plaintiffs paid, including the three Plaintiffs who still owe tuition to USAT for the medical education delivered to those three Plaintiffs, Torres-Colon, Vazquez Oliveras, and Rodriguez-Fernandez.

90.    Denied as Defendants have not caused harm to Plaintiffs and Defendants are, therefore, not liable to Plaintiffs for damages. Plaintiffs have caused all damages to themselves as Plaintiffs have mitigated no damages Plaintiffs have caused.

## FIRST CAUSE OF ACTION

## RICO ACT

91.    Defendants deny each allegation Plaintiffs re-allege in this paragraph as if fully set forth in this paragraph.

92.    Denied. Any harm or injury Plaintiffs allegedly incurred is due to ECFMG's policy change in August 2018 and ECFMG officially asserted that changed policy against Defendant USAT in October 2018. ECFMG, founded in 1956, changed its policy 62 years later, in 2018. Defs' Answer Ex. B, page 56. ECFMG recognizes as valid the academic credit medical students earned at Defendant USAT through 31

53

December 2018. Defendant USAT delivered Defendant USAT's part of the bargained-for exchange, medical education, to Plaintiffs in exchange for Plaintiffs paying tuition, costs, and fees to Defendant USAT. Contrary to Plaintiffs' contention, Several hundred students have graduated from Defendant USAT since inception in 2003, completed the steps of the USMLE, completed medical residencies, and obtained unrestricted registrations to practice medicine in multiple jurisdictions in the United States, Puerto Rico, and abroad. All representations were true when Defendant USAT made those representations to Plaintiffs when Defendant USAT admitted Plaintiffs as students to the College of Medicine of Defendant USAT.

93.     Denied. ECFMG changed ECFMG's policy in August 2018 and asserted that policy against Defendant USAT in October 2018, after Plaintiffs became medical students at Defendant USAT. The activities Plaintiffs describe are the "USAT Officers" acting on behalf of the Medical College of USAT and carrying out their regular duties for the enterprise, Defendant USAT, which includes communicating with students. Such communications were not false representations to Plaintiffs when Plaintiffs were students. Employees, or "USAT Officers" or "officials of the medical school," acting solely in the interest of their employer, Defendant USAT, carrying on the regular affairs of the corporate enterprise, are not distinct from that enterprise. *Bessette v. Avco Fin. Serv. Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) (citations omitted). Claiming those activities are distinct, and grounds for a RICO claim, is implausible.

94.     Denied. Plaintiffs allege Defendant USAT is the enterprise in 3d Am. Compl. ¶ 3 2). This is implausible under *Arzuaga-Collazo v. Oriental Federal Sav. Bank*,

54

913 F.2d 5, 6 (1st Cir. 1990) (construing 18 U.S.C. § 1962(c)). "Plaintiffs allege that the pattern of racketeering activity and the enterprise have merged into one entity with the mainland United States." Plaintiffs' RICO Case Statement, ECF No. 123-1, page 28. This is implausible under *United States v. Turkette*, 452 U.S. 576, 583 (1981).

**95.** Denied. All representations were true when they were made by Defendant USAT to Plaintiffs. ECFMG changed ECFMG's policy in August 2018 and asserted that policy against Defendant USAT in October 2018, after Plaintiffs became medical students at Defendant USAT. Denied that Defendant USAT made false representations "for approximately a decade" because, if this were true, then ECFMG would have made ECFMG's ruling retroactive to 2008, rather than prospective through 31 December 2018. Plaintiffs allege a decade of "fraudulent actions" as no facts exist to establish either closed-ended continuity required under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989); *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19-20 (1st Cir. 2000); or open-ended continuity required under *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 295 (D. P.R. 2015) (quoting *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991))). Further, Plaintiffs admit in 3d Am. Compl. ¶ 59 that the period begins not in 2008, but rather September 2018. Plaintiffs know of ECFMG's policy change and that ECFMG's policy change is the but-for cause and the proximate cause of any harm or injuries Plaintiffs incurred and it is implausible that Defendant USAT caused harm

55

or injuries to Plaintiffs. *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021) (citations omitted). Plaintiffs themselves filed ECFMG's policy change and failed to notify the Court of the policy change as so notifying the Court would vitiate Plaintiffs' RICO claim. ECF No. 78-19, page 66.

96. Denied. Plaintiffs admit in 3d Am. Compl. ¶ 59 that the period begins not in 2008, but rather September 2018. Thus, Plaintiffs state no facts to establish either closed-ended continuity required under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989); *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19-20 (1st Cir. 2000); or open-ended continuity required under *Puerto Rico Clean Energy Corp. v. Hatton-Gotay*, 115 F. Supp. 3d 288, 295 (D. P.R. 2015) (quoting *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (quoting *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 45 (1st Cir. 1991))).

97. Denied. All representations were true when they were made by Defendant USAT to Plaintiffs. ECFMG changed ECFMG's policy in August 2018 and asserted that policy against Defendant USAT in October 2018, after Plaintiffs became medical students at Defendant USAT. Denied that Defendant USAT made false representations "for approximately a decade" because, if this were true, then ECFMG would have made ECFMG's ruling retroactive to 2008, rather than prospective through 31 December 2018. Further, Plaintiffs cite only one bank, not "Banks" in this 3d Am. Compl.: SouthEast Bank. SouthEast Bank offered EdMed loans to international medical students from 2017 through approximately 15 August 2018. Not all students opted to assume an interest-bearing bank loan as Defendant USAT di-

56

rectly offered to students an interest-free option through Defendant USAT's payment-plan process. The drawback of the interest-free loan from Defendant USAT is that the eight Plaintiffs who instead chose the interest-bearing bank loan would not receive from $18,420.00 to $72,630.00, a total of $247,185.00, in student loan proceeds refunded to those eight Plaintiffs. Defs' Ex. A, summarized at pages 9, 16, 21, 27, 32, 41, 46, and 50.

**98.** Denied. This legal conclusion requires no response.

**99.** Denied. This legal conclusion requires no response.

**100.** Denied that Defendants are liable to Plaintiffs for any monetary damages characterized in any form in paragraph 6; including Plaintiffs' claim for emotional damages in this paragraph, 100, and in paragraphs 4, 87, 88, and 110, under Plaintiffs' RICO claim as emotional damages are unavailable and are, therefore, implausible relief under binding precedent. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted). Plaintiffs claim, as they did in their Complaint, Amended Complaint, and Second Amended Complaint, that "economic and emotional damages" are "no less than nine million dollars." Yet, 3d Am. Compl. now names ten Plaintiffs, not the original nine Plaintiffs. Then, what monetary damages did the tenth Plaintiff, Wendoly M. Vazquez Oliveras, suffer? The ten Plaintiffs did not suffer damages of $222,115.00 as Plaintiffs claim in 3d Am. Compl., ¶ 44, and RICO Case Statement, ¶ 5. The ten Plaintiffs did not suffer damages of $393,887.50 as Plaintiffs claim in RICO Case Statement, ¶¶ 4, 15, 16,

17. Rather, the ten Plaintiffs, combined, suffered no damages, but paid to Defendant USAT tuition, fees, and costs of $163,710.70. Defs' Ex. A, summary spread sheet, page 4.

**101.** Denied. Plaintiffs formula to calculate a damage amount for each of the original nine Plaintiffs is:

Tuition and Fees paid to Defendant USAT + a variable amount = $1,000.000.00. The relief of "emotional damages" Plaintiffs seek in this paragraph, 101, and in paragraphs 4, 87, 88, and 110, is implausible under binding precedent, thus no basis exists to treble such non-existent relief for "emotional damages" to $27,000,000.00. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted).

**SECOND CAUSE OF ACTION**

**FRAUDULENT INDUCEMENT, OR ALTERNATIVELY,**

**BREACH OF CONTRACT**

**102.** Defendants deny each allegation Plaintiffs re-allege in this paragraph as if fully set forth in this paragraph.

**103.** Denied. Plaintiffs reviewed the materials Plaintiffs requested from Defendant USAT and Plaintiffs elected to apply to and attend medical school at Defendant USAT. The representations Defendant USAT made to Plaintiffs were all true at the time Defendant USAT made those representations.

58

**104.** Denied. No "other RICO Victims" exist. Plaintiffs reviewed the materials Plaintiffs requested from Defendant USAT and Plaintiffs elected to apply to and attend medical school at Defendant USAT. The representations Defendant USAT made to Plaintiffs were all true when Defendant USAT made those representations. All medical school students who graduated from Defendant USAT on or before 31 December 2018 were academically deemed qualified to take the steps of the USMLE and the examination administered by the medical board of Puerto Rico. To the best of Defendant Tulp's knowledge, all graduates of Defendant USAT who have applied to take the examination administered by the medical board of Puerto Rico have been approved.

**105.** Denied. From inception on 26 September 2003, Defendant USAT was and is now licensed to conduct a program of medical education and was approved to do so during the entire duration of Plaintiffs enrollment, from 2017 through 31 December 2018, as medical students at Defendant USAT.

**106.** Denied. Defendant USAT did not falsely represent costs and expenses. Defendant USAT advised Plaintiffs of the tuition, fees, and costs in the fee schedule and letter of admission each Plaintiff received from Defendant USAT.

**107.** Admitted. Defendant USAT would provide a medical education only to a student Defendant USAT accepted to attend Defendant USAT in exchange for fees, costs, and tuition. Defendant USAT did not guarantee that a medical student would qualify to take the steps of the USMLE as the student must first complete the required academic work and the administrators of USMLE must accept the applica-

tion of the medical student before the administrators of USMLE allow a medical student to take the steps of USMLE. Plaintiffs did receive a portion of a "valid medical education" from Defendant USAT prior to Plaintiffs' personal choices to discontinue their medical studies.

108. Admitted. Defendant USAT advised Plaintiffs of the tuition, fees, and costs in the fee schedule and letters of admission each Plaintiff received from Defendant USAT. Defendant USAT collected no amount greater from any Plaintiff than what each Plaintiff owed Defendant USAT in the bargained-for exchange for the medical education each Plaintiff received from Defendant USAT.

109. Denied that Defendants are liable to Plaintiffs for any damages characterized in any form.

110. Denied that Defendants are liable to Plaintiffs for any monetary damages characterized in any form in paragraph 6; including Plaintiffs' claim for emotional damages of $9,000,000.00 in this paragraph, 110, and in paragraphs 4, 87, 88, and 100, under Plaintiffs' RICO claim as emotional damages are unavailable and are, therefore, implausible relief under binding precedent. *See Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1137 (D. Mass. 1982); *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986) (citations omitted). Defendants are not liable to Plaintiffs for any alleged economic damages.

## THIRD CAUSE OF ACTION

## TORTS DAMAGES

**111.** Defendants deny each allegation Plaintiffs re-allege in this paragraph as if fully set forth in this paragraph.

**112.** Denied. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**113.** Denied. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**114.** Denied. Defendant USAT did not cause any harm Plaintiffs allege. Defendant USAT acted diligently to stop the harm ECFMG's change in policy caused when Defendant USAT sued ECFMG to correct what ECFMG had done. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**115.** Denied. Defendant USAT did not cause any harm Plaintiffs allege. Defendant USAT acted diligently to stop the harm ECFMG's change in policy caused when Defendant USAT sued ECFMG to correct what ECFMG had done. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**116.** Denied. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**117.** Denied. Defendant USAT does not have a parent company or affiliated company, including Company ABC, and Plaintiffs have no grounds to assert such an entity exists. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**118.** Denied. Defendant USAT does not have a parent company or affiliated company, including Company ABC, and Plaintiffs have no grounds to assert such an entity exists. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**119.** Denied. Defendant USAT does not have a parent company or affiliated company, including Company ABC, and Plaintiffs have no grounds to assert such an entity exists. Defendant USAT did not cause any harm Plaintiffs allege. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**120.** Denied. Defendant USAT does not have a parent company or affiliated company, including Company ABC, and Plaintiffs have no grounds to assert such an entity exists. Defendant USAT did not cause any harm Plaintiffs allege. Defendant USAT acted diligently to stop the harm ECFMG's change in policy caused when Defendant USAT sued ECFMG to correct what ECFMG had done. ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**121.** Denied. Plaintiffs fail to state what duty Defendant USAT breached. Further, Defendant USAT did not cause any harm Plaintiffs allege, rather ECFMG's change in policy in August 2018 is the cause of any harm Plaintiffs allege.

**122.** Denied that Defendants are liable to Plaintiffs for any damages characterized in any form.

## FIFTH CAUSE OF ACTION

## INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

**123.** Defendants deny each allegation Plaintiffs re-allege in this paragraph as if fully set forth in this paragraph.

**124.** Defendants deny the allegations in this paragraph. Defendant USAT shall determine whether an insurance policy exists; and, if an insurance policy does exist, then the insurance policy shall speak for itself.

## ATTORNEY'S FEES AND PREJUDGMENT INTEREST

**125.** Defendants deny each allegation Plaintiffs re-allege in this paragraph as if fully set forth in this paragraph.

**126.** Defendants deny the allegations of this paragraph.

**127.** Defendants deny the allegations of this paragraph.

## PRAYER

**1.** Defendants deny the allegations of this paragraph.

**2.** Defendants deny the allegations of this paragraph.

**3.** Defendants deny the allegations of this paragraph.

**4.** Defendants deny the allegations of this paragraph.

**5.** Defendants deny the allegations of this paragraph.

**6.** Defendants deny the allegations of this paragraph.

**7.** Defendants deny the allegations of this paragraph.

**8.** Defendants deny the allegations of this paragraph.

63

**AFFIRMATIVE DEFENSES**

1.      The Third Amended Complaint fails to state a claim upon which relief can be granted.

2.      The Honorable Court lacks subject matter jurisdiction.

3.      Plaintiffs' potential injuries and damages claims are speculative, non-existent, and unavailable under binding precedent interpreting 18 U.S.C. §§ 1961-1968.

4.      Plaintiffs' damages or potential injury claims are grossly exaggerated.

5.      Plaintiffs are not entitled to attorney's fees and costs.

6.      The allegations in the complaint are not contractual in nature.

7.      Plaintiffs failed to comply with their obligation to mitigate damages.

8.      Defendants, at all times, acted according to law and in the good faith performance of its duties.

9.      Plaintiffs are not entitled to punitive damages.

10.     Unjust enrichment.

11.     Plaintiffs are not entitled to compensatory damages.

12.     Lack of causal relationship.

13.     Defendants reserve the right to add or invoke additional affirmative defenses, if warranted, based on continuing investigation, discovery, and trial preparation.

WHEREFORE, Defendants respectfully request that the Court enter judgment for Defendants, against Plaintiffs, hold that Plaintiff take nothing by this action,

64

the Complaint be dismissed with prejudice, and award Defendants such further re-

lief to which Defendants are entitled, such as attorneys' fees and costs.

## CERTIFICATE OF SERVICE

I certify that on December 30, 2022, the above Defendants' Answer to Plaintiffs' Third Amended Complaint was transmitted to be filed no later than December 30, 2022, with the Clerk of Court and Plaintiffs' attorney, Victor M. Rivera-Rios, by electronic service and the electronic service was reported as complete.

Respectfully submitted on December 30, 2022.

s/ Amexis J. Bonilla Nieves
USDC-PR Bar No. 225909
Local Counsel

AJBN LAW
1225 Juan Ponce de Leon, PH
San Juan, PR 00907
ajbnlaw@gmail.com
939-439-0487

s/ Chris Paulsen
Attorney for Defendants
USAT, Tulp, Konyk, and Baldwin
chris@paulsenlaw.com
303-284-9800