Exhibit 32
Date: 05.30.2023
Dep.: Dr. Manuel Ortiz
Reporter: DNBO
Verbatim Reporting

# SouthEast Bank Private Loan Credit Agreement

| Loan Date | Account ID | Loan Number |
|---|---|---|
| 6/19/2017 | XXXX645963-01 | 358 |

| Lender: | SouthEast Bank | School: | University of Science, Arts and Technology |
|---|---|---|---|

**Student Borrower:**
Jose E Blasco Jusino
Urb Playa Del Sur
48 Fragato St.
Guanica, PA 00653

**Lender:** SouthEast Bank
12700 Kingston Pike
Knoxville, TN 37934

**Cosigner:**
Edmundo Jusino
Urb Playa Del Sur
Fragata St #48
Ensenada, PA 00647

**Servicer:** ReliaMax Lending Services
PO Box 91910
Sioux Falls, SD 57109-1910

*(No alterations, scratch outs or white-outs will be accepted on this form.)*

## 1. DEFINITIONS.

In this Private Loan Credit Agreement (the "**Agreement**"), the words "**I**", "**me**", "**mine**", "**my**", mean each person who signs this Agreement as Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

"**Application**" means the application for a Loan submitted by me for this Loan (as applicable).

"**Business Days**" are Monday through Friday, excluding days when a bank in the State of Tennessee is required or permitted to be closed.

"**Capitalized Interest**" or "**Capitalized**" means any interest unpaid as of the date the loan enters repayment and at the conclusion of a deferment or forbearance will be capitalized (added to the principal balance). Interest then begins accruing on the increased principal balance.

"**Current Index**" means the Three-Month London Interbank Offered Rate (LIBOR) referred to as "3 Month LIBOR" as published on The Wall Street Journal's website (or any generally recognized successor method or means of publication) (See Section 9 below for specific information regarding the Index for this Credit Agreement.)

"**Deferment/Forbearance**" means under certain circumstances, you may be eligible to receive a deferment or forbearance that allows you to temporarily postpone or reduce your loan payments.

"**Disbursement Date**" means the date on any Loan check or any date the Lender electronically transmits funds to the Eligible Institution.

"**Disclosure Statement**" means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

"**Eligible Institution**" means the entity set forth above as "School".

"**Interim In-School Deferred Period**" means the time period beginning with the first Disbursement Date, continuing while the Student is attending the Eligible Institution on at least a half-time basis, and ending six (6) months after: (i) the

Student's withdrawal or dismissal from the Eligible Institution; (ii) the Student is no longer attending the Eligible Institution on at least a half-time basis, or (iii) the Student graduates from the Eligible Institution and the student does not enroll in an Internship/Residency program within the six months. If the student enrolls in an Internship/Residency program within six (6) months of graduating from the Eligible Institution, the loan will enter repayment thirty-six (36) months after graduating from the Eligible Institution.

"**Lender**", "**you**" and "**your**" mean SouthEast Bank, or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender and any guarantors/insurers or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

"**Loan**" means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

"**Loan Date**" means the date set forth as 'Disbursement Date".

"**Loan Origination Fee**" means a fee assessed by the Lender for processing a new Loan application. The Loan Origination Fee for this loan is 2.75%.

"**Loan Period**" means the time period specified by the Eligible Institution regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the loan. The Loan Period cannot exceed 12 months.

"**Margin**" means 6.95%.

"**Principal Sum**" or "**Principal Balance**" means the loan amount you borrowed plus any capitalized interest.

"**Repayment Period**" means (i) if Total Deferred is elected for the repayment option during the Interim In-School Deferred Period, the time period beginning after the Interim In-School Deferred Period ends, or (ii) if immediate repayment of principal and interest is elected for the repayment option, the time period beginning within fifty (50) days after the final Disbursement Date and in each case, ending when the Loan is required to be paid in full. The Repayment Period will not exceed twenty (20) years.

## 2. AGREEMENT TO PAY.

To the extent advanced, I agree to pay, to the order of Lender, the principal sum which is the amount disbursed by the Lender and received by the Eligible Institution plus any Loan Fee I owe under Section 8 below ("Origination Loan

Fee"). The Principal Sum will not exceed the lesser of the amount requested by me or the amount approved by the Eligible Institution. I also agree to pay accrued interest as described in Section 9 below (see also Section 10); and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, to the extent permitted by law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

## 3. APPROVAL AND CANCELLATION OF AGREEMENT.

I understand that when you accept my signed Agreement, you are not agreeing to lend me money and I am not bound by the terms and conditions set forth in this Agreement, and there is no such agreement until the Disbursement Date and you have funded the Loan. If you decide to make a Loan to me, I hereby authorize you at your option and on my behalf to transfer the Loan funds electronically or via check to the Eligible Institution identified on this credit agreement. You have the right not to make the Loan or not make a disbursement on the Loan, as permitted by applicable law. Further, you have the right to lend an amount different from the amount requested in my Application based upon information received from the Eligible Institution. I agree to accept an amount less than the amount I requested on the Application and to repay the entire Loan amount that you actually lend to me based upon information from the Eligible Institution.

**Approval:** I understand that I am not legally obligated to repay any amounts owed under this Agreement until such amounts are disbursed by the Lender. I understand that I am signing this Agreement before this Loan has been fully approved by the Lender because the Lender has not yet received all required information and the Lender has not yet received certifications from the Eligible Institution. Once all information is obtained by the Lender and the Loan is fully approved, the Lender will provide me with the appropriate Disclosure(s) showing the principal amount that has been approved and other important information.

**Cancellation:** If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the Eligible Institution. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no advances will be disbursed to the Eligible Institution and the Loan will be cancelled. However, cancellation of this Agreement will not_affect the continuing validity of Section 19 below ("Arbitration Agreement"). I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

## 4. LOAN PURPOSE.

I certify to Lender that the proceeds of the Loan will be used only to pay for qualified higher education expenses, as described in Section 221(d)(2) of the Internal Revenue Code of 1986 (as amended), 26 U.S.C. Section 221(d)(2), ("Qualified Higher Education Expenses") relating to my enrollment and attendance at the Eligible Institution on at least a half-time basis during the Loan Period, as approved by the Eligible Institution and/or Lender, as applicable. Moreover, I agree to return to the Lender any Loan proceeds not attributable to such expenses.

## 5. DISBURSEMENTS.

I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the Eligible Institution, to be applied to the Student's account, or (b) by check made jointly payable to me and the Eligible Institution, that is mailed to the Eligible Institution (at your discretion). I understand that disbursements to the Eligible Institution may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

## 6. STOPPING DISBURSEMENTS.

I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, if I am in default at any time (see Section 11), or if you learn that I am no longer attending the Eligible Institution on at least a half-time basis. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements.

## 7. RETURNING FUNDS.

If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the Eligible Institution, or if a Loan check is not endorsed, deposited and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.

## 8. LOAN ORIGINATION FEE.

I will pay you a Loan Origination Fee at the time each disbursement in made on my behalf to the Eligible Institution under this Loan. The dollar amount of any Loan Origination Fee will be determined as a percentage of the Principal Sum. The Loan Origination Fee I will pay will be shown within the Itemization of Amount Financed on my Disclosure Statement and added to the principal balance of my loan and deducted from the loan proceeds when such loan proceeds are disbursed. To the extent permitted by law, and unless I timely cancel a disbursement I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 7 above)

## 9. INTEREST.

**Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (see "Variable Rate" below) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum as set forth herein. Interest will be calculated at the Variable Rate and charged on the "Principal Sum" of this Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid principal balance of the Loan (including any Loan Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 7 above).

**Capitalization of Interest.** Upon entering the Repayment Period of the loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid principal of the loan. Such capitalized interest shall be subject to the same interest accrual as the principal sum.

The Lender, at its discretion, may allow a deferment or forbearance of payments on the loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period and added to the outstanding principal balance of the loan.

**Variable Rate:** The Variable Rate is equal to the Current Index, plus a margin of 6.95% as calculated according to the loan program rules and as disclosed to me on my Disclosure Statement. The Variable Rate may change quarterly on the first day of each January, April, July and October (the "Change Date(s))" if the Current Index changes. Any increase will take the form of higher payment amounts, any decrease will take the form of lower payment amounts, unless my monthly payment amount is less than $100.00 (principal and interest) or the unpaid balance (whichever is less) which will result in my loan being paid off in a repayment period of less than originally disclosed.

**Current Index:** The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the three-month London Interbank Offered Rate ("LIBOR") published in the "Money Rates" section of The Wall Street Journal on the 20th day of the month preceding the applicable Change Date as applied according to the following rules (or on any successor or

EDMED_06012016_10453655

substitute page of a successor available source providing such quotations). You will use the three-month LIBOR as published without regard to the two-day delayed effective date. If the 20th day of the month is not a business day, you will use the preceding business day to determine the Current Index. For purposes of this Paragraph "business day" means any day the banks in New York and London are open for the transaction of business. You may round the current Index higher to two decimal places. For example, 6.68751% may be rounded to 6.69%. (This is an example and may not reflect the actual LIBOR.) LIBOR is the British Banker's Association average of interbank offered rates for dollar deposits in the London market based on quotations at 16 major banks. LIBOR is only a pricing index and is not necessarily the lowest interest rate index used by you or any other lender. If LIBOR is no longer available, you will choose a comparable index.

In no event will the amount of interest due or any payment or fee in the nature of interest payable by me under this Agreement exceed the lesser of eighteen percent (18%) per year or the maximum rate of interest allowed by applicable law, as amended from time to time. If any interest is charged or received by you in excess of that amount, the excess sum will be credited as a payment of principal, unless I notify you, in writing, that I elect to have the sum returned to me. Interest shall be computed on the basis of a 365.25 day year.

**Variable Rate Changes:** You will notify me of any changes in the Interest Rate as required by law. A change in the rate may cause the amount of the final payment to change or may cause the amount of the monthly payment to increase or decrease.

**Interest After Default:** If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Variable Rate applicable to this Loan before default and before judgment. The interest rate will continue to be adjusted quarterly as described above, before and after default and before and after judgment.

### 10. REPAYMENT.

If I elected Total Deferred - During the Interim In-school Deferred Period, if any, you may send the Borrower statements (showing the total of my loan disbursements and the interest that accrues on my loan). Statements will be sent to the address shown on your records. I am not required to make payments during the Interim In-school Deferred Period, however it is in my best interest to make payments during this time period. You will add any interest that I do not pay during the Interim In-school Deferred Period to the principal balance, as described in section 9.

If I elected the "Immediate Principal and Interest Repayment" option, I will make monthly payments of principal and accrued interest during the In-School Period and my first payment will be due within fifty (50) days after the final disbursement of my Loan. If I fail to make the full payment due, and I have not graduated or not ceased to be enrolled at least half-time; my loan will convert to "Interim In-School Deferred."

**Repayment Options:** During the Repayment Period, alternative or graduated repayment options may be available upon request. If I desire an alternative repayment option, I will contact my servicer upon receipt of my "Welcome Letter" with the payment option I prefer.

**Repayment Schedule:** I will make consecutive monthly payments of principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of principal and interest will not be less than $100 which may result in a repayment term of less than twenty (20) years.

**Monthly Statements:** During the Repayment Period I will receive monthly statements for the repayment of my Loan. Failure to receive a monthly statement does not relieve me from my obligation to make all payments as required by the terms of this Agreement (as those payments may be changed by Lender to reflect interest rate changes).

**Revised Payment of Principal and Interest:** If my Variable Rate changes, as provided in Section 9 above, Lender may change the monthly payment of principal and interest I am required to pay, so that the payments will allow me to repay the unpaid balance of principal, interest and other charges due over the remaining term of the Repayment Period at the new interest rate. If

Lender does this, the change in the monthly payment amount will be provided on my monthly statement.

**Application of Payments:** Payments will be applied first to Return payment fees if applicable, then to accrued interest, then to principal up to the monthly payment amount, then to late fees. I understand that all accrued interest must be paid before the principal balance can be reduced.

**Prepayment:** I may, at my option, prepay all or any part of the principal, interest and other charges at any time before payment is due (whether during the In-School Interim Deferred Period or the Repayment Period) without penalty. Because of the way interest is calculated, I will not receive any interest refund or rebate if I prepay in full. Because the Loan Origination Fee is earned when assessed, I will not receive a rebate of any portion of the Loan Origination Fee if I prepay my Loan in full after it has been disbursed **(subject to Section 7 above).**

Prepayment of more than the monthly installment amount due under this Agreement will be applied to future monthly payments but no more than three months into the future, unless I clearly direct in writing submitted with such prepayment that I do not want such funds applied toward future monthly payments. If I instruct you to not apply a prepayment to future monthly payments, the prepayment will not reduce the amount of my required monthly payment until Lender recalculates the Repayment Schedule due to interest rate changes, and will not excuse me from having to make all previously scheduled future monthly payments on their due dates. However, prepayment of more than the monthly installment amount due under this Agreement may reduce the number of payments I must make and/or the amount of my future payments.

**Late Payments, Partial Payments, and "Payment in Full":** To the extent permitted by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge.

**Late Charges:** If you do not receive a payment by its due date, my Loan may be in default (see Section 11). In addition, I will pay a late charge if you do not receive any part of a monthly payment within fifteen (15) days after it becomes due. The late charge will be $50 or 5% of the unpaid amount of the payment, whichever is less.

**Returned Check Charges:** I agree to pay a Returned Check Charge of $15 for any check or other instrument you receive as payment of amounts due under this Agreement, that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

**Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid principal balance of my Loan (including capitalized interest), if I make payments after my payment due dates, I may owe additional interest and late charges at the end of the Repayment Period. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding principal balance, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement.

**Payment Due Despite Withdrawal from the Eligible Institution, Death or Disability:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the Eligible Institution without graduating or completion, even if such failure is caused by the Eligible Institution ceasing to provide education services. If I die, the terms of this Agreement will be binding on my estate, which will be liable for my unpaid indebtedness. I also understand that if I become totally and permanently disabled, my unpaid indebtedness on this Loan shall not be canceled.

**11. DEFAULT.** To the extent permitted by applicable law, my Loan will be in default if any of the following occurs: (a) A monthly payment is not received on or before its due date; (b) I break any promise made in this Agreement; (c) Lender discovers any false or misleading statement in any information I have given Lender in connection with this Agreement or the Application for this Loan; (d) I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; (e) I make an assignment for the

benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me; (f) I am adjudicated incompetent; (g) I fail to notify you of any change in my name, address, telephone number, or school enrollment status within 10 days after a change occurs; (h) I allow another person to forge my signature on any document.

**12. LENDER'S REMEDIES AFTER DEFAULT.** If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 13), Lender may declare the entire balance of principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation): (a) bringing a lawsuit against me and obtaining a judgment against me and/or (b) referring my Loan to a third party (such as a collection agency) for further collection efforts. To the extent permitted by applicable law, I agree to pay any reasonable collection agency commissions, fee and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and as permitted by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

**13. NOTICES.** I must immediately notify you in writing (within 30 days) after any of the following occurs: (a) a change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name; (b) I cease to be enrolled on at least a half-time basis at an the Eligible Institution; or (c) I graduate from the Eligible Institution. Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. To the extent permitted by applicable law, any notice you send to any one of us will be considered sent to all of us.

**14. GOVERNING LAW; UNSECURED AGREEMENT; INVALID PROVISIONS; WAIVERS; EXTENSION, RENEWAL, OR RELEASE; ASSIGNMENT; CHANGES TO AGREEMENT.**

**Governing Law:** I understand and agree that Lender is headquartered in Tennessee and the Loan will be disbursed by Lender from Tennessee through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 19) will be governed by federal law and (to the extent not preempted by federal law) the laws of the State of Tennessee, without regard to conflict of law rules.** Section 19 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

**Unsecured Agreement:** Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

**Invalid Provisions:** If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 19 or by a court having jurisdiction, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 19 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 19 is held to be invalid or unenforceable, as described more fully in Section 19 below.

**Waivers:** Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest"), and, to the extent permitted by applicable law, to give any other notices or demands in connection with this Agreement.

You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

**YOU AND I EACH WAIVE THE RIGHT TO A JURY TRIAL CONCERNING ANY CLAIM OR DISPUTE RELATING TO OR ARISING FROM THE APPLICATION, ANY DISCLOSURE STATEMENT, THIS AGREEMENT, OR THE LOAN (REGARDLESS OF WHETHER THE CLAIM OR DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT AND REGARDLESS OF WHETHER I OPT OUT OF THE ARBITRATION AGREEMENT).**

**Extension, Renewal or Release:** You may extend or renew this Agreement at your discretion and you may release any one of us without affecting or releasing any of the rest of us.

**Assignment:** I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me. If this Agreement is sold or otherwise transferred, my rights under the law or under this Agreement are in no way altered or impaired.

**Changes to Agreement:** Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

**Savings Clause:** If a law which applies to this Agreement and which sets maximum Interest or finance charges is finally interpreted so that the Interest or other charges collected or to be collected in connection with this Agreement exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

**No Accord and Satisfaction:** A restrictive endorsement on any payment item (such as "paid in full") will not be considered an accord and satisfaction of what I owe under this Agreement. If I dispute any amount owed you, I must write to ReliaMax Lending Services, PO BOX 91910, Sioux Falls, SD 57109-1910, or such other address provided by you to me for correspondence.

**Bankruptcy:** If I file for bankruptcy I may still be required to pay the amount due under this Agreement.

**Set-Off:** Whenever my Loan is in default (and regardless of whether you have declared the entire Loan balance to be immediately due and payable, in full), you may apply any funds of mine in your possession or control against amounts owed under this Loan without any notice.

**General:** Section and paragraph headings and captions in this Agreement are for convenience and reference purposes only, and are not intended to limit the meaning of any provision of this Agreement. Whenever applicable in this Agreement, the use of the singular includes the plural and use of the plural includes the singular.

**Signatures:** I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format or electronic signature and submission as a defense to enforceability of this Agreement and I forever waive any such defense.

**15. PRIVACY MATTERS.**

**Communicating with Me:** To the extent permitted by applicable law, and without limiting any other rights you may have, I expressly consent and authorize you, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in

connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. You, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan, to the extent permitted by governing law, may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

**Updating Information:** I agree to give you updated financial, enrollment status, contact, mailing and other information about me, and updated information about the Student, any time required under this Agreement or any time you reasonably request.

**The Eligible Institution:** To the extent permitted by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and may report my payment history to, the Eligible Institution.

**Receipt of and Reporting of Credit Information:** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, consumer credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

**Communications Regarding Loan and Release of Loan Information:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with each other, and to release information pertinent to this Loan to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the Eligible Institution to release to you, your servicer or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history and your current telephone number and address.

**Communications Regarding the Loan Certification and Disbursement Process:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the Eligible Institution or to facilitate the process of disbursing my loan funds to the Eligible Institution.

**Inquiries to Learn Current Address and Telephone Number:** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

**Social Security Number:** You and the Eligible Institution may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the Eligible Institution.

**Department of Education Information:** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

**16. STATE AND LOCAL TAXES AND FEES** (if applicable): I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

**17. STATE LAW NOTICES.** I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to borrowers and/or cosigners who live in the indicated state on the date that they submitted the application and to borrowers and/or cosigners who are residents of the state.

**ALABAMA RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower and the Cosigner, not the Lender): CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**CALIFORNIA RESIDENTS ONLY:** I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

**CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA RESIDENTS ONLY:** If you are an Iowa resident and your amount financed is Twenty-Five Thousand Dollars ($25,000) or less, this is a consumer credit transaction.

**IOWA KANSAS AND NEBRASKA RESIDENTS ONLY: (For purposes of the following notice, the word "you" refers to the Student Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

**MARYLAND RESIDENTS ONLY:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of Tennessee without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MASSACHUSETTS RESIDENTS ONLY:** Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

**MISSOURI RESIDENTS ONLY: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

NEBRASKA RESIDENTS: A credit agreement must be in writing to be enforceable under Nebraska law. To protect you (Borrower(s)) and us (Lender) from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forbear repayment of money or to make any

EDMED_06012016_10453655

other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**NEVADA RESIDENTS ONLY:** This is a loan for study.

**NEW JERSEY RESIDENTS ONLY:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**NEW YORK, RHODE ISLAND and VERMONT RESIDENTS:** I understand and agree that you may obtain a consumer credit report in connection with this application and in connection with any updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

**NEW YORK RESIDENTS ONLY:** If any debt incurred on the account is ever in default, that fact may become a part of my credit record.

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**OKLAHOMA RESIDENTS ONLY:** If I am in default and only if the total amount disbursed under this Note is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

**SOUTH DAKOTA RESIDENTS ONLY:** Any improprieties in making the loan or in loan practices may be referred to Division of Banking, South Dakota Department of Labor and Regulation, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, Phone: 605.773.3421, Fax: 866.326.7504 ReliaMax Lending Services, LLC originates and services loans for lenders and is licensed by the South Dakota Division of Banking. If you have questions, concerns or disagree with a determination, you can contact the Division of Banking at: 1601 N. Harrison Avenue, Suite 1, Pierre, SD, 57501 or (605)773-3421.

**TEXAS RESIDENTS ONLY: Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.**

**UTAH RESIDENTS ONLY:** This Agreement is the final expression of the agreement between me and you and it may not be contradicted by evidence of an alleged oral agreement.

**VERMONT RESIDENTS ONLY:** BY SIGNING THIS CREDIT AGREEMENT, YOU CONSENT TO THE LENDER OBTAINING YOUR CONSUMER REPORT FROM A CONSUMER REPORTING AGENCY IN CONNECTION WITH THE TRANSACTION OR EXTENSION OF CREDIT FOR PURPOSES OF REVIEWING YOUR LOAN ACCOUNT, FOR THE PURPOSE OF TAKING COLLECTION ACTION ON YOUR LOAN ACCOUNT, OR FOR OTHER LEGITIMATE PURPOSES ASSOCIATED WITH YOUR LOAN ACCOUNT.

**WISCONSIN RESIDENTS ONLY:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE PRECEDING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**WISCONSIN RESIDENTS ONLY:** If I am a married Wisconsin resident: (1) My signature confirms that this loan obligation is being incurred in the interest of my marriage or family. (2) No provision of any marital property agreement, unilateral statement under §766.59 of the Wisconsin Statutes or court decree under §766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. (3) My spouse has actual knowledge that this credit is being extended to me and has waived the requirements of §766.56(3)(b) of the Wisconsin Statutes, as acknowledged by his or her signature on the Notice to Married Wisconsin Residents that I receive with this Agreement.

**18. FEDERAL LAW NOTICES.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

**REPORTING INFORMATION TO A CREDIT BUREAU:**

**NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the borrower's credit report.**

**HOLDER NOTICE:** I understand that the following notice is only applicable to loans issued to finance attendance at for-profit educational institutions or institutions otherwise subject to the FTC Holder Rule under 16 CFR 433.2.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE TO COSIGNER, if any: (In this Notice to Cosigner, "you" and "your" mean any Cosigner signing this Agreement.)**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of this debt if the Borrower does not pay. You may also have to pay late charges, which increases this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**19. ARBITRATION AGREEMENT. - Please read carefully.**

To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

1. This Arbitration provision will apply to my credit agreement, unless: (A) I notify you in writing that I reject the Arbitration provisions within sixty (60) days of signing my credit agreement: (B) I am a covered borrower as defined by the Military Lending Act, 10. U.S.C. §987; or (C) I am afforded statutory protections that prohibit submission of a dispute to arbitration. RIGHT TO REJECT: I MAY REJECT THIS Arbitration Agreement by mailing a signed rejection notice to ATTN: Arbitration Agreement Rejections, 1415 Ritner Highway, Carlisle, PA 17013. Any Rejection Notice must include my name, address, telephone number and loan or account number.

2. IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

3. DEFINITIONS: In this Arbitration Agreement, the following definitions will apply:

"I," "me" and "my" means the Borrower on this Agreement; the Student on whose behalf the proceeds of the Agreement have been advanced; the cosigner on this Agreement; and the heirs, executors and assigns of all the foregoing. "You," "your" and "yours" mean the Lender; any other subsequent holder of this Agreement; SouthEast Bank; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the Eligible Institution, and any of the Eligible Institution's financial aid offices or officers. "Claimant" means the party who first asserts a Claim in a lawsuit or arbitration proceeding. "Administrator" means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

4. "CLAIM" means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Also, "Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.

If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.

5. STARTING ARBITRATION: To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.

6. LOCATION AND COSTS: You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration; unless otherwise determined by the arbitrator(s).

7. DISCOVERY; GETTING INFORMATION: Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

8. EFFECT OF ARBITRATION AWARD: Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, *provided* that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider *de novo* any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

9. GOVERNING LAW: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

10. SURVIVAL, SEVERABILITY, PRIMACY: This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply,

provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

11. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**CAUTION: IT IS IMPORTANT THAT EACH THE BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT BEFORE SIGNING BELOW.** This Agreement contains all of the terms and conditions that apply to the Loan. This Agreement completely replaces any earlier understandings or communications any Borrower or Cosigner may have had with Lender, the Eligible Institution, or any other party about the Loan.

Before signing this Agreement, I, have read, understood and agree to all the provisions of this Agreement, including without limitation Section 19 (Arbitration Agreement). I and each of us agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement. Furthermore, I and each of us understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Section 3 above, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 4 above.

Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

CAUTION: IT IS IMPORTANT THAT EACH BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT AND ENSURE THAT THERE ARE NO BLANK SPACES CONTAINED IN THE NOTE BEFORE SIGNING BELOW.

STUDENT BORROWER SIGNATURE & DATE

| Jose E Blasco Jusino | Date (mm/dd/yyyy) |
|---|---|

ARIZONA RESIDENTS ONLY: For purposes of this notice, the words "you" and "your" refer to the Cosigner:  Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with Ariz. Rev. Stat. § 25-214 or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation

VERMONT RESIDENTS ONLY: For purposes of this notice, the word "you" and "your" refer to the Cosigner(s). NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

SPECIAL NOTICE FOR RESIDENTS OF GEORGIA: By signing as Cosigner, you waive any right to require the Lender to commence an action against the Student Borrower as provided in the Official Code of Georgia Annotated §10-7-24.

SPECIAL NOTICE FOR RESIDENTS OF NORTH CAROLINA: By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the provisions of North Carolina General Statutes §26-7 through §26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower.

Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 17 and 19 and the Notice to Cosigner). I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

COSIGNER SIGNATURE & DATE

| Edmundo Jusino | Date (mm/dd/yyyy) |
|---|---|

EDMED_06012016_10453655

Page 8 of 8



# Private Education Loan
# Applicant Self-Certification

This space for lender use only

OMB No. 1845-0101
Form Approved
Exp. Date 07-31-2019

**Important:** Pursuant to Section 155 of the Higher Education Act of 1965, as amended, (HEA) and to satisfy the requirements of Section 128(e)(3) of the Truth in Lending Act, a lender must obtain a self-certification signed by the applicant before disbursing a private education loan. The school is required on request to provide this form or the required information only for students admitted or enrolled at the school. Throughout this Applicant Self-Certification, "you" and "your" refer to the applicant who is applying for the loan. The applicant and the student may be the same person.

**Instructions:** Before signing, carefully read the entire form, including the definitions and other information on the following page. Submit the signed form to your lender.

## SECTION 1: NOTICES TO APPLICANT

- Free or lower-cost Title IV federal, state, or school student financial aid may be available in place of, or in addition to, a private education loan. To apply for Title IV federal grants, loans and work-study, submit a Free Application for Federal Student Aid (FAFSA) available at www.fafsa.ed.gov, or by calling 1-800-4-FED-AID, or from the school's financial aid office.
- A private education loan may reduce eligibility for free or lower-cost federal, state, or school student financial aid.
- You are strongly encouraged to pursue the availability of free or lower-cost financial aid with the school's financial aid office.
- The financial information required to complete this form can be obtained from the school's financial aid office. If the lender has provided this information, you should contact your school's financial aid office to verify this information and to discuss your financing options.

## SECTION 2: COST OF ATTENDANCE AND ESTIMATED FINANCIAL ASSISTANCE

If information is not already entered below, obtain the needed information from the school's financial aid office and enter it on the appropriate line. Sign and date where indicated. See Section 5 for definitions of financial aid terms.

A.  Student's cost of attendance for the period of enrollment covered by the loan    $ 60,000.00

B.  Estimated financial assistance for the period of enrollment covered by the loan    $ .00

C.  Difference between amounts A and B    $ 60,000.00

   **WARNING:** If you borrow more than the amount on line C, you risk reducing your eligibility for free or lower-cost federal, state, or school financial aid.

## SECTION 3: APPLICANT INFORMATION

Enter or correct the information below.

Full Name and Address of School __University of Science, Arts and Technology - College of Medicine__ 3450 Ash St            Denver        CO  80207

Applicant Name (last, first, MI) Blasco Jusino, Jose E            Date of Birth (mm/dd/yyyy) 10/09/1992 /

Permanent Street Address Urb Playa Del Sur            48 Fragato St.

City, State, Zip Code Guanica, PA 00653

Area Code / Telephone Number  Home ( ) (787) 638-5908        Other ( ) (939) 292-6426

E-mail Address jose.e.blasco@gmail.com

Period of Enrollment Covered by the Loan (mm/dd/yyyy)    From 08/22/2017 /    to 05/05/2018 /

If the student is not the applicant, provide the student's name and date of birth.

Student Name (last, first, MI) _____    Student Date of Birth (mm/dd/yyyy) __/__/__

## SECTION 4: APPLICANT SIGNATURE

I certify that I have read and understood the notices in Section 1 and, that to the best of my knowledge, the information provided on this form is true and correct.

Signature of Applicant _____    Date (mm/dd/yyyy) _____

0006940605

## SECTION 5: DEFINITIONS

**Cost of attendance** is an estimate of tuition and fees, room and board, transportation, and other costs for the period of enrollment covered by the loan, as determined by the school. A student's cost of attendance may be obtained from the school's financial aid office.

**Estimated financial assistance** is all federal, state, institutional (school), private, and other sources of assistance used in determining eligibility for most Title IV student financial aid, including amounts of financial assistance used to replace the expected family contribution. The student's estimated financial assistance is determined by the school and may be obtained from the school's financial aid office.

A **lender** is a private education lender as defined in Section 140 of the Truth in Lending Act and any other person engaged in the business of securing, making, or extending private education loans on behalf of the lender.

A **period of enrollment** is the academic year, academic term (such as semester, trimester, or quarter), or the number of weeks of instructional time for which the applicant is requesting the loan.

A **private education loan** is a loan provided by a private education lender that is not a Title IV loan and that is issued expressly for postsecondary education expenses, regardless of whether the loan is provided through the school that the student attends or directly to the borrower from the private education lender. A private education loan does not include **(1)** An extension of credit under an open-end consumer credit plan, a reverse mortgage transaction, a residential mortgage transaction, or any other loan that is secured by real property or a dwelling; or **(2)** An extension of credit in which the school is the lender if the term of the extension of credit is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than four installments.

**Title IV student financial aid** includes the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant (FSEOG) Program, the Federal Work-Study (FWS) Program, the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Perkins Loan Program, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program. To apply for Title IV federal grants, loans, and work-study, submit a Free Application for Federal Student Aid (FAFSA), which is available at www.fafsa.gov, by calling 1-800-4-FED-AID, or from the school's financial aid office.

## SECTION 6: PAPERWORK REDUCTION NOTICE

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0101. The time required to complete this information collection is estimated to average 0.25 hours (15 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed and complete and review the information collection.

*If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:* U.S. Department of Education, Washington, DC 20202-4651

*If you have any comments or concerns regarding the status of your individual submission of this form, contact your lender.*

0006940605

Rev. 04/2015

| **FACTS** | **WHAT DOES SOUTHEAST BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and Income<br>• Account Balances and Payment History<br>• Credit Scores and Credit History |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons SouthEast Bank chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does SouthEast Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For our nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | • Call toll-free 1-844-732-2657 (1-844-SEBANKS) - our menu will prompt you through your choice(s)<br>• Visit your local branch<br>• Mail a letter to the following address requesting to opt out:<br><br>SouthEast Bank-Privacy Opt Out<br>12700 Kingston Pike<br>Farragut, TN 37934<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| **Questions?** | Call toll-free 1-844-732-2657 (1-844-SEBANKS) or go to www.southeastbank.com |
|---|---|

## PAGE 2

### Who We Are

| Who is providing this notice? | This notice is provided by SouthEast Bank. |
|---|---|

### What we do

| How does SouthEast Bank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
|---|---|
| How does SouthEast Bank collect my personal information? | We collect your personal information, for example, when you<br><br>• Open an account   • Apply for a loan<br>• Deposit money   • Use your credit or debit card<br>• Pay your bills<br><br>We also collect your personal information from others; such as, credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choice will apply to everyone on your account. |

### Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>*Our affiliates include:*<br><br>• *Financial companies such as: Educational Services of America, Inc. (Edsouth Services), Southeast Bancorp, and SouthEast Wealth Management.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *SouthEast Bank does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Our joint marketing partners include credit card companies and insurance companies.* |

# CHECKLIST

To continue processing your loan we need the following additional documentation:

## STUDENT BORROWER

### Loan Documentation

- Signed Credit Agreement via electronic signature ☒ Received ☒ Approved

- Signed Self Certification Form ☒ Received ☒ Approved

### Identity Verification Documents

- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License) ☒ Received ☒ Approved

- Copy of Social Security Card ☒ Received ☒ Approved

## COSIGNER

### Loan Documentation
- Signed Credit Agreement via electronic signature ☒ Received ☒ Approved

### Identity Verification Documents
- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License) ☑ Received ☑ Approved

- Copy of Social Security Card ☑ Received ☑ Approved

### RETURN BY ANY OF THE FOLLOWING METHODS:

| | |
|---|---|
| Upload: | www.campusdoor.com/SouthEastBank/Account |
| Fax: | 717-241-3188 |
| Email*: | additionalinformation@campusdoor.com |
| Mail: | SouthEast Bank, 1415 Ritner Highway, Carlisle PA 17013 |

The quicker we get your documentation, the faster we can disburse your funds.
If you have any questions, please contact us at 717-254-2381
Monday through Friday from 8:00 a.m. to 6:00 p.m. ET.
*Email transmissions may not be secure and is therefore not encouraged. Please ensure to properly protect or encrypt any personal information you elect to provide via email.

# SouthEast Bank Private Loan Credit Agreement

| Loan Date | Account ID | Loan Number |
|---|---|---|
| 6/13/2018 | XXXX929587-01 | 358 |

| Lender: | SouthEast Bank | School: | University of Science, Arts and Technology |
|---|---|---|---|

**Student Borrower:**
Jose E Blasco Jusino
Urb Playa Del Sur
48 Fragato St.
Guanica, PA 00653

**Lender:** SouthEast Bank
12700 Kingston Pike
Knoxville, TN 37934

**Cosigner:**
Edmundo Jusino
Urb Playa Del Sur
Fragata St #48
Ensenada, PA 00647

**Servicer:** ReliaMax Lending Services
PO Box 91910
Sioux Falls, SD 57109-1910

*(No alterations, scratch outs or white-outs will be accepted on this form.)*

## 1. DEFINITIONS.

In this Private Loan Credit Agreement (the "Agreement"), the words "I", "me", "mine", "my", mean each person who signs this Agreement as Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

"Application" means the application for a Loan submitted by me for this Loan (as applicable).

"Business Days" are Monday through Friday, excluding days when a bank in the State of Tennessee is required or permitted to be closed.

"Capitalized Interest" or "Capitalized" means any interest unpaid as of the date the loan enters repayment and at the conclusion of a deferment or forbearance will be capitalized (added to the principal balance). Interest then begins accruing on the increased principal balance.

"Current Index" means the Three-Month London Interbank Offered Rate (LIBOR) referred to as "3 Month LIBOR" as published on The Wall Street Journal's website (or any generally recognized successor method or means of publication) (See Section 9 below for specific information regarding the Index for this Credit Agreement.)

"Deferment/Forbearance" means under certain circumstances, you may be eligible to receive a deferment or forbearance that allows you to temporarily postpone or reduce your loan payments.

"Disbursement Date" means the date on any Loan check or any date the Lender electronically transmits funds to the Eligible Institution.

"Disclosure Statement" means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

"Eligible Institution" means the entity set forth above as "School".

"Interim In-School Deferred Period" means the time period beginning with the first Disbursement Date, continuing while the Student is attending the Eligible Institution on at least a half-time basis, and ending six (6) months after: (i) the

Student's withdrawal or dismissal from the Eligible Institution; (ii) the Student is no longer attending the Eligible Institution on at least a half-time basis, or (iii) the Student graduates from the Eligible Institution and the student does not enroll in an Internship/Residency program within the six months. If the student enrolls in an Internship/Residency program within six (6) months of graduating from the Eligible Institution, the loan will enter repayment thirty-six (36) months after graduating from the Eligible Institution.

"Lender", "you" and "your" mean SouthEast Bank, or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender and any guarantors/insurers or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

"Loan" means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

"Loan Date" means the date set forth as 'Disbursement Date".

"Loan Origination Fee" means a fee assessed by the Lender for processing a new Loan application. The Loan Origination Fee for this loan is 2.75%.

"Loan Period" means the time period specified by the Eligible Institution regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the loan. The Loan Period cannot exceed 12 months.

"Margin" means 6.95%.

"Principal Sum" or "Principal Balance" means the loan amount you borrowed plus any capitalized interest.

"Repayment Period" means (i) if Total Deferred is elected for the repayment option during the Interim In-School Deferred Period, the time period beginning after the Interim In-School Deferred Period ends, or (ii) if immediate repayment of principal and interest is elected for the repayment option, the time period beginning within fifty (50) days after the first Disbursement Date and in each case, ending when the Loan is required to be paid in full. The Repayment Period will not exceed twenty (20) years.

## 2. AGREEMENT TO PAY.

To the extent advanced, I agree to pay, to the order of Lender, the principal sum which is the amount disbursed by the Lender and received by the Eligible Institution plus any Loan Fee I owe under Section 8 below ("Origination Loan

Fee"). The Principal Sum will not exceed the lesser of the amount requested by me or the amount approved by the Eligible Institution. I also agree to pay accrued interest as described in Section 9 below (see also Section 10); and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, to the extent permitted by law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

## 3. APPROVAL AND CANCELLATION OF AGREEMENT.

I understand that when you accept my signed Agreement, you are not agreeing to lend me money and I am not bound by the terms and conditions set forth in this Agreement, and there is no such agreement until the Disbursement Date and you have funded the Loan. If you decide to make a Loan to me, I hereby authorize you at your option and on my behalf to transfer the Loan funds electronically or via check to the Eligible Institution identified on this credit agreement. You have the right not to make the Loan or not make a disbursement on the Loan, as permitted by applicable law. Further, you have the right to lend an amount different from the amount requested in my Application based upon information received from the Eligible Institution. I agree to accept an amount less than the amount I requested on the Application and to repay the entire Loan amount that you actually lend to me based upon information from the Eligible Institution.

**Approval:** I understand that I am not legally obligated to repay any amounts owed under this Agreement until such amounts are disbursed by the Lender. I understand that I am signing this Agreement before this Loan has been fully approved by the Lender because the Lender has not yet received all required information and the Lender has not yet received certifications from the Eligible Institution. Once all information is obtained by the Lender and the Loan is fully approved, the Lender will provide me with the appropriate Disclosure(s) showing the principal amount that has been approved and other important information.

**Cancellation:** If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the Eligible Institution. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no advances will be disbursed to the Eligible Institution and the Loan will be cancelled. However, cancellation of this Agreement will not affect the continuing validity of Section 19 below ("Arbitration Agreement"). I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

## 4. LOAN PURPOSE.

I certify to Lender that the proceeds of the Loan will be used only to pay for qualified higher education expenses, as described in Section 221(d)(2) of the Internal Revenue Code of 1986 (as amended), 26 U.S.C. Section 221(d)(2), ("Qualified Higher Education Expenses") relating to my enrollment and attendance at the Eligible Institution on at least a half-time basis during the Loan Period, as approved by the Eligible Institution and/or Lender, as applicable. Moreover, I agree to return to the Lender any Loan proceeds not attributable to such expenses.

## 5. DISBURSEMENTS.

I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the Eligible Institution, to be applied to the Student's account, or (b) by check made jointly payable to me and the Eligible Institution, that is mailed to the Eligible Institution (at your discretion). I understand that disbursements to the Eligible Institution may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

## 6. STOPPING DISBURSEMENTS.

I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, if I am in default at any time (see Section 11), or if you learn that I am no longer attending the Eligible Institution on at least a half-time basis. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements.

## 7. RETURNING FUNDS.

If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the Eligible Institution, or if a Loan check is not endorsed, deposited and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.

## 8. LOAN ORIGINATION FEE.

I will pay you a Loan Origination Fee at the time each disbursement in made on my behalf to the Eligible Institution under this Loan. The dollar amount of any Loan Origination Fee will be determined as a percentage of the Principal Sum. The Loan Origination Fee I will pay will be shown within the Itemization of Amount Financed on my Disclosure Statement and added to the principal balance of my loan and deducted from the loan proceeds when such loan proceeds are disbursed. To the extent permitted by law, and unless I timely cancel a disbursement I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 7 above)

## 9. INTEREST.

**Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (see "Variable Rate" below) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum as set forth herein. Interest will be calculated at the Variable Rate and charged on the "Principal Sum" of this Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid principal balance of the Loan (including any Loan Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 7 above).

**Capitalization of Interest.** Upon entering the Repayment Period of the loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid principal of the loan. Such capitalized interest shall be subject to the same interest accrual as the principal sum.

The Lender, at its discretion, may allow a deferment or forbearance of payments on the loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period and added to the outstanding principal balance of the loan.

**Variable Rate:** The Variable Rate is equal to the Current Index, plus a margin of 6.95% as calculated according to the loan program rules and as disclosed to me on my Disclosure Statement. The Variable Rate may change quarterly on the first day of each January, April, July and October (the "Change Date(s))" if the Current Index changes. Any increase will take the form of higher payment amounts, any decrease will take the form of lower payment amounts, unless my monthly payment amount is less than $100.00 (principal and interest) or the unpaid balance (whichever is less) which will result in my loan being paid off in a repayment period of less than originally disclosed.

**Current Index:** The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the three-month London Interbank Offered Rate ("LIBOR") published in the "Money Rates" section of The Wall Street Journal on the 20th day of the month preceding the applicable Change Date as applied according to the following rules (or on any successor or

substitute page of a successor available source providing such quotations). You will use the three-month LIBOR as published without regard to the two-day delayed effective date. If the 20th day of the month is not a business day, you will use the preceding business day to determine the Current Index. For purposes of this Paragraph "business day" means any day the banks in New York and London are open for the transaction of business. You may round the current Index higher to two decimal places. For example, 6.68751% may be rounded to 6.69%. (This is an example and may not reflect the actual LIBOR.) LIBOR is the British Banker's Association average of interbank offered rates for dollar deposits in the London market based on quotations at 16 major banks. LIBOR is only a pricing index and is not necessarily the lowest interest rate index used by you or any other lender. If LIBOR is no longer available, you will choose a comparable index.

In no event will the amount of interest due or any payment or fee in the nature of interest payable by me under this Agreement exceed the lesser of eighteen percent (18%) per year or the maximum rate of interest allowed by applicable law, as amended from time to time. If any interest is charged or received by you in excess of that amount, the excess sum will be credited as a payment of principal, unless I notify you, in writing, that I elect to have the sum returned to me. Interest shall be computed on the basis of a 365.25 day year.

**Variable Rate Changes:** You will notify me of any changes in the Interest Rate as required by law. A change in the rate may cause the amount of the final payment to change or may cause the amount of the monthly payment to increase or decrease.

**Interest After Default:** If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Variable Rate applicable to this Loan before default and before judgment. The interest rate will continue to be adjusted quarterly as described above, before and after default and before and after judgment.

## 10. REPAYMENT.

If I elected Total Deferred - During the Interim In-school Deferred Period, if any, you may send the Borrower statements (showing the total of my loan disbursements and the interest that accrues on my loan). Statements will be sent to the address shown on your records. I am not required to make payments during the Interim In-school Deferred Period, however it is in my best interest to make payments during this time period. You will add any interest that I do not pay during the Interim In-school Deferred Period to the principal balance, as described in section 9.

If I elected the "Immediate Principal and Interest Repayment" option, I will make monthly payments of principal and accrued interest during the In-School Period and my first payment will be due within fifty (50) days after the first disbursement of my Loan. If I fail to make the full payment due, and I have not graduated or not ceased to be enrolled at least half-time; my loan will convert to "Interim In-School Deferred."

**Repayment Options:** During the Repayment Period, alternative or graduated repayment options may be available upon request. If I desire an alternative repayment option, I will contact my servicer upon receipt of my "Welcome Letter" with the payment option I prefer.

**Repayment Schedule:** I will make consecutive monthly payments of principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of principal and interest will not be less than $100 which may result in a repayment term of less than twenty (20) years.

**Monthly Statements:** During the Repayment Period I will receive monthly statements for the repayment of my Loan. Failure to receive a monthly statement does <u>not</u> relieve me from my obligation to make all payments as required by the terms of this Agreement (as those payments may be changed by Lender to reflect interest rate changes).

**Revised Payment of Principal and Interest:** If my Variable Rate changes, as provided in Section 9 above, Lender may change the monthly payment of principal and interest I am required to pay, so that the payments will allow me to repay the unpaid balance of principal, interest and other charges due over the remaining term of the Repayment Period at the new interest rate. If

Lender does this, the change in the monthly payment amount will be provided on my monthly statement.

**Application of Payments:** Payments will be applied first to Return payment fees if applicable, then to accrued interest, then to principal up to the monthly payment amount, then to late fees. I understand that all accrued interest must be paid before the principal balance can be reduced.

**Prepayment:** I may, at my option, prepay all or any part of the principal, interest and other charges at any time before payment is due (whether during the In-School Interim Deferred Period or the Repayment Period) without penalty. Because of the way interest is calculated, I will not receive any interest refund or rebate if I prepay in full. Because the Loan Origination Fee is earned when assessed, I will not receive a rebate of any portion of the Loan Origination Fee if I prepay my Loan in full after it has been disbursed **(subject to Section 7 above).**

Prepayment of more than the monthly installment amount due under this Agreement will be applied to future monthly payments but no more than three months into the future, unless I clearly direct in writing submitted with such prepayment that I do not want such funds applied toward future monthly payments. If I instruct you to not apply a prepayment to future monthly payments, the prepayment will not reduce the amount of my required monthly payment until Lender recalculates the Repayment Schedule due to interest rate changes, and will not excuse me from having to make all previously scheduled future monthly payments on their due dates. However, prepayment of more than the monthly installment amount due under this Agreement may reduce the number of payments I must make and/or the amount of my future payments.

**Late Payments, Partial Payments, and "Payment in Full":** To the extent permitted by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge.

**Late Charges:** If you do not receive a payment by its due date, my Loan may be in default (see Section 11). In addition, I will pay a late charge if you do not receive any part of a monthly payment within fifteen (15) days after it becomes due. The late charge will be $50 or 5% of the unpaid amount of the payment, whichever is less.

**Returned Check Charges:** I agree to pay a Returned Check Charge of $15 for any check or other instrument you receive as payment of amounts due under this Agreement, that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

**Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid principal balance of my Loan (including capitalized interest), if I make payments after my payment due dates, I may owe additional interest and late charges at the end of the Repayment Period. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding principal balance, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement.

**Payment Due Despite Withdrawal from the Eligible Institution, Death or Disability:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the Eligible Institution without graduating or completion, even if such failure is caused by the Eligible Institution ceasing to provide education services. If I die, the terms of this Agreement will be binding on my estate, which will be liable for my unpaid indebtedness. I also understand that if I become totally and permanently disabled, my unpaid indebtedness on this Loan shall not be canceled.

**11. DEFAULT.** To the extent permitted by applicable law, my Loan will be in default if any of the following occurs: (a) A monthly payment is not received on or before its due date; (b) I break any promise made in this Agreement; (c) Lender discovers any false or misleading statement in any information I have given Lender in connection with this Agreement or the Application for this Loan; (d) I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; (e) I make an assignment for the

benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me; (f) I am adjudicated incompetent; (g) I fail to notify you of any change in my name, address, telephone number, or school enrollment status within 10 days after a change occurs; (h) I allow another person to forge my signature on any document.

**12. LENDER'S REMEDIES AFTER DEFAULT.** If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 13), Lender may declare the entire balance of principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation): (a) bringing a lawsuit against me and obtaining a judgment against me and/or (b) referring my Loan to a third party (such as a collection agency) for further collection efforts. To the extent permitted by applicable law, I agree to pay any reasonable collection agency commissions, fee and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and as permitted by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

**13. NOTICES.** I must immediately notify you in writing (within 30 days) after any of the following occurs: (a) a change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name; (b) I cease to be enrolled on at least a half-time basis at an the Eligible Institution; or (c) I graduate from the Eligible Institution. Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. To the extent permitted by applicable law, any notice you send to any one of us will be considered sent to all of us.

**14. GOVERNING LAW; UNSECURED AGREEMENT; INVALID PROVISIONS; WAIVERS; EXTENSION, RENEWAL, OR RELEASE; ASSIGNMENT; CHANGES TO AGREEMENT.**

**Governing Law:** I understand and agree that Lender is headquartered in Tennessee and the Loan will be disbursed by Lender from Tennessee through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 19) will be governed by federal law and (to the extent not preempted by federal law) the laws of the State of Tennessee, without regard to conflict of law rules.** Section 19 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

**Unsecured Agreement:** Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

**Invalid Provisions:** If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 19 or by a court having jurisdiction, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 19 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 19 is held to be invalid or unenforceable, as described more fully in Section 19 below.

**Waivers:** Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest"), and, to the extent permitted by applicable law, to give any other notices or demands in connection with this Agreement.

You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

**YOU AND I EACH WAIVE THE RIGHT TO A JURY TRIAL CONCERNING ANY CLAIM OR DISPUTE RELATING TO OR ARISING FROM THE APPLICATION, ANY DISCLOSURE STATEMENT, THIS AGREEMENT, OR THE LOAN (REGARDLESS OF WHETHER THE CLAIM OR DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT AND REGARDLESS OF WHETHER I OPT OUT OF THE ARBITRATION AGREEMENT).**

**Extension, Renewal or Release:** You may extend or renew this Agreement at your discretion and you may release any one of us without affecting or releasing any of the rest of us.

**Assignment:** I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me. If this Agreement is sold or otherwise transferred, my rights under the law or under this Agreement are in no way altered or impaired.

**Changes to Agreement:** Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

**Savings Clause:** If a law which applies to this Agreement and which sets maximum Interest or finance charges is finally interpreted so that the Interest or other charges collected or to be collected in connection with this Agreement exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

**No Accord and Satisfaction:** A restrictive endorsement on any payment item (such as "paid in full") will not be considered an accord and satisfaction of what I owe under this Agreement. If I dispute any amount owed you, I must write to ReliaMax Lending Services, PO BOX 91910, Sioux Falls, SD 57109-1910, or such other address provided by you to me for correspondence.

**Bankruptcy:** If I file for bankruptcy I may still be required to pay the amount due under this Agreement.

**Set-Off:** Whenever my Loan is in default (and regardless of whether you have declared the entire Loan balance to be immediately due and payable, in full), you may apply any funds of mine in your possession or control against amounts owed under this Loan without any notice.

**General:** Section and paragraph headings and captions in this Agreement are for convenience and reference purposes only, and are not intended to limit the meaning of any provision of this Agreement. Whenever applicable in this Agreement, the use of the singular includes the plural and use of the plural includes the singular.

**Signatures:** I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format or electronic signature and submission as a defense to enforceability of this Agreement and I forever waive any such defense.

**15. PRIVACY MATTERS.**

**Communicating with Me:** To the extent permitted by applicable law, and without limiting any other rights you may have, I expressly consent and authorize you, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in

connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. You, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan, to the extent permitted by governing law, may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

**Updating Information:** I agree to give you updated financial, enrollment status, contact, mailing and other information about me, and updated information about the Student, any time required under this Agreement or any time you reasonably request.

**The Eligible Institution:** To the extent permitted by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and may report my payment history to, the Eligible Institution.

**Receipt of and Reporting of Credit Information:** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, consumer credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

**Communications Regarding Loan and Release of Loan Information:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with each other, and to release information pertinent to this Loan to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the Eligible Institution to release to you, your servicer or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history and your current telephone number and address.

**Communications Regarding the Loan Certification and Disbursement Process:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the Eligible Institution or to facilitate the process of disbursing my loan funds to the Eligible Institution.

**Inquiries to Learn Current Address and Telephone Number:** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

**Social Security Number:** You and the Eligible Institution may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the Eligible Institution.

**Department of Education Information:** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

**16. STATE AND LOCAL TAXES AND FEES** (if applicable): I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

**17. STATE LAW NOTICES.** I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to borrowers and/or cosigners who live in the indicated state on the date that they submitted the application and to borrowers and/or cosigners who are residents of the state.

**ALABAMA RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower and the Cosigner, not the Lender): CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**CALIFORNIA RESIDENTS ONLY:** I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

**CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA RESIDENTS ONLY:** If you are an Iowa resident and your amount financed is Twenty-Five Thousand Dollars ($25,000) or less, this is a consumer credit transaction.

**IOWA KANSAS AND NEBRASKA RESIDENTS ONLY: (For purposes of the following notice, the word "you" refers to the Student Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

**MARYLAND RESIDENTS ONLY:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of Tennessee without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MASSACHUSETTS RESIDENTS ONLY:** Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

**MISSOURI RESIDENTS ONLY: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**NEBRASKA RESIDENTS:** A credit agreement must be in writing to be enforceable under Nebraska law. To protect you (Borrower(s)) and us (Lender) from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forbear repayment of money or to make any

EDMED_06012016_10453655

other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**NEVADA RESIDENTS ONLY:** This is a loan for study.

**NEW JERSEY RESIDENTS ONLY:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**NEW YORK, RHODE ISLAND and VERMONT RESIDENTS:** I understand and agree that you may obtain a consumer credit report in connection with this application and in connection with any updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

**NEW YORK RESIDENTS ONLY:** If any debt incurred on the account is ever in default, that fact may become a part of my credit record.

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**OKLAHOMA RESIDENTS ONLY:** If I am in default and only if the total amount disbursed under this Note is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

**SOUTH DAKOTA RESIDENTS ONLY:** Any improprieties in making the loan or in loan practices may be referred to Division of Banking, South Dakota Department of Labor and Regulation, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, Phone: 605.773.3421, Fax: 866.326.7504 ReliaMax Lending Services, LLC originates and services loans for lenders and is licensed by the South Dakota Division of Banking. If you have questions, concerns or disagree with a determination, you can contact the Division of Banking at: 1601 N. Harrison Avenue, Suite 1, Pierre, SD, 57501 or (605)773-3421.

**TEXAS RESIDENTS ONLY: Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.**

**UTAH RESIDENTS ONLY:** This Agreement is the final expression of the agreement between me and you and it may not be contradicted by evidence of an alleged oral agreement.

**VERMONT RESIDENTS ONLY:** BY SIGNING THIS CREDIT AGREEMENT, YOU CONSENT TO THE LENDER OBTAINING YOUR CONSUMER REPORT FROM A CONSUMER REPORTING AGENCY IN CONNECTION WITH THE TRANSACTION OR EXTENSION OF CREDIT FOR PURPOSES OF REVIEWING YOUR LOAN ACCOUNT, FOR THE PURPOSE OF TAKING COLLECTION ACTION ON YOUR LOAN ACCOUNT, OR FOR OTHER LEGITIMATE PURPOSES ASSOCIATED WITH YOUR LOAN ACCOUNT.

**WISCONSIN RESIDENTS ONLY:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE PRECEDING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**WISCONSIN RESIDENTS ONLY:** If I am a married Wisconsin resident: (1) My signature confirms that this loan obligation is being incurred in the interest of my marriage or family. (2) No provision of any marital property agreement, unilateral statement under §766.59 of the Wisconsin Statutes or court decree under §766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. (3) My spouse has actual knowledge that this credit is being extended to me and has waived the requirements of §766.56(3)(b) of the Wisconsin Statutes, as acknowledged by his or her signature on the Notice to Married Wisconsin Residents that I receive with this Agreement.

**18. FEDERAL LAW NOTICES.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

**REPORTING INFORMATION TO A CREDIT BUREAU:**

**NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the borrower's credit report.**

**HOLDER NOTICE:** I understand that the following notice is only applicable to loans issued to finance attendance at for-profit educational institutions or institutions otherwise subject to the FTC Holder Rule under 16 CFR 433.2.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE TO COSIGNER, if any: (In this Notice to Cosigner, "you" and "your" mean any Cosigner signing this Agreement.)**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of this debt if the Borrower does not pay. You may also have to pay late charges, which increases this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**19. ARBITRATION AGREEMENT. - Please read carefully.**

To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

1. This Arbitration provision will apply to my credit agreement, unless: (A) I notify you in writing that I reject the Arbitration provisions within sixty (60) days of signing my credit agreement: (B) I am a covered borrower as defined by the Military Lending Act, 10. U.S.C. §987; or (C) I am afforded statutory protections that prohibit submission of a dispute to arbitration. **RIGHT TO REJECT: I MAY REJECT THIS Arbitration Agreement by mailing a signed rejection notice to ATTN: Arbitration Agreement Rejections, 1415 Ritner Highway, Carlisle, PA 17013. Any Rejection Notice must include my name, address, telephone number and loan or account number.**

2. **IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.**

3. **DEFINITIONS:** In this Arbitration Agreement, the following definitions will apply:

   **"I," "me" and "my"** means the Borrower on this Agreement; the Student on whose behalf the proceeds of the Agreement have been advanced; the cosigner on this Agreement; and the heirs, executors and assigns of all the foregoing. **"You," "your" and "yours"** mean the Lender; any other subsequent holder of this Agreement; SouthEast Bank; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the Eligible Institution, and any of the Eligible Institution's financial aid offices or officers. **"Claimant"** means the party who first asserts a Claim in a lawsuit or arbitration proceeding. **"Administrator"** means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

4. **"CLAIM"** means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Also, **"Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.**

If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.

5. **STARTING ARBITRATION:** To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.

6. **LOCATION AND COSTS:** You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless otherwise determined by the arbitrator(s).

7. **DISCOVERY; GETTING INFORMATION:** Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

8. **EFFECT OF ARBITRATION AWARD:** Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, *provided* that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider *de novo* any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

9. **GOVERNING LAW:** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

10. **SURVIVAL, SEVERABILITY, PRIMACY:** This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply,

provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

11. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**CAUTION: IT IS IMPORTANT THAT EACH THE BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT BEFORE SIGNING BELOW. This Agreement contains all of the terms and conditions that apply to the Loan. This Agreement completely replaces any earlier understandings or communications any Borrower or Cosigner may have had with Lender, the Eligible Institution, or any other party about the Loan.**

**Before signing this Agreement, I, have read, understood and agree to all the provisions of this Agreement, including without limitation Section 19 (Arbitration Agreement). I and each of us agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement. Furthermore, I and each of us understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Section 3 above, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 4 above.**

---

Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

 **CAUTION:** IT IS IMPORTANT THAT EACH BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT AND ENSURE THAT THERE ARE NO BLANK SPACES CONTAINED IN THE NOTE BEFORE SIGNING BELOW.
STUDENT BORROWER SIGNATURE & DATE

| Jose E Blasco Jusino    X | Date (mm/dd/yyyy)    06/14/2018 |
|---|---|

ARIZONA RESIDENTS ONLY: For purposes of this notice, the words "you" and "your" refer to the Cosigner:  **Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with** Ariz. Rev. Stat. § 25-214 **or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation**

VERMONT RESIDENTS ONLY: For purposes of this notice, the word "you" and "your" refer to the Cosigner(s). **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

SPECIAL NOTICE FOR RESIDENTS OF GEORGIA: By signing as Cosigner, you waive any right to require the Lender to commence an action against the Student Borrower as provided in the Official Code of Georgia Annotated §10-7-24.

SPECIAL NOTICE FOR RESIDENTS OF NORTH CAROLINA: By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the provisions of North Carolina General Statutes §26-7 through §26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower.

Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 17 and 19 and the Notice to Cosigner).  I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

COSIGNER SIGNATURE & DATE

| Edmundo Jusino    X | Date (mm/dd/yyyy) |
|---|---|

# Private Education Loan
# Applicant Self-Certification

This space for lender use only

OMB No. 1845-0101
Form Approved
Exp. Date 07-31-2019

**Important:** Pursuant to Section 155 of the Higher Education Act of 1965, as amended, (HEA) and to satisfy the requirements of Section 128(e)(3) of the Truth in Lending Act, a lender must obtain a self-certification signed by the applicant before disbursing a private education loan. The school is required on request to provide this form or the required information only for students admitted or enrolled at the school. Throughout this Applicant Self-Certification, "you" and "your" refer to the applicant who is applying for the loan. The applicant and the student may be the same person.

**Instructions: Before signing, carefully read the entire form, including the definitions and other information on the following page. Submit the signed form to your lender.**

## SECTION 1: NOTICES TO APPLICANT

- Free or lower-cost Title IV federal, state, or school student financial aid may be available in place of, or in addition to, a private education loan. To apply for Title IV federal grants, loans and work-study, submit a Free Application for Federal Student Aid (FAFSA) available at www.fafsa.ed.gov, or by calling 1-800-4-FED-AID, or from the school's financial aid office.
- A private education loan may reduce eligibility for free or lower-cost federal, state, or school student financial aid.
- You are strongly encouraged to pursue the availability of free or lower-cost financial aid with the school's financial aid office.
- The financial information required to complete this form can be obtained from the school's financial aid office. If the lender has provided this information, you should contact your school's financial aid office to verify this information and to discuss your financing options.

## SECTION 2: COST OF ATTENDANCE AND ESTIMATED FINANCIAL ASSISTANCE

If information is not already entered below, obtain the needed information from the school's financial aid office and enter it on the appropriate line. Sign and date where indicated.  See Section 5 for definitions of financial aid terms.

A. Student's cost of attendance for the period of enrollment covered by the loan — $ 60,000.00

B. Estimated financial assistance for the period of enrollment covered by the loan — $ .00

C. Difference between amounts A and B — $ 60,000.00

**WARNING:** If you borrow more than the amount on line C, you risk reducing your eligibility for free or lower-cost federal, state, or school financial aid.

## SECTION 3: APPLICANT INFORMATION

Enter or correct the information below.

Full Name and Address of School: University of Science, Arts and Technology - College of Medicine  3450 Ash St    Denver    CO  80207

Applicant Name (last, first, MI): Blasco Jusino, Jose E     Date of Birth (mm/dd/yyyy): 10/09/1992

Permanent Street Address: Urb Playa Del Sur    48 Fragato St

City, State, Zip Code: Guanica, PA 00653

Area Code / Telephone Number  Home ( ) (787) 638-5908    Other ( ) (939) 292-6426

E-mail Address: jose.e.blasco@gmail.com

Period of Enrollment Covered by the Loan (mm/dd/yyyy)  From 01/09/2018  to 05/05/2018

**If the student is not the applicant, provide the student's name and date of birth.**

Student Name (last, first, MI): _____    Student Date of Birth (mm/dd/yyyy): ___/___/___

## SECTION 4: APPLICANT SIGNATURE

**I certify** that I have read and understood the notices in Section 1 and, that to the best of my knowledge, the information provided on this form is true and correct.

Signature of Applicant: _____    Date (mm/dd/yyyy): _____

00079886593

Rev. 04/2015

| **FACTS** | **WHAT DOES SOUTHEAST BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and Income<br>• Account Balances and Payment History<br>• Credit Scores and Credit History |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons SouthEast Bank chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does SouthEast Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For our nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | • Call toll-free 1-844-732-2657 (1-844-SEBANKS) - our menu will prompt you through your choice(s)<br>• Visit your local branch<br>• Mail a letter to the following address requesting to opt out:<br><br>SouthEast Bank-Privacy Opt Out<br>12700 Kingston Pike<br>Farragut, TN 37934<br><br>**Please note:**<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| **Questions?** | Call toll-free 1-844-732-2657 (1-844-SEBANKS) or go to www.southeastbank.com |
|---|---|

**PAGE 2**

| Who We Are | |
|---|---|
| **Who is providing this notice?** | This notice is provided by SouthEast Bank. |

| What we do | |
|---|---|
| **How does SouthEast Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does SouthEast Bank collect my personal information?** | We collect your personal information, for example, when you<br><br>• Open an account  • Apply for a loan<br>• Deposit money  • Use your credit or debit card<br>• Pay your bills<br><br>We also collect your personal information from others; such as, credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choice will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>*Our affiliates include:*<br><br>• *Financial companies such as: Educational Services of America, Inc. (Edsouth Services), Southeast Bancorp, and SouthEast Wealth Management.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *SouthEast Bank does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Our joint marketing partners include credit card companies and insurance companies.* |

## SECTION 5: DEFINITIONS

**Cost of attendance** is an estimate of tuition and fees, room and board, transportation, and other costs for the period of enrollment covered by the loan, as determined by the school. A student's cost of attendance may be obtained from the school's financial aid office.

**Estimated financial assistance** is all federal, state, institutional (school), private, and other sources of assistance used in determining eligibility for most Title IV student financial aid, including amounts of financial assistance used to replace the expected family contribution. The student's estimated financial assistance is determined by the school and may be obtained from the school's financial aid office.

A **lender is** a private education lender as defined in Section 140 of the Truth in Lending Act and any other person engaged in the business of securing, making, or extending private education loans on behalf of the lender.

A **period of enrollment** is the academic year, academic term (such as semester, trimester, or quarter), or the number of weeks of instructional time for which the applicant is requesting the loan.

A **private education loan** is a loan provided by a private education lender that is not a Title IV loan and that is issued expressly for postsecondary education expenses, regardless of whether the loan is provided through the school that the student attends or directly to the borrower from the private education lender. A private education loan does not include **(1)** An extension of credit under an open-end consumer credit plan, a reverse mortgage transaction, a residential mortgage transaction, or any other loan that is secured by real property or a dwelling; or **(2)** An extension of credit in which the school is the lender if the term of the extension of credit is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than four installments.

**Title IV student financial aid** includes the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant (FSEOG) Program, the Federal Work-Study (FWS) Program, the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Perkins Loan Program, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program. To apply for Title IV federal grants, loans, and work-study, submit a Free Application for Federal Student Aid (FAFSA), which is available at www.fafsa.gov, by calling 1-800-4-FED-AID, or from the school's financial aid office.

## SECTION 6: PAPERWORK REDUCTION NOTICE

**Paperwork Reduction Notice**: According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0101. The time required to complete this information collection is estimated to average 0.25 hours (15 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed and complete and review the information collection.

*If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:* U.S. Department of Education, Washington, DC 20202-4651

*If you have any comments or concerns regarding the status of your individual submission of this form, contact your lender.*

0007988693

# CHECKLIST

To continue processing your loan we need the following additional documentation:

**STUDENT BORROWER**

**Loan Documentation**

- Signed Credit Agreement via electronic signature      ☐ Received      ☐ Approved

- Signed Self Certification Form      ☐ Received      ☐ Approved

**Identity Verification Documents**

- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License)      ☐ Received      ☐ Approved

- Copy of Social Security Card      ☐ Received      ☐ Approved

---

**COSIGNER**

**Loan Documentation**
- Signed Credit Agreement via electronic signature      ☐ Received      ☐ Approved

**Identity Verification Documents**
- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License)      ☑ Received      ☑ Approved

- Copy of Social Security Card      ☑ Received      ☑ Approved

**RETURN BY ANY OF THE FOLLOWING METHODS:**

| | |
|---|---|
| Upload: | www.campusdoor.com/SouthEastBank/Account |
| Fax: | 717-241-3188 |
| Email*: | additionalinformation@campusdoor.com |
| Mail: | SouthEast Bank, 1415 Ritner Highway, Carlisle PA 17013 |

The quicker we get your documentation, the faster we can disburse your funds.
If you have any questions, please contact us at 717-254-2381
Monday through Friday from 8:00 a.m. to 6:00 p.m. ET.
*Email transmissions may not be secure and is therefore not encouraged. Please ensure to properly protect or encrypt any personal information you elect to provide via email.

 USAT

Sujeil Peña Torres <sujeil.pena@usat.edu>

## Montserrat USMLE Review and Clinicals with Dr. Brown Feb 2018

2 messages

Karen Baldwin <karen.baldwin@usat.edu>                       Mon, Jan 8, 2018 at 1:21 PM
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Dear Students,

There are still a few seats left for the Montserrat Feb 2018 USMLE Step 1 Review with Dr. Brown and as well as clinical rotations. Please see below for details and let me know ASAP if you are interested in attending so we can gather the needed paperwork. If you have any questions please also let me know.

The next USMLE Prep course and clinical rotation has been set to run February 17, 2018 thru March 3, 2018. This is an opportunity for students who have completed the Review of Systems or transferred as a 3rd year medical student to experience the best of Montserrat. Students can complete 30 clinical training hours in Tropical Medicine and/or Family Medicine from 9am-12pm (M-F), then head to campus to enjoy a catered luncheon followed by USMLE Step I prep daily from 1:30pm-6:30pm (M-F) and Saturday from 9am-1pm (58 hours total). Save the evening for enjoying the local amenities that Montserrat offers as the 'Emerald Isle of the Caribbean'. By completing the 30 hours of clinicals on Montserrat you will then be eligible to receive a Diploma in International Medicine.

In order to reserve your space please contact Karen.baldwin@usat.edu by January 19, 2018. You will need to pay the course fee of $800 along with your lodging cost option in full before your space is guaranteed. Please note without making the payment by February 1st you will not be able to attend. You will need a white coat along with a current USAT Student ID and a letter from USAT for immigration in order to be allowed entry to the country.

BSC 817. USMLE Step I preparation & review, February 19, 2018 to March 2, 2018 [3 credits]. This course will enable the student to complete that last minute push before taking the required NBME versions 13 and above then followed by Step I. Students must bring a laptop or tablet, capable of receiving and sending information.

Clinical Rotations: Tropical Medicine and/or Family Medicine, February 19, 2018 to March 2, 2018. Students will participate in clinical training in a tropical environment for approximately 3-4 hours daily, in one of the various Government run clinics in Montserrat, including Glendon Hospital. For students who prefer another option you are also able to work with Dr. Brown to gain clinical research elective credits with the Harvard Data-verse Project Clerkship.

The tuition for this combined program is only $800, excluding transportation and accommodations for USAT students, $1250 for other interested parties. Off campus lodging is available from February 17, 2018 to March 3, 2018 for $400 for 2 weeks for a double occupancy room or $600 for a single room for 2 weeks (housing is shared with up to 7 other students).

Travel to Montserrat is via the VC Bird International Airport in St Johns, Antigua & Barbuda, airport code ANU. Travel to Montserrat is via a 90 minute ferry: https://discovermni.com/ferry-schedule

Travel by air (prop plane) on Fly Montserrat https://www.flymontserrat.com or
ABM Air Montserrat http://montserrat-flights.com

The Faculty for this course will be Dr. Tony Brown. We will offer High Speed Internet.

As an added bonus your passport will include the Montserrat cloverleaf stamp!

Thank you,
Karen Baldwin
University of Science Arts & Technology
karen.baldwin@usat.edu
303.371.0252

Sujeil Peña Torres <sujeil.pena@usat.edu>                      Mon, Dec 10, 2018 at 6:39 AM
To: sujeilpt@live.com

Sent from my iPhone

Begin forwarded message: