**EXHIBIT 47**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **PAOLA PROSPER CRESPO; ET ALS**<br><br>PLAINTIFFS<br><br>VS.<br><br>**UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ET ALS**<br><br>DEFENDANTS | CIVIL NO. 19-1707<br><br><br>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);<br>FRAUDULENT INDUCEMENT;<br>BREACH OF CONTRACT;<br>UNJUST ENRICHMENT;<br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

UNSWORN DECLARATION UNDER PENALTY OF PERJURY

1.  My name is Paola M. Prosper Crepo. I am of legal age, student, single, domiciled and resident of Mayaguez, Puerto Rico.

2.  My address is the following: Paraiso de Mayaguez calle serenidad 193, Mayaguez, P.R 00680

3.  In July 2017, I was searching for a medical school to apply in order to get into a career in medicine.

4.  On or around July 2017, I was contacted by Daniela Cabrera-Pujadas ("Cabrera").

5.  Ortiz and Cabrera represented themselves as officials of the medical school known as University of Science, Arts and Technology ("USAT").

6.  Ortiz and Cabrera represented to me that USAT was an accredited college of medicine in Puerto Rico.

7.  On 1/august/2017, I received various materials regarding USAT, such as a brochures, applications and enrollment agreements. These materials made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

8.  Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Orien L. Tulp ("Tulp") is the President of USAT, Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT.

9. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, and that Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico.

10. As such, my understanding was that Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all officials and representatives of USAT.

11. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT was accredited by the Educational Commission for Foreign Medical Graduates ("ECFMG") so that USAT students may be able to take the United States Medical Licensing Examinations.

12. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that being a student of USAT would allow me to take the United States Medical Licensing Examinations.

13. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT also had other satellite campuses or schools in other states in the United States, such as in Florida, Maryland and Texas.

14. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT had its main Administrative Office in the state of Colorado, in the United States.

15. I understood that the USAT officials have been working at USAT for some time.

16. The USAT Officials made representations that USAT's purpose was to provide me an education in medicine if I applied to be a student.

17. In consideration of providing me an education in medicine if I became a student, USAT would request payments from me.

18. The USAT Officials made representations that once the payments would be received, they would provide the education in medicine and I would be able to take the United States Medical Licensing Examinations.

19. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I was induced and made the decision to apply to USAT, thinking that I was going to be able to receive a valid medical education in Puerto Rico and will be able to apply for and take the United States Medical Licensing Examinations.

20. On 27/june/2017 to 19/July/2017 I submitted all the required documents and required payments to USAT in order to apply.

21. On 19/july/2017, I received a letter from Tulp which informed me that I was admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of scientific and medical education. The Letter indicated that I must pay no less than five thousand four hundred dollars ($5,490.00) per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00).

22. Once I was admitted by USAT, USAT Officials from both Puerto Rico and Colorado came to attend the White Coat Ceremony making the representation that we were going to start a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

23. Once I was admitted by USAT, the USAT officials oriented me as to the manner of payment and the possibility of taking out a loan.

24. On 1/august/2017, the USAT officials assisted me in submitting a loan application with SouthEast Bank ("SB") in order to pay USAT.

25. On 1/august/2017, I submitted a loan application to SB, which was accepted and they provided a personal loan to me for the sum amount of 45,000.

26. On 1/september/2017 and 1/December/2017, SB disbursed the personal loan and directed to the offices of USAT located in Colorado.

27. I did not receive the personal loan directly, but instead had to request USAT to deliver me certain sum amounts from the personal loan.

28. The USAT officials located in Colorado were the ones that had full control of my SB personal loan.

29. On 1/september/2017, USAT would deduct the sum amount of 22,500 from the 45,000.

30. From the date of my admission until September of 2018, USAT had received an approximated amount of 22,500 for providing education in medicine.

31. From the date of my admission until September of 2018, while USAT received an approximated amount of 22,500, I understood that I was receiving a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

32. On october/2018 I was studying and applied to take the United States Medical Licensing Examinations number required to take and apply the USMLE.

33. After I applied, ECFMG requested me to submit information under penalty of perjury via an affidavit to describe the USAT medical school information and asking whether I had physically attended the USAT medical classes at Montserrat.

34. On October/2018, they never informed us, I found out in the World Directory of Medical Schools that I was not eligible the for the United States Medical Licensing Examination.

35. On 14/september/2018, I was notified by the USAT Officials of the ECFMG irregularities.

36. On September 24th of 2018, the USAT Officials notified me of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities.

37. On September 26th of 2018, a telephone conference was held with Tulp and the attorneys of USAT to address me and other students' concerns regarding the denial to take the United States Medical Licensing Examination.

38. During that September 26th telephone conference, Tulp instructed me and the other students to falsely inform ECFMG that the me and the other students took the USAT medical education at the Montserrat main campus.

39. Tulp made the representation that ECFMG had been provided false information regarding USAT students and the USAT location of colleges of medicine.

40. After this telephone conference, I began send numerous communications to the USAT Officials inquiring as to why I could not take the United States Medical Licensing Examination.

41. During September, October and November of 2018, the USAT Officials dodged and evaded questions by me and other students regarding their lack of eligibility for the United States Medical Licensing Examination.

42. During early November of 2018, the USAT Officials instructed me and the other students to not send additional information to ECFMG outside the instructions of USAT.

43. During early November of 2018, the USAT Officials instructed me and the other students to send all information regarding ECFMG to Konyk, who would then refer me and the other students to USAT's attorney.

44. During early November of 2018, the USAT Officials also tried to invite me and the other students to transfer to start again at other medical schools suggested by USAT.

45. On November 8th of 2018, Ortiz sent an e-mail to me and the other students regarding ECFMG's decision to find me and the other students not eligible for the United States

Medical Licensing Examination. In that e-mail, Ortiz falsely represented to me and the other students that USAT was "surprised" by ECFMG's decision.

46. Subsequent to this e-mail, me and the other students demanded a physical meeting with Ortiz to discuss face to face these surprising events.

47. On November 16th, 2018, USAT Officials sent an electronic mail to some Plaintiffs invoking a meeting on that same date at around 5:30 pm.

48. However, the meeting was delayed until 10 pm, when Ortiz arrived.

49. At 10 pm, me and the other students met with Ortiz and asked him a line of questions concerning whether USAT had licensing and/or certification status in Puerto Rico and whether me and other students' finances and personal loans that was controlled by the USAT Officials in Colorado would be returned.

50. Ortiz did not answer our questions, answering them evasively and without any concrete answers.

51. Another meeting was held by Ortiz on December 18th, 2018 to try to resolve the situation.

52. On December of 2018, I noticed that USAT Officials vacated the USAT college of medicine school in Puerto Rico.

53. USAT took me and the other students medical school documents to an unknown location.

54. USAT never resolved me and the other student's situation and we were unable to take the United States Medical Licensing Examination via USAT.

55. Instead, on 17/january/2019, USAT began to send me invoices from their Colorado Office with fabricated expenses and costs, requesting me to make more payments.

56. On 8/february/2019, I received the transcript of my medical education from USAT.

57. However, these transcripts of medical education from USAT were not accepted by other medical schools.

58. On 13/december/2018, I applied to University of Medicine and Health Sciences, which did not accept the USAT medical education.

59. Therefore, I had to start my medical education again as if I did not receive any.

60. Based on the above, USAT received a sum amount of 22,500 from my 45,000, without providing a valid medical education in Puerto Rico.

61. Based on the above, USAT received a sum amount of 22,500 from my 45,000 for providing an invalid medical education that resulted in my inability to take the United States Medical Licensing Examinations.

62. All the USAT Officials participated in the false representation that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

63. USAT falsely represented to me and many other students throughout 2017 and 2018 that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

64. However, the reality is that USAT did not provide to me and the other students a valid medical education, which resulted in me being unable to take the United States Medical Licensing Examinations.

65. From the 19/July/2017 until 9-15 December/2018, USAT and the USAT officials kept repeating their false statements that they were providing a valid medical education and I would be able to take the United States Medical Licensing Examination, so long as I kept paying them, which I did because USAT received the sum amount of 22,500 from my 45,000.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. sec. 1746.

Dated at San Juan, PR, this 29 day of March, 2021.

_____

Paola M. Prosper Crespo



**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**
P.O. Box 364363. San Juan PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111   Fax (787) 300-2049
www.usat.edu

*Office of the Dean & Director*

Paola Prosper
Paraiso de Mayaguez Calle Serenidad 193
Mayaguez, PR 00680

July 19, 2017

Re: Admission to the MD Program

Dear Paola Prosper;

Congratulations, on behalf of the admissions committee I am pleased to advise of you of your admission to the MD program at the University of Science, Arts and Technology. This is typically a 4-year program of scientific and medical education, which includes not less than 6 semesters of basic medical sciences as well as up to 2 academic years of clinical training in hospitals and clinics in various locations. You have been admitted with a projected 12 terms to graduation.

The tuition for the USAT PR MD program is currently USD $5,490 per semester plus the following one-time fees, (Government) Matriculation fee (USD $600), Medical Student Malpractice Insurance fee (USD $995), Anatomy Lab fee (USD $2000 lab fee), a Technology fee (USD $1450), Clinical Fee (USD $3200) and a Graduation fee of (USD $900). The University will require official transcripts or validated copies of all college, university, postgraduate courses and undergraduate studies, if not previously submitted, within 6 weeks of receiving this acceptance letter so that maximum transfer credit may be computed and authenticated. The transcripts and records should be submitted to the USAT PR Admissions Department, PO Box 364363 San Juan, PR USA 00936-4363. We will then house them in a secure database where permanent academic records are maintained.

We look forward to your matriculation at our University and your progression through the MD program. Congratulations again on your acceptance to the University of Science, Arts and Technology.

Kindest Regards,

Orien L. Tulp, Ph.D., M.D., F.A.C.N., C.N.S.
Professor and President
University of Science Arts and Technology
Cc: Dr. Konyk

*The University of Science, Arts& Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability, or religion in its programs, activities, or employment practices.*



598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111   Fax (787) 300-2049
www.usat.edu

*Office of the Dean & Director*

Paola Prosper
Paraiso de Mayaguez Calle Serenidad 193
Mayaguez, PR 00680

July 19, 2017

Re: Admission to the MD Program

Dear Paola Prosper;

Congratulations, on behalf of the admissions committee I am pleased to advise of you of your admission to the MD program at the University of Science, Arts and Technology. This is typically a 4-year program of scientific and medical education, which includes not less than 6 semesters of basic medical sciences as well as up to 2 academic years of clinical training in hospitals and clinics in various locations. You have been admitted with a projected 12 terms to graduation.

The tuition for the USAT PR MD program is currently USD $5,490 per semester plus the following one-time fees, (Government) Matriculation fee (USD $600), Medical Student Malpractice Insurance fee (USD $995), Anatomy Lab fee (USD $2000 lab fee), a Technology fee (USD $1450), Clinical Fee (USD $3200) and a Graduation fee of (USD $900). The University will require official transcripts or validated copies of all college, university, postgraduate courses and undergraduate studies, if not previously submitted, within 6 weeks of receiving this acceptance letter so that maximum transfer credit may be computed and authenticated. The transcripts and records should be submitted to the USAT PR Admissions Department, PO Box 364363, San Juan, PR USA 00936-4363. We will then house them in a secure database where permanent academic records are maintained.

We look forward to your matriculation at our University and your progression through the MD program. Congratulations again on your acceptance to the University of Science, Arts and Technology.

Kindest Regards,

Orien L. Tulp, Ph.D., M.D., F.A.C.N., C.N.S.
Professor and President
University of Science Arts and Technology
Cc: Dr. Konyk

PAGE 2

## Who We Are

| Who is providing this notice? | This notice is provided by SouthEast Bank. |
|---|---|

## What we do

| How does SouthEast Bank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. <br><br> We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
|---|---|
| How does SouthEast Bank collect my personal information? | We collect your personal information, for example, when you <br> • Open an account • Apply for a loan <br> • Deposit money • Use your credit or debit card <br> • Pay your bills <br><br> We also collect your personal information from others; such as, credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only <br> • sharing for affiliates' everyday business purposes - information about your creditworthiness <br> • affiliates from using your information to market to you <br> • sharing for nonaffiliates to market to you <br> State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choice will apply to everyone on your account. |

## Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br> *Our affiliates include:* <br> • *Financial companies such as: Educational Services of America, Inc. (Edsouth Services), Southeast Bancorp, and SouthEast Wealth Management.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br> • *SouthEast Bank does not share with nonaffiliates so they can market to you.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br> • *Our joint marketing partners include credit card companies and insurance companies.* |

Rev. 04/2015

| **FACTS** | **WHAT DOES SOUTHEAST BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and Income<br>• Account Balances and Payment History<br>• Credit Scores and Credit History |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons SouthEast Bank chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does SouthEast Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For our nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | • Call toll-free 1-844-732-2657 (1-844-SEBANKS) - our menu will prompt you through your choice(s)<br>• Visit your local branch<br>• Mail a letter to the following address requesting to opt out:<br><br>SouthEast Bank-Privacy Opt Out<br>12700 Kingston Pike<br>Farragut, TN 37934<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| **Questions?** | Call toll-free 1-844-732-2657 (1-844-SEBANKS) or go to www.southeastbank.com |
|---|---|

## SECTION 5: DEFINITIONS

**Cost of attendance** is an estimate of tuition and fees, room and board, transportation, and other costs for the period of enrollment covered by the loan, as determined by the school. A student's cost of attendance may be obtained from the school's financial aid office.

**Estimated financial assistance** is all federal, state, institutional (school), private, and other sources of assistance used in determining eligibility for most Title IV student financial aid, including amounts of financial assistance used to replace the expected family contribution. The student's estimated financial assistance is determined by the school and may be obtained from the school's financial aid office.

A **lender** is a private education lender as defined in Section 140 of the Truth in Lending Act and any other person engaged in the business of securing, making, or extending private education loans on behalf of the lender.

A **period of enrollment** is the academic year, academic term (such as semester, trimester, or quarter), or the number of weeks of instructional time for which the applicant is requesting the loan.

A **private education loan** is a loan provided by a private education lender that is not a Title IV loan and that is issued expressly for postsecondary education expenses, regardless of whether the loan is provided through the school that the student attends or directly to the borrower from the private education lender. A private education loan does not include **(1)** An extension of credit under an open-end consumer credit plan, a reverse mortgage transaction, a residential mortgage transaction, or any other loan that is secured by real property or a dwelling; or **(2)** An extension of credit in which the school is the lender if the term of the extension of credit is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than four installments.

**Title IV student financial aid** includes the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant (FSEOG) Program, the Federal Work-Study (FWS) Program, the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Perkins Loan Program, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program. To apply for Title IV federal grants, loans, and work-study, submit a Free Application for Federal Student Aid (FAFSA), which is available at www.fafsa.gov, by calling 1-800-4-FED-AID, or from the school's financial aid office.

## SECTION 6: PAPERWORK REDUCTION NOTICE

**Paperwork Reduction Notice:** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0101. The time required to complete this information collection is estimated to average 0.25 hours (15 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed and complete and review the information collection.

*If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:* U.S. Department of Education, Washington, DC 20202-4651

*If you have any comments or concerns regarding the status of your individual submission of this form, contact your lender.*

0007187034



# Private Education Loan
# Applicant Self-Certification

This space for lender use only

OMB No. 1845-0101
Form Approved
Exp. Date 07-31-2019

**Important:** Pursuant to Section 155 of the Higher Education Act of 1965, as amended, (HEA) and to satisfy the requirements of Section 128(e)(3) of the Truth in Lending Act, a lender must obtain a self-certification signed by the applicant before disbursing a private education loan. The school is required on request to provide this form or the required information only for students admitted or enrolled at the school. Throughout this Applicant Self-Certification, "you" and "your" refer to the applicant who is applying for the loan. The applicant and the student may be the same person.

**Instructions: Before signing, carefully read the entire form, including the definitions and other information on the following page. Submit the signed form to your lender.**

## SECTION 1: NOTICES TO APPLICANT

- Free or lower-cost Title IV federal, state, or school student financial aid may be available in place of, or in addition to, a private education loan. To apply for Title IV federal grants, loans and work-study, submit a Free Application for Federal Student Aid (FAFSA) available at www.fafsa.ed.gov, or by calling 1-800-4-FED-AID, or from the school's financial aid office.
- A private education loan may reduce eligibility for free or lower-cost federal, state, or school student financial aid.
- You are <u>strongly</u> encouraged to pursue the availability of free or lower-cost financial aid with the school's financial aid office.
- The financial information required to complete this form can be obtained from the school's financial aid office. If the lender has provided this information, you should contact your school's financial aid office to verify this information and to discuss your financing options.

## SECTION 2: COST OF ATTENDANCE AND ESTIMATED FINANCIAL ASSISTANCE

**If information is not already entered below, obtain the needed information from the school's financial aid office and enter it on the appropriate line. Sign and date where indicated. See Section 5 for definitions of financial aid terms.**

|   |   |   |
|---|---|---|
| A. | Student's cost of attendance for the period of enrollment covered by the loan | $ 60,000.00 |
| B. | Estimated financial assistance for the period of enrollment covered by the loan | $ .00 |
| C. | Difference between amounts A and B | $ 60,000.00 |

**WARNING:** If you borrow more than the amount on line C, you risk reducing your eligibility for free or lower-cost federal, state, or school financial aid.

## SECTION 3: APPLICANT INFORMATION

Enter or correct the information below.

Full Name and Address of School _University of Science, Arts and Technology - College of Medicine_  3450 Ash St     Denver     CO  80207

Applicant Name (last, first, MI) _Prosper, Paola M_     Date of Birth (mm/dd/yyyy) _10/18/1990 /_

Permanent Street Address _Paraiso De Mayaguez 193 Serenidad_

City, State, Zip Code _Mayaguez, PR 00680_

Area Code / Telephone Number   Home ( ) _(939) 639-4661_     Other ( ) _____

E-mail Address _paola.prosper1@upr.edu_

Period of Enrollment Covered by the Loan (mm/dd/yyyy)    From _08/22/2017 /_    to _05/05/2018 /_

**If the student is <u>not</u> the applicant, provide the student's name and date of birth.**

Student Name (last, first, MI) _____     Student Date of Birth (mm/dd/yyyy) ___/___/___

## SECTION 4: APPLICANT SIGNATURE

**I certify** that I have read and understood the notices in Section 1 and, that to the best of my knowledge, the information provided on this form is true and correct.

**Signature of Applicant** _____     Date (mm/dd/yyyy) _____

00071B7034

# CHECKLIST

To continue processing your loan we need the following additional documentation:

## STUDENT BORROWER

### Loan Documentation

- Signed Credit Agreement via electronic signature ☑ Received ☑ Approved

- Signed Self Certification Form ☑ Received ☑ Approved

### Identity Verification Documents

- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License) ☐ Received ☐ Approved

- Copy of Social Security Card ☐ Received ☐ Approved

## COSIGNER

### Loan Documentation

- Signed Credit Agreement - download your documents from your online account and then sign, date and upload to return your documents to us. ☐ Received ☐ Approved

### Identity Verification Documents

- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License) ☑ Received ☑ Approved

- Copy of Social Security Card ☑ Received ☑ Approved

**RETURN BY ANY OF THE FOLLOWING METHODS:**

| | |
|---|---|
| Upload: | www.campusdoor.com SouthEastBank Account |
| Fax: | 717-241-3188 |
| Email*: | additionalinformation@campusdoor.com |
| Mail: | SouthEast Bank, 1415 Ritner Highway, Carlisle PA 17013 |

**The quicker we get your documentation, the faster we can disburse your funds.**
**If you have any questions, please contact us at 717-254-2381**
**Monday through Friday from 8:00 a.m. to 6:00 p.m. ET.**
*Email transmissions may not be secure and is therefore not encouraged. Please ensure to properly protect or encrypt any personal information you elect to provide via email.*

# ATTENTION

## Your action is required to receive your loan funds. These documents are time sensitive and must be returned as soon as possible.

**To avoid delays please sign your documents and return ALL pages of ALL original documents to:**

**Upload to:**
www.campusdoor.com/SouthEastBank/Account

**Fax to:**    717-241-3188

**Email\* to:**
additionalinformation@campusdoor.com

**Mail to:**    SouthEast Bank

1415 Ritner Highway

Carlisle, PA 17013

**If you are having any problems, please call us at 717-254-2381, Monday through Friday from 8:00 a.m. to 6:00 p.m. ET.**

*\*Email transmission may not be secure and is therefore not encouraged.  Please ensure to properly protect or encrypt any personal information you elect to provide via email.*

This page is intentionally left blank.

# SouthEast Bank Private Loan Credit Agreement

| Loan Date | Account ID | Loan Number |
|---|---|---|
| 8/1/2017 | XXXX714214-01 | 358 |

| Lender: | SouthEast Bank | School: | University of Science, Arts and Technology |
|---|---|---|---|

**Student Borrower:**

Paola M Prosper
Paraiso De Mayaguez 193 Serenidad
Mayaguez, PR 00680

**Lender:** SouthEast Bank

12700 Kingston Pike
Knoxville, TN 37934

**Cosigner:**

Victor A Sanchez
193 Calle Serenidad
Paraiso De Mayaguez
Mayaguez, PR 00680

**Servicer:** ReliaMax Lending Services

PO Box 91910
Sioux Falls, SD 57109-1910

*(No alterations, scratch outs or white-outs will be accepted on this form.)*

## 1. DEFINITIONS.

In this Private Loan Credit Agreement (the "Agreement"), the words "I", "me", "mine", "my", mean each person who signs this Agreement as Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

"Application" means the application for a Loan submitted by me for this Loan (as applicable).

"Business Days" are Monday through Friday, excluding days when a bank in the State of Tennessee is required or permitted to be closed.

"Capitalized Interest" or "Capitalized" means any interest unpaid as of the date the loan enters repayment and at the conclusion of a deferment or forbearance will be capitalized (added to the principal balance). Interest then begins accruing on the increased principal balance.

"Current Index" means the Three-Month London Interbank Offered Rate (LIBOR) referred to as "3 Month LIBOR" as published on The Wall Street Journal's website (or any generally recognized successor method or means of publication) (See Section 9 below for specific information regarding the Index for this Credit Agreement.)

"Deferment/Forbearance" means under certain circumstances, you may be eligible to receive a deferment or forbearance that allows you to temporarily postpone or reduce your loan payments.

"Disbursement Date" means the date on any Loan check or any date the Lender electronically transmits funds to the Eligible Institution.

"Disclosure Statement" means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

"Eligible Institution" means the entity set forth above as "School".

"Interim In-School Deferred Period" means the time period beginning with the first Disbursement Date, continuing while the Student is attending the Eligible Institution on at least a half-time basis, and ending six (6) months after: (i) the

Student's withdrawal or dismissal from the Eligible Institution; (ii) the Student is no longer attending the Eligible Institution on at least a half-time basis, or (iii) the Student graduates from the Eligible Institution and the student does not enroll in an Internship/Residency program within the six months. If the student enrolls in an Internship/Residency program within six (6) months of graduating from the Eligible Institution, the loan will enter repayment thirty-six (36) months after graduating from the Eligible Institution.

"Lender", "you" and "your" mean SouthEast Bank, or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender and any guarantors/insurers or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

"Loan" means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

"Loan Date" means the date set forth as 'Disbursement Date".

"Loan Origination Fee" means a fee assessed by the Lender for processing a new Loan application. The Loan Origination Fee for this loan is 2.75%.

"Loan Period" means the time period specified by the Eligible Institution regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the loan. The Loan Period cannot exceed 12 months.

"Margin" means 6.95%.

"Principal Sum" or "Principal Balance" means the loan amount you borrowed plus any capitalized interest.

"Repayment Period" means (i) if Total Deferred is elected for the repayment option during the Interim In-School Deferred Period, the time period beginning after the Interim In-School Deferred Period ends, or (ii) if immediate repayment of principal and interest is elected for the repayment option, the time period beginning within fifty (50) days after the first Disbursement Date and in each case, ending when the Loan is required to be paid in full. The Repayment Period will not exceed twenty (20) years.

## 2. AGREEMENT TO PAY.

To the extent advanced, I agree to pay, to the order of Lender, the principal sum which is the amount disbursed by the Lender and received by the Eligible Institution plus any Loan Fee I owe under Section 8 below ("Origination Loan

Fee"). The Principal Sum will not exceed the lesser of the amount requested by me or the amount approved by the Eligible Institution. I also agree to pay accrued interest as described in Section 9 below (see also Section 10); and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, to the extent permitted by law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

### 3. APPROVAL AND CANCELLATION OF AGREEMENT.

I understand that when you accept my signed Agreement, you are not agreeing to lend me money and I am not bound by the terms and conditions set forth in this Agreement, and there is no such agreement until the Disbursement Date and you have funded the Loan. If you decide to make a Loan to me, I hereby authorize you at your option and on my behalf to transfer the Loan funds electronically or via check to the Eligible Institution identified on this credit agreement. You have the right not to make the Loan or not make a disbursement on the Loan, as permitted by applicable law. Further, you have the right to lend an amount different from the amount requested in my Application based upon information received from the Eligible Institution. I agree to accept an amount less than the amount I requested on the Application and to repay the entire Loan amount that you actually lend to me based upon information from the Eligible Institution.

**Approval:** I understand that I am not legally obligated to repay any amounts owed under this Agreement until such amounts are disbursed by the Lender. I understand that I am signing this Agreement before this Loan has been fully approved by the Lender because the Lender has not yet received all required information and the Lender has not yet received certifications from the Eligible Institution. Once all information is obtained by the Lender and the Loan is fully approved, the Lender will provide me with the appropriate Disclosure(s) showing the principal amount that has been approved and other important information.

**Cancellation:** If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the Eligible Institution. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no advances will be disbursed to the Eligible Institution and the Loan will be cancelled. However, cancellation of this Agreement will not_affect the continuing validity of Section 19 below ("Arbitration Agreement"). I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

### 4. LOAN PURPOSE.

I certify to Lender that the proceeds of the Loan will be used only to pay for qualified higher education expenses, as described in Section 221(d)(2) of the Internal Revenue Code of 1986 (as amended), 26 U.S.C. Section 221(d)(2), ("Qualified Higher Education Expenses") relating to my enrollment and attendance at the Eligible Institution on at least a half-time basis during the Loan Period, as approved by the Eligible Institution and/or Lender, as applicable. Moreover, I agree to return to the Lender any Loan proceeds not attributable to such expenses.

### 5. DISBURSEMENTS.

I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the Eligible Institution, to be applied to the Student's account, or (b) by check made jointly payable to me and the Eligible Institution, that is mailed to the Eligible Institution (at your discretion). I understand that disbursements to the Eligible Institution may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

### 6. STOPPING DISBURSEMENTS.

I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, or if I am in default at any time (see Section 11), or if you learn that I am no longer attending the Eligible Institution on at least a half-time basis. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements.

### 7. RETURNING FUNDS.

If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the Eligible Institution, or if a Loan check is not endorsed, deposited and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.

### 8. LOAN ORIGINATION FEE.

I will pay you a Loan Origination Fee at the time each disbursement in made on my behalf to the Eligible Institution under this Loan. The dollar amount of any Loan Origination Fee will be determined as a percentage of the Principal Sum. The Loan Origination Fee I will pay will be shown within the Itemization of Amount Financed on my Disclosure Statement and added to the principal balance of my loan and deducted from the loan proceeds when such loan proceeds are disbursed. To the extent permitted by law, and unless I timely cancel a disbursement I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 7 above)

### 9. INTEREST.

**Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (see "Variable Rate" below) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum as set forth herein. Interest will be calculated at the Variable Rate and charged on the "Principal Sum" of this Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid principal balance of the Loan (including any Loan Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 7 above).

**Capitalization of Interest.** Upon entering the Repayment Period of the loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid principal of the loan. Such capitalized interest shall be subject to the same interest accrual as the principal sum.

The Lender, at its discretion, may allow a deferment or forbearance of payments on the loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period and added to the outstanding principal balance of the loan.

**Variable Rate:** The Variable Rate is equal to the Current Index, plus a margin of 6.95% as calculated according to the loan program rules and as disclosed to me on my Disclosure Statement. The Variable Rate may change quarterly on the first day of each January, April, July and October (the "Change Date(s))" if the Current Index changes. Any increase will take the form of higher payment amounts, any decrease will take the form of lower payment amounts, unless my monthly payment amount is less than $100.00 (principal and interest) or the unpaid balance (whichever is less) which will result in my loan being paid off in a repayment period of less than originally disclosed.

**Current Index:** The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the three-month London Interbank Offered Rate ("LIBOR") published in the "Money Rates" section of The Wall Street Journal on the 20th day of the month preceding the applicable Change Date as applied according to the following rules (or on any successor or

substitute page of a successor available source providing such quotations). You will use the three-month LIBOR as published without regard to the two-day delayed effective date. If the 20th day of the month is not a business day, you will use the preceding business day to determine the Current Index. For purposes of this Paragraph "business day" means any day the banks in New York and London are open for the transaction of business. You may round the current Index higher to two decimal places. For example, 6.68751% may be rounded to 6.69%. (This is an example and may not reflect the actual LIBOR.) LIBOR is the British Banker's Association average of interbank offered rates for dollar deposits in the London market based on quotations at 16 major banks. LIBOR is only a pricing index and is not necessarily the lowest interest rate index used by you or any other lender. If LIBOR is no longer available, you will choose a comparable index.

In no event will the amount of interest due or any payment or fee in the nature of interest payable by me under this Agreement exceed the lesser of eighteen percent (18%) per year or the maximum rate of interest allowed by applicable law, as amended from time to time. If any interest is charged or received by you in excess of that amount, the excess sum will be credited as a payment of principal, unless I notify you, in writing, that I elect to have the sum returned to me. Interest shall be computed on the basis of a 365.25 day year.

**Variable Rate Changes:** You will notify me of any changes in the Interest Rate as required by law. A change in the rate may cause the amount of the final payment to change or may cause the amount of the monthly payment to increase or decrease.

**Interest After Default:** If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Variable Rate applicable to this Loan before default and before judgment. The interest rate will continue to be adjusted quarterly as described above, before and after default and before and after judgment.

## 10. REPAYMENT.

If I elected Total Deferred - During the Interim In-school Deferred Period, if any, you may send the Borrower statements (showing the total of my loan disbursements and the interest that accrues on my loan). Statements will be sent to the address shown on your records. I am not required to make payments during the Interim In-school Deferred Period, however it is in my best interest to make payments during this time period. You will add any interest that I do not pay during the Interim In-school Deferred Period to the principal balance, as described in section 9.

If I elected the "Immediate Principal and Interest Repayment" option, I will make monthly payments of principal and accrued interest during the In-School Period and my first payment will be due within fifty (50) days after the first disbursement of my Loan. If I fail to make the full payment due, and I have not graduated or not ceased to be enrolled at least half-time; my loan will convert to "Interim In-School Deferred."

**Repayment Options:** During the Repayment Period, alternative or graduated repayment options may be available upon request. If I desire an alternative repayment option, I will contact my servicer upon receipt of my "Welcome Letter" with the payment option I prefer.

**Repayment Schedule:** I will make consecutive monthly payments of principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of principal and interest will not be less than $100 which may result in a repayment term of less than twenty (20) years.

**Monthly Statements:** During the Repayment Period I will receive monthly statements for the repayment of my Loan. Failure to receive a monthly statement does not relieve me from my obligation to make all payments as required by the terms of this Agreement (as those payments may be changed by Lender to reflect interest rate changes).

**Revised Payment of Principal and Interest:** If my Variable Rate changes, as provided in Section 9 above, Lender may change the monthly payment of principal and interest I am required to pay, so that the payments will allow me to repay the unpaid balance of principal, interest and other charges due over the remaining term of the Repayment Period at the new interest rate. If

Lender does this, the change in the monthly payment amount will be provided on my monthly statement.

**Application of Payments:** Payments will be applied first to Return payment fees if applicable, then to accrued interest, then to principal up to the monthly payment amount, then to late fees. I understand that all accrued interest must be paid before the principal balance can be reduced.

**Prepayment:** I may, at my option, prepay all or any part of the principal, interest and other charges at any time before payment is due (whether during the In-School Interim Deferred Period or the Repayment Period) without penalty. Because of the way interest is calculated, I will not receive any interest refund or rebate if I prepay in full. Because the Loan Origination Fee is earned when assessed, I will not receive a rebate of any portion of the Loan Origination Fee if I prepay my Loan in full after it has been disbursed **(subject to Section 7 above).**

Prepayment of more than the monthly installment amount due under this Agreement will be applied to future monthly payments but no more than three months into the future, unless I clearly direct in writing submitted with such prepayment that I do not want such funds applied toward future monthly payments. If I instruct you to not apply a prepayment to future monthly payments, the prepayment will not reduce the amount of my required monthly payment until Lender recalculates the Repayment Schedule due to interest rate changes, and will not excuse me from having to make all previously scheduled future monthly payments on their due dates. However, prepayment of more than the monthly installment amount due under this Agreement may reduce the number of payments I must make and/or the amount of my future payments.

**Late Payments, Partial Payments, and "Payment in Full":** To the extent permitted by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge.

**Late Charges:** If you do not receive a payment by its due date, my Loan may be in default (see Section 11). In addition, I will pay a late charge if you do not receive any part of a monthly payment within fifteen (15) days after it becomes due. The late charge will be $50 or 5% of the unpaid amount of the payment, whichever is less.

**Returned Check Charges:** I agree to pay a Returned Check Charge of $15 for any check or other instrument you receive as payment of amounts due under this Agreement, that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

**Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid principal balance of my Loan (including capitalized interest), if I make payments after my payment due dates, I may owe additional interest and late charges at the end of the Repayment Period. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding principal balance, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement.

**Payment Due Despite Withdrawal from the Eligible Institution, Death or Disability:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the Eligible Institution without graduating or completion, even if such failure is caused by the Eligible Institution ceasing to provide education services. If I die, the terms of this Agreement will be binding on my estate, which will be liable for my unpaid indebtedness. I also understand that if I become totally and permanently disabled, my unpaid indebtedness on this Loan shall not be canceled.

**11. DEFAULT.** To the extent permitted by applicable law, my Loan will be in default if any of the following occurs: (a) A monthly payment is not received on or before its due date; (b) I break any promise made in this Agreement; (c) Lender discovers any false or misleading statement in any information I have given Lender in connection with this Agreement or the Application for this Loan; (d) I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; (e) I make an assignment for the

benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me; (f) I am adjudicated incompetent; (g) I fail to notify you of any change in my name, address, telephone number, or school enrollment status within 10 days after a change occurs; (h) I allow another person to forge my signature on any document.

**12. LENDER'S REMEDIES AFTER DEFAULT.** If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 13), Lender may declare the entire balance of principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation): (a) bringing a lawsuit against me and obtaining a judgment against me and/or (b) referring my Loan to a third party (such as a collection agency) for further collection efforts. To the extent permitted by applicable law, I agree to pay any reasonable collection agency commissions, fee and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and as permitted by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

**13. NOTICES.** I must immediately notify you in writing (within 30 days) after any of the following occurs: (a) a change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name; (b) I cease to be enrolled on at least a half-time basis at an the Eligible Institution; or (c) I graduate from the Eligible Institution. Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. To the extent permitted by applicable law, any notice you send to any one of us will be considered sent to all of us.

**14. GOVERNING LAW; UNSECURED AGREEMENT; INVALID PROVISIONS; WAIVERS; EXTENSION, RENEWAL, OR RELEASE; ASSIGNMENT; CHANGES TO AGREEMENT.**

**Governing Law:** I understand and agree that Lender is headquartered in Tennessee and the Loan will be disbursed by Lender from Tennessee through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 19) will be governed by federal law and (to the extent not preempted by federal law) the laws of the State of Tennessee, without regard to conflict of law rules.** Section 19 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

**Unsecured Agreement:** Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

**Invalid Provisions:** If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 19 or by a court having jurisdiction, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 19 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 19 is held to be invalid or unenforceable, as described more fully in Section 19 below.

**Waivers:** Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest"), and, to the extent permitted by applicable law, to give any other notices or demands in connection with this Agreement.

You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

**YOU AND I EACH WAIVE THE RIGHT TO A JURY TRIAL CONCERNING ANY CLAIM OR DISPUTE RELATING TO OR ARISING FROM THE APPLICATION, ANY DISCLOSURE STATEMENT, THIS AGREEMENT, OR THE LOAN (REGARDLESS OF WHETHER THE CLAIM OR DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT AND REGARDLESS OF WHETHER I OPT OUT OF THE ARBITRATION AGREEMENT).**

**Extension, Renewal or Release:** You may extend or renew this Agreement at your discretion and you may release any one of us without affecting or releasing any of the rest of us.

**Assignment:** I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me. If this Agreement is sold or otherwise transferred, my rights under the law or under this Agreement are in no way altered or impaired.

**Changes to Agreement:** Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

**Savings Clause:** If a law which applies to this Agreement and which sets maximum Interest or finance charges is finally interpreted so that the Interest or other charges collected or to be collected in connection with this Agreement exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

**No Accord and Satisfaction:** A restrictive endorsement on any payment item (such as "paid in full") will not be considered an accord and satisfaction of what I owe under this Agreement. If I dispute any amount owed you, I must write to ReliaMax Lending Services, PO BOX 91910, Sioux Falls, SD 57109-1910, or such other address provided by you to me for correspondence.

**Bankruptcy:** If I file for bankruptcy I may still be required to pay the amount due under this Agreement.

**Set-Off:** Whenever my Loan is in default (and regardless of whether you have declared the entire Loan balance to be immediately due and payable, in full), you may apply any funds of mine in your possession or control against amounts owed under this Loan without any notice.

**General:** Section and paragraph headings and captions in this Agreement are for convenience and reference purposes only, and are not intended to limit the meaning of any provision of this Agreement. Whenever applicable in this Agreement, the use of the singular includes the plural and use of the plural includes the singular.

**Signatures:** I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format or electronic signature and submission as a defense to enforceability of this Agreement and I forever waive any such defense.

**15. PRIVACY MATTERS.**

**Communicating with Me:** To the extent permitted by applicable law, and without limiting any other rights you may have, I expressly consent and authorize you, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in

EDMED_06012016_10453655

Page 4 of 8

connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. You, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan, to the extent permitted by governing law, may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

**Updating Information:** I agree to give you updated financial, enrollment status, contact, mailing and other information about me, and updated information about the Student, any time required under this Agreement or any time you reasonably request.

**The Eligible Institution:** To the extent permitted by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and may report my payment history to, the Eligible Institution.

**Receipt of and Reporting of Credit Information:** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, consumer credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

**Communications Regarding Loan and Release of Loan Information:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with each other, and to release information pertinent to this Loan to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the Eligible Institution to release to you, your servicer or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history and your current telephone number and address.

**Communications Regarding the Loan Certification and Disbursement Process:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the Eligible Institution or to facilitate the process of disbursing my loan funds to the Eligible Institution.

**Inquiries to Learn Current Address and Telephone Number:** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

**Social Security Number:** You and the Eligible Institution may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the Eligible Institution.

**Department of Education Information:** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

**16. STATE AND LOCAL TAXES AND FEES** (if applicable): I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

**17. STATE LAW NOTICES.** I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to borrowers and/or cosigners who live in the indicated state on the date that they submitted the application and to borrowers and/or cosigners who are residents of the state.

**ALABAMA RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower and the Cosigner, not the Lender): CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**CALIFORNIA RESIDENTS ONLY:** I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

**CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA RESIDENTS ONLY:** If you are an Iowa resident and your amount financed is Twenty-Five Thousand Dollars ($25,000) or less, this is a consumer credit transaction.

**IOWA KANSAS AND NEBRASKA RESIDENTS ONLY: (For purposes of the following notice, the word "you" refers to the Student Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

**MARYLAND RESIDENTS ONLY:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of Tennessee without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MASSACHUSETTS RESIDENTS ONLY:** Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

**MISSOURI RESIDENTS ONLY: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**NEBRASKA RESIDENTS:** A credit agreement must be in writing to be enforceable under Nebraska law. To protect you (Borrower(s)) and us (Lender) from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forbear repayment of money or to make any

EDMED_06012016_10453655

other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**NEVADA RESIDENTS ONLY:** This is a loan for study.

**NEW JERSEY RESIDENTS ONLY:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**NEW YORK, RHODE ISLAND and VERMONT RESIDENTS:** I understand and agree that you may obtain a consumer credit report in connection with this application and in connection with any updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

**NEW YORK RESIDENTS ONLY:** If any debt incurred on the account is ever in default, that fact may become a part of my credit record.

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**OKLAHOMA RESIDENTS ONLY:** If I am in default and only if the total amount disbursed under this Note is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

**SOUTH DAKOTA RESIDENTS ONLY:** Any improprieties in making the loan or in loan practices may be referred to Division of Banking, South Dakota Department of Labor and Regulation, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, Phone: 605.773.3421, Fax: 866.326.7504 ReliaMax Lending Services, LLC originates and services loans for lenders and is licensed by the South Dakota Division of Banking. If you have questions, concerns or disagree with a determination, you can contact the Division of Banking at: 1601 N. Harrison Avenue, Suite 1, Pierre, SD, 57501 or (605)773-3421.

**TEXAS RESIDENTS ONLY: Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.**

**UTAH RESIDENTS ONLY:** This Agreement is the final expression of the agreement between me and you and it may not be contradicted by evidence of an alleged oral agreement.

**VERMONT RESIDENTS ONLY:** BY SIGNING THIS CREDIT AGREEMENT, YOU CONSENT TO THE LENDER OBTAINING YOUR CONSUMER REPORT FROM A CONSUMER REPORTING AGENCY IN CONNECTION WITH THE TRANSACTION OR EXTENSION OF CREDIT FOR PURPOSES OF REVIEWING YOUR LOAN ACCOUNT, FOR THE PURPOSE OF TAKING COLLECTION ACTION ON YOUR LOAN ACCOUNT, OR FOR OTHER LEGITIMATE PURPOSES ASSOCIATED WITH YOUR LOAN ACCOUNT.

**WISCONSIN RESIDENTS ONLY:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE PRECEDING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**WISCONSIN RESIDENTS ONLY:** If I am a married Wisconsin resident: (1) My signature confirms that this loan obligation is being incurred in the interest of my marriage or family. (2) No provision of any marital property agreement, unilateral statement under §766.59 of the Wisconsin Statutes or court decree under §766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. (3) My spouse has actual knowledge that this credit is being extended to me and has waived the requirements of §766.56(3)(b) of the Wisconsin Statutes, as acknowledged by his or her signature on the Notice to Married Wisconsin Residents that I receive with this Agreement.

**18. FEDERAL LAW NOTICES.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

**REPORTING INFORMATION TO A CREDIT BUREAU:**

**NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the borrower's credit report.**

**HOLDER NOTICE:** I understand that the following notice is only applicable to loans issued to finance attendance at for-profit educational institutions or institutions otherwise subject to the FTC Holder Rule under 16 CFR 433.2.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE TO COSIGNER, if any: (In this Notice to Cosigner, "you" and "your" mean any Cosigner signing this Agreement.)**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of this debt if the Borrower does not pay. You may also have to pay late charges, which increases this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**19. ARBITRATION AGREEMENT. - Please read carefully.**

To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

1. This Arbitration provision will apply to my credit agreement, unless: (A) I notify you in writing that I reject the Arbitration provisions within sixty (60) days of signing my credit agreement: (B) I am a covered borrower as defined by the Military Lending Act, 10. U.S.C. §987; or (C) I am afforded statutory protections that prohibit submission of a dispute to arbitration. RIGHT TO REJECT: I MAY REJECT THIS Arbitration Agreement by mailing a signed rejection notice to ATTN: Arbitration Agreement Rejections, 1415 Ritner Highway, Carlisle, PA 17013. Any Rejection Notice must include my name, address, telephone number and loan or account number.

2. IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

3. DEFINITIONS: In this Arbitration Agreement, the following definitions will apply:

"I," "me" and "my" means the Borrower on this Agreement; the Student on whose behalf the proceeds of the Agreement have been advanced; the cosigner on this Agreement; and the heirs, executors and assigns of all the foregoing. "You," "your" and "yours" mean the Lender; any other subsequent holder of this Agreement; SouthEast Bank; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the Eligible Institution, and any of the Eligible Institution's financial aid offices or officers. "Claimant" means the party who first asserts a Claim in a lawsuit or arbitration proceeding. "Administrator" means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

4. "CLAIM" means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Also, "Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.

If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.

5. STARTING ARBITRATION: To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.

6. LOCATION AND COSTS: You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless otherwise determined by the arbitrator(s).

7. DISCOVERY; GETTING INFORMATION: Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

8. EFFECT OF ARBITRATION AWARD: Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, *provided* that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider de novo any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

9. GOVERNING LAW: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

10. SURVIVAL, SEVERABILITY, PRIMACY: This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply,

EDMED_06012016_10453655

provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

11. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**CAUTION: IT IS IMPORTANT THAT EACH THE BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT BEFORE SIGNING BELOW.** This Agreement contains all of the terms and conditions that apply to the Loan. This Agreement completely replaces any earlier understandings or communications any Borrower or Cosigner may have had with Lender, the Eligible Institution, or any other party about the Loan.

Before signing this Agreement, I, have read, understood and agree to all the provisions of this Agreement, including without limitation Section 19 (Arbitration Agreement). I and each of us agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement. Furthermore, I and each of us understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Section 3 above, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 4 above.

---

Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

<u>CAUTION:</u> IT IS IMPORTANT THAT EACH BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT AND ENSURE THAT THERE ARE NO BLANK SPACES CONTAINED IN THE NOTE BEFORE SIGNING BELOW.
STUDENT BORROWER SIGNATURE & DATE

| Paola M Prosper | Date (mm/dd/yyyy) |
|---|---|
| X | |

ARIZONA RESIDENTS ONLY: For purposes of this notice, the words "you" and "your" refer to the Cosigner. **Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with** Ariz. Rev. Stat. § 25-214 **or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation**

VERMONT RESIDENTS ONLY: For purposes of this notice, the word "you" and "your" refer to the Cosigner(s). **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**SPECIAL NOTICE FOR RESIDENTS OF GEORGIA:** By signing as Cosigner, you waive any right to require the Lender to commence an action against the Student Borrower as provided in the Official Code of Georgia Annotated §10-7-24.

**SPECIAL NOTICE FOR RESIDENTS OF NORTH CAROLINA:** By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the provisions of North Carolina General Statutes §26-7 through §26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower.

Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 17 and 19 and the Notice to Cosigner). I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

COSIGNER SIGNATURE & DATE

| Victor A Sanchez | Date (mm/dd/yyyy) |
|---|---|
| X | |



**Universidad de Puerto Rico**

## Student Loan Final Disclosure

1 mensaje



| | |
|---|---|
| **answers@campusdoor.com** <answers@campusdoor.com><br>Para: paola.prosper1@upr.edu | 29 de agosto de 2017, 14:00 |

08/29/2017

Paola M Prosper
Paraiso De Mayaguez 193 Serenidad
Mayaguez, PR 00680

RE: Application Identification Number 5001714214-01

Dear Paola M Prosper

Congratulations on your education loan approval!

We have created a Final Disclosure which sets forth the final terms of your loan and saved it to your account and, if applicable, your cosigner's account. Please carefully review this disclosure because it sets forth the final terms of your loan. Note that if you or your cosigner, if applicable, requested any reduction in your loan amount, it will be reflected in the Final Disclosure.

Unless you or your cosigner, if applicable, contact us to cancel the loan by the date set forth on the first page of the Final Disclosure, we will disburse your loan funds to your school as set forth below:

- 
- 

| Disbursement Date | Disbursement Amount |
|---|---|
| 9/1/2017 | $22,500.00 |
| 12/1/2017 | $22,500.00 |

If you have any questions regarding this notice, please contact:

- SouthEast Bank
- 1415 Ritner Highway
- Carlisle, PA 17013

- 717-254-2381

We're available to assist you any time Monday through Friday from 8:00 a.m. to 6:00 p.m. ET. For your convenience, you may e-mail us at answers@campusdoor.com. If you e-mail us, be sure to include your telephone number and the best time for us to reach you.

Sincerely,

SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

FDCLB

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*



Victor,

Thank you for your email.

When attempting to log into your account, please make sure you are accessing www.campusdoor.com/SouthEastBank/Account.

The username you should be using is (Victorprosper2017).

For security purposes, we cannot access your password. If you do not know your password, you may reset it on the login page by clicking "Forgot Password?". Your new password will be sent to the email address listed on your loan application.

Thank you,
Student Loan Support Center
1415 Ritner Highway, Carlisle, PA 17013
answers@campusdoor.com
Fax: 717.241.3188

Búsqueda   Imágenes   **Gmail**   Drive   Calendar   Sites   Grupos   Contactos   Más »

paola.prosper1@upr.edu | Cuenta de Google | Configuración | Ayuda | Cerrar sesión


**UPR**
Universidad de Puerto Rico

| victor | Buscar correo | Buscar en la Web | Mostrar opciones de búsqueda
Create un filtro |

**Redactar correo**

Recibidos

Destacados ☆

Enviados

**Borradores (29)**

Todos

**Spam (728)**

Papelera

**Contactos**

Etiquetas
**[Gmail]Papel... (24)**
Cartero
Notes
Prioridad
Seguimiento
Varios
  Editar etiquetas

**« Volver a Resultados**

Más acciones...   ◇   Ir

**‹ Más recientes** 20 de aproximadamente **88 Más antiguos ›**

⬆ Ocultar todos   🖶 Imprimir   📲 Nueva ventana

## Documentos Ayuda Financiera   Recibidos

**Dr. Manuel Ortiz Bustillo**<manuel.ortizbustillo@usat.edu>    📎1 de agosto de 2017, 16:45
Para: paola.prosper1@upr.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Saludos,

Adjunto le hago llegar documento que el Sr. Victor Prosper debe de firmar y subir a la pagina del prestamo estudiantil.

—

Sincerely,

## Dr. Manuel J. Ortiz Bustillo
Associate Dean of Clinical Sciences



## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR  00919

Tel. (787) 300-2111    Fax (787) 300-2049

www.usat.edu, www.usatpr.com

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, MONTSERRAT.

Main Campus,
Camelot Estate, P.O. Box 506, South Mayfield Estate Drive, Olveston, Montserrat,
British West Indies
Administrative Office:
4288 Youngfield Street, Wheatridge, CO 80033.
Puerto Rico Extension:
PO Box 364363, San Juan, PR 00936-4363.

## Enrollment Certification

November 8, 2017

RE: Student Doctor Paola Prosper,

To: Whom it May Concern

This letter is to certify that our student Paola Prosper, is a full time enrolled student in good standing in the MD program at the University of Science, Arts and Technology, Puerto Rico Extension.

Please feel free to contact the Department of Admissions with any questions you may have regarding this student at pradmissions@usat.edu. For written correspondence, please contact me at PO Box 364363 San Juan, Puerto Rico.

Regards,

Manuel J. Ortiz Bustillo, MD
Director & Dean of Clinical Sciences
The University of Science, Arts and Technology
Puerto Rico Extension

Búsqueda  Imágenes  **Gmail**  Drive  Calendar  Sites  Grupos  Contactos  **Más »**

**paola.prosper1@upr.edu** | Cuenta de Google | Configuración | Ayuda | Cerrar sesión

# UPR
## Universidad de Puerto Rico

carla _____    Buscar correo    Buscar en la Web    Mostrar opciones de búsqueda
Create un filtro

**Redactar correo**

Recibidos

Destacados ☆

Enviados

**Borradores (29)**

Todos

**Spam (728)**

Papelera

**Contactos**

Etiquetas
[Gmail]Papel... (24)
Cartero
Notes
Prioridad
Seguimiento
Varios
  Editar etiquetas

**« Volver a Resultados**

Más acciones...  ⬍  Ir

‹ **Más recientes** 26 de aproximadamente **80 Más
antiguos ›**

⬆ Ocultar todos  🖶 Imprimir  📲 Nueva ventana

## (sin asunto)

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>          30 de octubre de 2018, 14:43
Para: carla.konyk@gmail.com

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Good afternoon. My name is Paola Prosper from USAT PR and I would like to ask for a
statement regarding my loan. When I first apply for it, I ask for 40,000. The bank just send an
email to my dad saying I have a 50,000 debt. I never received anything notifications when the
check was available in the school from the bank. I would like to ask a statement of my loan to
see where are those other 10,000.
Thank you

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>          2 de noviembre de 2018, 10:32
Para: carla.konyk@gmail.com

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Sent from my iPhone

Begin forwarded message:

- Mostrar texto citado -

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>          5 de noviembre de 2018, 21:13
Para: carla.konyk@gmail.com

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

- Mostrar texto citado -

**Respuesta rápida**
**Para:** carla.konyk@gmail.com                          Más opciones de respuesta



**Universidad de Puerto Rico**

Paola M Prosper Crespo <paola.prosper1@upr.edu>

# (sin asunto)
2 mensajes

---

**Paola M Prosper Crespo** <paola.prosper1@upr.edu>                12 de diciembre de 2018, 12:22
Para: O.tulp@usat.edu, carla.konyk@gmail.com

Good afternoon. I am writing this email asking for a statement of my loan. I only took 1 year in USAT PR and 2 years were taken out of my loan. Also, malpractice insurance and graduation fee were out of my loan which I would like it to be returned.
Thank you.

---

**Orien Tulp** <o.tulp@usat.edu>                                   12 de diciembre de 2018, 21:55
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>

USAT PR is NOT closing.  a faculty member resigned, but others are waiting to take his place.


Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210

[El texto citado está oculto]

**USAT, Montserrat, LLC.**

**Statement**

Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033

| Date |
|---|
| 1/29/2019 |

Phone #    727-252-6205        carla.konyk@gmail.com
Fax #       303-399-4106

To:

Paola M. Prosper Crespo
193 Calle Serenidad
Paraiso de Mayaguez
Mayaguez, PR 00680

**Please Mail  Payments to:**

**USAT Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033**

| | EIN# 46-1491367 |
|---|---|

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2016 | Balance forward | | 0.00 |
| 07/18/2017 | INV #2843. | 52,270.00 | 52,270.00 |
| | --- Application Fee USD 125.00 | | |
| | --- Matriculation Fee USD 600.00 | | |
| | --- Graduation Charge USD 900.00 | | |
| | --- Insurance USD 895.00 | | |
| | --- Lab Fee Sept USD 500.00 | | |
| | --- Technology USD 250.00 | | |
| | --- MD Program, 10 @ USD 4,900.00 = 49,000.00 | | |
| 07/18/2017 | PMT #01840B. | -125.00 | 52,145.00 |
| 08/23/2017 | PMT #276776. | -600.00 | 51,545.00 |
| 10/07/2017 | PMT #Loan Proceeds. | -22,500.00 | 29,045.00 |
| 10/07/2017 | INV #2885. | 11,250.00 | 40,295.00 |
| | --- Tuition USD 11,250.00 | | |
| 01/14/2018 | PMT #Loan Proceeds. | -22,500.00 | 17,795.00 |
| 01/14/2018 | INV #3068. | 11,805.00 | 29,600.00 |
| | --- Tuition USD 11,805.00 | | |
| 01/29/2019 | CREDMEM #3753. | -29,400.00 | 200.00 |
| | --- MD Program, 6 @ USD 4,900.00 = -29,400.00 | | |

**Thank you for your payment.**

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | USD 200.00 |



# USAT

## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, MONTSERRAT

*MONTSERRAT*

**OFFICIAL TRANSCRIPT**

Main Campus,
Camelot Estate, P.O. Box 506, South Mayfield Estate Drive, Olveston, Montserrat,
British West Indies *www.usat.edu*
Admissions Office
4288 Youngfield St. Wheat Ridge, CO 80033

NAME: Paola M Prosper Crespo    I.D.:001-595    DOB: 10/18/1990
ADDRESS: Paraiso de Mayaguez Calle Serenidad 193, Mayaguez, PR 00680
EMAIL: paola.prosper@usat.edu
PREVIOUS INSTITUTIONS ATTENDED: Ponce Health Science University

MAJOR: MEDICINE
MATRICULATION DATE: 7/2017
DEGREE SOUGHT: MBBS/MD
Page 1 of 2

| DEPARTMENT | COURSE NR | TOPIC / COURSE TITLE | CREDITS | GRADE | QUALPTS | REMARKS |
|---|---|---|---|---|---|---|
| | | **USAT BASIC SCIENCES** | | | | |
| | BSC501 | GROSS ANATOMY/LAB | 4 | A | 16.0 | |
| | BSC523 | MEDICAL EMBRYOLOGY | 3 | A | 12.0 | |
| | BSC503 | HISTOLOGY | 3 | A | 12.0 | |
| | BSC901B | NEUROANATOMY | 3 | A | 12.0 | |
| | BSC560 | MEDICAL IMAGING | 1 | A- | 3.7 | |
| | BSC542 | MOLECULAR BIOLOGY | 3 | A | 12.0 | |
| | BSC901C | INTRO TO PHYSIOLOGY | 1 | A | 4.0 | |
| | BSC901D | INTRO TO PHARMACOLOGY+D40DD23:D47 | 1 | A- | 3.7 | |
| | BSC901E | INTRO TO MICROBIOLOGY | 1 | A | 4.0 | |
| | BSC682 | MEDICAL GENETICS | 3 | A | 12.0 | |
| | TTS600 | TEST TAKING STRATEGIES I | 0.5 | P | CR | |
| | BSC523 | MEDICAL PHYSIOLOGY | 6 | A | 24.0 | |
| | BSC670 | PHARMACOLOGY | 6 | B | 18.0 | |
| | BSC525 | MICROBIOLOGY AND IMMUNOLOGY | 4 | A- | 14.8 | |
| | BSC789 | GENERAL PATHOLOGY | 4 | B | 12.0 | |
| | BSC540 | BIOCHEMISTRY | 3 | A | 12.0 | |
| | TTS601 | TEST TAKING STRATEGIES II | 0.5 | P | CR | |
| | BSC303 | MEDICAL TERMINOLOGY | 2 | P | CR | |
| | BSC901F | ORGAN SYSTEMS I | 9 | B+ | 29.7 | |
| | BSC350 | PUBLIC HEALTH | 4 | A+ | 17.2 | |
| | BSC212 | ADVANCED CLINICAL NUTRITION | 3 | A+ | 12.9 | |
| | BSC901G | CLINICAL SKILLS I | 2.5 | A | 10.0 | |
| | BSC901H | ORGAN SYSTEMS II | 9 | A- | 33.3 | |
| | BSC901I | ORGAN SYSTEMS III | 9 | B- | 24.3 | |
| | BSC901J | PSYCHOPATHOLOGY | 4 | B | 12.0 | |
| | BSC612 | MEDICAL ETHICS | 2 | B- | 5.4 | |
| | BSC215 | PSYCHOLOGY | 3 | A- | 11.1 | |
| | BSC760 | INTRO TO CLINICAL MEDICINE | 3 | P | CR | |
| | | | 97.5 | 3.59 | 328.1 | |

**///////////END OF TRANSCRIPT – NOTHING FOLLOWS//////////**

COMMENTS:    Withdrew December 2018

**Not Valid if Black and White.**    Registrar:_____    Date Issued:_____

USA (FL Cert Nr. L12000078671), Montserrat (Cert Nr. 17-2003).
Member Institution of Med Ed Central, WHO Global Alliance on Healthcare, WDOMS World Medical Schools, ASIC (UK) & IPSP (ITALY), AAHEA. AICP. USAT is IMED/FAIMER listed.
USAT is an Equal Opportunity Employer. © USAT 2015  *www.usat.edu*
*Excellence and Professionalism in Research and Education.*    *01/2015*

Admissions: 303-371-0252

**USAT** (http://usat.edu/)

Home (http://usat.edu/)    About Us (http://usat.edu/aboutus/)    Application, Tuition & Fees (http://usat.edu/new-students/)

News   PhD Thesis Defense: "The Effects of Biophotonics Therapy As A Treatment Modality For Immune Stimulation in Hepatitis B and Syphilis in an Urb;

Colleges (http://usat.edu/colleges/)    Campus (http://usat.edu/campus/)    Courses (http://usat.edu/courses/)

USAT News (http://usat.edu/news/) and Videos (http://usat.edu/videos/)    Contact Us (http://usat.edu/contact-usat/)

**Our prestigious, accredited University, USAT, was established and licensed in September 2003 by the Government of Montserrat, a British Overseas Territory and became International Medical Education Directory (IMED) listed the same year. We are now among the fastest growing schools in the Caribbean Community (CARICOM) and possess the largest Healthcare Professional (HCP) to Medical Doctor (MD) bridge program. We are located on the beautiful, friendly, and unspoiled Island of Montserrat, in the heart of the Caribbean.**

**Our educational philosophy is founded on well-established traditional, and "time-honored", academic pursuits. Each carefully designed course is taught by experienced Professors and Clinicians, having long standing academic and professional expertise.**

# Our Mission

To provide Medical Graduate study programs presented in a humanistic manner that embraces high standards of excellence and professionalism. We believe these attributes are necessary to train the "Leaders of Tomorrow". This doctrine is inspired by physicians highlighted in the "100 Best Doctors of America". Many of these physicians emerged from humble beginnings as well as various nationalities, cultures, backgrounds, and institutions. We have shaped a program of superior excellence that trains scientists and physicians to meet the demands of scientific and medical needs in the current technological age and global community. To accomplish this objective, we strive to provide dedicated students with an equal opportunity to achieve success.

# Our Vision

**Our prestigious, accredited University, USAT, was established and licensed in September 2003 by the Government of Montserrat, a British Overseas Territory and became IMED-listed the same year. We are now the fastest growing medical school in the CARICOM, and possess the largest HCP to MD transition program.**

# Our Standards

We believe in the pursuit of excellence in education, research, patient care, community service with integrity, ethical behavior and respect for everyone. We value humanism and compassion for all people without distinction of age, race, sex, national origin, belief, or ethnicity. We are committed to working cooperatively and collaboratively with our students, teachers, staff, and community who make invaluable contributions to our institution and the development of our mission and vision every single day of their lives. In all aspects of University life, we will foster higher values such as sincerity, integrity, professionalism, honesty, collegiality, and the free expression and open minded exchange of ideas within the high standards that make this a vibrant and living institution.

# Our Students

U.S.A.T. students score among the highest of all International Medical Schools on the USMLE exams, historically with an overall pass rate at first attempt of well over 90% without a USMLE Prep course, and approaching 100 % when a USMLE prep course is layered atop the lecture materials.

- Graduation Rate, College Of Medicine: 90%**
- Graduation Rate, All Colleges: 95%**
- Us Residency Selection Rate: 95%***

*2013 Data **Average 2009-2013 Class Years ***Average percent of qualified applicants selected thru ERAS/NRMP/Outside match since 2004. In 2008, 2013, 2014 match rate was 100% of those fully qualified as of 15 September of the respective year when applied.*

# Examinations Preparation

USAT is included in the International Medical Education Directory (the 'IMED list') in the USA, CAPER (CANADA) and WDOMS. Accordingly, students and graduates of the University may apply for and sit for all components of the US Licensing Examinations (USMLE, Steps I, II, and III).

# Our Accreditations and Listings

The University of Science, Arts, and Technology, Montserrat is an accredited and internationally recognized teaching and research Institution.

USAT students and graduates qualify for and take the same examinations as graduates of traditional US Medical Schools, are graded using the same criterion, and may apply for the same Post Graduate Training opportunities as graduates of traditional US medical schools.

USAT has also been favorably reviewed by UNESCO and by the ISO 9001/2002 committee in Europe.

**Some of our Examinations Rankings Include:**

- Graduates are qualified to make application for the USA Medical Licensing Examination.

- Graduates are qualified to make application to residency training programs in the USA & Abroad.

- Pass Rate At First Attempt On USMLE Step I: 93%*

- Pass Rate On USMLE Step II CK (First Attempt): 98%

- Pass Rate On USMLE Step II CS (First Attempt) 99%*

*2013 Data Average 2009-2013 Class Years Average percent of qualified applicants selected through ERAS/NRMP/Outside match since 2004. In 2008, 2013, 2014 match rate was 100% of those fully qualified as of 15 September of the respective year when applied.*

USAT is included in the International Medical Education Directory (the 'IMED list') in the USA. Accordingly, students and graduates of the University may apply for and sit for all components of the US Licensing Examinations (USMLE, Steps I, II, and III). USAT students and graduates qualify for and take the same examinations as graduates of traditional US Medical Schools, are graded using the same criterion and may apply for the same Post Graduate Training opportunities as graduates of traditional US medical schools.

- Accreditation Service for International Schools, Colleges, and Universities (ASIC): As of January 2013, The University is now fully accredited with the UK based ASIC program. This accreditation is fully recognized in the United States, the United Kingdom, the Isle of Montserrat, and many other locations, as it focuses on International Accreditation. For more information on this accreditation, please visit the ASIC International College Accreditation Listing.

- USAT is included in the International Medical Education Directory (IMED) in the U.S. Students and graduates of the University may apply and sit for all components of the US Licensing Examinations (USMLE Steps I, II, and III). USAT students and graduates qualify for and take the same examinations as graduates of traditional U.S. Medical Schools, are graded using the same criterion, and may apply for the same Post Graduate Training opportunities as graduates of traditional U.S. medical schools.

- Educational Commission for Foreign Medical Graduates (ECFMG).

- AAHEA (American Association for Higher Education and Accreditation) accredited.

- The World Federation for Medical Education (WFME) has merged a number of recognized listings together in an effort to update these listings and maintain the highest standards in Medical Education listing. To further this effort, the WFME is heading up the efforts of Avicenna, the World Health Organization (WHO), and the University of Copenhagen, with the assistance of IMED/FAIMER, to create the World Directory of Medical Schools (WDOMS). For more information of the efforts and standards of the WFME, please see their website: World Federation for Medical Education.

- USAT is fully accredited and licensed by the Ministry of Education of Montserrat to grant Bachelor's, Master's, and Doctorate degrees in a variety of disciplines.

- CAPER Listing
- USAT Student and Post Graduate Association
- The University of Seville
- Instituto de Tecnicas de Saude
- The Medical Council of Canada
- WDOMS (World Directory of Medical Schools) listed

©USAT 2018 | All Rights Reserved

Correo de Universidad de Puerto Rico - (sin asunto)                                    4/8/19, 11:19 PM

paola.prosper1@upr.edu | Cuenta de Google | Configuración | Ayuda | Cerrar sesión

# UPR
### Universidad de Puerto Rico

| konyk | Buscar correo | Buscar en la Web | Mostrar opciones de búsqueda |
| | | | Create un filtro |

**Redactar correo**

Recibidos

Destacados ☆

Enviados

**Borradores (29)**

Todos

**Spam (728)**

Papelera

**Contactos**

Etiquetas
[Gmail]Papel... (24)
Cartero
Notes
Prioridad
Seguimiento
Varios
  Editar etiquetas

« **Volver a Resultados**       Más acciones...  ⌄  Ir  ‹ **Más recientes** 4 de 32 **Más antiguos** ›

⬆ Ocultar todos  🖶 Imprimir  📤 Nueva ventana

## (sin asunto)  Recibidos

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>       28 de enero de 2019, 13:56
Para: O.tulp@usat.edu, registrar2@usat.edu, carla.konyk@gmail.com, c.konyk@usat.edu,
c.konyk@gmail.com, admissions@usat.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Also, I already signed the withdrawal form, I was ONLY 1 year and you already took that
money from my loan, I want to know from what are the 29,000 that I "owe" you. On the other
hand, the 2nd disbursement was of 8,000 something NOT of 11,000 something that it say in
the statement. I want to know where is that money. I've been trying to keep calm but you are
making this very hard and difficult. It wasn't my fault that USAT PR close without notice. **I
NEED THE OFFICIAL TRANSCRIPT AND I NEED A ANSWER TO WHERE IS THE REST
OF MY MONEY AND FROM WHAT ARE THOSE 29,000.**

**Orien Tulp**<o.tulp@usat.edu>       28 de enero de 2019, 14:14
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>, Carla Konyk - Director/Student
Accounts <c.konyk@usat.edu>

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Dear Paola,

I am forwarding this to Dr Konyk, who manages the accounts. I can not access any student
accounts or other academic records. We had not planned on closing the PR location either,
and hope to be able to reopen it in the near future.

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210
- Mostrar texto citado -

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>       28 de enero de 2019, 22:45
Para: Orien Tulp <o.tulp@usat.edu>, registrar2@usat.edu, carla.konyk@gmail.com,
c.konyk@usat.edu, c.konyk@gmail.com, admissions@usat.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

I've already lost this semester because of the closing of USAT PR, the least you can do is
sending me my official transcript and telling me where is the rest of my money. My future is not

a joke and I NEED MY OFFICIAL TRANSCRIPT TO CONTINUE PURSUING MY DREAMS.

- Mostrar texto citado -

**Carla Konyk**<carla.konyk@gmail.com>    28 de enero de 2019, 23:51
Responder a: c.konyk@usat.edu
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Hello Paola,
I'm sorry for the frustration. It's a tough time for all of us.
I recalculated your invoice and you have a credit of $200.00.
Please give me an address where you would like it to be sent.

Thank you,

Carla Konyk

*Carla M. Konyk,*
*Vice President, Director of Administration*

**University of Science, Arts and Technology (USAT)**
*Office*   303-371-0252
*Cell*   727-252-6205

- Mostrar texto citado -

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>    28 de enero de 2019, 23:54
Para: c.konyk@usat.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Thank you

Paraiso de Mayaguez
Serenidad 193
Mayagüez PR, 00680
- Mostrar texto citado -

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>    28 de enero de 2019, 23:59
Para: c.konyk@usat.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

When can I my official transcript? It is very overwhelming that I've been trying to ask for it since December started and I need it in order to continue with my dream. I cannot do anything without it.

On Jan 28, 2019, at 11:51 PM, Carla Konyk <carla.konyk@gmail.com> wrote:

- Mostrar texto citado -

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>                29 de enero de 2019, 0:07
Para: c.konyk@usat.edu
Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

My second disbursement suppose to be of $11,805 following the statement that you send me.
I received a check of the amount of 8,000 something. There is money missing.

On Jan 28, 2019, at 11:51 PM, Carla Konyk <carla.konyk@gmail.com> wrote:

- Mostrar texto citado -

**Carla Konyk**<carla.konyk@gmail.com>                29 de enero de 2019, 0:07
Responder a: c.konyk@usat.edu
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>, "Mary Hickling - Registrar (M-Z)"
<registrar2@usat.edu>
Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Hi again,
Mary Hickling is our registrar and she will prepare the transcript for you.
Can she use the same address to send the official ones? I'll copy her here
so she will be aware of the situation.

Paola M. Prosper Crespo
Paraiso de Mayaguez
Serenidad 193
Mayagüez, PR 00680

All the best to you,

Carla
- Mostrar texto citado -
- Mostrar texto citado -

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>                29 de enero de 2019, 0:15
Para: c.konyk@usat.edu
Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Yes, the same address

Sent from my iPhone
- Mostrar texto citado -

**Carla Konyk**<carla.konyk@gmail.com>                29 de enero de 2019, 0:36

Responder a: c.konyk@usat.edu
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Hi,
I worked through the numbers from the beginning.
Ok, according to my records your loan was for $45,000.00.
From the first disbursement of $22,500.00, you received a check for $11,250.00. (Check # 1171 dated 11-1-2017)
From the second disbursement of $22,500.00, you received a check for $11,805.00. (Check # 3068 dated 1-14-2018)
together with the payments you have already made for the Application and matriculation fees, the amount that you paid towards your tuition
was $22,670.00. today, I just gave you a credit of $29,400.00 for the semesters you didn't get to complete.

The total cost of the program was $52,270.00.
So, when you deduct the amount you paid and also the credit given, you get a total of $52,070.00. A difference
of $200.00 back to you.

- Mostrar texto citado -

- Mostrar texto citado -

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

**Paola M Prosper Crespo**<paola.prosper1@upr.edu>                29 de enero de 2019, 20:31
Para: c.konyk@usat.edu

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Ok my address is:
Paola M. Prosper Crespo
Paraiso de Mayaguez
Serenidad 193
Mayagüez, PR 00680


I'll be waiting for the credit of $200.00 and and the official transcript.

Thank you!

- Mostrar texto citado -

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

**Carla Konyk**<carla.konyk@gmail.com>                30 de enero de 2019, 0:14
Responder a: c.konyk@usat.edu
Para: Paola M Prosper Crespo <paola.prosper1@upr.edu>

Responder | Responder a todos | Reenviar | Imprimir | Eliminar | Mostrar original

Thank you for your email.
I'll get the registrar started on your transcript.
She has a number of them ahead of you, so give her a week or two.

- Mostrar texto citado -

- Mostrar texto citado -