**EXHIBIT 48**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LORAIMA M. ROSADO-VILLAFAÑE; ET ALS | CIVIL NO. 19-1707 |
| PLAINTIFFS | |
| VS. | RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); |
| UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ET ALS | FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY**

1. My name is Loraima M. Rosado Villafañe. I am of legal age, student, single, domiciled and resident of Jayuya, Puerto Rico.

2. My address is the following: Carr 144 Km 1 Hm 0 Bo. Rio Grande, Jayuya, P.R. 00664-2369.

3. In May 29, 2018 I was searching for a medical school to apply in order to get into a career in medicine.

4. On or around June 1, 2018 I was contacted by Manuel José Ortiz-Bustillo ("Ortiz") and Daniela Cabrera-Pujadas ("Cabrera").

5. Ortiz and Cabrera represented themselves as officials of the medical school known as University of Science, Arts and Technology ("USAT").

6. Ortiz and Cabrera represented to me that USAT was an accredited college of medicine in Puerto Rico.

7. On June 1, 2018 I received various materials regarding USAT, such as a brochures, applications and enrollment agreements. These materials made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

8. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Orien L. Tulp ("Tulp") is the President of USAT, Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT.

9. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, and that Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico.

10. As such, my understanding was that Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all officials and representatives of USAT.

11. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT was accredited by the Educational Commission for Foreign Medical Graduates ("ECFMG") so that USAT students may be able to take the United States Medical Licensing Examinations.

12. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that being a student of USAT would allow me to take the United States Medical Licensing Examinations.

13. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT also had other satellite campuses or schools in other states in the United States, such as in Florida, Maryland and Texas.

14. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT had its main Administrative Office in the state of Colorado, in the United States.

15. I understood that the USAT officials have been working at USAT for some time.

16. The USAT Officials made representations that USAT's purpose was to provide me an education in medicine if I applied to be a student.

17. In consideration of providing me an education in medicine if I became a student, USAT would request payments from me.

18. The USAT Officials made representations that once the payments would be received, they would provide the education in Medicine and I would be able to take the United States Medical Licensing Examinations.

19. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I was induced and made the decision to apply to USAT, thinking that I was going to be able to receive a valid medical education in Puerto Rico and will be able to apply for and take the United States Medical Licensing Examinations.

20. On June 4, 2018, I submitted all the required documents and required payments to USAT in order to apply.

21. On June 4, 2018, I received a letter from Tulp which informed me that I was admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of scientific and medical education. The Letter indicated that I must pay no less than five thousand four hundred dollars ($5,400.00) per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00).

22. Once I was admitted by USAT, the USAT officials oriented me as to the manner of payment and the possibility of taking out a loan.

23. On June 4, 2018, the USAT officials assisted me in submitting a loan application with SouthEast Bank ("SB") in order to pay USAT.

24. On July 13, 2018, I submitted a loan application to SB, which was accepted, and they provided a personal loan to me for the sum amount of $50,000.

25. On August 15, 2018, SB disbursed the personal loan and directed to the offices of USAT located in Colorado.

26. I did not receive the personal loan directly, but instead had to request USAT to deliver me certain sum amounts from the personal loan.

27. The USAT officials located in Colorado were the ones that had full control of my SB personal loan.

28. On August 25, 2018, USAT would deduct the sum amount of $6,495.00 from the $50,000.

29. From the date of my admission until September of 2018, USAT had received the sum amount of $18,990.00 for providing education in medicine.

30. From the date of my admission until September of 2018, while USAT received the sum amount of $18,990.00 I understood that I was receiving a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

31. On September 14, 2018 I was notified by the USAT Officials of the ECFMG irregularities.

32. On November 8th of 2018, Ortiz sent an e-mail to me and the other students regarding ECFMG's decision to find me and the other students not eligible for the United States Medical Licensing Examination. In that e-mail, Ortiz falsely represented to me and the other students that USAT was "surprised" by ECFMG's decision.

33. However, USAT never resolved me and the other student's situation and we were unable to take the United States Medical Licensing Examination via USAT.

34. On January 10, 2019, I requested USAT to deliver transcripts about my medical education.

35. On July 17, 2020, I received the transcript of my medical education from USAT.

36. However, these transcripts of medical education from USAT were not accepted by other medical schools.

37. On January 2019, all applications for medical schools in the US were rejected and they did not accept the USAT medical education.

38. Therefore, I had to start my medical education again as if I did not receive any.

39. Based on the above, USAT received a sum amount of $18,990.00 from my $50,000 without providing a valid medical education in Puerto Rico.

40. Based on the above, USAT received a sum amount of $18,990.00 from my $50,000 for providing an invalid medical education that resulted in my inability to take the United States Medical Licensing Examinations.

41. All the USAT Officials participated in the false representation that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

42. USAT falsely represented to me and many other students throughout 2017 and 2018 that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

43. However, the reality is that USAT did not provide to me and the other students a valid medical education, which resulted in me being unable to take the United States Medical Licensing Examinations.

44. From the August 2, 2018 until December 15, 2018 USAT and the USAT officials kept repeating their false statements that they were providing a valid medical education and I would be able to take the United States Medical Licensing Examination, so long as I kept paying them, which I did because USAT received the sum amount of $18,990.00 from my $50,000.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. sec. 1746.

Dated at San Juan, PR, this 29 of March, 2021.     *Loraima M Rosado*

Loraima M. Rosado Villafañe

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **SUJEIL PEÑA-TORRES; et als.** | CIVIL NO. 19-1707 |
| PLAINTIFFS | |
| VS. | RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); |
| **UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; et als.** | FRAUDULENT INDUCEMENT; BREACH OF CONTRACT; UNJUST ENRICHMENT; TORT DAMAGES |
| | TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

**ANSWERS TO FIRST SET OF INTERROGATORIES AND
REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:　　　**CO-DEFENDANT, DANIELA CABRERA PUJADAS**
　　　　　**Through its legal counsel,**
　　　　　**CHARLES A. CUPRILL, P.S.C. LAW OFFICES**

FROM:　　**LORAIMA M. ROSADO VILLAFAÑE**
　　　　　**Through his legal counsel,**
　　　　　**VICTOR M. RIVERA-RIOS**

Comes now, **Lorima M. Rosado Villafañe**, hereinafter referred as "Plaintiff" and/or as "me, myself, or "I", through counsel, hereby submits his Answers to Co-Defendant, **Daniela Cabrera Pujadas** ("Co-Defendant") First Set of Interrogatories and Request for Production of Documents.

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff has not completed the investigation, discovery, or analysis, of all the facts of this case and has not completed preparation for trial. Accordingly, all of the following responses are provided without prejudice to Plaintiff's right to supplement or amend discovery responses

pursuant to the terms of the Federal Rules of Civil Procedure, or introduce at trial any evidence that is subsequently discovered relating to proof of presently known facts and to produce and introduce all evidence whenever discovered relating to the proof of subsequently discovered material facts. Moreover, facts, documents and things now known may be imperfectly understood and accordingly, such facts, documents, and things, may not be included in the following responses. Plaintiff reserves the right to reference, discover or offer into evidence at the time of trial any and all facts, documents and things notwithstanding the initial responses and objections interposed herein. Plaintiff further reserves the right to reference, discover, or offer into evidence at the time of trial any and all facts, documents and things which it does not presently recall but may recall at some time in the future.

## **DEFINITIONS**

The following definitions are incorporated by reference in all of Plaintiff's specific responses and objections to Plaintiff's Answers to Defendants First Set of Interrogatories, Request for Admissions and Requests for Production of Documents:

1.      "Irrelevant" means not relevant to the claims or defenses of any party involved in the pending action and not reasonably calculated to lead to the discovery of evidence admissible as to those issues.

2.      "Impermissibly overbroad" means irrelevant, burdensomely and unnecessary to the extent the set of interrogatories seek: (1) information about individuals or entities not parties to this action; and/or (2) information pertaining to persons' activities and/or events that are outside the scope of the present litigation.

3.      "Vague" means ambiguous or not specified with reasonable particularity.

2

4.      "Unduly burdensome and oppressive" means that: (1) it is impossible to produce such document or information in a complete and sufficient manner without making a complex or onerous investigation; (2) the collection or reproduction of such document or information is financially burdensome or unfeasible; or (3) the document or information sought has been previously produced to a party within this action and served upon every attorney involved in the litigation.

5.      "Not discoverable" means outside of the scope of the present litigation because it is either, and/or irrelevant, impermissibly overbroad and/or vague.

6.      "Defendants" mean the named individuals in the caption of the complaint.

## GENERAL OBJECTIONS

1.      Plaintiff objects to Defendant's interrogatories on the grounds that they seek disclosure of information protected by the attorney-client, work product, and self-critical analysis privileges. To the extent that Plaintiff inadvertently discloses information that may arguably be protected from discovery under attorney-client privileged the work product doctrine, the self-critical analysis privileged or any other applicable privilege, such inadvertent disclosure does not constitute a waiver of any such privilege.

2.      Plaintiff objects to Defendant's interrogatories to the extent that Defendants' definitions and instructions purport to impose requirements beyond the Federal Rules of Civil Procedure anchor purport to give meaning to terms beyond Plaintiff's normal connotation.

3.      Plaintiff objects to Defendant's interrogatories insofar as they seek information concerning matters unrelated to the subject matter of this lawsuit, on the ground that it is overly broad, unduly burdensomely and seeks information that is neither relevant to the subject matter

3

of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to Defendant's interrogatories to the extent that they are not limited in time frame and are overly broad and unduly burdensome because they are more than inclusive of the relevant time period at issue in this case.

5.    Plaintiff objects to Defendant's interrogatories to the extent that they call for information that is not currently in her possession, custody, or control.

6.    The responses set forth below are made without in any manner waiving (a) the right to object to the use of any response for any purpose in this action or any other actions, on the grounds of privilege, relevance materiality, or any other appropriate grounds; and (b) the right to revised corrects supplement, or clarify any of the responses provided below at any time.

These General Objections are applicable to each and every one of the following responses and objections, and failure to repeat an objection in response to a specific request is not a waiver of the objection. Further, when Plaintiff specifically repeats one or more of these general objections in response to a specific interrogatory, such specific response is not a waiver of these general objections.

Subject to and without waiving these general objections, and subject to and without waiving the specific objections noted below, Plaintiff responds as follows:

## INTERROGATORRIES

### INTERROGATORY 1

1. As to the person who answers these Interrogatories state:

a. Your full name, including your two last names and any nickname;

b. Physical and postal address, as well as a telephone number where you can be contacted.

4

c. Identify the following circumstances if you exercise any profession, work or business: (i) nature, type or classification of profession, work or business; (ii) exact name and address of your place of business; (iii) if you are an employee, state the name of your employer as well as the exact address of your current job.

d. State your relationship with USAT.

**RESPONSE:**

a. Loraima Michelle Rosado Villafañe, Lori.

b. Physical adress: Bo Rio Grande, Sec Los Naranjos, Carr 144 Km 1 Hm 0, and Postal address: PO Box 1369, Jayuya, PR 00664-2369.

c.     i. Medical student

    ii. Caribbean Medical University, 25 Pater Euwensweg, Willemstad, Curaçao.

d. Ex alumni of USAT.

## INTERROGATORY 2

State the basis for your statement at paragraph 2 of the Third Amended Complaint (the "Complaint") to the effect that Cabrera was an officer and director of USAT and submit all documents in support thereof

**RESPONSE:**

Daniela Cabrera ("Cabrera") was a Clinical Science Coordinator (faculty member) at USAT, she was the one that sent me the curriculum of the clinical rotations.

See Attachments.

## INTERROGATORY 3

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The persons who shared this experience with me with dealing with Cabrera as an USAT official were Joffre Gómez Frontera ("Joffre") and Zabdiel Nieves Rivera ("Zabdiel") because we all participated in the interactions with Cabrera when we were applying to USAT. I was also told by the other Plaintiffs that they also had interactions with Cabrera.  All the Plaintiffs have personal knowledge that Cabrera was an official USAT.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 4**

State the facts supporting your allegations of paragraph 3 of the Complaint

**RESPONSE:**

The USAT and USAT officials violated the RICO Act, because they received approximately fifty thousand dollars ($50,000) from a loan that I requested from SouthEast Bank. The payment for the student tuition and fees issued to USAT was based on the false representation that they could provide medical education within the United States when they were not certified to do so and later, I was not allowed to take the United States Medical Licensing Examinations. I also paid a payment of $125 of application fee.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

6

**INTERROGATORY 5**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff identifies the following individuals who may have discoverable information and may be used to support the Plaintiff's theories:

1. Sujeil Peña-Torres ("Peña") -

a. Peña must be contacted through the undersigned counsel.

b. Peña was a student applicant and student of the USAT PR Branch.

c. Peña has personal knowledge of the facts alleged in the Complaint. In summary, Peña has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the Puerto Rico Branch ("PR Branch") of the University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT"), 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the joint owners of USAT, who are Orien L. Tulp ("Tulp") and Carla M. Konyk ("Konyk")  Manuel José Ortiz-Bustillo ("Ortiz"), Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera") and Karen Baldwin ("Baldwin") (jointly referred as "USAT Officers"), amongst other unknown persons. 3) how USAT and the USAT Officers (jointly "Defendants") violated the Racketeer Influenced and Corrupt Organizations Act

7

("RICO"), 18 USC sec. 1961, *et seq.* because the Defendants caused injuries to the Plaintiffs and various other medical students ("RICO victims") because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from banking institutions ("Banks") that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from United States Regulatory Agencies ("Regulatory Agencies"), 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified

8

to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the Educational Commission for Foreign Medical Graduates ("ECFMG") because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

2.    Jose E. Blasco-Jusino ("Blasco") -

a.    Blasco must be contacted through the undersigned counsel.

b.    Blasco was a student applicant and student of the USAT PR Branch.

c.    Blasco has personal knowledge of the facts alleged in the Complaint. In summary, Blasco has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO

9

victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such

10

that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

3.    Lucero Rodriguez-Fernández ("Rodriguez") -

a.    Rodriguez must be contacted through the undersigned counsel.

b.    Rodriguez was a student applicant and student of the USAT PR Branch.

c.    Rodriguez has personal knowledge of the facts alleged in the Complaint. In summary, Rodriguez has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4)

how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the

12

payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

4.    Lisa M. Torres-Colon ("Torres") -

a.    Torres must be contacted through the undersigned counsel.

b.    Torres was a student applicant and student of the USAT PR Branch.

c.    Torres has personal knowledge of the facts alleged in the Complaint. In summary, Torres has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they

13

were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the

14

ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

5.      Joffre E. Gómez-Frontera ("Joffre") -

a.      Joffre must be contacted through the undersigned counsel.

b.      Joffre was a student applicant and student of the USAT PR Branch.

c.      Joffre has personal knowledge of the facts alleged in the Complaint. In summary, Joffre has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical

15

examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed

16

necessary that arises from the facts alleged in the Complaint.

6.      Zabdiel A. Nieves-Rivera ("Zabdiel") -

a.      Zabdiel must be contacted through the undersigned counsel.

b.      Zabdiel was a student applicant and student of the USAT PR Branch.

c.      Zabdiel has personal knowledge of the facts alleged in the Complaint. In summary, Zabdiel has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false

17

representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

7. Enny de Jesús-Ureña ("Enny") -

a. Enny must be contacted through the undersigned counsel.

18

b. Enny was a student applicant and student of the USAT PR Branch.

c. Enny has personal knowledge of the facts alleged in the Complaint. In summary, Enny has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO

19

victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

8.    Loraima M. Rosado-Villafañe ("Loraima") -

a.    Loraima must be contacted through the undersigned counsel.

b.    Loraima was a student applicant and student of the USAT PR Branch.

20

c.    Loraima has personal knowledge of the facts alleged in the Complaint. In summary, Loraima has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to

21

take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

9.       Paola M. Prosper-Crespo ("Prosper") -

a.       Prosper must be contacted through the undersigned counsel.

b.       Prosper was a student applicant and student of the USAT PR Branch.

c.       Prosper has personal knowledge of the facts alleged in the Complaint. In summary, Prosper has personal knowledge as to: 1) how the Plaintiffs are medical students

22

whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education

23

in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

10.     Wendoly M. Vazquez Oliveras ("Vazquez") -

a.     Vazquez must be contacted through the undersigned counsel.

b.     Vazquez was a student applicant and student of the USAT PR Branch.

c.     Vazquez has personal knowledge of the facts alleged in the Complaint. In summary, Vazquez has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed

24

by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during

25

approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

11.    Orien L. Tulp ("Tulp") -

a.    Tulp was the Owner and President of USAT.

b.    Tulp has personal knowledge of the facts alleged in the Complaint. In summary, Tulp has personal knowledge as to: 1) how Tulp created USAT in Montserrat, 2) how Tulp created locations within the United States to open USAT branches, 3) how Tulp created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Tulp located the main USAT offices in Colorado, 5) how Tulp directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Tulp directed that Konyk handle and receive all Tuition payments, 7) how Tulp directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10)

26

how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality

27

they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

12.     Carla M. Konyk ("Konyk") -

a.      Konyk was the Owner and Vice President of USAT.

b.      Konyk has personal knowledge of the facts alleged in the Complaint. In summary, Konyk has personal knowledge as to: 1) how Konyk created USAT in Montserrat, 2) how Konyk created locations within the United States to open USAT branches, 3) how Konyk created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Konyk located the main USAT offices in Colorado, 5) how Konyk directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Konyk handle and receive all Tuition

28

payments, 7) how Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the R ICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory

29

Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

13. Manuel José Ortiz-Bustillo ("Ortiz") -

a. Ortiz was the Associate Dean of the PR Branch of USAT.

b. Ortiz has personal knowledge of the facts alleged in the Complaint. In summary, Ortiz has personal knowledge as to: 1) how Ortiz was originally a student of USAT, 2) how Ortiz reached and agreement with Tulp to create the PR Branch of USAT, 3) how Ortiz coordinated

30

with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Ortiz recruited students to apply to the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were

31

licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

14.    Yanire Bustillo ("Bustillo") -

a.    Bustillo was an employee of the PR Branch of USAT.

32

b.      Bustillo has personal knowledge of the facts alleged in the Complaint. In summary, Bustillo has personal knowledge as to: 1) how Bustillo worked as an employee of the PR Branch of USAT, 2) how Bustillo coordinated with Konyk who was located the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various

33

times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

15.    Daniela Cabrera-Pujadas ("Cabrera") -

a.    Cabrera was an employee of the PR Branch of USAT.

34

b.      Cabrera has personal knowledge of the facts alleged in the Complaint. In summary, Cabrera has personal knowledge as to: 1) how Cabrera and Ortiz coordinated with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Cabrera and Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Cabrera and Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Cabrera and Ortiz recruited students to apply to the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical

35

examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed

36

necessary that arises from the facts alleged in the Complaint.

        16.     Karen Baldwin ("Baldwin") -

        a.     Baldwin was an employee of USAT.

        b.     Baldwin has personal knowledge of the facts alleged in the Complaint. In summary, Baldwin has personal knowledge as to: 1) how Baldwin worked as an employee of USAT, 2) how Baldwin worked with USAT from the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect

wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

Plaintiff reserves the right to announce any other witnesses during the process of discovery.  Plaintiff reserves the right to call any individuals named by the Defendants whose name becomes known through discovery or otherwise. Plaintiff reserves the right to call any individuals to testify for impeachment purposes.

## INTERROGATORY 6

State the facts supporting your allegations of paragraph 4 of the Complaint.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 4.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 7

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 8

39

As to paragraph 34 of the Complaint state the nature and extent of Cabrera's contact with you and your interview by her, specifically stating date, time and place of all contacts and interviews in chronological order, narrating what Cabrera told you as to each, including her representations as to USAT.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2.

Notwithstanding, the above Cabrera represented herself as the Clinical Science Coordinator, where she sent me emails related to the curriculum of the clinical rotations and, a document of the hospitals affiliated to USAT to do the clinical rotations.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 9**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

40

**INTERROGATORY 10**

State Cabrera's involvement with the facts alleged in paragraph 35 of the Compliant.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 11**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 12**

Separately as to paragraph 36 and 37 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each.

 **RESPONSE:**

41

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 13**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons separately as to paragraphs 36, 37 and 38.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 14**

As to paragraph 38 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each, that induced you to make the decision to apply to USAT, thinking that you were going to receive the education in medicine and that you would be able to take the United States Medical Licensing Examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

42

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 15**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 16**

As to paragraph 43 of the Complaint, state Cabrera's participation in the White Coat Ceremony, if any.

**RESPONSE:**

Not applicable. I did not attend the White Coat Ceremony.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 17**

As to paragraph 44 of the Complaint, state Cabrera's participation in the facts alleged therein, indicating if Cabrera was located in Colorado.

43

**RESPONSE:**

Cabrera was not located in Colorado. She was located in Puerto Rico. Notwithstanding, all the payments that I made for the PR Branch of USAT were going to Colorado.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 18**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 19**

As to paragraph 45 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

**RESPONSE:**

I was assisted by an USAT official to obtain the student loan. All payments to USAT originated from the student loan I applied for. I did receive e-mails from the Southeast bank in which it reflected that the student loan was obtained and paid to USAT. USAT has in their possession evidence of them receiving the student loans. The payment was sent to Colorado.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 20

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each and state the name of USAT's attorneys.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 21

As to paragraph 59 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

## RESPONSE:

I received an email for a conference to discuss the situation about the school and the USMLE but could not attend. Notwithstanding, there are other witnesses, such as the Plaintiffs or Defendants, that did participate in the conference and have personal knowledge.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 22

45

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 23**

As to paragraph 60 of the Complaint, state to whom the communications referred to therein were forwarded and by whom as to each communication and submit copies thereof.

**RESPONSE:**

I received emails related to the lack of eligibility for the United States Medical Licensing Examination, for students who expect to graduate after January 1, 2019, as in my case.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 24**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 5.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 25**

As to paragraph 61 of the Complaint, state Cabrera's participation and/or involvement in the allegations set forth therein.

**RESPONSE:**

I received an email with instructions that we do not send additional information to ECFMG and to send all information regarding ECFMG to Karla Konyk.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 26**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

47

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 27**

As to paragraph 65 of the Complaint, what were the false representations made by Cabrera to you, chronologically stating the time and date thereof and their nature.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection above, I tried to transfer to other Medical Schools (UMHS St. Kitts and Universidad Autónoma de Guadalajara School of Medicine, México) but I must restart my medical education again because of the false representations made by the USAT Officials. At this moment I am in Caribbean Medical University in Curaçao, where I had to repeat all the classes taken in USAT.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 28**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

48

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 29

As to paragraph 68 of the Complaint, state chronologically by time and date Cabrera's participation and/ or involvement in the false representations by mail and wire representing that USAT would provide a valid medical education to you and that you would be able to take the United States Medial Licensing Examinations, setting forth the nature thereof, and submit copies thereof.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 30

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

## RESPONSE:

49

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 31**

As to paragraph 71 of the Complaint, chronologically by time and date indicate all payments made by you to Cabrera and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 32**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

50

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 33**

As to paragraph 72 of the Complaint, state how you were fraudulently induced by Cabrera into applying, studying and paying for a medical education at the USAT PR Branch.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 34**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 35**

51

As to paragraph 73 of the Complaint, state how Cabrera orchestrated the scheme to defraud with the knowledge to deceive you by means of false or fraudulent pretenses, representations, promises or other deceptive conduct.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

fee.

**INTERROGATORY 36**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 37**

52

As to paragraph 74 of the Complaint, state how Cabrera falsely represented that the "satellite" schools were licensed and certified to assist you to be eligible for the medical licensing examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 38**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 39**

As to paragraph 75 of the Complaint, state how Cabrera knowingly and frequently used interstate mail and wire transfer in furtherance of a fraudulent scheme and submit copies thereof.

53

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 40**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 41**

As to paragraph 76 of the Complaint, state how Cabrera requested payments for the "medical education" via interstate mail and wire transfer, requesting that all payments be made to USAT at the Colorado office, inducing you and other RICO Victims to understand that you were paying for a proper medical education because USAT had its proper licenses and certification and submit copy thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 42

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 43

As to paragraph 77 of the Complaint, state how Cabrera directed mail and interstate wire transfers with Banks in furtherance of scheme and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 44

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 45

As to paragraph 78 of the Complaint, state how Cabrera requested that the Banks give you and other RICO Victims student loans to pay for the USAT PR Branch medical education.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 46

56

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 47**

As to paragraph 79 of the Complaint, state how Cabrera fabricated certain costs and expenses when directing invoices to you and the other RICO Victims, demanding more payment for additional services for the "medical education" and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 48**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such

persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 49

As to paragraph 80 of the Complaint, based on the above-mentioned facts, state how Cabrera incurred in fraudulent acts in violation of RICO.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 50

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 51

As to paragraph 94 of the Complaint, indicate how Cabrera falls in the definition of an enterprise as defined by RICO.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 52

As to paragraph 95 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 53

59

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 54**

As to paragraph 97 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 55**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 56

As to paragraph 98 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 57

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 58**

As to paragraph 100 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I had to spend on expenses to be able to live near the school in San Juan, PR., apartment expenses, apartment electricity, gasoline, car expenses, food, laundry, nursery, personal items, among others. Additionally, I also paid USAT student tuition and fees. In order to pay for the USAT tuition, fees and the expenses incurred to live near the school, I obtained a student of approximately fifty thousand dollars ($50,000.00), which does not include the Application Fee of $125.  I paid the living expenses and USAT expenses using the student loan obtained from Southeast Bank, which is a loan that I still have to pay. I would not have incurred in this loan of approximately fifty thousand dollars ($50,000.00), if I had knowledge that USAT was not authorized to operate a medical school in Puerto Rico. I had to incur in an additional loan to be able to pay for new studies at another medical school (CMU). I had to incur living and tuition expenses again to be able to repeat all the courses I took at USAT again, because no school accepted the USAT

transcript or credits.

I suffered emotional damages when I found out that USAT was not authorized to operate a medical school in Puerto Rico, and that I had to repeat all my classes in a new medical school. I received professional help from a psychologist to deal with my depression and anxiety.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 59

As to paragraph 103 of the Complaint, state how Cabrera obtained your consent to enter into an agreement with USAT through deceptive means.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 60

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

63

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 61**

As to paragraph 104 of the Complaint, state how Cabrera used false words and/or insidious machinations, describing each, to induce you to enter into an agreement with USAT, which without the existence of false words and insidious machination you would not have entered in the agreement.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 62**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 63

As to paragraph 105 of the Complaint, state how Cabrera knowingly did not disclose to you the lack of licenses and credentials of the USAT PR Branch and that USAT did not comply with rules pursuant to ECFMG.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 64

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 65**

As to paragraph 106 of the Complaint, state how Cabrera falsely represented to you the costs and expenses taken during the USAT PR Branch community.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 66**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE**:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 67**

As to paragraph 107 of the Complaint, state how Cabrera entered into a valid contract with you.

66

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 68

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 69

As to paragraph 108 of the Complaint, state how a valid contract exists because you and Cabrera consented to bind yourselves with regard to one another, in which you would pay Cabrera a sum amount of money in exchange for services.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 70**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 71**

As to paragraph 109 of the Complaint, how as a result of Cabrera's fraudulent inducement, or in the alternative, breach of contract, and the nature thereof Cabrera is liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

68

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 72**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 73**

As to paragraph 112 of the Complaint, state how Cabrera's actions constitute an act or omission which caused damage to you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 74**

69

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 75**

As to paragraph 113 of the Complaint, state how Cabrera is liable to you pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 76**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

70

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 77

As to paragraph 121 of the Complaint, state how Cabrera is jointly and severally liable to for negligent and intentional tort actions.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 78

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 79**

As to paragraph 122 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I had to spend on expenses to be able to live near the school in San Juan, PR., apartment expenses, apartment electricity, gasoline, car expenses, food, laundry, nursery, personal items, among others. Additionally, I also paid USAT student tuition and fees. In order to pay for the USAT tuition, fees and the expenses incurred to live near the school, I obtained a student of approximately fifty thousand dollars ($50,000.00), which does not include the Application Fee of $125.  I paid the living expenses and USAT expenses using the student loan obtained from Southeast Bank, which is a loan that I still have to pay. I would not have incurred in this loan of approximately fifty thousand dollars ($50,000.00), if I had knowledge that USAT was not authorized to operate a medical school in Puerto Rico. I had to incur in an additional loan to be able to pay for new studies at another medical school (CMU). I had to incur living and tuition expenses again to be able to repeat all the courses I took at USAT again, because no school accepted the USAT

72

transcript or credits.

I suffered emotional damages when I found out that USAT was not authorized to operate a medical school in Puerto Rico, and that I had to repeat all my classes in a new medical school. I received professional help from a psychologist to deal with my depression and anxiety.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

Pursuant to 28 U.S.C. Sec. 1746, I state, under penalty of perjury, that after reviewing the foregoing answers with my attorney, who assisted me with the translation of the English Questions and my Spanish Answers to English, the foregoing answers are true and correct.

In San Juan, Puerto Rico, on this _27_ day of May, 2023.

_____
LORAIMA M. ROSADO VILLAFAÑE

**I HEREBY CERTIFY** that on this same date a true copy of this Answer to First Set of Interrogatories and Request for Production of Documents has been sent to Defendants' counsels.

73

In San Juan, Puerto Rico, on this __27__ day of May, 2023.

/S/VICTOR M. RIVERA-RIOS
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
Mobile: (787) 565-3477
E-Mail: victorriverarios@rcrtrblaw.com
  info.vrr@rcrtrblaw.com

**Email to Carla Konyk (Vice President, Director of Administration) (July 31,2018-August 1):**

Loans  Inbox ×

**Loraima Rosado** <loraima.rosado@usat.edu>                     Tue, Jul 31, 2018, 4:40 PM
to Carla, carla.konyk

Good afternoon,
I am writing to notify you that I applied for the loan and I received an email from the bank where I was notified that the university will disburse me before or on August 15.
Thank you, Loraima Rosado.

On Thu, Aug 9, 2018 at 5:49 PM carla.konyk <carla.konyk@gmail.com> wrote:
Yes, Express mail, should arrive on the 11th.
Thanks for your email.

Carla

Sent from my Verizon, Samsung Galaxy smartphone

------ Original message ------
From: Loraima Rosado <loraima.rosado@usat.edu>
Date: 8/9/18 11:53 AM (GMT-07:00)
To: c.konyk@usat.edu
Subject: Re: Loan

Good afternoon,
Forgive the inconvenience, I want to know if you sent the disbursement to the PR office? Thank you, Loraima Rosado.

On Wed, Aug 1, 2018 at 12:56 AM Carla Konyk <carla.konyk@gmail.com> wrote:
Ok, thanks for letting me know.

Carla
*Carla M. Konyk*

**Email to Carla Konyk (Sept 14,2018) with no response**

**Loraima Rosado** <loraima.rosado@usat.edu>                     Fri, Sep 14, 2018, 10:35 AM
to carla.konyk

Good morning,

I am writing to request the status of the loan, to know how much I paid for the trimesters and how much I had left over. Thank you. Loraima Rosado.

...

**Email to Carla Konyk (Oct 3, 2018) with no response:**

## Loans  Inbox ×

**Loraima Rosado** <loraima.rosado@usat.edu>                    Wed, Oct 3, 2018, 10:39 AM   ☆   ↩   ⋮
to Carla ▾

Good morning,

I am writing to request the status of the loan, to know how much I paid for the trimesters and how much I had left over. Thank you, Loraima Rosado Villafañe.

## Email to Carla Konyk (January 10,2019) with no response:

**Loraima Rosado** <loraima.rosado@usat.edu>                    Thu, Jan 10, 2:37 PM   ☆   ↩   ⋮
to Carla, lectures1@usat.edu ▾

Good afternoon,
I am writing because I want to know who I should ask for my transcript of credits because I need it, and also, I want to know what will happen with the extra semester that was charged. Thank you, Loraima Rosado.

## Emails with David Huffman (Director of Admissions) (Feb 25,2019):

On Mon, Feb 25, 2019 at 5:53 AM Loraima Rosado <loraima.rosado@usat.edu> wrote:

Good morning,

I am writing because I want to know who I should ask for my transcript of credits because I need it, and also, I want to know what will happen with the extra semester that was charged. I sent emails with no response, please help me. Thank you, Loraima Rosado.

--
Respectfully,

David Huffman
Director of Admissions
University of Science, Arts and Technology
admissions@usat.edu
303-371-0252  (9am to 2pm MST)

———— Forwarded message ————
From: **David Huffman - Admissions (A-L)** <admissions@usat.edu>
Date: Tue. Feb 26. 2019 at 5:09 PM
Subject: Re: Transcript and Loans
To: Loraima Rosado <loraima.rosado@usat.edu>


Good Afternoon Loraima,

Please complete the form that best matches the location that you attended as a USAT student. When you submit the document note that you would also like Official transcripts and balance owed.

On Tue, Feb 26. 2019 at 2:04 PM Loraima Rosado <loraima.rosado@usat.edu> wrote:
Good afternoon,
I don't have the forms for the withdrawal and for the transcripts. If you can send to me the forms. I'll be very grateful. Thank you, Loraima Rosado.

On Tue, Feb 26, 2019 at 5:01 PM David Huffman - Admissions (A-L) <admissions@usat.edu> wrote:
Good Afternoon Loraima Rosado,

If you have completed a formal withdrawal form and submitted the document it is then up to the Registrar, Mary Hickling and Finance Director, Carla Konyk to complete the process.

Carla will have to verify that you do not have a balance due before she will allow any official documents to be released.
Mary will be the one to complete the transcripts and any other documents that you desire and have earned.

Registrar: <registrar2@usat.edu>

## Email to Mary D. Hickling (Registrar) (March 5,2019):

### (no subject)

**Loraima Rosado** <loraima.rosado@usat.edu>                    Tue. Mar 5, 9:19 AM   ☆   ◄   ⋮
to Mary ▾

Good morning,
I am writing because I want to know who I should ask for my transcript of credits because I need it, and also, I want to know what will happen with the extra semester that was charged, because the charged 3 semesters and I only took 2 semesters. I do not owe money to the school. I sent emails with no response, please help me. Thank you, Loraima Rosado.


◄ Reply          ➡ Forward

Her automated response:

## Please Note Re:  Inbox ×

 **Mary Hickling - Registrar (M-Z)**                                Tue, Mar 5, 9:20 AM  ☆  ↰  ⋮
to me ▾

<This is an automated response>
For students requesting a letter of graduation. diploma or official
transcript. please note that I am not authorized to send this unless
your tuition is paid in full. Please contact Carla Konyk in finance
for more information.

Sincerely.
Mary

…

**Loraima Rosado** <loraima.rosado@usat.edu>                          Tue, Mar 5, 9:36 AM  ☆  ↰  ⋮
to Mary ▾

Hello! Carla has never answered my emails since October 2018, to find out how much I was charged and how much I was supposed
to have left over, because the scool charged 3 semesters and I took 2 semesters. I don't owe money to the school. Thank you,
Loraima Rosado.

…

## Email to Carla Konyk (March 5,2019) with no response:

## Loans and Transcript                                                               🖶  ☑

**Loraima Rosado** <loraima.rosado@usat.edu>                          Tue, Mar 5, 9:44 AM  ☆  ↰  ⋮
to Carla ▾

I am writing because I need my transcript of credits, and also, I want to know what will happen with the extra semester that was
charged, because the school charge me 3 semesters and I took 2 semesters. I don't owe money to the school, and you never
response my emails since october, to know how much the school charged me and how much the scool owe me. I sent emails with
no response. please help me. Thank you, Loraima Rosado.

↰ Reply        ➡ Forward

Email to Carla Konyk with my evidence of my Loan (March 20,2019):

March 20, 2019

Good morning, greetings:

I am writing because I have been sending emails requesting my transcript of credits and the statement of what the school charged me for the semesters I was studying, which were only 2. I borrowed $ 50,000.00, where I received my first check in 8/7 / 2018 for $ 6,910.00 and the second check I received was $ 13,445.00 on 5/9/2018; I received the total amount of $ 20,355.00. Making the calculations, I understand that I am missing part of my loan. I attach evidence in this document as previously written. I need to resolve this to continue my studies, and to give my daughter a future.

Thank you in advance, Loraima Rosado.

First check
$6,910.00 (8/7/2018):



Second Check
$13,445.00 (5/9/2018):



This is how the Bank will disbursement the total amount of $50,000:



| Disbursement Date | Disbursement Amount |
|---|---|
| 7/16/2018 | $15,000.00 |
| 11/15/2018 | $17,500.00 |
| 3/15/2019 | $17,500.00 |

If you have any questions regarding this notice, please contact:

- SouthEast Bank
- 1415 Ritner Highway
- Carlisle, PA 17013
- 717-254-2381

We're available to assist you any time Monday through Friday from 8:00 a.m. to 6:00 p.m. ET. For your convenience, you may e-mail us at answers@campusdoor.com. If you e-mail us, be sure to include your telephone number and the best time for us to reach you.

Sincerely,

**Her response to my email:**

Good morning!





2

**Loraima Rosado** <loraima.rosado@usat.edu>                    Mar 20, 2019, 9:22 PM (10 days ago)   ☆   ↩   ⋮
to carla.konyk, Carla, Mary, Yanire ▾

Thank you, I'll be waiting.

...

On Wed, Mar 20, 2019 at 3:05 PM carla.konyk <carla.konyk@gmail.com> wrote:
Hi,
Thanks for your message.
I'll check on this and email you back.
At a doctor's appointment right now.

Carla Konyk

**I sent also this email to Ms Carla Konyk (March 22, 2019):**

**Loraima Rosado**                                                                              ☆   ↩   ⋮

Good afternoon.
I am writing to send the document that was given to me about the costs of the semester in the year in which I started. This document indicates that the cost is $ $ 496.00 per semester. I hope this works for you to be able to help me. Thanks in advance. Loraima Rosado.

X        FEDocumentViewerP...

   **UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR**

USAT-PR Tuition & Fee Schedule

| EDUCATION COST | BASIC SCIENCES | | CLINICAL SCIENCES | |
| --- | --- | --- | --- | --- |
| | First Year | Second Year | Third Year | Fourth Year |
| Tuition (3 per year) | $19,485 | $19,485 | $19,485 | $19,485 |

Loraima M. Rosado Villafañe:

Email to Mary Hickling, Carla Konyk and Yanire Bustillo and the answer from Mary Hickling (April 4, 2019):

April 4, 2019

Regards, thank you for sending me the statement. I understand that I am being overcharged. I am a transfer from the University of Health Science Antigua (UHSA) where I took my first year of Basic Science. I took the second year of Basic Sciences with your school, USAT. I was only in USAT from May 2018 to August 2018 and from September 2018 to December 2018, 8 months with your school. I understand that I should not be charged "PR Anatomy Lab" because I took Anatomy and Neuroscience at the University of Health Science Antigua. I did not graduate with you either, and I never had your medical insurance while I took my classes at USAT, I should not be charged "Graduation fee" and "insurance fee". I only took the Basic Sciences with USAT, I'm not in Clinical with your school. The amounts disbursed to me ($ 6,910 and $ 13,445) are fine in the statement and I also paid the $125 of the "Application fee" because I could not start classes without making that payment. I only have to pay to your school the "Matriculation fee", $600 and $1,420 of "Technology fee"($710 twice). I hope that I have explained myself well and can clarify the situation.

Thank you in advance, Loraima Rosado.



**Loraima Rosado** <loraima.rosado@usat.edu>
to Mary, Yanire, Carla ▾
...

Thu, Apr 4, 10:25 PM

7

**Mary Hickling - Registrar (M-Z)**
to me, Carla, Yanire ▾

Mon, Apr 22, 4:59 PM

Hello Loraima,
Carla will be out of the country til next Tuesday. I believe she will be able to help you upon her return if not sooner.
Sincerely,
Mary

...

## Statement from Carla Konyk (April 4,



Statement from University of Science, Arts and Technology (USAT)    Inbox ×

**c.konyk@usat.edu**
to me ▾

Thu, Apr 4, 5:26 PM

Dear Loraima :

Your statement is attached. Please give me an address where I can send the check.

Thank you.

Sincerely,

University of Science, Arts and Technology (USAT)
727-252-6205

Statement1_from_USAT_Montserrat_LLC.10700.pdf

2019)

**USAT, Montserrat, LLC.**

US Information Office
5400 Ward Road
Building 3-150
Arvada, CO 80002

Phone #   727-252-6205        carla.konyk@gmail.com
Fax #      303-399-4106

**Statement**

| Date |
|------|
| 4/4/2019 |

To:

Loraima Rosado Villafane
PO BOX 1369
Jayuya, PR 00664

**Please Mail Payments to:**

**USAT Administration Office**
**4288 Youngfield Street**
**Wheat Ridge, CO 80033**

| | EIN# 46-1491367 |
|---|---|

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 12/31/2016 | Balance forward | | 0.00 |
| 06/04/2018 | INV #3440. | 70,310.00 | 70,310.00 |
| | --- Application Fee USD 125.00 | | |
| | --- Matriculation Fee USD 600.00 | | |
| | --- Graduation Charge USD 900.00 | | |
| | --- Insurance Fee. USD 995.00 | | |
| | --- Clinical Fees, 9 @ USD 690.00 = 6,210.00 | | |
| | --- PR Anatomy Lab USD 895.00 | | |
| | --- PR MD Program, 9 @ USD 6,495.00 = 58,455.00 | | |
| | --- Technology Fees, 3 @ USD 710.00 = 2,130.00 | | |
| 06/04/2018 | PMT #435970. | -125.00 | 70,185.00 |
| 07/13/2018 | PMT #Loan Proceeds. | -15,000.00 | 55,185.00 |
| 07/13/2018 | INV #3441. | 6,910.00 | 62,095.00 |
| | --- Tuition USD 6,910.00 | | |
| 08/15/2018 | PMT #Loan Proceeds. | -35,000.00 | 27,095.00 |
| 08/25/2018 | INV #3490. | 13,445.00 | 40,540.00 |
| | --- Tuition USD 13,445.00 | | |
| 04/04/2019 | CREDMEM #3956. | -51,195.00 | -10,655.00 |
| | --- PR MD Program, 7 @ USD 6,495.00 = -45,465.00 | | |
| | --- Graduation Charge USD -900.00 | | |
| | --- Clinical Fees, 7 @ USD 690.00 = -4,830.00 | | |

**Thank you for your payment.**

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|---------------------|----------------------|----------------------|------------------------|------------|
| -10,655.00 | 0.00 | 0.00 | 0.00 | 0.00 | USD -10,655.00 |

Emails from Nicole Perez, the new registrar from May 3-May 10,2019:



3 of 239

## Out of the Office for Travel Re: Official Transcript Request/Loans  Inbox ×

**Assistant Registrar**                                    Fri, May 3, 4:53 PM (13 days ago)
to me ▾

I will be out of the office traveling to BVI. I will respond to emails starting May 6, 2019. Thank you for your patience.

...

**Loraima Rosado** <loraima.rosado@usat.edu>          Fri, May 10, 11:56 AM (6 days ago)
to Ada, Yanire, Assistant ▾

Good morning, for months I have been sending emails to Ms Mary Hickling, where I sent all my evidence that the school owes me part of my loan and requesting my official transcript of credits. I attach the document of the statement that Ms Carla Konyk sent to me on May 3, 2019. where it shows that the school owes me money. Also, I attach the document that I signed with my initials on June 2, 2018 where it says in the part of **Issuance of Transcripts**, page 6 of the PDF that **"USAT retains the right to withhold student transcripts if the student defaults on his or her financial obligations to USAT"**. I do not owe money to the school, the school owes me money. I need my Official Transcript of credits now to this address:
Loraima M. Rosado Villafañe
PO Box 1369
Jayuya, PR 00664

Thank you, Loraima M. Rosado Villafañe

...

### 2 Attachments

📄 Statement1_from__        📄 Document 02-Jun, __

**Nicole Perez - Registrar**                          Fri, May 10, 3:37 PM (6 days ago)
to me, Ada, Yanire ▾

Good afternoon Loraima,

Thank you for reaching out. We already have you on our document request list to send you your official transcripts and diploma(s). Please note, we have a vast backlog of students requesting official documents and are doing our best to meet everyone's needs at once. I ask for you patience while we continue to work diligently to get out documents.

Thank you,
Nicole Perez / Registrar

...



**Loraima Rosado** <loraima.rosado@usat.edu>
to Nicole, Yanire ▾

Sat. May 11, 12:11 PM (5 days ago)    ☆    ↩    ⋮

Good Morning. Thanks for answering, I've been waiting for months for Ms Hickling to confirm that the transcript of credits is going to be sent to me. When would the transcript be sent to me? I've waited too long with no response. Thank you in advance, Loraima Rosado.

...

**Nicole Perez - Registrar**
to Yanire, Ada, me ▾

May 11, 2019, 1:59 PM (5 days ago)    ☆    ↩    ⋮

Hello Loraima,

I will mark your request as a priority.  Please allow about a week for us to complete your request.

...

**Loraima Rosado** <loraima.rosado@usat.edu>
to Nicole ▾

May 11, 2019, 7:35 PM (5 days ago)    ☆    ↩    ⋮

Thank you very much, I will wait the week and I will be in touch with you.

...

↩ Reply        ➡ Forward

Statement from Carla Konyk (May 3, 2009):

**USAT, Montserrat, LLC.**

US Information Office
5400 Ward Road
Building 3-150
Arvada, CO 80002

Phone #   727-252-6205      carla.konyk@gmail.com
Fax #      303-399-4106

**Statement**

| Date |
|------|
| 5/3/2019 |

To:

Loraima Rosado Villafane
PO BOX 1369
Jayuya, PR 00664

**Please Mail Payments to:**

**USAT Administration Office**
**4288 Youngfield Street**
**Wheat Ridge, CO 80033**

|  |  |  | EIN# 46-1491367 |
|--|--|--|-----------------|
| Date | Transaction | Amount | Balance |
| 12/31/2016 | Balance forward |  | 0.00 |
| 06/04/2018 | INV #3440. | 70,310.00 | 70,310.00 |
|  | --- Application Fee USD 125.00 |  |  |
|  | --- Matriculation Fee USD 600.00 |  |  |
|  | --- Graduation Charge USD 900.00 |  |  |
|  | --- Insurance Fee. USD 995.00 |  |  |
|  | --- Clinical Fees, 9 @ USD 690.00 = 6,210.00 |  |  |
|  | --- PR Anatomy Lab USD 895.00 |  |  |
|  | --- PR MD Program, 9 @ USD 6,495.00 = 58,455.00 |  |  |
|  | --- Technology Fees, 3 @ USD 710.00 = 2,130.00 |  |  |
| 06/04/2018 | PMT #435970. | -125.00 | 70,185.00 |
| 07/13/2018 | PMT #Loan Proceeds. | -15,000.00 | 55,185.00 |
| 07/13/2018 | INV #3441. | 6,910.00 | 62,095.00 |
|  | — Tuition USD 6,910.00 |  |  |
| 08/15/2018 | PMT #Loan Proceeds. | -35,000.00 | 27,095.00 |
| 08/25/2018 | INV #3490. | 13,445.00 | 40,540.00 |
|  | --- Tuition USD 13,445.00 |  |  |
| 04/04/2019 | CREDMEM #3956. | -51,195.00 | -10,655.00 |
|  | --- PR MD Program, 7 @ USD 6,495.00 = -45,465.00 |  |  |
|  | --- Graduation Charge USD -900.00 |  |  |
|  | --- Clinical Fees, 7 @ USD 690.00 = -4,830.00 |  |  |
|  | Thank you for your payment. |  |  |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|---------------------|---------------------|-----------------------|------------|
| -10,655.00 | 0.00 | 0.00 | 0.00 | 0.00 | USD -10,655.00 |

Email from Carla Konyk (May 3, 2019):

Statement from University of Science, Arts and Technology (USAT)  Inbox ×   ↻   🖶

**c.konyk@usat.edu**
to me ▾

↩ Fri, May 3, 5:18 PM (13 days ago)   ☆   ↩

Dear Loraima :

I've worked through all the numbers again and they are correct.
Your payment for the application fee is listed and deducted from the total
on June 4.
You received a total of $20,355.00 in two checks from the school.
You were given a credit of $51,195.00.
We only owe you $10,655.00.

Sincerely,

University of Science, Arts and Technology (USAT)
727-252-6205

 Statement1_from_...



**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR**
PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Dean*

## USAT-PR Tuition & Fee Schedule

| EDUCATION COST | BASIC SCIENCES | | CLINICAL SCIENCES | |
|---|---|---|---|---|
| | First Year | Second Year | Third Year | Fourth Year |
| **Tuition\* (3 per year)** | $19,485 | $19,485 | $19,485 | $19,485 |
| **Fees:** | | | | |
| Technology Fee | 710 | 710 | 710 | 710 |
| Clerkship Fee ($690 each) | - | - | 2,070 | 2,070 |
| Mal-Practice Insurance | - | - | 995 | 995 |
| Student Activity Fee | 75 | 75 | 75 | 75 |
| Maintenance Fee | 95 | 95 | 95 | 95 |
| Graduation Fee | - | - | - | 900 |
| **Total** | **$20,365** | **$20,365** | **$23,430** | **$24,330** |

NOTES:
(\*) Includes: Three semesters per year of $6,495.   *I only studied 2 semesters.*

The following one-time fees are due at the moment of admission and are not included above:
   ✓ a.   Application Fee...........$125 *I paid this the day before classes (July 2018).*
      b.   Matriculation Fee......... $600
      c.   Anatomy Lab Fee..........$895

The Government Matriculation fee of $600.00 must be paid before a student can begin the program and receive educational credits or attend anatomy labs.

<u>**ALL STUDENT ACCOUNT BALANCES MUST BE PAID IN FULL BEFORE GRADUATION COMMENCEMENT**</u>

After graduation, all students with a zero-balance due will receive 2 sets of their University transcripts at no charge. No degrees or transcripts will be released if there is still a balance due. After the initial sets of transcripts, the student will be charged $25.00 per set. Transcript fees must be paid before the transcripts are sent with no exceptions.

**\*\*If you are planning to transfer and immediately begin clinical rotations these fees must be paid in full before you will be allowed to begin your clinical rotations.\*\***

Please retain a copy of this schedule for your reference.
I hereby understand and agree to the terms of the fee schedule and acknowledge reading this document and receiving a copy.

Printed Name: _____

Signature: _____Date:_____

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*

## Email from the Bank (July 18, 2018):

### Student Loan Final Disclosure  Inbox ×

**answers@campusdoor.com**                                      Mon, Jun 18, 2018, 9:12 PM
to me ▾

06/18/2018

Loraima M Rosado
Apt 1369
Jayuya, PR 00664

RE: Application Identification Number 5001924259-01

Dear Loraima M Rosado

Congratulations on your education loan approval!

We have created a Final Disclosure which sets forth the final terms of your loan and saved it to your account and, if applicable, your cosigner's account. Please carefully review this disclosure because it sets forth the final terms of your loan. Note that if you or your cosigner, if applicable, requested any reduction in your loan amount, it will be reflected in the Final Disclosure.

Unless you or your cosigner, if applicable, contact us to cancel the loan by the date set forth on the first page of the Final Disclosure, we will disburse your loan funds to your school as set forth below:

| Disbursement Date | Disbursement Amount |
|---|---|
| 7/16/2018 | $15,000.00 |
| 11/15/2018 | $17,500.00 |
| 3/15/2019 | $17,500.00 |

If you have any questions regarding this notice, please contact:

- SouthEast Bank
- 1415 Ritner Highway
- Carlisle, PA 17013
- 717-254-2381

We're available to assist you any time Monday through Friday from 8:00 a.m. to 6:00 p.m. ET. For your convenience, you may e-mail us at answers@campusdoor.com. If you e-mail us, be sure to include your telephone number and the best time for us to reach you.

Sincerely,

SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

FDCLB

This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.

Email from the Bank (August 2,2018):

## Change in the Terms of your Student Loan  Inbox ×   🖨  ☒

**answers@campusdoor.com**                                   Thu, Aug 2, 2018, 11:47 AM   ↰   ⋮
to me ▾

08/02/2018

Loraima M Rosado,

You or your school have requested a loan change for application ID: 5001924259-01.

| Disbursement Date | Previous Amount | Current Amount |
|---|---|---|
| 07/13/2018 | $15,000.00 | $15,000.00 |
| 08/15/2018 | $17,500.00 | $17,500.00 |
| 08/15/2018 | $17,500.00 | $17,500.00 |
| **Total Loan Amount** | | $50,000.00 |

This notice is a confirmation that your request has been
processed.

Sincerely,
SouthEast Bank

Please note: This message was sent as a service e-mail to



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Dean*

## USAT-PR Tuition & Fee Schedule

| EDUCATION COST | BASIC SCIENCES | | CLINICAL SCIENCES | |
|---|---|---|---|---|
| | First Year | Second Year | Third Year | Fourth Year |
| Tuition* (3 per year) | $19,485 | $19,485 | $19,485 | $19,485 |
| Fees: | | | | |
| Technology Fee | 710 | 710 | 710 | 710 |
| Clerkship Fee ($690 each) | - | - | 2,070 | 2,070 |
| Mal-Practice Insurance | - | - | 995 | 995 |
| Student Activity Fee | 75 | 75 | 75 | 75 |
| Maintenance Fee | 95 | 95 | 95 | 95 |
| Graduation Fee | - | - | - | 900 |
| Total | $20,365 | $20,365 | $23,430 | $24,330 |

NOTES:
(*) Includes: Three semesters per year of $6,495.

The following one-time fees are due at the moment of admission and are not included above:

   a.  Application Fee............$125
   b.  Matriculation Fee......... $600
   c.  Anatomy Lab Fee..........$895

The Government Matriculation fee of $600.00 must be paid before a student can begin the program and receive educational credits or attend anatomy labs.

## ALL STUDENT ACCOUNT BALANCES MUST BE PAID IN FULL BEFORE GRADUATION COMMENCEMENT.

After graduation, all students with a zero-balance due will receive 2 sets of their University transcripts at no charge. No degrees or transcripts will be released if there is still a balance due. After the initial sets of transcripts, the student will be charged $25.00 per set. Transcript fees must be paid before the transcripts are sent with no exceptions.

**\*\*If you are planning to transfer and immediately begin clinical rotations these fees must be paid in full before you will be allowed to begin your clinical rotations.\*\***

Please retain a copy of this schedule for your reference.
I hereby understand and agree to the terms of the fee schedule and acknowledge reading this document and receiving a copy.

Printed Name: Loraima M. Rosado Villafañe

Signature: *Loraima M Rosado Villafañe*    Date: June 2, 2018

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*

# USAT MONTSERRAT
# UNIVERSITY OF SCIENCE ARTS AND TECHNOLOGY, MONTSERRAT

## OLVESTON CAMPUS, FLORIDA, TEXAS and PUERTO RICO; Doctor of Medicine TRANSITION PROGRAM

**Enrollment Agreement and Academic Regulations for the Students of University of Science, Arts and Technology, Montserrat**

**Regulations approved by the Governing Body on: 01 November 2010. Updated on 25 July 2014, revised 05 December 2017.**

### Mission Statement

The University of Science, Arts and Technology, Montserrat is dedicated to the advancement of the learning, knowledge and understanding of medicine, science and technology. To help establish the highest standards in private education and prepare our students for the challenges they'll face in this increasingly complicated world.

### Equal Opportunities Statement

The University's Equal Opportunities statement makes clear the University's commitment to equality of opportunity in all its activities and is consistent with the aims that its Race Equality policy makes clear. The University's Equal Opportunities statement is as follows:

University of Science, Arts and Technology, Montserrat is committed in all its activities to promoting and developing equality of opportunity in all areas of its work. In order to achieve this aim, the University seeks to:

> *Make every effort to ensure that applicants, prospective and current students, and members of faculty and staff ae valued based on their merits, abilities and potential without discrimination on the grounds of age, sex disability, race, color nationality, ethnic origin, social and economic status, religious belief, sexual orientation, marital status or other distinction.*

> *Work to foster good relationships between individuals from diverse groups; observe and develop the diversity of skill and talents with in its student body, current faculty and staff.*

> *Build an environment based on trust and mutual respect and undertake a plan of action to make and enforce equality procedures.*

> *Regularly monitor the effectiveness of equal opportunity policies and communicate to students, faculty, staff and others the support of equal opportunities within the Universities policies.*

### Matriculation, Enrollment and Orientation

All "Applicants" must submit a completed application and all supporting documents along with the required application fee to be considered for "temporary acceptance". Upon issuance of the letter of temporary acceptance, applicants are required to attend orientation, pay the "Matriculation Fee" (if not previously paid), for new students and agree to adhere to the Academic Regulations of the University to be confirmed as an "Enrolled Student."

Registration and matriculation of students takes place at orientation. Students must read and understand Academic Regulations of the University. The University will document reception of the regulations by requiring the student's signature of such reception and keeping the same on file. No student shall be permitted to attend classes until properly registered.

Initials:

1

## Attendance Policy:

All students are expected to adhere to the University's attendance policy as follows:
University of Science, Arts and Technology, Montserrat requires an attendance in all programs, courses and lectures of 80%. All students are expected to arrive on time to all classes, lectures and examinations. Lateness may also accrue to represent possible absence at the discretion of the instructor and Lecture Site Administrative Staff.

Daily attendance lists will be used to track attendance. These lists shall be monitored monthly and held on file in the Administration Office and made available for inspection as necessary.

Students in violation of the attendance policy shall be required to appear for the following disciplinary procedures:

1. Student shall be verbally counseled by the instructor to determine the reasons for non-attendance, lateness, etc.
2. Student shall be given a written counseling if the situation does not resolve after verbal counsel.
3. Student shall be given an academic suspension notice if the situation is still unresolved after a verbal and a written counseling.
4. Student shall be expelled from the program and no longer permitted to sit for examinations as a final resort after all of the former procedures have been implemented without resolution.

## International Students

Students from other Nations will be given the appropriate documentation to prepare application for student visas. Once the necessary visa is obtained, the student will be instructed on travel and arrival arrangements into Montserrat.
Any student who has been accepted to the University is required to register and matriculate into their program no later than two weeks after their arrival is confirmed. In the event of non-arrival, the student's "Next of Kin or other designated individual" shall be contacted to verify the student's whereabouts. If it is determined that the student is not planning to attend the University after being given documentation to join the program the student will be issued a letter of non-acceptance and the proper authority shall be alerted to the potential fraudulent activity.

## Graduation and Completion of Program

Under the authority of the Government of Montserrat, the Honorable Premier has granted The University of Science, Arts and Technology, Montserrat the authority for its constituent University to award first and higher degrees. The following regulations have been made in accordance with those provisions.
(These Regulations apply to all students of the University irrespective of their program, or location of study.)

A. Have completed to the satisfaction of the relevant teaching staff the program of study prescribed in the regulations for the award for which the student is registered;
B. Have successfully completed all parts of the examination prescribed for the award and shown a competent knowledge in the examination as a whole;
C. Where a degree is classified, have shown evidence of sufficient work at or above the pass mark for all classes awarded.
D. A student who has not made satisfactory arrangements to settle, in accordance with the relevant Regulations, all outstanding debts or other financial obligations to the University of Science, Arts and Technology, Montserrat will not be:
   a. Informed of the results of any examination taken;
   b. Awarded any degree or other qualification, to include official transcripts.

## Withdrawal from examinations

1. A student who is registered for an award, has completed satisfactorily the prescribed period of study and any other conditions as given in Regulation D above, will be regarded as eligible for admission to the USMLE or equivalent examination unless he/she provides satisfactory evidence of illness or other good cause to the Registrar of the relevant program not less than seven days before the date of the examination as published by the University, which the student is expected to sit at the discretion of the Registrar of the program. The student maybe permitted to be examined as if for the first time normally at the next occasion when the examination is offered. The passing grade for all examinations shall be 70%.
2. At the discretion of the Registrar, a student who is eligible to sit for an examination who is absent from that examination without having been granted permission to withdraw according to the provisions of Regulation above, or a student who is present at the examination, but unable to complete the examination, evidence of illness or other good cause which affected his/her ability to sit the examination at the required time and which he/she was unable, for reasons found acceptable to the Registrar, to present in advance of the examination.
3. Schools may define circumstances in which a student may continue to attend a course or other element of a program of study after having been permitted to withdraw from the examination for that course or programelement.
4. The Registrar of the University will advise the Director of Students in cases where a student who is permitted to be examined as if for the first time after having been permitted to withdraw from the examination (or the second/third time if the examination in question is itself a second/third attempt) is not considered to be eligible to sit the examination without further attendance on the program of study.

Initials: _AMRV_

2

## Reassessment/Failure/Illness

A student who fails an examination at the first attempt may be permitted, at the discretion of the Registrar, to attempt the examination again on not more than two occasions per calendar year. Any conditions regarding reassessment will be specified before the examination and the examination must be taken at the next occasion when the examination is offered. When such reassessment requires further attendance, the Registrar will advise the Director of Students.

## Methods & Timing of Assessment

The timing of examination shall be specified in individual program regulations; however, the timing on examination held for the purpose of reassessment may be determined by the relevant Dean of Academic Affairs.

Assessment methods may include the following:

*Written examinations;*
*Practical examinations;*
*Essays and/or reports;*
*Dissertations;*
*Written accounts of laboratory experiments or of fieldwork;*
*Multiple-choice questions;*
*Oral examinations;*
*Assessment of laboratory, fieldwork or clinical practice or of other aspects of a candidate performance during a course.*

The venues for formal written examinations will be designated by the University and published in advance of the examination.

Students are required to present themselves at the designated venue for the examination(s) for which they are required. Students unable to present themselves for examination at the designated venue due to exceptional circumstances may be considered by the Registrar for the University for alternative arrangements. Requests for alternative venue arrangements should be submitted to the Registrar, with the details of the request written, signed and submitted within seven days of the date of the examination.

Where a student has been granted alternative examination arrangements, the Registrar will determine timing of the alternate arrangements. All alternative arrangements will be scheduled for the earliest opportunity following the published examination date and in no case, shall a student be permitted to sit for an examination before the normal scheduled time.

The use of examination answer books or other examination stationery during the exam by students for any purpose or any occasion may constitute as misconduct under the University regulations and be liable to disciplinary procedures.

## Representations concerning decisions of the Board of Examiners

Except as provided below, no decision of a properly convened and constituted Board of Examiners, acting in accordance with these and any other relevant University regulations may be modified. Representations concerning decisions of Boards of Examiners, which are based solely upon a challenge to the academic judgment embodied in any such decision will not be considered.

A Board of Examiners may, at its discretion, reconsider a decision in the following circumstances:

a    Where a student requests such reconsideration, and provides adequate evidence which is acceptable to the Board of Examiners that the student examination was adversely affected by illness or other factors which the student was unable, or for valid reasons unwilling, to divulge before the Board of Examiners reached its decision;

b.    Where there is straightforward evidence produced by the students or any other person of administrative error or that the examination was not conducted in accordance with the Instructions/Regulations.

Initials:

3

# Awards

1.1 Awards of the University of Science, Arts and Technology, Montserrat conferred by University of Science and Medicine (hereinafter referred to as "the University")

1.2

### A) UNDERGRADUATE DEGREES

Bachelor of Science (BSc)
Bachelor of Arts (BA)
Bachelor of Medicine and Bachelor of Surgery (MBBS)

### B) GRADUATE DEGREES

Master of Science (MSc)
Master of Public Health (MPH)
Doctor of Medicine (MD)
Doctor of Public Health (DPH)
Doctor of Philosophy (PhD)
Doctor of Science (ScD)
Doctor of Education (EdD)

### C) OTHER

The Faculty and Board of Directors of the University may establish other-related degrees and diplomas.

## General Regulations for Examinations

### A. General

A student taking an examination leading to an award conferred by the University either under its own authority or that delegated to it to confer awards of the University of Science, Arts and Technology, Montserrat, whether at a first or subsequent attempt, shall be examined in accordance with such regulations as are current when the student enrolls.

### B. Admission to Examinations

a. Annual enrollment for a program of study and its constituent courses includes registration for the relevant examinations.

b. In order to be eligible for admission to an examination, a student must complete to the satisfaction of teaching staff the prescribed period of study and satisfy any other conditions which may be prescribed by the University in the Regulations or otherwise, including making full payment of University fees or other charges and settling all outstanding financial obligations including confirming at the specified time to the School where the student is registered the details of the examination which he/she expects to sit. The passing score for all examinations shall be 70%.

c. The use of examination answer books or other examination stationery by students for any purpose or any occasion other than participation in a recognized university examination may constitute misconduct under the University regulations and be liable to disciplinary procedures.

## All students must adhere to the following University of Science, Arts and Technology (USAT) Policies while enrolled in all programs:

## Behavioral Policies:

*Alcoholic Beverages, Narcotics, and Drugs:* USAT does not permit the use, possession, or serving of alcoholic beverages, narcotics, or drugs in or around any university academic functions or at any university sponsored event held off campus. This policy applies to all social functions or events that are held in or around university buildings. Any student or group of students who are under the influence of intoxicants and fail to conduct themselves in a reasonable manner by violating recognized standards of conduct are subject to disciplinary action and/or dismissal from the school.

*Campus Disruptions and Violence:* Any act of violence or intimidation, any seizing of any portion of property, or any unauthorized activity which prevents the normal operation of the university in any way by any individual or group will be considered in direct opposition to the necessary operation of the university. Action will be taken immediately, including the probability of expulsion, regardless of the number involved. Similar action will be taken against those who advocate such described activities.

**Discipline Appeal:** USAT will establish a committee composed of students, faculty, and staff to deliberate student discipline appeals. The entire appeal process is focused on fairness and "due process" for students. NOTE: All discipline appeals must be formally submitted to the University no later than 10 working days after the discipline has been imposed.

**Firearms and Fireworks:** Possession of firearms on the university campus at any time will result in immediate dismissal from the university and/or expulsion from the campus. Law enforcement officers may have firearms in their possession while on campus. Students or visitors arriving on campus with firearms in their possession must check them in at Campus Security and may pick them up when leaving campus. Campus Security must approve any exception. Possession and use of fireworks on the university campus is prohibited. Occupants of off-campus housing are subject to city, county, and state ordinances governing the use of firearms and fireworks.

**Gambling:** Gambling of all sorts is prohibited on campus. The privilege of playing card games is given on the assumption that no gambling takes place. However, if gambling does take place and is detected, this privilege will be unconditionally withdrawn.

**Harassment & Intimidation:** USAT is committed to maintaining a working and educational environment, which fosters appropriate and respectful conduct and communication between all persons within the university community. Conduct that is deemed inappropriate, offensive, or disrespectful toward others will not be tolerated and may be cause for suspension or expulsion from the program.

**Initiations and/or Hazing:** The University does not approve of any form of hazing. Hazing is defined as any action taken or situation created intentionally to provide mental or physical discomfort or in any way to degrade the dignity of the individual student.

Initials: _LMRV_

4

**Mandatory Behavioral or Medical Withdrawal:** It is the responsibility of the University to order a medical examination or behavioral evaluation if the director has reason to believe that a student has a serious medical or behavioral disability that substantially threatens or interferes with the welfare of the student, other members of the university community, or the educational process of the university. The director shall notify the student and appropriate agency (counselor, medical consultant, etc.) that such an evaluation is to be conducted. Any member of the Student Services division may initiate this process for students who are under his/her care or counseling. In this case, the student must be notified, and the request submitted to the University. The student will have 24 hours before beginning the evaluation process. When appropriate, parents, guardians, or spouses will be notified of the process for the protection of the student. If the student refuses to consult with the evaluating agency, the University will, if practical, seek the help of the student's family in persuading the student to undergo the evaluation. If unsuccessful, the University will summarize the steps taken to secure the needed information and the reasons for withdrawal and then begin the withdrawal process. A copy of this order will be sent to the student. *Evaluation Conference* - The student will be provided written notice of a time and place at which the student, the evaluating agency, and the University will confer on the final determination for mandatory withdrawal. The student has the option to have representation at this meeting, such as his/her own doctor, counselor, parents, or spouse. The director will refer to recommendations, reports, and evaluations as they relate to the case being considered.

**Power of Contract:** If it is determined that mandatory withdrawal is not appropriate, the University in consultation with other appropriate university personnel, doctor, or other resource person's) will provide a contract outlining the terms by which the student may remain enrolled at USAT. All parties involved will sign this document, including the student. If the terms of the contract are followed, the student may continue the educational process at USAT. If the terms are not followed, the University may then process the mandatory withdrawal. *Appeal* - As with other university policies, the student may appeal mandatory withdrawal through the Information Office and may have the evaluation process reopened. All decisions made by the University Officials after considerations of an appeal shall stand.

### Policies for Student Clinical Training:

1. Students must complete a total of 80 weeks of clinical training as follows: 50 weeks of core required specialties and 30 weeks of elective specialties.
2. For each week to be valid, a minimum of 15 hours per week must be documented and certified by each physician preceptor with proper documentation sent to the University.
3. All students are required to have one Clinical Evaluation form and accompanying completed and signed Clinical Hour Tracker for each rotation within seven business days by the preceptor to be given credit.
4. Any fees requested by the clinical sites related to the training shall be paid by the student directly to the designated representative of the clinical site all other incidents will be addressed on an individual base.
5. Students shall be given a USAT Student ID Badge ONLY after paying the application, matriculation and the professional liability insurance policy fees.

**Academic Code of Ethics:** Students are expected to be honest in all aspects of their university education. All work is evaluated on the assumption that the work presented is the student's own. Anything less is unacceptable. Students are subject to disciplinary action at the faculties and administrations discretion. For student appeal, refer to Discipline Appeal. Examples of dishonest practice can be found in the *Code of Conduct* included after this document that must be signed and submitted.

### Issuance of Transcripts:
USAT retains the right to withhold student transcripts if the student defaults on his or her financial obligations to USAT. Finality - Decisions made by the University are final.

**Refund Policy: A pro-rated refund policy applies to all tuition payments and fees, with the exception of the application fee and the matriculation fee which are NON-Refundable. If credit card payments are refunded, a 3% processing fee may be charged to the student or applicant.**

**Smoking/Use of Tobacco:** Smoking is prohibited inside all university buildings.

**Soliciting:** any student, solicitor, agent, or salesperson operating in his/her own interests and for purposes not directly connected with university interests is not permitted to advertise on campus or participate in any university function without approval.

**Student Health Insurance:** The University does not provide health insurance for students. While it is not mandatory for students to have health insurance, it is strongly advised.

**I hereby understand and agree to the foregoing regulations and policies stated in this enrollment agreement and I acknowledge reading them and receiving a copy.**

Student Signature: _Loraima M Rosado Villafañe_

Printed Name: _Loraima M. Rosado Villafañe_

Date: _June 2, 2018_

Initials: _LMRV_

5

# ACADEMIC CODE OF ETHICS

## Policy

By enrolling at USAT, students agree to abide by this Academic Code of Ethics and to understand what is considered academic dishonesty. Assignments include, but are not limited to, hardcopy or electronic papers, homework, exams, laboratory exercises, projects, clinical experiences, and oral presentatio

Academic dishonesty includes, but is not limited to, the following:

## Intentionally Presenting Inaccurate Information or Forging Documents

*Changing or inventing results, data, or conclusions for any assignment.*
*Changing or making up information or quotations that are passed off as authentic for any assignment.*
*Forging University personnel's' signature or information on any academic document.*

## Plagiarism

*Presenting the work of another as one's own (not citing a source).*
*Using ideas from any source without providing proper citation of the source. Improper citation consists of excluding a source or misrepresenting a source.*
*Copying or presenting material word for word from any source without using quotation marks and the proper citation of the source.*
*Copying and/or altering a few words from a source, to avoid exact quotation, without providing the proper citation of the source.*
*Rewording (paraphrasing) an idea found in a source without providing the proper citation of the source.*
*Submitting a student's own single piece of work multiple times without instructor permission.*
*Submitting the same paper or assignment during the same term to two instructors without both instructors' permission.*
*Submitting a previously graded paper, assignment, or speech to a different instructor without the current instructor's approval.*

## Cheating

*Cheating on exams and assignments.*
*Copying answers from another person or submitting another person's work as one's own.*
*Collaborating on any assignment that is supposed to be done individually.*
*Submitting as one's own any course assignment created by someone else.*
*Using any unauthorized resources during an exam or while completing assignments. Unauthorized resources include, but are not limited to, notes, elec devices, solution manuals, Cliff's Notes or anything not permitted by the instructor or proctor.*
*Stealing, or having in one's possession without permission, any exams, materials, or property belonging to faculty, staff, or another student including intell property.*
*Receiving the answers to exam questions or other assignments.*
*Having another person take an exam or a class for the enrolled student.*
*Aiding other students in cheating.*
*Doing another student's assignment, excluding collaborative learning assignments or joint assignments approved by the instructor. Some examples may in but are not limited to, doing a student's assignment or writing or re-writing a major portion of a student's assignment.*
*Giving a student answers to exam questions or to other assignments.*
*Taking an exam or a class for a student.*

## Consequences for Violations of the Academics Code of Ethics

*Options for dealing with academic dishonesty are at the discretion of faculty. Instructor-imposed consequences for the student may include one or more following:*
*Repeating the assignment with a grade penalty.*
*Receiving a failing grade for the assignment.*
*Receiving a lower course grade.*
*Receiving a failing grade for the course.*
*Receiving an XF grade for the course (a permanent notation of academic misconduct on the student's transcript).*
*Other appropriate consequences.*
*The Vice President of USAT may impose additional consequences in extenuating circumstances. Before imposing consequences, the Vice President of US consult with the faculty member and appropriate administrator/s. These consequences may include the following:*
*Suspension or expulsion from the University.*

**Student Signature:** *Loraima M. Rosado Villafañe*

**Printed Name:** Loraima M. Rosado Villafañe

**Date:** June 2, 2018

**Initials:** LMRV

5

**USAT, Montserrat, LLC.**                                          **Statement**

US Information Office
5400 Ward Road
Building 3-150                                         | Date |
Arvada, CO 80002                                      | 4/4/2019 |

Phone #    727-252-6205        carla.konyk@gmail.com
Fax #       303-399-4106

To:

Loraima Rosado Villafane
PO BOX 1369
Jayuya, PR 00664

**Please Mail  Payments to:**

**USAT Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033**

EIN# 46-1491367

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 12/31/2016 | Balance forward | | 0.00 |
| 06/04/2018 | INV #3440. | 70,310.00 | 70,310.00 |
| | --- Application Fee USD 125.00 | | |
| | --- Matriculation Fee USD 600.00 | | |
| | --- Graduation Charge USD 900.00 | | |
| | --- Insurance Fee. USD 995.00 | | |
| | --- Clinical Fees, 9 @ USD 690.00 = 6,210.00 | | |
| | --- PR Anatomy Lab USD 895.00 | | |
| | --- PR MD Program, 9 @ USD 6,495.00 = 58,455.00 | | |
| | --- Technology Fees, 3 @ USD 710.00 = 2,130.00 | | |
| 06/04/2018 | PMT #435970. | -125.00 | 70,185.00 |
| 07/13/2018 | PMT #Loan Proceeds. | -15,000.00 | 55,185.00 |
| 07/13/2018 | INV #3441. | 6,910.00 | 62,095.00 |
| | --- Tuition USD 6,910.00 | | |
| 08/15/2018 | PMT #Loan Proceeds. | -35,000.00 | 27,095.00 |
| 08/25/2018 | INV #3490. | 13,445.00 | 40,540.00 |
| | --- Tuition USD 13,445.00 | | |
| 04/04/2019 | CREDMEM #3956. | -51,195.00 | -10,655.00 |
| | --- PR MD Program, 7 @ USD 6,495.00 = -45,465.00 | | |
| | --- Graduation Charge USD -900.00 | | |
| | --- Clinical Fees, 7 @ USD 690.00 = -4,830.00 | | |

**Thank you for your payment.**

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---------|--------------------|--------------------|--------------------|----------------------|------------|
| -10,655.00 | 0.00 | 0.00 | 0.00 | 0.00 | USD -10,655.00 |

**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**

**USAT Collage of Medicine**
**Clinical Science Department- Puerto Rico**

**Clinical Clerkships**

**Core and Electives Specialties**

**Hospitals, Clinics and Private Practices**

**Divided into Puerto Rico Municipalities:**

**Adjuntas**

**Aguada**

**Aguadilla**

**Hospital Buen Samaritano**
Address: Apartado 4055
Aguadilla, P.R., 00605
Telephone. (787)658-0000 ext. 1019 (787)658-0012
Fax:(787)819-0805
Contact: Emily Pérez Román

**Aguas Buenas**

**Aibonito**

**Añasco**

**Policlínica de Añasco**
Address: 65 Inf , Anasco Añasco, Puerto Rico 00610 Puerto Rico
Telephone: 787-826-2145

**Arecibo**

**Hospital Pavia Arecibo**
Medical Director: Hector Lopez Perez
Telephone: 787-650-7272 Ext. 1003
Assistant Medical Faculty: Wanda Pérez
Email: wperez@hospitalpaviaarecibo.com

1

**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**

**Arroyo**

**Barceloneta**

**Barranquitas**

**<u>Bayamón</u>**

**Dr. Jesús Vélez Feliciano**
Obstetrics & Gynecology
Telephone: 787- 764-8296
<u>Hato Rey:</u>
Address: Condominio Medina- 6 Floor, Office Number 606
Monday/ Wednesday/ Thursday/ Friday: 12:00 pm-7:00pm
Thursday: 9:00am- 4:00pm
<u>Levittown:</u>
Monday/ Wednesday/ Thursday: 7:00 am- 12:00 pm

**<u>Cabo Rojo</u>**

**Hospital Metropolitano Psiquiátrico**
Address: Calle Muñoz Rivera #108, Cabo Rojo, P.R. 00623
Telephone: (787) 851-2025
Medical Faculty Secretary: Marangel Luciano

**<u>Caguas</u>**

**NeoMed**
Executive Director: Dr. Rosa Castro Avila
Telephone: (787) 737-2311
Address: Carr. 941 Salida Bo. Jaguas Calle San Antonio Final, Puerto Rico.
Contact:  Alexis Maisonet Ventura (HR Director)
Email: amaisonet@neomedcenter.org

**Camuy**

**<u>Canóvanas</u>**

**Canóvanas Medical Center**
Pediatrics/General/Gynecology/ER
Director: Dr. Sepulveda

2

## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

Directora de Recursos Humanos: Diana Mojica Agrinsoni
Telephone:
Email: medicaleg@gmail.com
Address: Calle Corchado Final, Canóvanas Puerto Rico 00729

**Carolina**

**Cataño**

**Cayey**

**Ceiba**

**Ciales**

**Cidra**

**COOSMA –Cidra**
Ejecutive Director: Isolina Miranda
Address: Apartado 1330, Ave. El Jíbaro Carr. 172 Km 13.5
Cidra, PR  00739
Contact:
Dr. Gerardo Alvarado, DBA, MBA-MGMT, MBA-HS, BBA-IS,
Coordinador Académico y Oficial de Cumplimiento
gerardo.alvarado@cossma.org
787-739-8182 ext. 1281

**Comería**

**Corozal**

**Culebra**

**Dorado**

**Fajardo**

**Florida**

**Guayama**

3

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

**Hospital Menonita de Guayama**
Medical Director: Dr. Gustavo Sánchez
Address: Ave. Albizu Campos Urb. La Hacienda Guayama, Puerto Rico 00784
Telephone: 787-864-4300/ 787-864-4466
Medical Faculty Secretary: Linda Moreno
Email: linda.moreno@ssepr.org

## Guayanilla

## Guaynabo

Professional Hospital
Medical Director: Dr. Leonardo Valentin
Address: Carr 199 Km 1.2 Ave. Las Cumbres Guaynabo, PR 0096
Telephone: (787)740-8787
Email: dr.valentin@professionalhospital.com
Coordinadora: Emily Nieves
Email: enieves@professionalhospital.com

## Gurabo

## Guánica

## Hatillo

## Hormiguero

## Humacao

**COSSMA- Humacao**
Address: Boulevard del Río Ramal #3, Humacao, PR  00791
Telephone: (787) 739 8182 Option 3 or Ext. 1300
Fax (787) 852-2551

## Isabela

**Policlinica del Atlántico (ER)**
Director: Dr. Adrian Girald
Telephone: 787-830-7737
Address: Carr. #2 Km111.3 Bo. Mora Isabela, PR 00662
Contact- Aministración:  Kerlyn Rodriguez
Email: Policlinicadelatlantico@gmail.com

Dr. Ethel Lamela

4

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

CIMA/ Dr. Lamela Pediatric Offce
Telephone:787-454-4185
Email: Elamela57@gmail.com
Address: numero 5 calle Bachosa, Isabela Puerto Rico.


**Jayuya**

**Juana Díaz**

**Juncos**

**COSSMA**
**Hogar Rayos de Esperanza y Esperanza Village**
Address: Bo. Mamey Carr. 9933, Km 0.3, Juncos, PR  00777
Telephone:  (787)734-4640
Fax (787) 734-4651


**Lajas**

**Lares**

**Las Marías**

**Las Piedras**

**COSSMA- Las Piedras**
Address: Bo. Montones Carr. 183 Ramal 9939
Parque Industrial Sur, Bloque 91316, Lote 19, Las Piedras, PR  00771
Telephone: (787) 739 8182 Option 5 or Ext. 1613
Fax (787) 937-0067

**Loíza**

**Luquillo**

**Manatí**

**Manati Medical Center**
Telephone: 787-854-3322
Direction: Carr #2 Km 47.7, Manatí, PR 00674
Contact: Neyda Soto (Medical director assistant of medical education & residency program of Family Medicine)

5

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

**Maricao**

**Maunabo**

**Mayagüez**

**Mayagüez Medical Center**
Address: Ave. Hostos #410, Carretera #2, Bo Sábalos, Mayagüez, P.R., 00680

**A. Family Medicine Program Director:** Dr. Eliasin Muñoz,
Contact: Cristina Morales (Family Medicine Residency Program Coordinator)
Email: cristina.morales@mayaguezmedical.com

Telephone: (787) 652-9200 ext. 72565
Fax: (787) 652-1662

**B. Internal Medicine Program Director**:Dr. Milton Carrero Quiñones
Contact: Tahis Gracia
Email:tahis.garcia@mayaguezmedical.com

**D. Emergency Medicine/ Obstetrics & Gynecology/ Surgery**
Contacto: Damaris Vasquez (Facultad Medica)
Email: Damaris.vasquez@mayaguezmedical.com
Telephone: (787) 652-9200

**Moca**

**Morovis**

**Naguabo**

**Naguabo Medical Center Integrative Medicine**
Director: Dr. Barbara Bustillo
Telephone: 787-874-1200
Email: b_bustillo@yahoo.com

**Naranjito**

**Orocovis**

**Patillas**

6

**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**

---

**Peñuelas**

**Ponce**

**Quebradilla**

**Rincón**

**Costa Salud**
Madeline Ramos
Phone Number:787-823- 5500
Fax Number 787-823-2990
Email: mramos@costasalud.com
Address: Street: 28 Calle Munoz Rivera, Rincon PR 00677

**Rio grande**

**Sabana grande**

**Salinas**

**San German**

**Hospital Metropolitano de San German**
Medical Director: Dr. Manuel Ramírez Soto
Address: Calle Javilla #8, San Germán, P.R. 00683
Telephone: 787-892-5300 Ext: 4204
Administrator assistant of medical faculty: Alizzit Guerra Montalvo
Email: aguerra@hospitalmetrosangerman.com

**San Juan**

**Integrative Optimal Health of Puerto Rico**
Dr. Raul Morales Borges
Hematology/Oncology/Research
Telephone: 787-354-0758
Address: #29 Washington Street Suit #197 San Juan
Puerto Rico 00907

**Dr. Jesús Vélez Feliciano**
Obstetrics & Gynecology
Telephone: 787- 764-8296
Hato Rey:

7

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

Address: Condominio Medina- 6 Floor, Office Number 606
Monday/ Wednesday/ Thursday/ Friday: 12:00 pm-7:00pm
Thursday: 9:00am- 4:00pm
Levittown:
Monday/ Wednesday/ Thursday: 7:00 am- 12:00 pm

**SAN JUAN MRI**
Sra. Nivia Souffront
Address: 1448 Fernandez Juncos Santurce, Puerto Rico 00909-2655
Telephone: (787) 721-7776 Ext. 228
Emails: nsouffront@sanjuanmri.net / info@sanjuanmri.net

**Ashford Presbyterian Community Hospital**
Executive Director: Pedro J. Gonzalez
Address: 1451 Ave Dr. Ashford, San Juan, 00907, Puerto Rico
Telephone: 787-721-2160
Voluntario
-Belen Pietri
Secretary: Hilda Garcia
Email: ggpgilda@yahoo.com
Contact: Maria Rodriguez assistant of Executive Director
Extension: 6510
Medical Faculty: Miriam Acevedo
Extension: 6515

### San Lorenzo

**COSSMA- San Lorenzo**
Address: Calle Muñoz Rivera, Núm. 186, San Lorenzo, PR 00754
Telephone: (787) 739 8182 Option 2 or Ext. 1157
Fax (787) 937-0059

### San Sebastián

### Santa Isabel

### Toa Alta

### Toa Baja

### Trujillo Alto

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

## Utuado

**Hospital Metropolitano de la Montaña**
Asistente Administrativo: Mariela Villafañe Negrón
Tel. (787) 933-1100 ext. 2224
Email: mvillafane@hospitalmetroutuado.com,
Addres: PO Box 2600 Utuado, PR 00641

## Vega Alta

## Vega Baja

**Instituto de Medicina Preventiva**
Medical Director: Rafael Rodriguez Vazquez
Telephone: 787-807-7178
Address: Marginal #113A Urbnizacion Monte Carlo, Vega Baja Puerto Rico 00693
Contact: Nancy M Echevarria (Administrator)
Email: nmechevarria@gmail.com
Telephone: 787-364-6265

**Hospital Wilma Vazquez**
Medical Director: Dr. Milagros Torres Peña
Telephone: Telephone (787) 858-1580.
Address: Carretera 2KM 39 Bo Algarrobo, Vega Baja Puerto Rico, 00693
Contact: Carmen Luquis
Email: cluquis@wilmamed.com

## Vieques

## Villalba

## Yabucoa

**COSSMA- Yabucoa**
Address: Bo. Juan Martín Carr. 901 km 1.6, Yabucoa, PR 00767
Telephone:(787) 739 8182 Option 4 or Ext. 1400
Fax (787) 893-3060

## Yauco

**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**





# USAT

## MONTSERRAT
### OFFICIAL TRANSCRIPT

## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, MONTSERRAT

Main Campus
Camelot Estate, P.O. Box 506, South Mayfield Estate Drive, Olveston, Montserrat,
British West Indies  *www.usat.edu*
US Administration Office
5400 Ward Road, Bldg. 3, Suite 150, Arvada, Colorado 80002

NAME: Loraima Rosado Villafane I.D.:001-8232      DOB: 04/18/1993
ADDRESS: Bo Rio Grande, Jayuya, PR 00664
EMAIL: Loraima.rosado@usat.edu
PREVIOUS INSTITUTIONS ATTENDED: University of Health Sciences Antigua School of Medicine

MAJOR: MEDICINE
MATRICULATION DATE: May 2018
DEGREE SOUGHT: MBBS/MD
Page 1 of 1

| ACADEMIC TERM | COURSE NR | TOPIC / COURSE TITLE | CREDITS | GRADE | QUALPTS | REMARKS |
|---|---|---|---|---|---|---|
| | | **USAT BASIC SCIENCES** | | | | |
| MAY-DEC 2018 | BSC560 | MEDICAL IMAGING | 3 | B- | 8.1 | |
| | BSC529 | INTRO TO PHYSIOLOGY | 1 | B- | 2.7 | |
| | BSC675 | INTRO TO PHARMACOLOGY | 1 | B- | 2.7 | |
| | TTS600 | TEST TAKING STRATEGIES I | 0.5 | P | CR | |
| | BSC670 | PHARMACOLOGY | 3 | B | 9.0 | |
| | BSC525 | MICROBIOLOGY AND IMMUNOLOGY | 3 | A- | 11.1 | |
| | BSC789 | GENERAL PATHOLOGY | 3 | A | 12.0 | |
| | TTS601 | TEST TAKING STRATEGIES II | 0.5 | P | CR | |
| | BSC903B | ORGAN SYSTEMS I | 9 | B | 27.0 | |
| | BSC350 | PUBLIC HEALTH | 3 | A+ | 12.9 | |
| | CSK600 | CLINICAL SKILLS I | 2.5 | A | 10.0 | |
| | BSC903C | ORGAN SYSTEMS II | 9 | A | 27.0 | |
| | BSC903D | ORGAN SYSTEMS III | 9 | A+ | 28.7 | |
| | BHS600 | PSYCHOLOGY | 4 | A | 16.0 | |
| | | **CUM USAT BASIC SCIENCES** | 51.5 | 3.31 | 167.2 | |

//////////END OF TRANSCRIPT – NOTHING FOLLOWS//////////

COMMENTS:      TRANSFERRED OUT 30 DECEMBER 2018
AWARDED:

Not Valid Without Official Raised University Seal      Registrar: _Nicole Perey_

Date Issued: 8-7-2019

USA (FL Cert Nr. L12000078671), Montserrat (Cert Nr. 172003).
Member Institution of WHO Global Alliance on Healthcare, WDOMS World Directory of Medical Schools, ASIC (UK) & IPSP (ITALY), AAHEA, AICP.
USAT is an Equal Opportunity Employer. © USAT 2003-2019 *www.usat.edu*
*Excellence and Professionalism in Research and Education.*

07/2019

 Gmail    Loraima Michelle Rosado Villafane <loraima.rosadov@gmail.com>

# Student Loan Final Disclosure

**answers@campusdoor.com** <answers@campusdoor.com>    Mon, Jun 18, 2018 at 9:12 PM
To: loraima.rosadov@gmail.com



06/18/2018

Loraima M Rosado
Apt 1369
Jayuya, PR 00664

RE: Application Identification Number 5001924259-01

Dear Loraima M Rosado

Congratulations on your education loan approval!

We have created a Final Disclosure which sets forth the final terms of your loan and saved it to your account and, if applicable, your cosigner's account. Please carefully review this disclosure because it sets forth the final terms of your loan. Note that if you or your cosigner, if applicable, requested any reduction in your loan amount, it will be reflected in the Final Disclosure.

Unless you or your cosigner, if applicable, contact us to cancel the loan by the date set forth on the first page of the Final Disclosure, we will disburse your loan funds to your school as set forth below:

- 
    Disbursement Date            Disbursement Amount
- 

| Disbursement Date | Disbursement Amount |
|---|---|
| 7/16/2018 | $15,000.00 |
| 11/15/2018 | $17,500.00 |
| 3/15/2019 | $17,500.00 |

If you have any questions regarding this notice, please contact:

- SouthEast Bank
- 1415 Ritner Highway
- Carlisle, PA 17013

- 717-254-2381

We're available to assist you any time Monday through Friday from 8:00 a.m. to 6:00 p.m. ET. For your convenience, you may e-mail us at answers@campusdoor.com. If you e-mail us, be sure to include your telephone number and the best time for us to reach you.

Sincerely,

SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

FDCLB

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*

6/26/23, 3:24 PM

 Gmail                                          **Loraima Michelle Rosado Villafane <loraima.rosadov@gmail.com>**

---

# Important Student Loan Disbursement Information
1 message

---

**answers@campusdoor.com** <answers@campusdoor.com>                          Wed, Jul 11, 2018 at 8:53 AM
To: loraima.rosadov@gmail.com



Thank you for selecting SouthEast Bank to assist with your education finance needs.

This message is a notification to inform you that your loan funds are scheduled for disbursement and will arrive at your school soon.

If you have any questions about your application, you can log into your account at www.campusdoor.com/SouthEastBank/account for answers. We hope that you will think of SouthEast Bank for any future education finance needs you may have.

Sincerely,

SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*



Loraima Michelle Rosado Villafane <loraima.rosadov@gmail.com>

## Change in the Terms of your Student Loan
1 message

**answers@campusdoor.com** <answers@campusdoor.com>                    Thu, Aug 2, 2018 at 11:46 AM
To: loraima.rosadov@gmail.com

08/02/2018

Loraima M Rosado,

You or your school have requested a loan change for application ID: 5001924259-01.

| Disbursement Date | Previous Amount | Current Amount |
|---|---|---|
| 07/13/2018 | $15,000.00 | $15,000.00 |
| 08/15/2018 | $17,500.00 | $17,500.00 |
| 08/15/2018 | $17,500.00 | $17,500.00 |
| **Total Loan Amount** | | $50,000.00 |

This notice is a confirmation that your request has been processed.

Sincerely,
SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*

# CHECKLIST

To continue processing your loan we need the following additional documentation:

**STUDENT BORROWER**

## Loan Documentation

- Signed Credit Agreement via electronic signature
  
  ☐ Received    ☐ Approved

- Signed Self Certification Form
  
  ☐ Received    ☐ Approved

## Identity Verification Documents

- Copy of Valid, unexpired federal or state government issued photo identification (photo ID or Driver's License)
  
  ☐ Received    ☐ Approved

- Copy of Social Security Card
  
  ☐ Received    ☐ Approved

### RETURN BY ANY OF THE FOLLOWING METHODS:

Upload:      www.campusdoor.com/SouthEastBank/Account

Fax:          717-241-3188

Email*:      additionalinformation@campusdoor.com

Mail:         SouthEast Bank, 1415 Ritner Highway, Carlisle PA 17013

**The quicker we get your documentation, the faster we can disburse your funds.**
**If you have any questions, please contact us at 717-254-2381**
**Monday through Friday from 8:00 a.m. to 6:00 p.m. ET.**
*Email transmissions may not be secure and is therefore not encouraged. Please ensure to properly protect or encrypt any personal information you elect to provide via email.*

# SouthEast Bank Private Loan Credit Agreement

| Loan Date | Account ID | Loan Number |
|---|---|---|
| 6/4/2018 | XXXX924259-01 | 358 |

| Lender: | SouthEast Bank | School: | University of Science, Arts and Technology |
|---|---|---|---|

**Student Borrower:** Loraima M Rosado

Bo Rio Grande Sec. Los Naranjos Jayuya, Pr 00664

Jayuya, PR 00664

**Lender:** SouthEast Bank

12700 Kingston Pike
Knoxville, TN 37934

**Cosigner:**

**Servicer:** ReliaMax Lending Services

PO Box 91910
Sioux Falls, SD 57109-1910

*(No alterations, scratch outs or white-outs will be accepted on this form.)*

**1. DEFINITIONS**.

In this Private Loan Credit Agreement (the "**Agreement**"), the words **"I"**, **"me"**, **"mine"**, **"my",** mean each person who signs this Agreement as Borrower or as Cosigner, jointly and severally unless the applicable language specifically refers to only one or the other or specifies a different meaning.

**"Application"** means the application for a Loan submitted by me for this Loan (as applicable).

**"Business Days"** are Monday through Friday, excluding days when a bank in the State of Tennessee is required or permitted to be closed.

**"Capitalized Interest" or "Capitalized"** means any interest unpaid as of the date the loan enters repayment and at the conclusion of a deferment or forbearance will be capitalized (added to the principal balance). Interest then begins accruing on the increased principal balance.

**"Current Index"** means the Three-Month London Interbank Offered Rate (LIBOR) referred to as "3 Month LIBOR" as published on The Wall Street Journal's website (or any generally recognized successor method or means of publication) (See Section 9 below for specific information regarding the Index for this Credit Agreement.)

**"Deferment/Forbearance"** means under certain circumstances, you may be eligible to receive a deferment or forbearance that allows you to temporarily postpone or reduce your loan payments.

**"Disbursement Date"** means the date on any Loan check or any date the Lender electronically transmits funds to the Eligible Institution.

**"Disclosure Statement"** means any Application and Solicitation Disclosure, Approval Disclosure and/or Final Disclosure pursuant to the Federal Truth in Lending Act collectively that may be provided separately from this Agreement. The Approval Disclosure and the Final Disclosure are incorporated by reference into this Agreement. In the event of any conflict between the terms of the Final Disclosure and this Agreement, the Final Disclosure shall govern.

**"Eligible Institution"** means the entity set forth above as "School".

**"Interim In-School Deferred Period"** means the time period beginning with the first Disbursement Date, continuing while the Student is attending the Eligible Institution on at least a half-time basis, and ending six (6) months after: (i) the

Student's withdrawal or dismissal from the Eligible Institution; (ii) the Student is no longer attending the Eligible Institution on at least a half-time basis, or (iii) the Student graduates from the Eligible Institution and the student does not enroll in an Internship/Residency program within the six months. If the student enrolls in an Internship/Residency program within six (6) months of graduating from the Eligible Institution, the loan will enter repayment thirty-six (36) months after graduating from the Eligible Institution.

**"Lender", "you" and "your"** mean SouthEast Bank, or any subsequent holder of this Agreement, and also any agent or servicer acting on behalf of Lender and any guarantors/insurers or any subsequent holder of this Agreement, unless the applicable language specifies a different meaning.

**"Loan"** means any and all loan advances made by the Lender under the terms and conditions of this Agreement.

**"Loan Date"** means the date set forth as 'Disbursement Date".

**"Loan Origination Fee"** means a fee assessed by the Lender for processing a new Loan application. The Loan Origination Fee for this loan is 2.75%.

**"Loan Period"** means the time period specified by the Eligible Institution regardless of whether a different period was specified by me in the Application. This represents the corresponding academic period for which I am requesting the loan. The Loan Period cannot exceed 12 months.

**"Margin"** means 6.95%.

**"Principal Sum" or "Principal Balance"** means the loan amount you borrowed plus any capitalized interest.

**"Repayment Period"** means (i) if Total Deferred is elected for the repayment option during the Interim In-School Deferred Period, the time period beginning after the Interim In-School Deferred Period ends, or (ii) if immediate repayment of principal and interest is elected for the repayment option, the time period beginning within fifty (50) days after the first Disbursement Date and in each case, ending when the Loan is required to be paid in full. The Repayment Period will not exceed twenty (20) years.

**2. AGREEMENT TO PAY.**

To the extent advanced, I agree to pay, to the order of Lender, the principal sum which is the amount disbursed by the Lender and received by the Eligible Institution plus any Loan Fee I owe under Section 8 below ("Origination Loan

Fee"). The Principal Sum will not exceed the lesser of the amount requested by me or the amount approved by the Eligible Institution. I also agree to pay accrued interest as described in Section 9 below (see also Section 10); and all other charges, fees and costs that become due as required in this Agreement. In the event of default, I also promise to pay reasonable attorney's fees, and reasonable collection agency commissions, fees and costs, court and other collection costs, to the extent permitted by law. I understand that I will be liable to pay all of these amounts, in full, even if another person also signs this Agreement.

### 3. APPROVAL AND CANCELLATION OF AGREEMENT.

I understand that when you accept my signed Agreement, you are not agreeing to lend me money and I am not bound by the terms and conditions set forth in this Agreement, and there is no such agreement until the Disbursement Date and you have funded the Loan. If you decide to make a Loan to me, I hereby authorize you at your option and on my behalf to transfer the Loan funds electronically or via check to the Eligible Institution identified on this credit agreement. You have the right not to make the Loan or not make a disbursement on the Loan, as permitted by applicable law. Further, you have the right to lend an amount different from the amount requested in my Application based upon information received from the Eligible Institution. I agree to accept an amount less than the amount I requested on the Application and to repay the entire Loan amount that you actually lend to me based upon information from the Eligible Institution.

**Approval:** I understand that I am not legally obligated to repay any amounts owed under this Agreement until such amounts are disbursed by the Lender. I understand that I am signing this Agreement before this Loan has been fully approved by the Lender because the Lender has not yet received all required information and the Lender has not yet received certifications from the Eligible Institution. Once all information is obtained by the Lender and the Loan is fully approved, the Lender will provide me with the appropriate Disclosure(s) showing the principal amount that has been approved and other important information.

**Cancellation:** If I do accept the Loan offer, Lender will provide me with a Final Disclosure. The Final Disclosure will be sent to me before any advances on the Loan are disbursed to the Eligible Institution. **If I am not satisfied with the terms and conditions of my Loan as approved by the Lender, I may cancel this Agreement and all Loan disbursements by the deadline for cancellation set forth in my Final Disclosure.** To cancel this Agreement, I must give you notice of cancellation using the methods set forth in the Final Disclosure, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. If I cancel this Agreement and the Loan during the cancellation period identified in the Final Disclosure, no advances will be disbursed to the Eligible Institution and the Loan will be cancelled. However, cancellation of this Agreement will <u>not</u> affect the continuing validity of Section 19 below ("Arbitration Agreement"). I acknowledge that the Lender may cancel my Loan at any time in accordance with applicable law.

### 4. LOAN PURPOSE.

I certify to Lender that the proceeds of the Loan will be used only to pay for qualified higher education expenses, as described in Section 221(d)(2) of the Internal Revenue Code of 1986 (as amended), 26 U.S.C. Section 221(d)(2), ("Qualified Higher Education Expenses") relating to my enrollment and attendance at the Eligible Institution on at least a half-time basis during the Loan Period, as approved by the Eligible Institution and/or Lender, as applicable. Moreover, I agree to return to the Lender any Loan proceeds not attributable to such expenses.

### 5. DISBURSEMENTS.

I authorize you, at your option, to disburse Loan funds in whole or in part (a) electronically to the Eligible Institution, to be applied to the Student's account, or (b) by check made jointly payable to me and the Eligible Institution, that is mailed to the Eligible Institution (at your discretion). I understand that disbursements to the Eligible Institution may be made in stages, as tuition and other applicable Qualified Education Expenses become due and payable.

### 6. STOPPING DISBURSEMENTS.

I may ask you to stop making disbursements. To stop a disbursement, and any further disbursements, you must receive my request via electronic mail, or in writing, together with any verification of identity and/or of authorization that you may require, by no later than the deadline for cancellation set forth in my Final Disclosure. You may stop a disbursement, and any further disbursements, if any Loan check is not endorsed, deposited and cleared within ninety (90) days, if I am in default at any time (see Section 11), or if you learn that I am no longer attending the Eligible Institution on at least a half-time basis. I will be liable to repay all disbursements made under this Agreement, even if you or I stop subsequent disbursements.

### 7. RETURNING FUNDS.

If all or any part of the Loan funds disbursed on any Disbursement Date are returned to you directly by the Eligible Institution, or if a Loan check is not endorsed, deposited and cleared within ninety (90) days of that Disbursement Date, Lender will charge no interest and will not assess any Loan Fee with respect to the funds returned or with respect to the funds represented by the uncashed Loan check.

### 8. LOAN ORIGINATION FEE.

I will pay you a Loan Origination Fee at the time each disbursement in made on my behalf to the Eligible Institution under this Loan. The dollar amount of any Loan Origination Fee will be determined as a percentage of the Principal Sum. The Loan Origination Fee I will pay will be shown within the Itemization of Amount Financed on my Disclosure Statement and added to the principal balance of my loan and deducted from the loan proceeds when such loan proceeds are disbursed. To the extent permitted by law, and unless I timely cancel a disbursement I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement. The Loan Origination Fee is fully earned by Lender when it is assessed (subject to Section 7 above)

### 9. INTEREST.

**Accrual.** Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (see "Variable Rate" below) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum as set forth herein. Interest will be calculated at the Variable Rate and charged on the "Principal Sum" of this Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the average number of days in a calendar year (365.25). Interest accrues on the unpaid principal balance of the Loan (including any Loan Fee) from the Disbursement Date until the date the Loan is repaid in full (subject to Section 7 above).

**Capitalization of Interest.** Upon entering the Repayment Period of the loan, any outstanding accrued interest shall be "capitalized" and added to the unpaid principal of the loan. Such capitalized interest shall be subject to the same interest accrual as the principal sum.

The Lender, at its discretion, may allow a deferment or forbearance of payments on the loan. In such an event, any interest that has accrued during such periods shall also be capitalized at the end of the deferment or forbearance period and added to the outstanding principal balance of the loan.

**Variable Rate:** The Variable Rate is equal to the Current Index, plus a margin of 6.95% as calculated according to the loan program rules and as disclosed to me on my Disclosure Statement. The Variable Rate may change quarterly on the first day of each January, April, July and October (the "Change Date(s))" if the Current Index changes. Any increase will take the form of higher payment amounts, any decrease will take the form of lower payment amounts, unless my monthly payment amount is less than $100.00 (principal and interest) or the unpaid balance (whichever is less) which will result in my loan being paid off in a repayment period of less than originally disclosed.

**Current Index:** The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the three-month London Interbank Offered Rate ("LIBOR") published in the "Money Rates" section of The Wall Street Journal on the 20th day of the month preceding the applicable Change Date as applied according to the following rules (or on any successor or

substitute page of a successor available source providing such quotations). You will use the three-month LIBOR as published without regard to the two-day delayed effective date. If the 20th day of the month is not a business day, you will use the preceding business day to determine the Current Index. For purposes of this Paragraph "business day" means any day the banks in New York and London are open for the transaction of business. You may round the current Index higher to two decimal places. For example, 6.68751% may be rounded to 6.69%. (This is an example and may not reflect the actual LIBOR.) LIBOR is the British Banker's Association average of interbank offered rates for dollar deposits in the London market based on quotations at 16 major banks. LIBOR is only a pricing index and is not necessarily the lowest interest rate index used by you or any other lender. If LIBOR is no longer available, you will choose a comparable index.

In no event will the amount of interest due or any payment or fee in the nature of interest payable by me under this Agreement exceed the lesser of eighteen percent (18%) per year or the maximum rate of interest allowed by applicable law, as amended from time to time. If any interest is charged or received by you in excess of that amount, the excess sum will be credited as a payment of principal, unless I notify you, in writing, that I elect to have the sum returned to me. Interest shall be computed on the basis of a 365.25 day year.

**Variable Rate Changes:** You will notify me of any changes in the Interest Rate as required by law. A change in the rate may cause the amount of the final payment to change or may cause the amount of the monthly payment to increase or decrease.

**Interest After Default:**  If I default (see Section 11), and/or if Lender obtains a judgment against me on this Agreement, interest will continue to accrue on all amounts I owe under this Agreement at the Variable Rate applicable to this Loan before default and before judgment. The interest rate will continue to be adjusted quarterly as described above, before and after default and before and after judgment.

**10. REPAYMENT.**

If I elected Total Deferred - During the Interim In-school Deferred Period, if any, you may send the Borrower statements (showing the total of my loan disbursements and the interest that accrues on my loan). Statements will be sent to the address shown on your records. I am not required to make payments during the Interim In-school  Deferred Period, however it is in my best interest to make payments during this time period. You will add any interest that I do not pay during the Interim In-school Deferred Period to the principal  balance, as described in section 9.

If I elected the "Immediate Principal and Interest Repayment" option, I will make monthly payments of principal and accrued interest during the In-School Period and my first payment will be due within fifty (50) days after the first disbursement of my Loan.  If I fail to make the full payment due, and I have not graduated or not ceased to be enrolled at least half-time; my loan will convert to "Interim In-School Deferred."

**Repayment Options:** During the Repayment Period, alternative or graduated repayment options may be available upon request.  If I desire an alternative repayment option, I will contact my servicer upon receipt of my "Welcome Letter" with the payment option I prefer.

**Repayment Schedule:** I will make consecutive monthly payments of principal and accrued interest during the Repayment Period until all amounts I owe in connection with this Loan are paid in full. However, I agree that my scheduled monthly payments of principal and interest will not be less than $100 which may result in a repayment term of less than twenty (20) years.

**Monthly Statements:** During the Repayment Period I will receive monthly statements for the repayment of my Loan. Failure to receive a monthly statement does not relieve me from my obligation to make all payments as required by the terms of this Agreement (as those payments may be changed by Lender to reflect interest rate changes).

**Revised Payment of Principal and Interest:**  If my Variable Rate changes, as provided in Section 9 above, Lender may change the monthly payment of principal and interest I am required to pay, so that the payments will allow me to repay the unpaid balance of principal, interest and other charges due over the remaining term of the Repayment Period at the new interest rate.  If

Lender does this, the change in the monthly payment amount will be provided on my monthly statement.

**Application of Payments:** Payments will be applied first to Return payment fees if applicable, then to accrued interest, then to principal up to the monthly payment amount, then to late fees. I understand that all accrued interest must be paid before the principal balance can be reduced.

**Prepayment:** I may, at my option, prepay all or any part of the principal, interest and other charges at any time before payment is due (whether during the In-School Interim Deferred Period or the Repayment Period) without penalty.  Because of the way interest is calculated, I will not receive any interest refund  or rebate if I prepay in full. Because the Loan Origination Fee is earned when  assessed, I will not receive a rebate of any portion of the Loan Origination Fee if I prepay my Loan in full after it has been disbursed **(subject to Section 7  above).**

Prepayment of more than the monthly installment amount due under this Agreement will be applied to future monthly payments but no more than three months into the future, unless I clearly direct in writing submitted with such prepayment that I do not want such funds applied toward future monthly payments. If I instruct you to not apply a prepayment to future monthly payments, the prepayment will not reduce the amount of my required monthly payment until Lender recalculates the Repayment Schedule due to interest rate changes, and will not excuse me from having to make all previously scheduled future monthly payments on their due dates. However, prepayment of more than the monthly installment amount due under this Agreement may reduce the number of payments I must make and/or the amount of my future payments.

**Late Payments, Partial Payments, and "Payment in Full":** To the extent permitted by applicable law, Lender may accept late payments, partial payments or payments marked "Payment in Full" or having similar language, without waiving any of its rights under this Agreement or under applicable law, notwithstanding any act, omission or thing which might operate as a legal or equitable discharge.

**Late Charges:** If you do not receive a payment by its due date, my Loan may be in default (see Section 11). In addition, I will pay a late charge if you do not receive any part of a monthly payment within fifteen (15) days after it becomes due. The late charge will be $50 or 5% of the unpaid amount of the payment, whichever is less.

**Returned Check Charges:** I agree to pay a Returned Check Charge of $15 for any check or other instrument you receive as payment of amounts due under this Agreement, that is dishonored for any reason, or if any bank returns any other payments to you (including electronic payments) unpaid. This fee is in addition to any fee that my bank may also charge me, and is in addition to the late charge described above.

**Amount Owing at the End of the Repayment Period:** Since interest accrues daily upon the unpaid principal balance of my Loan (including capitalized interest), if I make payments after my payment due dates, I may owe additional interest and late charges at the end of the Repayment Period. In such cases, my last monthly payment shall be the amount necessary to repay my Loan in full, including the outstanding principal balance, all accrued and unpaid interest, and all other charges, fees and costs that are due under the terms of this Agreement.

**Payment Due Despite Withdrawal from the Eligible Institution, Death or Disability:** I understand that I have to repay this Loan in full, even if I withdraw or am dismissed from the Eligible Institution without graduating or completion, even if such failure is caused by the Eligible Institution ceasing to provide education services. If I die, the terms of this Agreement will be binding on my estate, which will be liable for my unpaid indebtedness. I also understand that if I become totally and permanently disabled, my unpaid indebtedness on this Loan shall not be canceled.

**11. DEFAULT**. To the extent permitted by applicable law, my Loan will be in default if any of the following occurs: (a) A monthly payment is not received on or before its due date; (b) I break any promise made in this Agreement; (c) Lender discovers any false or misleading statement in any information I have given Lender in connection with this Agreement or the Application for this Loan; (d) I fail to use the proceeds of this Loan solely for Qualified Higher Education Expenses; (e) I make an assignment for the

benefit of creditors or have voluntary or involuntary bankruptcy proceedings instituted by or against me; (f) I am adjudicated incompetent; (g) I fail to notify you of any change in my name, address, telephone number, or school enrollment status within 10 days after a change occurs; (h) I allow another person to forge my signature on any document.

**12. LENDER'S REMEDIES AFTER DEFAULT.** If a default occurs, then after any applicable notice and right to cure default that is required by applicable law (see Section 13), Lender may declare the entire balance of principal, interest and other charges owed under this Loan immediately due and payable, in full, without further notice to me. Lender may then take action to collect the entire Loan balance, including (without limitation): (a) bringing a lawsuit against me and obtaining a judgment against me and/or (b) referring my Loan to a third party (such as a collection agency) for further collection efforts. To the extent permitted by applicable law, I agree to pay any reasonable collection agency commissions, fee and charges, reasonable attorneys' fees and actual court costs (including fees and costs in bankruptcy court and in appellate courts), and any other costs of collection incurred by Lender as the result of a default. If I default, then after any applicable waiting periods or notices required by applicable law, and as permitted by applicable law, Lender may also disclose information about my default to one or more national consumer credit reporting agencies, which may adversely affect my ability to obtain other credit. To maintain a good credit rating, it is to my advantage to meet my obligations under this Agreement.

**13. NOTICES.** I must immediately notify you in writing (within 30 days) after any of the following occurs: (a) a change in my mailing address (including my electronic mail address, if I have agreed to receive notices and other communications electronically from you) and/or my name; (b) I cease to be enrolled on at least a half-time basis at an the Eligible Institution; or (c) I graduate from the Eligible Institution. Any notice I send you will be sent to the address you have most recently provided me for that purpose. If you have not provided any address to me, notices may be sent to the address shown on my monthly statements.

Except as otherwise provided by applicable law, any notice you are required to give me will be effective when mailed by first class mail to the latest address you have for me. Alternatively, if I have agreed to receive notices and other communications electronically, such notice will be effective when transmitted electronically to the latest electronic mail address you have for me. To the extent permitted by applicable law, any notice you send to any one of us will be considered sent to all of us.

**14. GOVERNING LAW; UNSECURED AGREEMENT; INVALID PROVISIONS; WAIVERS; EXTENSION, RENEWAL, OR RELEASE; ASSIGNMENT; CHANGES TO AGREEMENT.**

**Governing Law:** I understand and agree that Lender is headquartered in Tennessee and the Loan will be disbursed by Lender from Tennessee through a third-party agent. **Consequently, the provisions of this Agreement (except for Section 19) will be governed by federal law and (to the extent not preempted by federal law) the laws of the State of Tennessee, without regard to conflict of law rules.** Section 19 (Arbitration Agreement) is governed by the Federal Arbitration Act, and not by any state law concerning arbitration.

**Unsecured Agreement:** Lender waives any right it may have under any other document to claim a security interest in property to secure this Agreement. This Agreement is unsecured.

**Invalid Provisions:** If any provision of this Agreement is held invalid or unenforceable in arbitration under Section 19 or by a court having jurisdiction, the remaining provisions of this Agreement shall not be affected, and this Agreement shall be construed as if such invalid or unenforceable provisions had not been included in this Agreement. However, Section 19 (Arbitration Agreement) shall be null and void if the "Class action waiver" paragraph in Section 19 is held to be invalid or unenforceable, as described more fully in Section 19 below.

**Waivers:** Unless prohibited by applicable law, I waive my rights to require you to demand payment of amounts due (known as "presentment"), to give notice that amounts due have not been paid (known as "notice of dishonor"), to obtain an official certification of non-payment (known as "protest"), and, to the extent permitted by applicable law, to give any other notices or demands in connection with this Agreement.

You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise any and all of your rights on any future occasion.

**YOU AND I EACH WAIVE THE RIGHT TO A JURY TRIAL CONCERNING ANY CLAIM OR DISPUTE RELATING TO OR ARISING FROM THE APPLICATION, ANY DISCLOSURE STATEMENT, THIS AGREEMENT, OR THE LOAN (REGARDLESS OF WHETHER THE CLAIM OR DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT AND REGARDLESS OF WHETHER I OPT OUT OF THE ARBITRATION AGREEMENT).**

**Extension, Renewal or Release:** You may extend or renew this Agreement at your discretion and you may release any one of us without affecting or releasing any of the rest of us.

**Assignment:** I may not assign this Agreement or any of its benefits or obligations. You have the right to assign your rights and duties under this Agreement without my consent and without notice to me. If this Agreement is sold or otherwise transferred, my rights under the law or under this Agreement are in no way altered or impaired.

**Changes to Agreement:** Except as otherwise indicated in this Agreement, no term or provision of this Agreement may be changed unless agreed to in writing by both Lender and me.

**Savings Clause:** If a law which applies to this Agreement and which sets maximum Interest or finance charges is finally interpreted so that the Interest or other charges collected or to be collected in connection with this Agreement exceeds the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the Principal I owe under this Agreement or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

**No Accord and Satisfaction:** A restrictive endorsement on any payment item (such as "paid in full") will not be considered an accord and satisfaction of what I owe under this Agreement. If I dispute any amount owed you, I must write to ReliaMax Lending Services, PO BOX 91910, Sioux Falls, SD 57109-1910, or such other address provided by you to me for correspondence.

**Bankruptcy:** If I file for bankruptcy I may still be required to pay the amount due under this Agreement.

**Set-Off:** Whenever my Loan is in default (and regardless of whether you have declared the entire Loan balance to be immediately due and payable, in full), you may apply any funds of mine in your possession or control against amounts owed under this Loan without any notice.

**General:** Section and paragraph headings and captions in this Agreement are for convenience and reference purposes only, and are not intended to limit the meaning of any provision of this Agreement. Whenever applicable in this Agreement, the use of the singular includes the plural and use of the plural includes the singular.

**Signatures:** I agree that if I sign this Agreement and transmit such signed Agreement to you via facsimile, electronically transmitted portable document format, or via electronic signature and submission, such transmission shall be treated in all manner and respects as an original signature (or counterpart thereof) and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. I agree not to raise the use of a facsimile machine, electronic transmission in portable document format, or electronic signature and submission to deliver a signature or the fact that any signature was transmitted or communicated through the use of facsimile machine, electronic transmission in portable document format or electronic signature and submission as a defense to enforceability of this Agreement and I forever waive any such defense.

**15. PRIVACY MATTERS.**

**Communicating with Me:** To the extent permitted by applicable law, and without limiting any other rights you may have, I expressly consent and authorize you, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan to communicate with me, in

connection with the application or my Loan, and in connection with all other current or future loans, using any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. You, your affiliates or agents, and Lender, and its affiliates or agents, and any subsequent holder or servicer of my Loan, to the extent permitted by governing law, may communicate with me, using any current or future means of communication, including, but not limited to, automated telephone dialing equipment, artificial or pre-recorded voice messages, SMS text messages, email directed to me at a mobile telephone service, or email otherwise directed to me. I AUTHORIZE THE USE OF SUCH MEANS OF COMMUNICATION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, OR EMAILS.

**Updating Information:** I agree to give you updated financial, enrollment status, contact, mailing and other information about me, and updated information about the Student, any time required under this Agreement or any time you reasonably request.

**The Eligible Institution:** To the extent permitted by applicable law, I authorize that you may provide a copy of any application, this Agreement, or any other document or information regarding my Loan request to, and may report my payment history to, the Eligible Institution.

**Receipt of and Reporting of Credit Information:** I authorize you to investigate my creditworthiness and to receive credit information about me (and my spouse if I live in a community property state) from others, including other lenders, consumer credit reporting agencies, and educational loan information clearinghouses. You may also furnish information about my Loan, including but not limited to, late payments, missed payments or other defaults on my account, to credit reporting agencies and other persons who may legally receive such information. A negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my Loan obligations.

**Communications Regarding Loan and Release of Loan Information:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with each other, and to release information pertinent to this Loan to each other and (unless I submit written directions otherwise) to members of my immediate family, including my spouse. I further authorize any lender or holder of any of my outstanding educational loans to release any information on any of my outstanding educational loans to any other lender or holder of any of my other educational loans. I authorize the Eligible Institution to release to you, your servicer or your agents any requested information pertinent to this Loan including (but not limited to) enrollment status, prior loan history and your current telephone number and address.

**Communications Regarding the Loan Certification and Disbursement Process:** To the extent permitted by applicable law, I authorize you and the Eligible Institution to communicate with any third-party service provider utilized by you to facilitate the certification of my Loan request by the Eligible Institution or to facilitate the process of disbursing my loan funds to the Eligible Institution.

**Inquiries to Learn Current Address and Telephone Number:** I authorize you to release information and make inquiries to the individuals listed as references on the Application for the purpose of learning my current address and telephone number.

**Social Security Number:** You and the Eligible Institution may verify my Social Security number with the Social Security Administration (SSA). If the number on my Loan records is incorrect or missing, then I authorize the SSA to disclose my correct Social Security number to you and the Eligible Institution.

**Department of Education Information:** I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to you.

**16. STATE AND LOCAL TAXES AND FEES** (if applicable): I understand that I am responsible for payment of any and all taxes and/or fees imposed by any state or local government authority arising as a result of the indebtedness evidenced by this Agreement.

**17. STATE LAW NOTICES.** I understand that the following notices are required by or necessary under state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies to borrowers and/or cosigners who live in the indicated state on the date that they submitted the application and to borrowers and/or cosigners who are residents of the state.

**ALABAMA RESIDENTS:** (For purposes of the following notice, the word "you" refers to the Student Borrower and the Cosigner, not the Lender): CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**CALIFORNIA RESIDENTS ONLY:** I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

**CALIFORNIA AND UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA RESIDENTS ONLY:** If you are an Iowa resident and your amount financed is Twenty-Five Thousand Dollars ($25,000) or less, this is a consumer credit transaction.

**IOWA KANSAS AND NEBRASKA RESIDENTS ONLY: (For purposes of the following notice, the word "you" refers to the Student Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

**MARYLAND RESIDENTS ONLY:** Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of Tennessee without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MASSACHUSETTS RESIDENTS ONLY:** Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

**MISSOURI RESIDENTS ONLY: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT ME AND YOU (THE LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**NEBRASKA RESIDENTS:** A credit agreement must be in writing to be enforceable under Nebraska law. To protect you (Borrower(s)) and us (Lender) from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forbear repayment of money or to make any

EDMED_06012016_10453655

other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**NEVADA RESIDENTS ONLY:** This is a loan for study.

**NEW JERSEY RESIDENTS ONLY:** The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**NEW YORK, RHODE ISLAND and VERMONT RESIDENTS:** I understand and agree that you may obtain a consumer credit report in connection with this application and in connection with any updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

**NEW YORK RESIDENTS ONLY:** If any debt incurred on the account is ever in default, that fact may become a part of my credit record.

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**OKLAHOMA RESIDENTS ONLY:** If I am in default and only if the total amount disbursed under this Note is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

**SOUTH DAKOTA RESIDENTS ONLY:** Any improprieties in making the loan or in loan practices may be referred to Division of Banking, South Dakota Department of Labor and Regulation, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, Phone: 605.773.3421, Fax: 866.326.7504 ReliaMax Lending Services, LLC originates and services loans for lenders and is licensed by the South Dakota Division of Banking. If you have questions, concerns or disagree with a determination, you can contact the Division of Banking at: 1601 N. Harrison Avenue, Suite 1, Pierre, SD, 57501 or (605)773-3421.

**TEXAS RESIDENTS ONLY**: **Lender does not have to give me notice that Lender is demanding or intends to demand immediate payment of all that I owe.**

**UTAH RESIDENTS ONLY:** This Agreement is the final expression of the agreement between me and you and it may not be contradicted by evidence of an alleged oral agreement.

**VERMONT RESIDENTS ONLY:** BY SIGNING THIS CREDIT AGREEMENT, YOU CONSENT TO THE LENDER OBTAINING YOUR CONSUMER REPORT FROM A CONSUMER REPORTING AGENCY IN CONNECTION WITH THE TRANSACTION OR EXTENSION OF CREDIT FOR PURPOSES OF REVIEWING YOUR LOAN ACCOUNT, FOR THE PURPOSE OF TAKING COLLECTION ACTION ON YOUR LOAN ACCOUNT, OR FOR OTHER LEGITIMATE PURPOSES ASSOCIATED WITH YOUR LOAN ACCOUNT.

**WISCONSIN RESIDENTS ONLY:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE PRECEDING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY

BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**WISCONSIN RESIDENTS ONLY**: If I am a married Wisconsin resident: (1) My signature confirms that this loan obligation is being incurred in the interest of my marriage or family. (2) No provision of any marital property agreement, unilateral statement under §766.59 of the Wisconsin Statutes or court decree under §766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. (3) My spouse has actual knowledge that this credit is being extended to me and has waived the requirements of §766.56(3)(b) of the Wisconsin Statutes, as acknowledged by his or her signature on the Notice to Married Wisconsin Residents that I receive with this Agreement.

**18. FEDERAL LAW NOTICES.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government report the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for me: When I apply for a student loan, you will ask for my name, address, date of birth and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying documents.

**REPORTING INFORMATION TO A CREDIT BUREAU:**

**NOTICE: The Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the borrower's credit report.**

**HOLDER NOTICE:** I understand that the following notice is only applicable to loans issued to finance attendance at for-profit educational institutions or institutions otherwise subject to the FTC Holder Rule under 16 CFR 433.2.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE TO COSIGNER, if any: (In this Notice to Cosigner, "you" and "your" mean any Cosigner signing this Agreement.)**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of this debt if the Borrower does not pay. You may also have to pay late charges, which increases this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**19. ARBITRATION AGREEMENT. - Please read carefully.**

To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Agreement.

1. This Arbitration provision will apply to my credit agreement, unless: (A) I notify you in writing that I reject the Arbitration provisions within sixty (60) days of signing my credit agreement: (B) I am a covered borrower as defined by the Military Lending Act, 10. U.S.C. §987; or (C) I am afforded statutory protections that prohibit submission of a dispute to arbitration. RIGHT TO REJECT: I MAY REJECT THIS Arbitration Agreement by mailing a signed rejection notice to ATTN: Arbitration Agreement Rejections, 1415 Ritner Highway, Carlisle, PA 17013. Any Rejection Notice must include my name, address, telephone number and loan or account number.

2. IMPORTANT WAIVERS: If you or I elect to arbitrate a Claim, you and I both waive the right to: (1) have a court or jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE; (3) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (4) JOIN OR CONSOLIDATE CLAIM(S) WITH CLAIMS INVOLVING ANY OTHER PERSON IN COURT OR IN ARBITRATION. The arbitrator shall have no authority to conduct any arbitration inconsistent with the Class Action and Multi-Party Waivers.

3. DEFINITIONS: In this Arbitration Agreement, the following definitions will apply:

"I," "me" and "my" means the Borrower on this Agreement; the Student on whose behalf the proceeds of the Agreement have been advanced; the cosigner on this Agreement; and the heirs, executors and assigns of all the foregoing. "You," "your" and "yours" mean the Lender; any other subsequent holder of this Agreement; SouthEast Bank; all of their parents, wholly or majority owned subsidiaries and affiliates; any predecessors, successors and assigns of these entities; and all officers, directors, employees, agents and representatives thereof. These terms also include any party named as a co-defendant with you in a Claim asserted by me, such as investors or potential investors, credit bureaus, credit insurance companies, closing agents, escrow agents, insurance agents, loan originators, rating agencies, loan servicers, debt collectors, loan guarantors, performance bond trustees, tuition recovery funds, the Eligible Institution, and any of the Eligible Institution's financial aid offices or officers. "Claimant" means the party who first asserts a Claim in a lawsuit or arbitration proceeding. "Administrator" means, as applicable, the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org (800) 778-7879 or any other party that you and I agree to in writing, provided that the Administrator must not have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement.

4. "CLAIM" means any legal claim, dispute or controversy between you and me that arises from or relates in any way to this Agreement, including any dispute arising before the date of this Arbitration Agreement and any dispute relating to: (1) the imposition or collection of principal, interest, attorney's fees, collection costs or other fees or charges relating to this Agreement; (2) other provisions of this Agreement; (3) any application, disclosure or other document relating in any way to this Agreement or the transactions evidenced by this Agreement: (4) any insurance or other service or product offered or made available by or through you in connection with this Agreement, and any associated fees or charges; (5) your methods of soliciting my business; and (6) any documents, instruments, advertising or promotional materials that contain information about this Agreement or any associated insurance or other service or product. This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or this Agreement; disputes involving alleged fraud or misrepresentation, breach of contract or fiduciary duty, negligence or other torts, or violation of statute, regulation or common law. It includes disputes involving requests for injunctions, other equitable relief or declaratory relief. However, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. Also, "Claim" does not include any challenge to the validity and effect of the Class Action and Multi-Party Waivers, which must be decided by a court.

If there is an Arbitration Agreement in place (a "Prior Arbitration Agreement") governing a prior Agreement to you (a "Prior Agreement"), "Claim" also includes disputes relating to the Prior Agreement. If I do not reject this Arbitration Agreement, any such Claim will be governed by this Arbitration Agreement rather than the Prior Arbitration Agreement. If I reject this Arbitration Agreement, the Claim will be governed by the Prior Arbitration Agreement, provided that, if I never had the chance to reject the Prior Arbitration Agreement and no demand for arbitration has been previously made, my rejection of this Arbitration Agreement will also serve as my rejection of the Prior Arbitration Agreement.

5. STARTING ARBITRATION: To initiate arbitration, you or I must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit. If such a notice is given, the Claim shall be resolved by arbitration under this Arbitration Agreement and the applicable rules of the Administrator then in effect. The arbitrator(s) will be selected under the Administrator's rules, except that the arbitrator(s) must be a lawyer with at least ten years of experience or a retired judge, unless you and I agree otherwise.

6. LOCATION AND COSTS: You will consider (and generally honor) any good faith request to bear the fees charged by the Administrator and the arbitrator. Each party must normally pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless otherwise determined by the arbitrator(s).

7. DISCOVERY; GETTING INFORMATION: Either party may obtain from the other party prior to the hearing any information available under the Administrator's rules or any relevant information the arbitrator determines should in fairness be made available.

8. EFFECT OF ARBITRATION AWARD: Any state or federal court with jurisdiction and venue may enter an order enforcing this Arbitration Agreement, enter judgment upon the arbitrator's award and/or take any action authorized under the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"). For any arbitration-related proceedings in which courts are authorized to take actions under the FAA, each party hereto expressly consents to the non-exclusive jurisdiction and venue of any state court of general jurisdiction or any state court of equity that is reasonably convenient to me, *provided* that the parties to any such judicial proceeding shall have the right to initiate such proceeding in federal court or remove the proceeding to federal court if authorized to do so by applicable federal law. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any party may appeal the award to a three-arbitrator panel appointed by the Administrator, which will reconsider *de novo* any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Except as provided in Paragraph 6 above, the appealing party will pay the Administrator's and arbitrator's costs of the appeal.

9. GOVERNING LAW: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. The arbitrator will follow rules of procedure and evidence consistent with the FAA, this Arbitration Agreement and the Administrator's rules.

10. SURVIVAL, SEVERABILITY, PRIMACY: This Arbitration Agreement shall survive my full payment of the Agreement; your sale or transfer of the Agreement; any legal proceeding to collect a debt owed by me to you; any bankruptcy or insolvency; any forbearance or modification granted pursuant to the Agreement; any cancellation, or request for cancellation, of the Agreement or any or all disbursements under the Agreement; and any change in the School enrollment status of the Student. If any portion of this Arbitration Agreement cannot be enforced, the rest of the Arbitration Agreement will continue to apply,

provided that the entire Arbitration Agreement (other than this sentence) shall be null and void with respect to any Claim asserted on a class, representative or multi-party basis if the Class Action and Multi-Party Waivers are held to be invalid, subject to any right to appeal such holding. In the event of any conflict or inconsistency between this Arbitration Agreement and the Administrator's rules or the Agreement, this Arbitration Agreement will govern.

11. **NOTICE OF CLAIM; RIGHT TO RESOLVE; SPECIAL PAYMENT:** Prior to initiating, joining or participating in any judicial or arbitration proceeding, whether individually, as a class representative or participant or otherwise, regarding any Claim, the Claimant shall give the other party written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days to resolve the Claim. Any Claim Notice I send must include my name, address, telephone number and loan or account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. I may only submit a Claim Notice on my own behalf and not on behalf of any other party. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**CAUTION: IT IS IMPORTANT THAT EACH THE BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT BEFORE SIGNING BELOW. This Agreement contains all of the terms and conditions that apply to the Loan. This Agreement completely replaces any earlier understandings or communications any Borrower or Cosigner may have had with Lender, the Eligible Institution, or any other party about the Loan.**

**Before signing this Agreement, I, have read, understood and agree to all the provisions of this Agreement, including without limitation Section 19 (Arbitration Agreement). I and each of us agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement. Furthermore, I and each of us understand that consummation of this transaction does not occur upon the signing of this Agreement, but rather upon the disbursement of funds by the Lender as set forth in Section 3 above, meaning that my obligations under this Agreement only arise once such funds are disbursed. I agree that any and all proceeds of this Loan will be used solely for educational purposes as set forth in Section 4 above.**

---

Prior to signing this Agreement, I have read and understood all the provisions of this Agreement. I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.

 **CAUTION**: IT IS IMPORTANT THAT EACH BORROWER AND COSIGNER THOROUGHLY READS THIS AGREEMENT AND ENSURE THAT THERE ARE NO BLANK SPACES CONTAINED IN THE NOTE BEFORE SIGNING BELOW.
STUDENT BORROWER SIGNATURE & DATE

| Loraima M Rosado   <br><br>**X** | Date (mm/dd/yyyy) |
|---|---|

**ARIZONA RESIDENTS ONLY**: For purposes of this notice, the words "you" and "your" refer to the Cosigner: **Marital Community Property Joinder: If you are a married Arizona resident your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will properly notify your spouse and join him or her to this loan obligation in accordance with** Ariz. Rev. Stat. § 25-214 **or other applicable law. You further affirm that no provision of any marital property agreement or court decree adversely affects your interest in this loan obligation**

**VERMONT RESIDENTS ONLY**: For purposes of this notice, the word "you" and "your" refer to the Cosigner(s). **NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**SPECIAL NOTICE FOR RESIDENTS OF GEORGIA:** By signing as Cosigner, you waive any right to require the Lender to commence an action against the Student Borrower as provided in the Official Code of Georgia Annotated §10-7-24.

**SPECIAL NOTICE FOR RESIDENTS OF NORTH CAROLINA:** By signing as Cosigner, I waive any right I have to require the Lender to proceed in accordance with the provisions of North Carolina General Statutes §26-7 through §26-9 and acknowledge that the Lender may proceed against me without first proceeding against the Student Borrower.

**Prior to signing this Agreement below, I have read and understood all the provisions of this Agreement (including without limitation Sections 17 and 19 and the Notice to Cosigner). I agree to the terms of this Agreement and acknowledge receiving a completed copy of this Agreement.**

COSIGNER SIGNATURE & DATE

| **X** | Date (mm/dd/yyyy) |
|---|---|



# Private Education Loan
# Applicant Self-Certification

This space for lender use only

OMB No. 1845-0101
Form Approved
Exp. Date 07-31-2019

**Important:** Pursuant to Section 155 of the Higher Education Act of 1965, as amended, (HEA) and to satisfy the requirements of Section 128(e)(3) of the Truth in Lending Act, a lender must obtain a self-certification signed by the applicant before disbursing a private education loan. The school is required on request to provide this form or the required information only for students admitted or enrolled at the school. Throughout this Applicant Self-Certification, "you" and "your" refer to the applicant who is applying for the loan. The applicant and the student may be the same person.

**Instructions:** Before signing, carefully read the entire form, including the definitions and other information on the following page. Submit the signed form to your lender.

## SECTION 1: NOTICES TO APPLICANT

- Free or lower-cost Title IV federal, state, or school student financial aid may be available in place of, or in addition to, a private education loan. To apply for Title IV federal grants, loans and work-study, submit a Free Application for Federal Student Aid (FAFSA) available at www.fafsa.ed.gov, or by calling 1-800-4-FED-AID, or from the school's financial aid office.

- A private education loan may reduce eligibility for free or lower-cost federal, state, or school student financial aid.

- You are <u>strongly</u> encouraged to pursue the availability of free or lower-cost financial aid with the school's financial aid office.

- The financial information required to complete this form can be obtained from the school's financial aid office. If the lender has provided this information, you should contact your school's financial aid office to verify this information and to discuss your financing options.

## SECTION 2: COST OF ATTENDANCE AND ESTIMATED FINANCIAL ASSISTANCE

**If information is not already entered below, obtain the needed information from the school's financial aid office and enter it on the appropriate line. Sign and date where indicated. See Section 5 for definitions of financial aid terms.**

A. Student's cost of attendance for the period of enrollment covered by the loan    $ 60,000.00

B. Estimated financial assistance for the period of enrollment covered by the loan    $ .00

C. Difference between amounts A and B    $ 60,000.00

   **WARNING**: If you borrow more than the amount on line C, you risk reducing your eligibility for free or lower-cost federal, state, or school financial aid.

## SECTION 3: APPLICANT INFORMATION

**Enter or correct the information below.**

Full Name and Address of School  University of Science, Arts and Technology - College of Medicine  3450 Ash St      Denver      CO  80207

Applicant Name (last, first, MI)  Rosado, Loraima M      Date of Birth (mm/dd/yyyy) 04/18/1993 /

Permanent Street Address  Bo Rio Grande Sec. Los Naranjos Jayuya, Pr 00664

City, State, Zip Code  Jayuya, PR 00664

Area Code / Telephone Number   Home (   ) (787) 240-6129      Other (   ) (787) 240-6129

E-mail Address  loraima.rosadov@gmail.com

Period of Enrollment Covered by the Loan (mm/dd/yyyy)    From 08/20/2018 /    to 12/14/2018 /

**If the student is <u>not</u> the applicant, provide the student's name and date of birth.**

Student Name (last, first, MI) _____    Student Date of Birth (mm/dd/yyyy) ____/____/_____

## SECTION 4: APPLICANT SIGNATURE

**I certify** that I have read and understood the notices in Section 1 and, that to the best of my knowledge, the information provided on this form is true and correct.

Signature of Applicant _____    Date (mm/dd/yyyy) _____

0007965184

---

### SECTION 5: DEFINITIONS

---

**Cost of attendance** is an estimate of tuition and fees, room and board, transportation, and other costs for the period of enrollment covered by the loan, as determined by the school. A student's cost of attendance may be obtained from the school's financial aid office.

**Estimated financial assistance** is all federal, state, institutional (school), private, and other sources of assistance used in determining eligibility for most Title IV student financial aid, including amounts of financial assistance used to replace the expected family contribution. The student's estimated financial assistance is determined by the school and may be obtained from the school's financial aid office.

A **lender i**s a private education lender as defined in Section 140 of the Truth in Lending Act and any other person engaged in the business of securing, making, or extending private education loans on behalf of the lender.

A **period of enrollment** is the academic year, academic term (such as semester, trimester, or quarter), or the number of weeks of instructional time for which the applicant is requesting the loan.

A **private education loan** is a loan provided by a private education lender that is not a Title IV loan and that is issued expressly for postsecondary education expenses, regardless of whether the loan is provided through the school that the student attends or directly to the borrower from the private education lender. A private education loan does not include **(1)** An extension of credit under an open-end consumer credit plan, a reverse mortgage transaction, a residential mortgage transaction, or any other loan that is secured by real property or a dwelling; or **(2)** An extension of credit in which the school is the lender if the term of the extension of credit is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than four installments.

**Title IV student financial aid** includes the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant (FSEOG) Program, the Federal Work-Study (FWS) Program, the William D. Ford Federal Direct Loan (Direct Loan) Program, the Federal Perkins Loan Program, and the Teacher Education Assistance for College and Higher Education (TEACH) Grant Program. To apply for Title IV federal grants, loans, and work-study, submit a Free Application for Federal Student Aid (FAFSA), which is available at www.fafsa.gov, by calling 1-800-4-FED-AID, or from the school's financial aid office.

---

### SECTION 6: PAPERWORK REDUCTION NOTICE

---

**Paperwork Reduction Notice**: According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0101. The time required to complete this information collection is estimated to average 0.25 hours (15 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed and complete and review the information collection.

*If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:* U.S. Department of Education, Washington, DC 20202-4651

*If you have any comments or concerns regarding the status of your individual submission of this form, contact your lender.*

0007965184

Rev. 04/2015

| **FACTS** | **WHAT DOES SOUTHEAST BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and Income<br>• Account Balances and Payment History<br>• Credit Scores and Credit History |
|---|---|

| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons SouthEast Bank chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does SouthEast Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For our nonaffiliates to market to you** | No | We don't share |

| **To limit our sharing** | • Call toll-free 1-844-732-2657 (1-844-SEBANKS) - our menu will prompt you through your choice(s)<br>• Visit your local branch<br>• Mail a letter to the following address requesting to opt out:<br><br>SouthEast Bank-Privacy Opt Out<br>12700 Kingston Pike<br>Farragut, TN 37934<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|

| **Questions?** | Call toll-free 1-844-732-2657 (1-844-SEBANKS) or go to www.southeastbank.com |
|---|---|

**PAGE 2**

| Who We Are | |
|---|---|
| **Who is providing this notice?** | This notice is provided by SouthEast Bank. |

| What we do | |
|---|---|
| **How does SouthEast Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does SouthEast Bank collect my personal information?** | We collect your personal information, for example, when you<br><br>• Open an account     • Apply for a loan<br>• Deposit money     • Use your credit or debit card<br>• Pay your bills<br><br>We also collect your personal information from others; such as, credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choice will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>*Our affiliates include:*<br><br>• *Financial companies such as: Educational Services of America, Inc. (Edsouth Services), Southeast Bancorp, and SouthEast Wealth Management.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>• *SouthEast Bank does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>• *Our joint marketing partners include credit card companies and insurance companies.* |