**EXHIBIT 49**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **SUJEIL PEÑA-TORRES; ET ALS**<br><br>PLAINTIFFS<br><br>VS.<br><br>**UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ET ALS**<br><br>DEFENDANTS | CIVIL NO. 19-1707<br><br>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);<br>FRAUDULENT INDUCEMENT;<br>BREACH OF CONTRACT;<br>UNJUST ENRICHMENT;<br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

### UNSWORN DECLARATION UNDER PENALTY OF PERJURY

1. My name is <u>Lisa M. Torres Colón</u>. I am of legal age, student, single, domiciled and resident of Villalba, Puerto Rico.

2. My address is the following: <u>Urb. La Vega C-85 Villalba, PR.</u>

3. In (19/JULY/2017), I was searching for a medical school to apply in order to get into a career in medicine.

4. On or around (21/JULY/2017), I was contacted by Daniela Cabrera-Pujadas ("Cabrera").

5. Ortiz and Cabrera represented themselves as officials of the medical school known as University of Science, Arts and Technology ("USAT").

6. Ortiz and Cabrera represented to me that USAT was an accredited college of medicine in Puerto Rico.

7. On (9/AUGUST/2017), I received various materials regarding USAT, such as a brochures, applications and enrollment agreements. These materials made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

8. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Orien L. Tulp ("Tulp") is the President of USAT, Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT.

9. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, and that Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico.

10. As such, my understanding was that Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all officials and representatives of USAT.

11. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT was accredited by the Educational Commission for Foreign Medical Graduates ("ECFMG") so that USAT students may be able to take the United States Medical Licensing Examinations.

12. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that being a student of USAT would allow me to take the United States Medical Licensing Examinations.

13. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT also had other satellite campuses or schools in other states in the United States, such as in Florida, Maryland and Texas.

14. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT had its main Administrative Office in the state of Colorado, in the United States.

15. I understood that the USAT officials have been working at USAT for some time.

16. The USAT Officials made representations that USAT's purpose was to provide me an education in medicine if I applied to be a student.

17. In consideration of providing me an education in medicine if I became a student, USAT would request payments from me.

18. The USAT Officials made representations that once the payments would be received, they would provide the education in medicine and I would be able to take the United States Medical Licensing Examinations.

19. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I was induced and made the decision to apply to USAT, thinking that I was going to be able to receive a valid medical education in Puerto Rico and will be able to apply for and take the United States Medical Licensing Examinations.

20. On (10-30/AUGUST/2017), I submitted all the required documents and required payments to USAT in order to apply.

21. On (14/SEPTEMBER/2017), I received a letter from Tulp which informed me that I was admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of scientific and medical education. The Letter indicated that I must pay no less than five thousand four hundred dollars ($5,490.00) per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00). The fees were different in every document.

22. Once I was admitted by USAT, USAT Officials from both Puerto Rico and Colorado came to attend the White Coat Ceremony making the representation that we were going to start a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

23. Once I was admitted by USAT, the USAT officials oriented me as to the manner of payment and the possibility of taking out a loan.

24. On (14/FEBRUARY/2018), the USAT officials assisted me in submitting a loan application with SouthEast Bank ("SB") in order to pay USAT.

25. On (14/FEBRUARY/2018), I submitted a loan application to SB, which was accepted and they provided a personal loan to me for the sum amount of ($38,000.00).

26. On (2/APRIL/2018 AND 15/AUGUST/2018), SB disbursed the personal loan and directed to the offices of USAT located in Colorado.

27. I did not receive the personal loan directly, but instead had to request USAT to deliver me certain sum amounts from the personal loan.

28. The USAT officials located in Colorado were the ones that had full control of my SB personal loan.

29. On (1/APRIL/2018), USAT would deduct the sum amount of ($12,667.00) from the (($38,000.00).

30. From the date of my admission until September of 2018, USAT had received an approximated amount of ($23,300.00) for providing education in medicine.

31. From the date of my admission until September of 2018, while USAT received an approximated amount of ($23,300.00) I understood that I was receiving a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

32. On SEPTEMBER 2018, I was studying and applied for the ECFMG number. Number required to take and apply the USMLE.

33. After I applied, ECFMG requested me to submit information under penalty of perjury via an affidavit to describe the USAT medical school information and asking whether I had physically attended the USAT medical classes at Montserrat.

34. On (OCTOBER/2018), they never informed us, I found out in the World Directory of Medical Schools that I was not eligible for the United States Medical Licensing Examination.

35. On (14/SEPTEMBER/2018), I was notified by the USAT Officials of the ECFMG irregularities.

36. On September 24th of 2018, the USAT Officials notified me of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities.

37. On September 26th of 2018, a telephone conference was held with Tulp and the attorneys of USAT to address me and other students' concerns regarding the denial to take the United States Medical Licensing Examination.

38. During that September 26th telephone conference, Tulp instructed me and the other students to falsely inform ECFMG that the me and the other students took the USAT medical education at the Montserrat main campus.

39. Tulp made the representation that ECFMG had been provided false information regarding USAT students and the USAT location of colleges of medicine.

40. After this telephone conference, I began send numerous communications to the USAT Officials inquiring as to why I could not take the United States Medical Licensing Examination.

41. During September, October and November of 2018, the USAT Officials dodged and evaded questions by me and other students regarding their lack of eligibility for the United States Medical Licensing Examination.

42. During early November of 2018, the USAT Officials instructed me and the other students to not send additional information to ECFMG outside the instructions of USAT.

43. During early November of 2018, the USAT Officials instructed me and the other students to send all information regarding ECFMG to Konyk, who would then refer me and the other students to USAT's attorney.

44. During early November of 2018, the USAT Officials also tried to invite me and the other students to transfer to start again at other medical schools suggested by USAT.

45. On November 8th of 2018, Ortiz sent an e-mail to me and the other students regarding ECFMG's decision to find me and the other students not eligible for the United States

Medical Licensing Examination. In that e-mail, Ortiz falsely represented to me and the other students that USAT was "surprised" by ECFMG's decision.

46. Subsequent to this e-mail, me and the other students demanded a physical meeting with Ortiz to discuss face to face these surprising events.

47. On November 16th, 2018, USAT Officials sent an electronic mail to some Plaintiffs invoking a meeting on that same date at around 5:30 pm.

48. However, the meeting was delayed until 10 pm, when Ortiz arrived.

49. At 10 pm, me and the other students met with Ortiz and asked him a line of questions concerning whether USAT had licensing and/or certification status in Puerto Rico and whether me and other students' finances and personal loans that was controlled by the USAT Officials in Colorado would be returned.

50. Ortiz did not answer our questions, answering them evasively and without any concrete answers.

51. Another meeting was held by Ortiz on December 18th, 2018 to try to resolve the situation.

52. On December of 2018, I noticed that USAT Officials vacated the USAT college of medicine school in Puerto Rico.

53. USAT took me and the other students medical school documents to an unknown location.

54. USAT never resolved me and the other student's situation and we were unable to take the United States Medical Licensing Examination via USAT.

55. Instead, on (9/JANUARY/2019), USAT began to send me invoices from their Colorado Office with fabricated expenses and costs, requesting me to make more payments.

56. However, these transcripts of medical education from USAT were not accepted by other medical schools.

57. On (DECEMBER/2018), I applied to (ST. MATTHEWS UNIVERSITY-SCHOOL OF MEDICINE), which did not accept the USAT medical education.

58. Therefore, I had to start my medical education again as if I did not receive any.

59. Based on the above, USAT received a sum amount of ($23,300.00) from my ($38,000.00) , without providing a valid medical education in Puerto Rico.

60. Based on the above, USAT received a sum amount of ($23,300.00) from my ($38,000.00)  for providing an invalid medical education that resulted in my inability to take the United States Medical Licensing Examinations.

61. All the USAT Officials participated in the false representation that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

62. USAT falsely represented to me and many other students throughout 2017 and 2018 that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

63. However, the reality is that USAT did not provide to me and the other students a valid medical education, which resulted in me being unable to take the United States Medical Licensing Examinations.

64. From the (SEPTEMBER 14, 2017) until (DECEMBER 9-15,2018), USAT and the USAT officials kept repeating their false statements that they were providing a valid medical education and I would be able to take the United States Medical Licensing Examination, so long as I kept paying them, which I did because USAT received the sum amount of ($23,300.00) from my (($38,000.00).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. sec. 1746.

Dated at San Juan, PR, this 29 day of March, 2021.

_____

(Lisa M. Torres Colón)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **SUJEIL PEÑA-TORRES; et als.**<br><br>PLAINTIFFS<br><br>VS.<br><br>**UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; et als.**<br><br>DEFENDANTS | CIVIL NO. 19-1707<br><br>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);<br>FRAUDULENT INDUCEMENT;<br>BREACH OF CONTRACT;<br>UNJUST ENRICHMENT;<br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**ANSWERS TO FIRST SET OF INTERROGATORIES AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:        **CO-DEFENDANT, DANIELA CABRERA PUJADAS**
          **Through its legal counsel,**
          **CHARLES A. CUPRILL, P.S.C. LAW OFFICES**

FROM:     **LISA M. TORRES COLON**
          **Through his legal counsel,**
          **VICTOR M. RIVERA-RIOS**

Comes now, **Lisa M. Torres Colón**, hereinafter referred as "Plaintiff" and/or as "me, myself, or "I", through counsel, hereby submits his Answers to Co-Defendant, **Daniela Cabrera Pujadas** ("Co-Defendant") First Set of Interrogatories and Request for Production of Documents.

**PRELIMINARY STATEMENT**

Plaintiff has not completed the investigation, discovery, or analysis, of all the facts of this case and has not completed preparation for trial. Accordingly, all of the following responses are provided without prejudice to Plaintiff's right to supplement or amend discovery responses pursuant to the terms of the Federal Rules of Civil Procedure, or introduce at trial any evidence

that is subsequently discovered relating to proof of presently known facts and to produce and introduce all evidence whenever discovered relating to the proof of subsequently discovered material facts. Moreover, facts, documents and things now known may be imperfectly understood and accordingly, such facts, documents, and things, may not be included in the following responses. Plaintiff reserves the right to reference, discover or offer into evidence at the time of trial any and all facts, documents and things notwithstanding the initial responses and objections interposed herein. Plaintiff further reserves the right to reference, discover, or offer into evidence at the time of trial any and all facts, documents and things which it does not presently recall but may recall at some time in the future.

**DEFINITIONS**

The following definitions are incorporated by reference in all of Plaintiff's specific responses and objections to Plaintiff's Answers to Defendants First Set of Interrogatories, Request for Admissions and Requests for Production of Documents:

1.    "Irrelevant" means not relevant to the claims or defenses of any party involved in the pending action and not reasonably calculated to lead to the discovery of evidence admissible as to those issues.

2.    "Impermissibly overbroad" means irrelevant, burdensomely and unnecessary to the extent the set of interrogatories seek: (1) information about individuals or entities not parties to this action; and/or (2) information pertaining to persons' activities and/or events that are outside the scope of the present litigation.

3.    "Vague" means ambiguous or not specified with reasonable particularity.

4.    "Unduly burdensome and oppressive" means that: (1) it is impossible to produce such document or information in a complete and sufficient manner without making a complex or

onerous investigation; (2) the collection or reproduction of such document or information is financially burdensome or unfeasible; or (3) the document or information sought has been previously produced to a party within this action and served upon every attorney involved in the litigation.

5.    "Not discoverable" means outside of the scope of the present litigation because it is either, and/or irrelevant, impermissibly overbroad and/or vague.

6.    "Defendants" mean the named individuals in the caption of the complaint.

## **GENERAL OBJECTIONS**

1.    Plaintiff objects to Defendant's interrogatories on the grounds that they seek disclosure of information protected by the attorney-client, work product, and self-critical analysis privileges. To the extent that Plaintiff inadvertently discloses information that may arguably be protected from discovery under attorney-client privileged the work product doctrine, the self-critical analysis privileged or any other applicable privilege, such inadvertent disclosure does not constitute a waiver of any such privilege.

2.    Plaintiff objects to Defendant's interrogatories to the extent that Defendants' definitions and instructions purport to impose requirements beyond the Federal Rules of Civil Procedure anchor purport to give meaning to terms beyond Plaintiff's normal connotation.

3.    Plaintiff objects to Defendant's interrogatories insofar as they seek information concerning matters unrelated to the subject matter of this lawsuit, on the ground that it is overly broad, unduly burdensomely and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to Defendant's interrogatories to the extent that they are not limited in time frame and are overly broad and unduly burdensome because they are more than inclusive

3

of the relevant time period at issue in this case.

5.      Plaintiff objects to Defendant's interrogatories to the extent that they call for information that is not currently in her possession, custody, or control.

6.      The responses set forth below are made without in any manner waiving (a) the right to object to the use of any response for any purpose in this action or any other actions, on the grounds of privilege, relevance materiality, or any other appropriate grounds; and (b) the right to revised corrects supplement, or clarify any of the responses provided below at any time.

These General Objections are applicable to each and every one of the following responses and objections, and failure to repeat an objection in response to a specific request is not a waiver of the objection. Further, when Plaintiff specifically repeats one or more of these general objections in response to a specific interrogatory, such specific response is not a waiver of these general objections.

Subject to and without waiving these general objections, and subject to and without waiving the specific objections noted below, Plaintiff responds as follows:

## INTERROGATORRIES

**INTERROGATORY 1**

1. As to the person who answers these Interrogatories state:

a. Your full name, including your two last names and any nickname;

b. Physical and postal address, as well as a telephone number where you can be contacted.

c. Identify the following circumstances if you exercise any profession, work or business: (i) nature, type or classification of profession, work or business; (ii) exact name and address of your place of business; (iii) if you are an employee, state the name of your employer as well as the exact address of your current job.

4

d. State your relationship with USAT.

**RESPONSE:**

a. Lisa Mariel Torres Colón

b. Postal address: Urb. La Vega C-85 Villalba, PR 00766

  Phone number: 787-342-9102

c. I'm a medical student at Universidad Iberoamericana (UNIBE) in Dominican Republic.

d. I was a medical student at USAT from September 2017 until December 2018.

**INTERROGATORY 2**

State the basis for your statement at paragraph 2 of the Third Amended Complaint (the "Complaint") to the effect that Cabrera was an officer and director of USAT and submit all documents in support thereof

**RESPONSE:**

Daniela Cabrera ("Cabrera") was the Clinical Coordinator- Student Affairs of Puerto Rico.

5



The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 3

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff identifies the following individuals who may have discoverable information and may be used to support the Plaintiff's theories:

1.    Sujeil Peña-Torres ("Peña") -

a.    Peña must be contacted through the undersigned counsel.

b.    Peña was a student applicant and student of the USAT PR Branch.

c.    Peña has personal knowledge of the facts alleged in the Complaint. In summary, Peña has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and

studied at the Puerto Rico Branch ("PR Branch") of the University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT"), 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the joint owners of USAT, who are Orien L. Tulp ("Tulp") and Carla M. Konyk ("Konyk")  Manuel José Ortiz-Bustillo ("Ortiz"), Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera") and Karen Baldwin ("Baldwin") (jointly referred as "USAT Officers"), amongst other unknown persons. 3) how USAT and the USAT Officers (jointly "Defendants") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961, *et seq.* because the Defendants caused injuries to the Plaintiffs and various other medical students ("RICO victims") because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from banking institutions ("Banks") that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from United States Regulatory Agencies ("Regulatory Agencies"), 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO

7

victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the Educational Commission for Foreign Medical Graduates ("ECFMG") because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

2.    Jose E. Blasco-Jusino ("Blasco") -

8

a.    Blasco must be contacted through the undersigned counsel.

b.    Blasco was a student applicant and student of the USAT PR Branch.

c.    Blasco has personal knowledge of the facts alleged in the Complaint. In summary, Blasco has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though

9

the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

   3.  Lucero Rodriguez-Fernández ("Rodriguez") -

   a.  Rodriguez must be contacted through the undersigned counsel.

   b.  Rodriguez was a student applicant and student of the USAT PR Branch.

   c.  Rodriguez has personal knowledge of the facts alleged in the Complaint. In summary, Rodriguez has personal knowledge as to: 1) how the Plaintiffs are medical students

10

whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality

11

they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

4.    Lisa M. Torres-Colon ("Torres") -

a.    Torres must be contacted through the undersigned counsel.

b.    Torres was a student applicant and student of the USAT PR Branch.

c.    Torres has personal knowledge of the facts alleged in the Complaint. In summary, Torres has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants

caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the

13

medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

     5.      Joffre E. Gómez-Frontera ("Joffre") -

     a.      Joffre must be contacted through the undersigned counsel.

     b.      Joffre was a student applicant and student of the USAT PR Branch.

     c.      Joffre has personal knowledge of the facts alleged in the Complaint. In summary, Joffre has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers

14

participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a

15

licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

6.    Zabdiel A. Nieves-Rivera ("Zabdiel") -

a.    Zabdiel must be contacted through the undersigned counsel.

b.    Zabdiel was a student applicant and student of the USAT PR Branch.

c.    Zabdiel has personal knowledge of the facts alleged in the Complaint. In summary, Zabdiel has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would

16

take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred

17

by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

      7.    Enny de Jesús-Ureña ("Enny") -

      a.    Enny must be contacted through the undersigned counsel.

      b.    Enny was a student applicant and student of the USAT PR Branch.

      c.    Enny has personal knowledge of the facts alleged in the Complaint. In summary, Enny has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue

to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

8. Loraima M. Rosado-Villafañe ("Loraima") -

a. Loraima must be contacted through the undersigned counsel.

19

b.    Loraima was a student applicant and student of the USAT PR Branch.

c.    Loraima has personal knowledge of the facts alleged in the Complaint. In summary, Loraima has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations

20

from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

9.      Paola M. Prosper-Crespo ("Prosper") -

a.      Prosper must be contacted through the undersigned counsel.

b.      Prosper was a student applicant and student of the USAT PR Branch.

c.      Prosper has personal knowledge of the facts alleged in the Complaint. In summary, Prosper has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the

21

island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical

22

examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

10.     Wendoly M. Vazquez Oliveras ("Vazquez") -

a.     Vazquez must be contacted through the undersigned counsel.

b.     Vazquez was a student applicant and student of the USAT PR Branch.

c.     Vazquez has personal knowledge of the facts alleged in the Complaint. In summary, Vazquez has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO

victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same

24

false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

11.    Orien L. Tulp ("Tulp") -

a.    Tulp was the Owner and President of USAT.

b.    Tulp has personal knowledge of the facts alleged in the Complaint. In summary, Tulp has personal knowledge as to: 1) how Tulp created USAT in Montserrat, 2) how Tulp created locations within the United States to open USAT branches, 3) how Tulp created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Tulp located the main USAT offices in Colorado, 5) how Tulp directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Tulp directed that Konyk handle and receive all Tuition payments, 7) how Tulp directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how

Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they

26

could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

12.    Carla M. Konyk ("Konyk") -

a.    Konyk was the Owner and Vice President of USAT.

b.    Konyk has personal knowledge of the facts alleged in the Complaint. In summary, Konyk has personal knowledge as to: 1) how Konyk created USAT in Montserrat, 2) how Konyk created locations within the United States to open USAT branches, 3) how Konyk created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Konyk located the main USAT offices in Colorado, 5) how Konyk directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Konyk handle and receive all Tuition payments, 7) how Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications

27

to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified

28

to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

13.     Manuel José Ortiz-Bustillo ("Ortiz") -

a.     Ortiz was the Associate Dean of the PR Branch of USAT.

b.     Ortiz has personal knowledge of the facts alleged in the Complaint. In summary, Ortiz has personal knowledge as to: 1) how Ortiz was originally a student of USAT, 2) how Ortiz reached and agreement with Tulp to create the PR Branch of USAT, 3) how Ortiz coordinated with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Ortiz recruited students to apply to the USAT branch, 9) how the

Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the

United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

14.    Yanire Bustillo ("Bustillo") -

a.    Bustillo was an employee of the PR Branch of USAT.

b.    Bustillo has personal knowledge of the facts alleged in the Complaint. In summary, Bustillo has personal knowledge as to: 1) how Bustillo worked as an employee of the PR Branch of USAT, 2) how Bustillo coordinated with Konyk who was located the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the

United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical

education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

15.     Daniela Cabrera-Pujadas ("Cabrera") -

a.     Cabrera was an employee of the PR Branch of USAT.

b.     Cabrera has personal knowledge of the facts alleged in the Complaint. In summary, Cabrera has personal knowledge as to: 1) how Cabrera and Ortiz coordinated with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Cabrera and Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Cabrera and Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Cabrera and Ortiz recruited students to apply to the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not

have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory

34

Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

16.    Karen Baldwin ("Baldwin") -

a.    Baldwin was an employee of USAT.

b.    Baldwin has personal knowledge of the facts alleged in the Complaint. In summary, Baldwin has personal knowledge as to: 1) how Baldwin worked as an employee of USAT, 2) how Baldwin worked with USAT from the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money

35

from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same

36

false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

Plaintiff reserves the right to announce any other witnesses during the process of discovery. Plaintiff reserves the right to call any individuals named by the Defendants whose name becomes known through discovery or otherwise. Plaintiff reserves the right to call any individuals to testify for impeachment purposes.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 4**

State the facts supporting your allegations of paragraph 3 of the Complaint

**RESPONSE:**

The USAT and USAT officials violated the RICO Act, because they received approximately thirty-eight thousand dollars ($38,000) from a loan that I requested from SouthEast Bank. The payment for the student tuition and fees issued to USAT was based on the false representation that they could provide medical education within the United States when they were

37

not certified to do so and later, I was not allowed to take the United States Medical Licensing Examinations.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 5**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 6**

State the facts supporting your allegations of paragraph 4 of the Complaint.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 4.

Notwithstanding the objection, my economic damages are the student loan I took in order to pay USAT for a medical education, and for living expenses and school expenses. This student loan was obtained based on false representation from USAT. By February of 2023, the student loan has the current balance $54,569.98 due to the increasing interest.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 7**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 8**

As to paragraph 34 of the Complaint state the nature and extent of Cabrera's contact with you and your interview by her, specifically stating date, time and place of all contacts and interviews in chronological order, narrating what Cabrera told you as to each, including her representations as to USAT.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2.

Notwithstanding the objection, at the moment I contacted Cabrera, around July 20-21st, 2017, I was studying at UNIBE in the Dominican Republic. Cabrera and myself exchanged some emails, I wanted information about USAT. In one of the emails Cabrera asked for my phone number and at what time was better for her to call me. Cabrera ended up calling me on August

2017.









When I spoke with Cabrera on the telephone, she indicated that she would send me USAT

40

materials and brochures. I received the USAT materials, brochures, enrollment agreement, student fees and all USAT information from Cabrera.  During our telephone conversations with Cabrera, she represented to me that USAT was accredited by ECFMG and that the USAT students are able to take the United States Medical Examinations. After speaking with Cabrera, I was later contacted by Manuel Jose Ortiz Bustillo ("Ortiz Bustillo"), who repeated the false representations of Cabrera. Ortiz Bustillo identified himself as the Dean of the USAT PR Branch, that is, the person who was in charge.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 9**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 10**

State Cabrera's involvement with the facts alleged in paragraph 35 of the Compliant.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

41

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 11**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 12**

Separately as to paragraph 36 and 37 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 13**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons separately as to paragraphs 36, 37 and 38.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 14**

As to paragraph 38 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each, that induced you to make the decision to apply to USAT, thinking that you were going to receive the education in medicine and that you would be able to take the United States Medical Licensing Examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2 & 8.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 15**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

43

in order to include any other newly discovered evidence.

**INTERROGATORY 16**

As to paragraph 43 of the Complaint, state Cabrera's participation in the White Coat Ceremony, if any.

**RESPONSE:**

Cabrera was part of the USAT Puerto Rico officials that were present at the white coat ceremony. The USAT Puerto Rico officials, were the ones in charge of helping the students in putting their white coats on, it is a tradition that the doctors help the students during this ceremony. In my case it was Cabrera the one that helped me put my white coat on in that ceremony. I hereby attach photographs.

See attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 17**

As to paragraph 44 of the Complaint, state Cabrera's participation in the facts alleged therein, indicating if Cabrera was located in Colorado.

**RESPONSE:**

Cabrera was not located in Colorado. She was located in Puerto Rico. Notwithstanding, all the payments that I made for the PR Branch of USAT were going to Colorado. Ortiz was the person that assisted me with the student loan application.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 18**

44

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 19**

As to paragraph 45 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

**RESPONSE:**

I was assisted by an USAT official to obtain the student loan. All payments to USAT originated from the student loan I applied for. I did receive e-mails from the Southeast bank in which it reflected that the student loan was obtained and paid to USAT. USAT has in their possession evidence of them receiving the student loans. The payment was sent to Colorado.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 20**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each and state the name of USAT's attorneys.

45

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 21**

As to paragraph 59 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

**RESPONSE:**

On September of 2018, I was notified with other Plaintiffs by the USAT Officials of the ECFMG irregularities. On September of 2018, the USAT Officials notified me and the other Plaintiffs of a telephone conference to be held on or around September 25 and 26 of 2018 to discuss the ECFMG irregularities. I met with a group of students where one of the students called the telephone conference line in order to attend conference held with Tulp and Konyk to address our concerns regarding the denial to take the United States Medical Licensing Examination. During that telephone conference, Tulp instructed the students, including me and the other Plaintiffs, to falsely inform ECFMG that the students took the USAT medical education at the Montserrat main campus. Tulp made the representation to the students that ECFMG had been provided false information regarding USAT students and the USAT location of colleges of medicine. Tulp's statements made me uncomfortable because I had been physically present in Puerto Rico at all times taking classes at the PR Branch of USAT.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

46

**INTERROGATORY 22**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 23**

As to paragraph 60 of the Complaint, state to whom the communications referred to therein were forwarded and by whom as to each communication and submit copies thereof.

**RESPONSE:**

I sent emails to Manuel Ortiz Bustillo, the dean of USAT Puerto Rico, requesting information. He never responded.

I later received emails related to the lack of eligibility for the United States Medical Licensing Examination, for students who expect to graduate after January 1, 2019, as in my case.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 24**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such

persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 25**

As to paragraph 61 of the Complaint, state Cabrera's participation and/or involvement in the allegations set forth therein.

**RESPONSE:**

I received an email with instructions that we do not send additional information to ECFMG and to send all information regarding ECFMG to Karla Konyk.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 26**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 27**

As to paragraph 65 of the Complaint, what were the false representations made by Cabrera to you, chronologically stating the time and date thereof and their nature.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I received the USAT brochures, enrollment agreements and information regarding USAT's accreditation with ECFMG and with USMLE from Cabrera.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 28**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

49

in order to include any other newly discovered evidence.

**INTERROGATORY 29**

As to paragraph 68 of the Complaint, state chronologically by time and date Cabrera's participation and/ or involvement in the false representations by mail and wire representing that USAT would provide a valid medical education to you and that you would be able to take the United States Medial Licensing Examinations, setting forth the nature thereof, and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 30**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

50

**INTERROGATORY 31**

As to paragraph 71 of the Complaint, chronologically by time and date indicate all payments made by you to Cabrera and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 32**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 33**

As to paragraph 72 of the Complaint, state how you were fraudulently induced by Cabrera into applying, studying and paying for a medical education at the USAT PR Branch.

**RESPONSE:**

51

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 34**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 35**

As to paragraph 73 of the Complaint, state how Cabrera orchestrated the scheme to defraud with the knowledge to deceive you by means of false or fraudulent pretenses, representations, promises or other deceptive conduct.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 36**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 37**

As to paragraph 74 of the Complaint, state how Cabrera falsely represented that the "satellite" schools were licensed and certified to assist you to be eligible for the medical licensing examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 38**

53

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 39**

As to paragraph 75 of the Complaint, state how Cabrera knowingly and frequently used interstate mail and wire transfer in furtherance of a fraudulent scheme and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 40**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

54

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 41**

As to paragraph 76 of the Complaint, state how Cabrera requested payments for the "medical education" via interstate mail and wire transfer, requesting that all payments be made to USAT at the Colorado office, inducing you and other RICO Victims to understand that you were paying for a proper medical education because USAT had its proper licenses and certification and submit copy thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 42**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33

of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 43**

As to paragraph 77 of the Complaint, state how Cabrera directed mail and interstate wire transfers with Banks in furtherance of scheme and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 44**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 45**

As to paragraph 78 of the Complaint, state how Cabrera requested that the Banks give you and other RICO Victims student loans to pay for the USAT PR Branch medical education.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 46**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 47**

As to paragraph 79 of the Complaint, state how Cabrera fabricated certain costs and expenses when directing invoices to you and the other RICO Victims, demanding more payment for additional services for the "medical education" and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 48**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 49**

As to paragraph 80 of the Complaint, based on the above-mentioned facts, state how Cabrera incurred in fraudulent acts in violation of RICO.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 50**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 51**

As to paragraph 94 of the Complaint, indicate how Cabrera falls in the definition of an enterprise as defined by RICO.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 52**

As to paragraph 95 of the Complaint, state in detail in chronological sequence Cabrera's

59

involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 53**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 54**

As to paragraph 97 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 55**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**<u>RESPONSE:</u>**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 56**

As to paragraph 98 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**<u>RESPONSE:</u>**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 57**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 58**

As to paragraph 100 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I had to spend on living expenses to be able to live near the school in San Juan, PR. Additionally, I also paid USAT student tuition and fees. In order to pay for the USAT tuition, fees and the expenses incurred to live near the school, I obtained a student loan of approximately thirty-eight thousand dollars ($38,000.00). I paid the living expenses and USAT expenses using the student loan obtained from Southeast Bank, which is a loan that I still have to pay. I would not have incurred in this loan of approximately thirty-eight thousand dollars ($38,000.00), if I had knowledge that USAT was not authorized to

operate a medical school in Puerto Rico. I had to incur in an additional loan to be able to pay for new studies at another medical school. I had to incur living and tuition expenses again to be able to repeat all the courses I took at USAT again, because no school accepted the USAT transcript or credits.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 59**

As to paragraph 103 of the Complaint, state how Cabrera obtained your consent to enter into an agreement with USAT through deceptive means.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 60**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 61**

As to paragraph 104 of the Complaint, state how Cabrera used false words and/or insidious machinations, describing each, to induce you to enter into an agreement with USAT, which without the existence of false words and insidious machination you would not have entered in the agreement.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 62**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

**INTERROGATORY 63**

As to paragraph 105 of the Complaint, state how Cabrera knowingly did not disclose to you the lack of licenses and credentials of the USAT PR Branch and that USAT did not comply with rules pursuant to ECFMG.

**RESPONSE:**

64

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 64**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 65**

As to paragraph 106 of the Complaint, state how Cabrera falsely represented to you the costs and expenses taken during the USAT PR Branch community.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

in order to include any other newly discovered evidence.

**INTERROGATORY 66**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE**:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 67**

As to paragraph 107 of the Complaint, state how Cabrera entered into a valid contract with you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 68**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such

persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 69**

As to paragraph 108 of the Complaint, state how a valid contract exists because you and Cabrera consented to bind yourselves with regard to one another, in which you would pay Cabrera a sum amount of money in exchange for services.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 70**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33

of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 71**

As to paragraph 109 of the Complaint, how as a result of Cabrera's fraudulent inducement, or in the alternative, breach of contract, and the nature thereof Cabrera is liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 72**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 73**

As to paragraph 112 of the Complaint, state how Cabrera's actions constitute an act or omission which caused damage to you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 74**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 75**

As to paragraph 113 of the Complaint, state how Cabrera is liable to you pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

**RESPONSE:**

69

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 76**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 77**

As to paragraph 121 of the Complaint, state how Cabrera is jointly and severally liable to for negligent and intentional tort actions.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

70

in order to include any other newly discovered evidence.

**INTERROGATORY 78**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 79**

As to paragraph 122 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I had to spend on living expenses to be able to live near the school in San Juan, PR. Additionally, I also paid USAT student tuition and fees. In order to pay for the USAT tuition, fees and the expenses incurred to live near the school, I obtained a student loan of approximately thirty-eight thousand dollars ($38,000.00).

I paid the living expenses and USAT expenses using the student loan obtained from Southeast Bank, which is a loan that I still have to pay. I would not have incurred in this loan of approximately thirty-eight thousand dollars ($38,000.00), if I had knowledge that USAT was not authorized to operate a medical school in Puerto Rico. I had to incur in an additional loan to be able to pay for new studies at another medical school. I had to incur living and tuition expenses again to be able to repeat all the courses I took at USAT again, because no school accepted the USAT transcript or credits.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

Pursuant to 28 U.S.C. Sec. 1746, I state, under penalty of perjury, that after reviewing the foregoing answers with my attorney, who assisted me with the translation of the English Questions and my Spanish Answers to English, the foregoing answers are true and correct.

In San Juan, Puerto Rico, on this __30_ day of May, 2023.

_____

LISA M TORRES COLON

72

**I HEREBY CERTIFY** that on this same date a true copy of this Answer to First Set of Interrogatories and Request for Production of Documents has been sent to Defendants' counsels.

In San Juan, Puerto Rico, on this ___ day of May, 2023.

*/S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
Mobile: (787) 565-3477
E-Mail: victorriverarios@rcrtrblaw.com
info.vrr@rcrtrblaw.com

73



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Dean*

September 12, 2017

Lisa Torres Colón
Urb. La Vega Street C #85
Villaba PR 00766

Re: Admission to MD Program    → *Corregido*

Dear Lisa Torres:

Congratulations! On behalf of the Admissions committee it is my pleasure to offer you a place to the MD program at the University of Science, Arts and Technology, PR Campus. This is typically a 4-year program of scientific and medical education, which includes not less than 6 semesters of basic medical sciences courses and updates as well as up to 2 academic years of clinical training in hospitals and clinics in various locations. You have been admitted starting from basic sciences with a projected minimum of 11 semesters to graduation.

The tuition for the MD program is currently USD $5,490 per semester plus the following one-time fees, (Government) Matriculation fee (USD $600), Medical Student Malpractice Insurance fee (USD $995), Anatomy Lab fee (USD $600/lab), a Technology fee (USD $500), and a Graduation fee of (USD $900 for the first degree and $500 for each additional degree). The University will require official transcripts or validated copies of all college, university, postgraduate courses and undergraduate studies, if not previously submitted, within 6 weeks of receiving this acceptance letter so that maximum transfer credit may be computed and authenticated. The transcripts and records should be submitted to the USAT Information Department, PO Box 364363, San Juan, PR 00936-4363. We will then house them in a secure database where permanent academic records are maintained.

We look forward to your matriculation at our University and your progression through the MD program. Once again, congratulations on your acceptance to the University of Science, Arts and Technology.

Kindest Regards,

Orien L. Tulp, Ph.D., M.D., F.A.C.N., C.N.S.
Professor and President
University of Science Arts and Technology
MONTSERRAT
Cc: Dr. Konyk

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

Main Administrative Office:
4288 Youngfield St., Wheat Ridge, CO 80033
Tel: (303) 371-0252  Fax: (303) 317-0117
Puerto Rico:
PO Box 364363. San Juan PR 00936
Tel: (787) 300-2111  Fax: (787) 300-2049
www.usat.edu

## Puerto Rico Student Fee Schedule

The following information is in regards to all fees pertaining to the USAT MD programs:

```
One-Time Application--------------------------------------- $125.00**
One-Time Matriculation------------------------------------- $600.00**
Medical Student Malpractice Insurance--------------------- $995.00**
Tuition per Semester--------------------------------------- $5,490.00
Laboratory Fee--------------------------------------------- $2,000.00
Technology Fee--------------------------------------------- $1,450.00
Clinical Fee----------------------------------------------- $3,200.00
Graduation Fee--------------------------------------------- $900.00
```

*(The first three on the list must be paid in order to receive an ID Badge from the University)*

The Government Matriculation fee of $600.00 must be paid before a student can begin the program and receive educational credits or attend anatomy labs.

<u>ALL STUDENT ACCOUNT BALANCES MUST BE PAID IN FULL BEFORE GRADUATION COMMENCEMENT</u>

After graduation, all students with a zero balance due will receive two (2) sets of their University transcripts at no charge. No degrees or transcripts will be released if there is still a balance due. After the initial sets of transcripts, the student will be charged $25.00 per set. Transcript fees must be paid before the transcripts are sent with no exceptions.

**\*\*If you are planning to transfer and immediately begin clinical rotations these fees must be paid in full before you will be allowed to begin your clinical rotations.\*\***

Please retain a copy of this schedule for your reference.

*Printed Name:* _____    *Date:* _____

*Signature:* _____

*The University of Science, Arts & Technology does not to discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability, or religion in its programs, activities, or employment practices.*

# USAT MONTSERRAT

## UNIVERSITY OF SCIENCE ARTS AND TECHNOLOGY, MONTSERRAT

## OLVESTON CAMPUS, FLORIDA and COLORADO; MD TRANSITION PROGRAM

### Enrollment Agreement and Academic Regulations for the Students of University of Science, Arts and Technology, Montserrat

**Regulations approved by the Governing Body on: 01 November 2010. Updated on 25 July 2014.**

#### Mission Statement

The University of Science, Arts and Technology, Montserrat is dedicated to the advancement of the learning, knowledge and understanding of medicine, science and fine arts. To help establish the highest standards in private education and prepare our students for the challenges they'll face in this increasingly complicated world.

#### Equal Opportunities Statement

The University's Equal Opportunities statement makes clear the University's commitment to equality of opportunity in all its activities and is consistent with the aims that its Race Equality policy makes clear. The University's Equal Opportunities statement is as follows:

University of Science, Arts and Technology, Montserrat is committed in all its activities to promoting and developing equality of opportunity in all areas of its work. In order to achieve this aim, the University seeks to:

make every effort to ensure that applicants, prospective and current students, and members of faculty and staff are valued on the basis of their merits, abilities and potential without discrimination on grounds of age, sex, disability, race, color, nationality, ethnic origin, social and economic status, religious belief, sexual orientation, marital status or other distinction;

work to foster good relationships between individuals from different groups;

observe and develop the diversity of skills and talents within its student body, current faculty and staff;

build an environment based on trust and mutual respect;

undertake a plan of action to make and enforce equality procedures;

regularly monitor the effectiveness of equal opportunity policies;

communicate to students, faculty, staff and others the support of equal opportunities within University policies.

**Academic Regulations**
**General Academic Regulations**
**Conduct of Students in all Programs**
**University Policies**
**Policies for Student Clinical Training**

Equal Opportunity in Education

All students must submit application and supporting documents along with the required fees in order to be considered for acceptance. Upon issuance of the letter of acceptance, students are required to attend orientation for new students and agree to adhere to the Academic Regulations of the University.

Registration and matriculation of students takes place at orientation. Students must read and understand Academic Regulations of the University. The University will document reception of the regulations by requiring the student's signature of such reception and keeping the same on file. No student shall be permitted to attend classes until properly registered.

All students are expected to adhere to the University's attendance policy as follows:
University of Science, Arts and Technology, Montserrat requires an attendance in all programs of 80%. All students are expected to arrive on time to all classes and examinations. Lateness may also accrue to represent possible absence at the discretion of the instructor.

Daily attendance lists will be used to track attendance. These lists shall be monitored on a monthly basis and held on file in the Administration Office and made available for inspection as necessary.

Initials: _____                                                                 1

Students in violation of the attendance policy shall be required to appear for the following disciplinary procedures:

1. Student shall be verbally counseled by the instructor to determine the reasons for non-attendance, lateness, etc.
2. Student shall be given a written counseling if the situation does not resolve after verbal counsel.
3. Student shall be given an academic suspension notice if the situation is still unresolved after a verbal and a written counseling.
4. Student shall be required to withdraw from the program and no longer permitted to sit examinations as a final resort after all of the former procedures have been implemented without resolution.

**International Students**

Students from other Nations will be given the appropriate documentation to prepare application for student visas. Once the necessary visa is obtained, the student will be instructed on travel and arrival arrangements into Montserrat.

Any student who has been accepted to the University is required to register and matriculate into their program no later than two weeks after their arrival is confirmed. In the event of non-arrival, the student's next of kin shall be contacted to verify the student's whereabouts. If it is determined that the student is not planning to attend the University after being given documentation to join the program the student will be issued a letter of non-acceptance and the proper authority shall he alerted to the potential fraudulent activity.

Under the authority of the Government of Montserrat, the Honorable Premier has granted The University of Science, Arts and Technology, Montserrat the authority for its constituent Colleges to award first and higher degrees. The following regulations have been made in accordance with those provisions.

(These Regulations apply to all students of the University irrespective of their program of study.)

Have completed to the satisfaction of the relevant teaching staff the program of study prescribed in the regulations for the award for which the student is registered;

Have successfully completed all parts of the examination prescribed for the award and shown a competent knowledge in the examination as a whole;

Where a degree is classified, have shown evidence of sufficient work at or above the pass mark for all classes awarded.

b. A student who has not made satisfactory arrangements to settle, in accordance with the relevant Regulations, all outstanding debts or other financial obligations to the College, or to any central body of the University of Science, Arts and Technology, Montserrat will not be:

1.)    Informed of the results of any examination taken;
2.)    Awarded any degree or other qualification, to include official transcripts.

**D. Withdrawal from examinations**

1.)    A student who is registered for an award, has completed satisfactorily the prescribed period of study and any other conditions as given in Regulation D above, will be regarded as eligible for admission to the relevant examination of examinations unless he/she provides satisfactory evidence of illness or other good cause to the Dean of the relevant program not less than seven days before the date of the examination as published by the College, which the student is expected to sit at the discretion of the Dean of the relevant program. The student maybe permitted to be examined as if for the first time normally at the next occasion when the examination is offered. The passing grade for all examinations shall be 70% or a letter grade of "C."

2.)    A student who is eligible to sit an examination and who is absent from that examination without having been permitted to withdraw according to the provisions of Regulation above, will be regarded as having attempted the examination, and will be awarded a mark of zero for that examination. Such a student may be permitted to attempt the examination again if the regulations for the award permit such reassessment and at the discretion of the relevant Dean.

3.)    At the discretion of the Chairman or the relevant Dean, a student who is eligible to sit an examination who is absent from that examination without having been granted permission to withdraw according to the provisions of Regulation above, or a student who is present at the examination but unable to complete the examination, nay submit, evidence of illness or other good cause which affected his/her ability to sit the examination at the required time and which he/she was unable, for reasons found acceptable to the Dean of Academic Affairs, to present in advance of the examination.

4.)    Schools may define circumstances in which a student may continue to attend a course or other element of a program of study after having been permitted to withdraw from the examination-for that course or program element.

5.)    The Dean of Academic Affairs of the relevant College will advise the Head of School in cases where a student who is permitted to be examined as if for the first time after having been permitted to withdraw from the examination (or the second/third time if the examination in question is itself a second/third attempt) is not considered to be eligible to sit the examination without further attendance on the program of study.

**E. Reassessment/failure**

A student who fails an examination at the first attempt may be permitted, at the discretion of the relevant Dean, to attempt the examination again on not more than two occasions. Any conditions regarding reassessment will be specified before the examination and the examination must be taken at the next occasion when the examination is offered. When such reassessment requires further attendance, the Dean of the relevant College will advise the appropriate Head of School.

**F. Illness**

Special provision for illness'of other good cause is given in individual program regulations, including provisions for undergraduate programs based on course units. Where illness has affected a student's ability to sit the examination, see Regulation D above.

**G. Methods & Timing of Assessment**

The timing of examination shall be specified in individual program regulations; however, the timing on examination held for the purpose of reassessment may be determined by the relevant Dean of Academic Affairs.

Assessment methods may include the following:

Written examinations;

Practical examinations;

Initials: _____                                                                    2

Essays and/or reports;
Dissertations;
Written accounts of laboratory experiments or of fieldwork;
Multiple-choice questions;
Oral examinations;
Assessment of laboratory, fieldwork or clinical practice or of other aspects of a
candidate's performance during a course.

The venues for formal written examinations will be designated by the College and published in advance of the examination.

Candidates are required to present themselves at the designated venue for the examination(s) for which they are required. Candidates unable to present themselves for examination at the designated venue due to exceptional circumstances may be considered by the Dean of Academic Affairs for the relevant College for alternative arrangements. Requests for alternative venue arrangements should be submitted to the Dean of Students, with the details of the request written, signed and submitted within seven days of the date of the examination.

On application to the Dean of Students special arrangements may be made for students who are timetabled for two examinations which overlap or coincide.

Where a candidate has been granted alternative examination arrangements, the Dean of Students will determine timing of the alternate arrangements. All alternative arrangements will be scheduled for the earliest opportunity following the published examination date and in no case shall a candidate be permitted to sit an examination before the normal scheduled time.

The use of examination answer books or other examination stationery by students for any purpose or any occasion other than participation in a recognized college examination may constitute misconduct under the College regulations and be liable to disciplinary procedures.

**H. Representations concerning decisions of the Board of Examiners**

Except as provided below, no decision of a properly convened and constituted Board of Examiners, acting in accordance with these and any other relevant College regulations may be modified. Representations concerning decisions of Boards of Examiners, which are based solely upon a challenge to the academic judgment embodied in any such decision will not be considered.
A Board of Examiners may, at its discretion, reconsider a decision in the following circumstances:

a) Where a candidate requests such reconsideration and provides adequate evidence which is acceptable to the Board of Examiners that the candidate's examination was adversely affected by illness or other factors which the candidate was unable, or for valid reasons unwilling, to divulge before the Board of Examiners reached its decision;

b) Where there is clear evidence produced by the candidate or any other person of administrative error or that the examination was not conducted in accordance with the Instructions/Regulations.

**I. AWARDS**
1.1        Awards of the University of Science, Arts and Technology, Montserrat conferred by University of Science and Medicine (hereinafter referred to as "the College")
1.2
A) UNDERGRADUATE DEGREES
        Bachelor of Science (BSc)
        Bachelor of Arts (BA)
        Bachelor of Medicine and Bachelor of Surgery (MBBS)
        Bachelor of Dental Surgery (BDS)
B) GRADUATE DEGREES
        Master of Science (MSc)
        Master of Arts (MA)
        Master of Public Health (MPH)
        Doctor of Public health (DPII)
        Medical Doctor (MD)
        Doctor of Dental Medicine and Surgery (DDS)
        Doctor of Philosophy (PhD)
C) OTHER
        The Faculty and Board of Directors of the University may establish other-related degrees and diplomas.

Initials: _____                                                                    3

II. **General Regulations for Examinations**
### A. General

A student taking an examination leading to an award conferred by the College either under its own authority or that delegated to it to confer awards of the University of Science, Arts and Technology, Montserrat, whether at a first or subsequent attempt, shall be examined in accordance with such regulations as are current when the student enrolls.

### B. Admission to Examinations

a. Annual enrollment for a program of study and its constituent courses includes registration for the relevant examinations.

b. In order to be eligible for admission to an examination, a student must complete to the satisfaction of teaching staff the prescribed period of study and satisfy any other conditions which may be prescribed by the College in the Regulations or otherwise, including making full payment of College fees or other charges and settling all outstanding financial obligations including confirming at the specified time to the School where the student is registered the details of the examination or exanimations which he/she expects to sit. The passing score for all examinations shall be 70% or the letter grade of "C."

c. The use of examination answer books or other examination stationery by students for any purpose or any occasion other than participation in a recognized college examination may constitute misconduct under the College regulations and be liable to disciplinary procedures.

All students must adhere to the following USAT University Policies while enrolled in all programs:

**Behavioral Policies:** *Alcoholic Beverages, Narcotics, and Drugs* USAT does not permit the use, possession, or serving of alcoholic beverages, narcotics, or drugs in or around any college building/property or at any college sponsored event held off campus. This policy applies to all social functions or events that are held in or around college buildings. Any student or group of students who are under the influence of intoxicants and fail to conduct themselves in a reasonable manner by violating recognized standards of conduct are subject to disciplinary action and/or dismissal from the school. *Campus Disruptions and Violence* Any act of violence or intimidation, any seizing of any portion of property, or any unauthorized activity which prevents the normal operation of the college in any way by any individual or group will be considered in direct opposition to the necessary operation of the college. Action will be taken immediately, including the probability of expulsion, regardless of the number involved. Similar action will be taken against those who advocate such described activities.

**Discipline Appeal:** USAT will establish a committee composed of students, faculty, and staff to deliberate student discipline appeals. The entire appeal process is focused on fairness and "due process" for students. NOTE: All discipline appeals must be formally submitted to the College no later than 10 working days after the discipline has been imposed.

**Firearms and Fireworks:** Possession of firearms on the college campus at any time will result in immediate dismissal from the college and/or expulsion from the campus. Law enforcement officers may have firearms in their possession while on campus. Students or visitors arriving on campus with firearms in their possession must check them in at Campus Security and may pick them up when leaving campus. Campus Security must approve any exception. Possession and use of fireworks on the college campus is prohibited. Occupants of off-campus housing are subject to city, county, and state ordinances governing the use of firearms and fireworks.

**Gambling:** Gambling of all sorts is prohibited on campus. The privilege of playing card games is given on the assumption that no gambling takes place. However, if gambling does take place and is detected, this privilege will be unconditionally withdrawn.

**Harassment:** USAT is committed to maintaining a working and educational environment, which fosters appropriate and respectful conduct and communication between all persons within the college community. Conduct that is deemed inappropriate, offensive, or disrespectful toward others will not be tolerated and may be cause for suspension or expulsion from the program.

**Honesty:** Students are expected to be honest in all aspects of their college education. All work is evaluated on the assumption that the work presented is the student's own. Anything less is unacceptable. Students are subject to disciplinary action at the teacher's discretion. For student appeal, refer to Discipline Appeal. Examples of dishonest practice include but are not limited to: *Cheating* - The improper use of books, notes, other students' tests, or other aids during an examination. It is the responsibility of the student to obtain approval for the use of such aids prior to the time of the examination; otherwise, they will be considered improper. An "examination" is defined as "any testing situation in which the score will be used for credit in a course." *Plagiarism* - Submission or presentation of a student assignment as one's own in which substantial portions are paraphrased without documentation or are identical to published or unpublished material from another source (including another student's work). An assignment is defined as "any materials submitted or presented by a student for credit in a course."

**Initiations and/or Hazing:** The College does not approve of any form of hazing. Hazing is defined as any action taken or situation created intentionally to provide mental or physical discomfort or in any way to degrade the dignity of the individual student.

**Mandatory Behavioral or Medical Withdrawal:** It is the responsibility of the College to order a medical examination or behavioral evaluation if the director has reason to believe that a student has a serious medical or behavioral disability that substantially threatens or interferes with the welfare of the student, other members of the college community, or the educational process of the college. The director shall notify the student and appropriate agency (counselor, medical consultant, etc.) that such an evaluation is to be conducted. Any member of the Student Services division may initiate this process for students who are under his/her care or counseling. In this case, the student must be notified and the request submitted to the College. The student will have 24 hours before beginning the evaluation process. When appropriate, parents, guardians, or spouses will be notified of the process for the protection of the student. If the student refuses to consult with the evaluating agency, the College will, if practical, seek the help of the student's family in persuading the student to undergo the evaluation. If unsuccessful, the College will summarize the steps taken to secure the needed information and the reasons for withdrawal and then begin the withdrawal process. A copy of this order will be sent to the student. *Evaluation Conference* - The student will be provided written notice of a time and place at which the student,

Initials: _____                                                                                          4

the evaluating agency, and the College will confer on the final determination for mandatory withdrawal. The student has the option to have representation at this meeting, such as his/her own doctor, counselor, parents, or spouse. The director will refer to recommendations, reports, and evaluations as they relate to the case being considered.

**Power of Contract**: If it is determined that mandatory withdrawal is not appropriate, the College in consultation with other appropriate college personnel, doctor, or other resource person's) will provide a contract outlining the terms by which the student may remain enrolled at USAT. All parties involved will sign this document, including the student. If the terms of the contract are followed, the student may continue the educational process at USAT. If the terms are not followed, the College may then process the mandatory withdrawal. *Appeal* - As with other college policies, the student may appeal mandatory withdrawal through the Information Office and may have the evaluation process reopened.

**Policies for Student Clinical Training:**
1. Students must complete a total of 80 weeks of clinical training as follows: 50 weeks of core required specialties and 30 weeks of elective specialties.
2. For each week to be valid, a minimum of 12 hours per week must be documented and certified by each physician preceptor.
3. All students are required to have one Clinical Evaluation form completed and signed for each specialty in order to be given credit.
4. Any fees requested by the clinical sites related to the training shall be paid by the student directly to the designated representative of the clinical site.
5. Students shall be given a USAT Student ID Badge ONLY after paying the application, matriculation and the professional liability insurance policy fees.

**Issuance of Transcripts:**
**USAT retains the right to withhold student transcripts if the student defaults on his or her financial obligations to USAT.**

**Finality** - Decisions made by the College are final.

**Refund Policy: A pro-rated refund policy applies to all tuition payments and fees, with the exception of the application fee and the matriculation fee which are NON-Refundable. If credit card payments are refunded, a 3% processing fee may be charged to the student or applicant.**

**Smoking/Use of Tobacco:** Smoking is prohibited inside all college buildings.

**Soliciting:** any student, solicitor, agent, or salesperson operating in his/her own interests and for purposes not directly connected with college interests is not permitted to advertise on campus or participate in any college function without approval.

**Student Health Insurance:** The College does not provide health insurance for students. While it is not mandatory for students to have health insurance, it is strongly advised.

**I hereby understand and agree to the foregoing regulations and policies stated in this enrollment agreement and I acknowledge reading them and receiving a copy.**

*Student*
*Signature:* _____

*Printed Name:* _____
*Date:* _____

Initials: _____                                                                                      5

**Attendance Policies**

The University assumes that all its students have committed themselves to a rigorous and demanding graduate-level training program, and have made and will continue to make the arrangements necessary to ensure that personal, familiar, occupational and other outside obligations do not interfere with the pursuit of their studies.

Attendance at lectures and laboratory exercises is mandatory unless reasonable excused (e.g. illness) or by previous authorization of the professor in charge of the course. Each department will decide the relative weight to be given to the attendance in calculating the final grade. Some official activities might be considered didactical activity and apply the attendance policy.

Attendance to clinical activities involving patients, patient models, and similar types of activities is considered part of the students' professional responsibility and is mandatory. Absence will be excused after the student consults with the respective department chairperson. Three unexcused absences will adversely affect the final grade for a course.

Incomplete work due to illness or other serious circumstances during the course will be handled according to departmental policies, which must be provided to the students in writing at the beginning of each term. Faculty are not obligated to repeat lecture/laboratory topics that were presented at scheduled times and dates.

Administrative Withdrawal The student that is not enrolled after the first week of classes, at the beginning of the academic period, and does not have a leave or approved permission to be absent will be considered for administrative withdrawal and the institution might initiate the corresponding action.

**Attendance Requirement**

Students must attend 80% of the hours scheduled for each lecture course, as delineated on the timetable for the semester in that the course is offered, to receive course credit. If a student fails to achieve 80% attendance, they will receive an "F" or "I" (Incomplete) for the course. Please note, students who arrive after class has begun or leave before class is dismissed will receive a 1/2 session absence on their attendance record. Therefore, leaving early/arriving tardy twice is equivalent to one absence.

Failure of the student to return on the specified termination date of the leave of absence he/she will have lost the enrollment status, and the "Six Months Grace Period" would have begun retroactively from the first day of the leave of absence. Subsequently the student will be automatically withdrawn from the University. Should such a student later decide to return to the institution, they may be required to apply for re-admissions.

# *University of Science Arts & Technology*

*4288 Youngfield St.*
*Wheat Ridge, CO 80033*
*303.371.0252*
*www.usat.edu*

## Application Checklist:

- Apply online at  https://usat.maestrosis.com/FECreateAccount.aspx

- Background Check

- Resume

- Letter of recommendation #1

- Letter of recommendation #2

- Enrollment Agreement

- Fee schedule

- Official Transcripts from previous schools (can accept unofficial for acceptance review but we will need officials within the first 6 weeks after starting the program)

   **Please note that without all the items above submitted applications will not be reviewed for acceptance**

Our prestigious, accredited U.S.A.T. was established and licensed in September 2003 by the Government of Montserrat, a British Overseas Territory and became International Medical Education Directory (IMED) listed the same year. We Are now the fastest growing School in the Caribbean Community (CARICOM), and possess the largest Healthcare Professinoal (HCP) to Medical Doctor (MD) bridge program. We are listed by the Educational Commission for Foreign Medical Graduates (ECFMG) in the top 100 MD schools worldwide in 2013. We are located on the beautiful, friendly, and unspoiled Island of Montserrat, in the heart of the Caribbean.

Our educational philosophy is founded on well-established traditional, and "time proven", academia pursuits. Each carefully designed course is taught by experienced Professors and Clinicians, having long standing academic and professional expertise.

USAT was established and licensed in September 2003 by the Government of Montserrat, a British Overseas Territory and became IMED listed the same year. We Are now the fastest growing School in the Caricom, and possess the largest HCP to MD bridge program. We are listed by the ECFMG in the top 100 MD schools worldwide in 2013.





## Contact Details and Admissions:

Dr. Manuel Jose Ortiz Bustillo

Dean of Clinical Sciences

And Student Affairs

Puerto Rico Information Office:

University of Science, Arts

& Technology,

College of Medicine

P.O. Box 364363

San Juan, PR 00936-4363

Telephone:

787-450-5845

787-679-1583

Email:

manuel.ortizbustillo@Usat.edu

University of Science, Arts

& Technology,

College of Medicine

---

# Start, Continue or Finish Your Professional Journey at U.S.A.T.!







## Application Checklist

- Apply online at:

https://usat.maestrosis.com/FECreateAccount.aspx

- Background Check

- Resume

- Letter of Recommendation #1 and #2

- Enrollment Agreement

- Fee Schedule

- Official Transcripts from previous schools (can accept unofficial for acceptance review bet we will need officials within the first 6 weeks after starting the program)

***Please note that without all the items above submitted applications will not be reviewed for acceptance.



## MD Program Curriculum

**Semester I** 20 Credits : Includes Gross Anatomy lecture, Functional Anatomy Lab, Medical Embryology, Histology, Introduction to Human Nutrition, Medical Physics, and Free Elective.

**Semester II** min 20 Credits: Includes Medical Physiology I, Medical Biochemistry I, Intro Cell Biology, Medical Imaging I, Neurosciences, Medical Biostatistics for the USMLE, and free elective.

**Semester III** min 20 Credits : Includes Advanced Physiology & Pathophysiology, Microbiology I, II, Pharmacology.

**Semester IV** min 18 credits : Includes additional modules in microbiology & Infectious Diseases, Pathology & Pathophysiology, Pharmacology II and III, Medical Ethics, Physical Diagnosis, Basic Cardiac Life Support [BCLS], and free electives as desired.

**Semester V** min 12 credits : Includes Introduction to Clinical Medicine, Advanced Cardiac Life Support, Epidemiology, Public Health & Preventive Medicine, Toxicology & Medical Practice, and free electives as desired.

**Semester VI** min 12 credits : Intensive Basic Sciences Preparatory Course.

**Core Clinical Specialties** : 50 weeks in duration, may be completed in any sequence. The designated specialty or substantial equivalent, and may be completed in any hospital or clinical environment approved by USAT.
General Medicine / Family Medicine, minimum 4 weeks.
Internal Medicine, minimum 12 weeks.
General Surgery, minimum 12 weeks.
Emergency Medicine or Urgent Care, minimum 4 weeks.
Obstetrics & Gynecology, minimum 6 weeks.
Pediatrics, minimum 6 weeks.
General Psychiatry, minimum 6 weeks.

**Elective Clinical Specialties**: 30 weeks minimum.
Note: Clinical Electives may be completed in virtually any area of medicine as practiced by physicians [MD or DO] physicians.
Recommended Clinical Electives: [recommended 2 to 4 weeks each, minimum 30 weeks total
Dermatology, 4 weeks
Cardiology, 4 weeks
Radiology, 2 to 4 weeks
Orthopedics, 2 to 4 weeks
Ophthalmology, ENT, 2 to 4 weeks

Free Electives, any additional clinical specialties including but not limited to Pathology, Hematology & Oncology, Rheumatology, Tropical Medicine, Physical Medicine, Acupuncture & Pain Management, Clinical Nutrition, Allergy & Infectious Diseases, Integrative Medicine, Plastic & Reconstructive Surgery.



## Our Accreditations

Accreditation Service for
International Schools, Colleges
and Universities (ASIC)

USAT is included in the
International Medical Education
Directory (IMED)

The Foundation for Advancement
of International Medical
Education and Research
(FAIMER - IMED)

Educational Commission for
Foreign Medical Graduates
(ECFMG)



## Examinations
## Rankings

Graduates are qualified to
Do the application for the
USA Medical
Licensing Examination



University
of



## Join Our Family

Ave. Barbosa, San Juan, PR

(787) 450-5845/ (787) 679-1583

www.US/    edu

# College of Medicine

# Puerto Rico



# Our Standards

We believe in the pursuit of excellence in education, research, patient care, community service with integrity, ethical behavior and respect for everyone. We value humanism and compassion for all people without distinction of age, race, sex, national origin, belief, or ethnicity. We are committed to working cooperatively and collaboratively with our students, teachers, staff, and community who make invaluable contributions to our institution and the development of our mission and vision every single day of their lives

## Start, Continue or Finish Your Professional Journey at U.S.A.T !

For people of which all students study programs presented in a humanistic manner that enhances high standards of excellence and professionalism. We believe these attributes are necessary to train the "Leaders of Tomorrow".

### Vision

Our educational philosophy is founded on well-established traditional, & "time proven", academia pursuits, Each carefully designed course is taught by experienced Professors and Clinicians, having long standing academic and professional expertise

Our prestigious, accredited U.S.A.T. was established and licensed in September 2003 by the Government of Montserrat, a British Overseas Territory and became International Medical Education Directory (IMED) listed the same year. We Are now the fastest growing School in the Caribbean Community (CARICOM), and possess the largest Healthcare Professional (HCP) to Medical Doctor (MD) **bridge program.**

We are approved by the Educational Commission for Foreign Medical Graduates (ECFMG) in the top 100 MD schools worldwide in 2013. We are located on the beautiful, friendly, and unspoiled Island of Montserrat, in the heart of the Caribbean.

# USAT
## MONTSERRAT



*View from Montserrat*

# UNIVERSITY OF SCIENCE ARTS & TECHNOLOGY, MONTSERRAT
## Olveston Campus

P.O. Box 506, South Mayfield Estate Drive,
Olveston, Montserrat, British West Indies
Tel: 727-388-2687 / Fax:303-399-4106
U.S. Information Office: 4288 Youngfield St. Wheat Ridge, CO 80033
Local Phone: 303-371-0252, Fax 303-371-6967/0117
http://usat.edu
Email: admissions@usat.edu & Admissions2@usat.edu

*Office of the President*

Thank you for your interest in the University of Science, Arts and Technology (USAT), and the programs offered.

We recognize that professionals, like yourself, are interested in pursuing a medical career while still working a traditional schedule and living life. We try to accommodate our students by offering our lectures in four day weekend blocks (Thursday - Sunday), one weekend a month. This allows students to commute to Florida, Texas, or Maryland for the once monthly sessions, and complete the clinical portion of their MD training in hospitals and clinics nearer their home. This is a ladder type blended program (combines progressive distance education and scheduled core lectures) program that builds on your current level of medical education, rather than duplicating it as many other MD programs do. It is also structured such that students may continue employment during their study for the MD degree. Moreover, there are no age restrictions on enrollment or matriculation.

This is a two phase program, conducted in, but not limited to The United States. Phase I is 12 to 15 months of focused lectures and examinations in a seminar, clinic, or hospital setting, and represent the basic medical sciences review part of the program. The curriculum is based on an integrative systems model, and the lectures are supplemented by slide sets are provided to matriculated students. Most lecturers for this program are USA MD-PhD credentialed.

The second [Clinical] Phase consists of 80 weeks of clinical training preferably close to your home, so as to enable you to continue essentially full time employment while studying. Clinical training may be completed in any state and in some foreign countries. The Clinical training phase includes 50 weeks of core specialties and 30 weeks of elective specialties of your selection. All clinical training must be completed in an accredited institution or clinic authorized by the University.  An advanced standing student must attend a minimum of 12.5 hours of mentoring with a clinical mentor in any given week in order for the session(s) to count as a satisfactory week.

We encourage students to complete USMLE Step I within one year of matriculation or as soon thereafter as they can schedule it, so that they will be on track for Step II and residency when that time come. Note that the greatest delays in the USMLE exams are for USMLE Step II CS due to limited seats for that exam, and then getting the results back from the ECFMG in a timely manner. The average Step I test score for HCP to MD students for academic year 2009-10 was 89% and for step II 95% (with a top scores to date of 99% for both steps) for this program, nearly 10 points above the average for graduates of US medical schools and approximately 15 points better than other foreign medical school grads undertaking the same exam.

Our students sit for the same USMLE exams as US students, and are graded on the same standard. In addition, all 2009 graduates have now been offered top notch residency positions for the 2010 academic year in Florida and other states. USAT normally awards two qualifying medical degrees to HCP to MD students: the MBBS (Bachelor of Medicine, Bachelor of Surgery) about 2/3 of the way through the program and the MD upon completion of all didactic and clinical requirements. The intermediate MBBS is intended to enable the student to get a time advantage when applying for residency as it is by itself a qualifying degree for the ECFMG certification. USAT is licensed to award the MBBS, MD, and DO degrees, and students may elect to apply for any one or all three degrees.  All three degrees qualify for registration to sit for the USMLE.

Currently, we are accredited by IMED, ASIC, FAIMER, ECFMG, and USMLE. This means that our students are able to obtain licensure in the U.S., Canada and abroad. You may verify the status of USAT on the IMED/FAIMER web site. Select Caribbean for the region, and then select Montserrat as the country in the Caribbean. You will see USAT listed, thus the graduates can qualify for licensure in the USA and most other nations by virtue of having been listed on the ECFMG register. USAT grads qualify for post graduate training in the USA and other nations. USAT is accredited by the Government of Montserrat and the American Association for Higher Education and Accreditation in the USA. This program qualifies for Veterans Administration Educational Benefits for qualified Veterans or their designate(s) of the US Armed Forces.

Tuition is modest, currently at US $4900/semester for the base tuition for this program. HCPs, including PAs, NPs and DCs must be enrolled for a minimum of 9 semesters in order to satisfy minimal ECFMG criterion for medical licensure. Entry level HCP may require an additional 2 semesters to complete the entire program.

Thanks again for your correspondence. I have enclosed an application for your review.

Orien L Tulp, PhD, MD, FACN, CNS
Professor of Pharmacology and Nutritional Sciences
President, University of Science Arts and Technology

*Located in Beautiful Montserrat, the 'Emerald Isle of the Caribbean'.*
Registered in the USA (FL  N07000011864), & Montserrat (Co Nr 17-2003)  USAT has been  favorably listed by
The International Medical Education Directory (USA:IMED/FAIMER), and others.
*An Equal Opportunity Employer - Excellence and Professionalism in Medical Education  © 2010 USAT*

# USAT
## MONTSERRAT



*View from Montserrat*

# UNIVERSITY OF SCIENCE ARTS & TECHNOLOGY, MONTSERRAT
## Olveston Campus

P.O. Box 506, South Mayfield Estate Drive, Olveston,
Montserrat, British West Indies
Tel: 727-388-2687 Toll Free:  866-596-9577

U.S. Information Office: 4288 Youngfield St. Wheat Ridge, CO 80033
Local Phone: 303-371-0252, Fax: 303-371-6967/0117

http://usat.edu
Email: Last Names A-L admissions@usat.edu
Last Names M-Z admissions2@usat.edu

*Office of the Administrator*

# APPLY ONLINE

**Apply online** at https://usat.maestrosis.com/FECreateAccount.aspx. By applying online you will be able to upload all of your documents and view the status of your application. **Important, your browser pop-up blocker must be disabled for the portal to function properly.**

**Application Notes: You must upload all required documents to the online application** portal including the two recommendation letters, resume/CV, background (records) check, application fee, enrollment agreement, fee schedule agreement, and unofficial transcripts. The only exception is the official transcripts (required within 90 days of admission) which must be sent via mail to USAT by either the institution, or the prospective student may send the official transcripts in the original **unopened and sealed** envelope they obtained from the institution. Mail official transcripts to USAT Admissions Department, 3442 Ash St., Denver, CO 80207. The background/records check may be obtained by your local police or Sheriff's department. Once we receive your **complete** application with all required documents your application will be forwarded to the admissions board. Once it is forwarded you should receive a decision in less than two weeks depending on application volume.

Important, if you were referred by another student you must type their name in the field related to where you heard about USAT. This will ensure they receive the referral credit.

If you have any questions  contact David Huffman at admissions@usat.edu.

# Upload All Required Documents into the Online Application Portal

*Located in Beautiful Montserrat, the 'Emerald Isle of the Caribbean'.*
Registered in the USA (FL  N07000011864), & Montserrat (Co Nr 17-2003)  USAT has been  favorably listed by
The International Medical Education Directory (USA:IMED/FAIMER), and others.
*An Equal Opportunity Employer - Excellence and Professionalism in Medical Education  © 2003-2012 USAT*

# USAT
## MONTSERRAT



*View from Montserrat*

# UNIVERSITY OF SCIENCE ARTS & TECHNOLOGY, MONTSERRAT
## Olveston Campus

P.O. Box 506, South Mayfield Estate Drive, Olveston,
Montserrat, British West Indies
Tel: 727-388-2687, Toll Free: 866-596-9577

U.S. Information Office: 4288 Youngfield St. Wheat Ridge, CO 80033
Local Phone: 303-371-0252, Fax: 303-371-6967/0117

http://usat.edu

*Office of the Director*

# Contacts for USAT:

**Phone: 303-371-0252**

| | | |
|---|---|---|
| **Admissions: David Huffman** | Ext. 103 | admissions@usat.edu |
| **Montserrat Administration: Tracy Scipio** | 727-388-2687 | t.scipio@usat.edu |
| **Student Services: Stephanie Majors** | Ext. 102 | studentservices@usat.edu |
| **Academic Requirements/ECFMG: Dr. Tulp** | | o.tulp@usat.edu |
| **Director/Student Accounts: Carla Konyk** | Ext. 101 | c.konyk@usat.edu |
| **Registrar (A-L): Nadine Cruz** | Ext. 105 | registrar@usat.edu |
| **Registrar (M-Z) & IDs: Mary Hickling** | Ext. 106 | registrar2@usat.edu |
| **Webinars: Karen Baldwin** | Ext. 107 | karen.baldwin@usat.edu |

*While USAT encourages study groups and student interactions, it is the policy of USAT to protect the privacy of both our instructors and our students. We will not provide contact information for the professors, the students or the graduates of the university without their express permission.*

*Located in Beautiful Montserrat, the 'Emerald Isle of the Caribbean'.*
Registered in the USA (FL N07000011864), & Montserrat (Co Nr 17-2003) USAT has been favorably listed by
The International Medical Education Directory (USA:IMED/FAIMER), and others.
*An Equal Opportunity Employer - Excellence and Professionalism in Medical Education © 2010 USAT*

# 2017 University of Science, Arts and Technology LECTURE CONFERENCE SCHEDULE

| 2017 | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa | Su |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JAN | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 T | 13 T | 14 T | 15 T | 16 | 17 | 18 | 19 M | 20 M | 21 M | 22 M |
| | | | | | | | | | | | | | | | | 23 L | 24 L | 25 | 26 D | 27 D | 28 D | 29 D |
| FEB | | | 1 | | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 T | 10 T | 11 T | 12 T | 13 | 14 | 15 | 16 M | 17 M | 18 M | 19 M |
| | | | | | | | | | | | | | | | | 20 L | 21 | 22 | 23 D | 24 D | 25 D | 26 D |
| MAR | | | | 1 | 2 T | 3 T | 4 T | 5 T | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 M | 17 M | 18 M | 19 M |
| | | | | | | | | | | | | | | | | 20 L | 21 L | 22 | 23 D | 24 D | 25 D | 26 D |
| | | | | | | | | | | | | | | | | | | | 27 D | 28 D | 29 D | 30 D |
| APR | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 T | 7 T | 8 T | 9 T | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| | | | | | | | | | | | | | | | | 17 | 18 | 19 | *20 M | *21 M | *22 M | *23 M |
| MAY | 1 | 2 | 3 | 4 T | 5 T | 6 T | 7 T | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | *24 | | | *25 D | *26 D | *27 D | *28 D |
| JUN | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 T | 9 T | 10 T | 11 T | 12 | 13 | 14 | 18 M | 16 M | | 18 M |
| | | | | | | | | | | | | | | | | 19 | 20 | 21 | 22 | 23 D | 24 D | 25 D |
| | | | | | | | | | | | | | | | | 26 | 27 | 28 | 29 | 30 | | |
| JUL | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 T | 7 T | 8 T | 9 T | 10 | 11 | 12 | 13 M | 14 M | 15 M | 16 M |
| | | | | | | | | | | | | | | | | 17 L | 18 L | 19 | 20 D | 21 D | 22 D | 23 D |
| | | | | | | | | | | | | | | | | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| AUG | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 T | 11 T | 12 T | 13 T | 14 | 15 | 16 | 17 M | 18 M | 19 M | 20 M |
| | | | | | | | | | | | | | | | | 21 | 22 | 23 | 24 D | 25 D | 26 D | 27 D |
| | | | | | | | | | | | | | | | | 28 | 29 | 30 | 31 | | | |
| SEP | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 T | 8 T | 9 T | 10 T | 11 | 12 | 13 | 14 M | 15 M | 16 M | 17 M |
| | | | | | | | | | | | | | | | | 18 L | 19 L | 20 | 21 D | 22 D | 23 D | 24 D |
| | | | | | | | | | | | | | | | | 25 | 26 | 27 | 28 | 29 | 30 | |
| OCT | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 T | 13 T | 14 T | 15 T | 16 | 17 | 18 | 19 M | 20 M | 21 M | 22 M |
| | | | | | | | | | | | | | | | | 23 | 24 | 25 | 26 D | 27 D | 28 D | 29 D |
| | | | | | | | | | | | | | | | | 30 | 31 | | | | | |
| NOV | | | | 1 | 2 T | 3 T | 4 T | 5 T | 6 | 7 | 8 | 9 M | 10 M | 11 M | 12 M | 13 L | 14 L | 15 | 16 D | 17 D | 18 D | 19 D |
| | | | | | | | | | | | | | | | | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| | | | | | | | | | | | | | | | | 27 | 28 | 29 | 30 | | | |
| DEC | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 T | 8 T | 9 T | 10 T | 11 | 12 | 13 | 14 M | 15 M | | 17 M |
| | | | | | | | | | | | | | | | | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| | | | | | | | | | | | | | | | | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**MUST SIGN-UP PRIOR FOR ANATOMY LAB**

**TAMPA**

**BALTIMORE/MIAMI**

**DALLAS**

**GRADUATION IN MIAMI**

| | Dallas/Ft Worth Location = D |
|---|---|
| Miami, FL Location = M. The Hilton Garden Miami Airport Hotel West Doral 3550 NW 74th Avenue Miami, FL 33122 Reservation: (305) 629-7701 | Four Points by Sheraton |
| Baltimore, MD Location = M DoubleTree by Hilton Baltimore – BWI Airport 890 Elkridge Landing Rd, Linthicum Heights, MD 21090 | 1580 Point West Blvd Coppell, TX 75019 |
| Reservation: (410) 859-8400 | Reservation: (469) 702-6311 |

*April 20-23 in MIAMI ONLY the lecture will be held at the Homewood Suites next door all four days. Reservations: 305-629-7831*

*May 25-28 in DALLAS ONLY the lecture will be held at the Element: 3350 W. IH 635 Irving, TX 75063 – Reservations (972) 929-9800*

**Class times are: Thursday 1pm to 6pm/ Friday 9am to 6pm/ Saturday 8am to 6pm (testing from 9-10)/ Sunday 8am to 6pm**

USAT
4288 YOUNGFIELD ST.
WHEAT RIDGE, CO 80033
303-371-0252

09/14/2017                    14:46:23
MID: XXXXXXXXXXXX597    TID: XXXXX787

CREDIT CARD

VISA SALE

| | |
|---|---|
| Card # | XXXXXXXXXXXX4408 |
| SEQ #: | 1 |
| Trans #: | 1 |
| Approval Code: | 400257 |
| TRANS ID: | 587257746568280 |
| Entry Method: | Manual |
| Mode: | Online |
| Avs Code: | G |
| Card Code: | M |

SALE AMOUNT          $600.00

X _Lisa Torres Colin Matriculation_

· THANK YOU

MERCHANT COPY

*Lourdes Zayas Torres*
*Tel 847-3221*
*La Vega 85 Calle C*
*Villalba, PR 00766*

25

101-201/215

*Nov. 10. 17*

Date

Pay to the
Order of ———————— USAT ———————— $ 500. 00

— quinientos dólares con 00/100 — Dollars

**BANCO POPULAR**

BANCO POPULAR DE PUERTO RICO
Centro Del Sur Mall
Ponce, Puerto Rico

015

For Tuition (PR) Lisa Torres Colón

⑆021502011⑆ 074⑈025902⑆ 2585

Lourdes Zayas Torres
Tel 847-3221
La Vega 85 Calle C
Villalba, PR 00766

25

101-2

Dec. 28. 17

Date

Pay to the
Order of _____ USAT _____ | $ 500. 00

_ quinientos dólares con 00/100 ___  Dollars

BANCO POPULAR
BANCO POPULAR DE PUERTO RICO
Centro Del Sur Mall
Ponce, Puerto Rico

For Tuition (PR) Lisa Torres Colón

015

⑈021502011⑈ 074⸺02590 ⸺ 2587



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registror*

November 10, 2017

## CERTIFICATION

This is to certify that student *LISA TORRES COLON*, is currently enrolled at the University of Science, Arts and Technology, Puerto Rico Campus. Lisa is a student in good standing in the MD program at our Institution.  I certify that the information of the student is correct to the best of my knowledge.

Please feel free to contact our Administrative office with any questions you may have regarding this student at hilda.capo@usat.edu or by phone at 787-300-2111.

Sincerely,

Hilda M. Capó-Iriarte
Registrar

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*

## Student Loan Final Disclosure

answers@campusdoor.com
Mon 2/26/2018, 5:11 PM
**To:** leiram_1712@hotmail.com <leiram_1712@hotmail.com>



02/26/2018

Lisa M Torres
Urb. La Vega
C-85
Villalba, PR 00766

RE: Application Identification Number 5001867177-01

Dear Lisa M Torres

Congratulations on your education loan approval!

We have created a Final Disclosure which sets forth the final terms of your loan and saved it to your account and, if applicable, your cosigner's account. Please carefully review this disclosure because it sets forth the final terms of your loan. Note that if you or your cosigner, if applicable, requested any reduction in your loan amount, it will be reflected in the Final Disclosure.

Unless you or your cosigner, if applicable, contact us to cancel the loan by the date set forth on the first page of the Final Disclosure, we will disburse your loan funds to your school as set forth below:

| Disbursement Date | Disbursement Amount |
| --- | --- |
| 4/2/2018 | $12,667.00 |
| 8/1/2018 | $12,667.00 |
| 12/3/2018 | $12,666.00 |

If you have any questions regarding this notice, please contact:

SouthEast Bank
1415 Ritner Highway
Carlisle, PA 17013
717-254-2381

We're available to assist you any time Monday through Friday from 8:00 a.m. to 6:00 p.m. ET. For your convenience, you may e-mail us at answers@campusdoor.com. If you e-mail us, be sure to include your telephone number and the best time for us to reach you.

Sincerely,

SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

FDCLB

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*

**EdMed Loan Program**
**Final Disclosure**
*Page 1 of 2*

ACCOUNT NUMBER: 5001867177-01
Date: 02/26/2018

| BORROWER: | COSIGNER: | CREDITOR: |
|---|---|---|
| Lisa M Torres | Lisa I Torres Berrios | SouthEast Bank |
| Urb. La Vega | Alturas Del Alba | 1415 Ritner Hwy |
| C-85 | Calle Cielo 101203 | Carlisle, PA 17013 |
| Villalba, PR 00766 | Villalba, PR 00766 | |

**RIGHT TO CANCEL**

You have a right to cancel this transaction, without penalty, by midnight on 03/06/2018. No funds will be disbursed to you or to your school until after this time. You may cancel by calling 717-254-2381, Monday through Friday from 8:00 a.m. to 6:00 p.m. or by sending a signed letter requesting cancellation, postmarked by midnight on 03/06/2018 and mailed to: SouthEast Bank, 1415 Ritner Highway, Carlisle, PA 17013.

## Loan Rates & Estimated Total Costs

| Total Loan Amount: | Interest Rate: | Finance Charge: | Total of Payments: |
|---|---|---|---|
| **$ 39,045.00** | 8.500% | $ 67,940.80 | **$ 105,940.80** |
| The total amount you are borrowing. | Your current interest rate. | The estimated dollar amount the credit will cost you. | The estimated amount you will have paid when you have made all payments. |

## ITEMIZATION OF AMOUNT FINANCED

| Amount paid to you | $0.00 |
|---|---|
| **Amount paid to others on your behalf:** <br> • University of Science, Arts and Technology | + $38,000.00 |
| Amount Financed (total amount provided) | = $38,000.00 |
| **Initial finance charges (total)** <br> • Orig Fee $1,045.00 | + $1,045.00 |
| Total Loan Amount | = $39,045.00 |

### ABOUT YOUR INTEREST RATE

- **Your rate is variable.** This means that your actual rate varies with the market and could be lower or higher than the rate on this form. The variable rate is based upon the Three-Month LIBOR Index (as published in the Wall Street Journal). For more information on this rate, see Reference Notes.



- Your **Annual Percentage Rate (APR) is 8.516%**. The APR is typically different than the Interest Rate since it considers fees and reflects the cost of your loan as a yearly rate. For more information about the APR, see Reference Notes.

### FEES

- **Origination Fee Charges:** 2.75 %
- **Late charge:** 5.000% of the past due amount or $50.00, whichever is less.
- **Collection and Default Charges:** In the event of a default, the borrower may incur additional collection charges as permitted under applicable law.
- **Returned Check Fee:** $15

## Estimated Repayment Schedule & Terms

| PERIODS | PAYMENTS | | The estimated Total of Payments at the Maximum Rate of interest would be |
|---|---|---|---|
| | (at the fixed interest rate shown) | (at the maximum possible interest rate of 15.930%) | |
| 04/02/2018 - 01/03/2022 <br> Deferment period | No payment required <br> ($ 11,487.53 in interest will accrue during this time) | No payment required <br> (Interest will accrue during this time) | |
| 01/04/2022 - 12/04/2041 <br> 240 monthly payments | $ 441.42 | $ 974.09 | $233,781.60 |

SEE BACK OF PAGE

**EdMed Loan Program Approval Disclosure**

ACCOUNT NUMBER: 5001867177-01
Date: 02/14/2018

| BORROWER: | COSIGNER: | CREDITOR: |
|---|---|---|
| Lisa M Torres | Lisa I Torres Berrios | SouthEast Bank |
| Urb. La Vega | Alturas Del Alba | 1415 Ritner Hwy |
| C-85 | Calle Cielo 101203 | Carlisle, PA |
| Villalba, PR | Villalba, PR | 17013 |
| 00766 | 00766 | |

*Page 1 of 2*

## Loan Rates & Estimated Total Costs

| Total Loan Amount | Interest Rate | Finance Charge | Total of Payments |
|---|---|---|---|
| $ 39,045.00 | 8.438 % | $ 74,000.80 | $ 109,000.80 |
| The total amount you are borrowing. | Your current interest rate. | The estimated dollar amount the credit will cost you. | The estimated amount you will have paid when you have made all payments. |

## ITEMIZATION OF AMOUNT FINANCED

| Amount paid to you | $ 0.00 |
|---|---|
| Amount paid to others on your behalf: • University of Science, Arts and Technology | + $ 38,000.00 |
| Amount financed (total amount provided) | = $ 38,000.00 |
| Initial finance charges (total) • Orig Fee $ 1,045.00 | + $ 1,045.00 |
| Total loan Amount | = $ 39,045.00 |

## ABOUT YOUR INTEREST RATE

- **Your rate is variable.** This means that your actual rate varies with the market and could be lower or higher than the rate on this form. The variable rate is based upon the Three-Month LIBOR Index (as published in the Wall Street Journal). For more information on this rate, see Reference Notes.

- **A 1.00% origination fee will apply. For more reference see reference notes. The maximum rate will be 18.00%**

- Your **Annual Percentage Rate (APR) is 8.438 %**. The APR is typically different than the Interest Rate since it considers fees and reflects the cost of your loan as a yearly rate. For more information about the APR, see Reference Notes.

### FEES

- **Origination Fee Charges:** 2.750 %
- **Late charge:** 5.000% of the past due amount or $50.00, whichever is less.
- **Collection and Default Charges:** In the event of a default, the borrower may incur additional collection charges as permitted under applicable law.
- **Returned Check Fee:** $15

## Estimated Repayment Schedule & Terms

| | Loan Payments | | The estimated Total of Payments at the Maximum Rate of interest would be |
|---|---|---|---|
| **Period** | **At 8.438% Current interest rate and total** | **At 18.000% The maximum interest rate and total** | |
| 02/24/2018 - 01/03/2022 Deferment period | No payment required ($ 12,947.55 in interest will accrue during this time) | No payment required (Interest will accrue during this time) | |
| 01/04/2022 - 12/04/2041 240 monthly payments | $ 454.17 | $ 1,021.30 | $245,112.00 |

SEE BACK OF PAGE

## Important Information Regarding the EdMed Program

Schools <Schools@reliamax.com>
Mon 7/23/2018, 4:13 PM

Hello,
This letter is to inform you that SouthEast Bank is suspending the EdMed Loan Program. All outstanding, scheduled disbursements must be completed by August 15, 2018. We have notified University of Science, Arts and Technology- College of Medicine so that you can work with the financial aid office as appropriate.

You may can elect to forgo some or all of the loan amount by notifying ReliaMax Lending Services, LLC by email or in writing prior to August 15, 2018. Our contact information is noted below.

If you have any questions concerning this notification, please contact us as soon as possible to ensure timely processing.

ReliaMax Lending Services, LLC
P.O. Box 91910
Sioux Falls, SD 57109-1910

customerservice@ReliaMax.com
877.354.2629

CONFIDENTIALITY NOTICE

This email and any attachments or files transmitted with it are confidential and intended solely for the use of the individual to whom it is addressed. If you have received this email in error, please immediately notify the sender by return email or by calling 605-444-4800 and promptly delete this email message from your system or device. If you are not the named addressee or the intended recipient you should not distribute, disseminate, or otherwise copy this email. Any unauthorized review, copy, use, disclosure, or distribution of this email is prohibited. This email contains confidential information and may also be a communication protected by privilege or otherwise protected by law.

## Important Information Regarding the EdMed Program

Schools <Schools@reliamax.com>
Mon 7/23/2018, 4:13 PM

Hello,
This letter is to inform you that SouthEast Bank is suspending the EdMed Loan Program.  All outstanding, scheduled disbursements must be completed by August 15, 2018.  We have notified University of Science, Arts and Technology- College of Medicine  so that you can work with the financial aid office as appropriate.

You may can elect to forgo some or all of the loan amount by notifying ReliaMax Lending Services, LLC by email or in writing prior to August 15, 2018.  Our contact information is noted below.

If you have any questions concerning this notification, please contact us as soon as possible to ensure timely processing.

ReliaMax Lending Services, LLC
P.O. Box 91910
Sioux Falls, SD 57109-1910

customerservice@ReliaMax.com
877.354.2629

CONFIDENTIALITY NOTICE

This email and any attachments or files transmitted with it are confidential and intended solely for the use of the individual to whom it is addressed. If you have received this email in error, please immediately notify the sender by return email or by calling 605-444-4800 and promptly delete this email message from your system or device. If you are not the named addressee or the intended recipient you should not distribute, disseminate, or otherwise copy this email. Any unauthorized review, copy, use, disclosure, or distribution of this email is prohibited. This email contains confidential information and may also be a communication protected by privilege or otherwise protected by law.



**U S A T**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## ~~L~~oan- USAT PR campus

1 message

**Lisa Torres** <lisa.torres@usat.edu>                                     Fri, Jul 27, 2018 at 2:29 PM
To: Carla Konyk - Director/Student Accounts <c.konyk@usat.edu>

Hi, my name is Lisa M. Torres, I am a student at USAT- PR campus. I am writing this to you, because I received an email from the people that gives us the loans and it says that the university has to certify the amount that's left to disburse before August 15,2018. I don't understand much about the email they sent. I know some people that already sent you an email with this problem. Please if you can help me I will appreciated. Here is a copy of the "dates and amount" (I have 2 disbursement dates left) that I am suppose to get the loan.

My phone number is (787) 342-9102, just in case you need it.

Thank You, Lisa

---

📄 **Disbursement dates.pdf**
54K



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## Loan- USAT PR campus

1 message

**Lisa Torres** <lisa.torres@usat.edu>

Mon, Jul 30, 2018 at 12:19 PM

To: Carla Konyk - Director/Student Accounts <c.konyk@usat.edu>

Hi, my name is Lisa M. Torres, I am a student at USAT- PR campus. I am writing this to you, because I received an email from the people that gives us the loans and it says that the university has to certify the amount that's left to disburse before August 15,2018. I don't understand much about the email they sent. I know some people that already sent you an email with this problem. Please if you can help me I will appreciated. Here is a copy of the "dates and amount" (I have 2 disbursement dates left) that I am suppose to get the loan.

My phone number is (787) 342-9102, just in case you need it.


Thank You, Lisa

---

📄 **Disbursement dates.pdf**
54K

## Change in the Terms of your Student Loan

answers@campusdoor.com
Thu 8/2/2018, 12:32 PM
**To:** leiram_1712@hotmail.com <leiram_1712@hotmail.com>
08/02/2018

Lisa M Torres,

You or your school have requested a loan change for application ID: 5001867177-01.

| Disbursement Date | Previous Amount | Current Amount |
|---|---|---|
| 04/02/2018 | $12,667.00 | $12,667.00 |
| 08/15/2018 | $12,667.00 | $12,667.00 |
| 08/15/2018 | $12,666.00 | $12,666.00 |
| **Total Loan Amount** | | $38,000.00 |

This notice is a confirmation that your request has been processed.

Sincerely,
SouthEast Bank

Please note: This message was sent as a service e-mail to facilitate the opening of the new account you requested. Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.

*This transmission may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or in hard copy format.*
*Email is not a secure method of communication because it may be intercepted by third parties. Please do not include any sensitive or private information in your email correspondence directed to CampusDoor.*



**This is Lifelong Learning**

Lisa Torres <lisa.torres@usat.edu>

---

## (no subject)
1 message

**Paola M Prosper Crespo** <paola.prosper1@upr.edu>      Wed, Aug 8, 2018 at 3:01 PM
To: "Dr. Manuel Ortiz Bustillo" <m.ortizbustillo@usat.edu>, Lisa.torres@usat.edu

Buenas tardes Dr. Bustillo. Queríamos solicitar una cita referente al ECFMG ya que lo necesitamos para poder escoger la fecha del USMLE step 1 con tiempo. Tenemos entendido que la Dr. Igartua no se encuentra en las facilidades por lo tanto no sabemos a quien dirigirnos.

Gracias!

Case 3:19-cv-01707-WGY   Document 152-50   Filed 07/27/23   Page 111 of 131


**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

# IMPORTANT INFORMATION FROM ECFMG / ACTION REQUIRED - Update from USAT

2 messages

**Karen Baldwin** <karen.baldwin@usat.edu>
Reply-To: karen.baldwin@usat.edu
Bcc: oldgmail@usat.edu

Fri, Sep 14, 2018 at 2:04 PM

Dear Students,

USAT is aware of the new request for attendance information from ECFMG. We are currently working on gathering more information. Please be patient and wait for us to provide you with more information before moving forward with the requested information. Please do not contact the ECFMG or send any response to them regarding this until you receive information from our administration. Please do not call Dr. Tulp as he is trying to work on this and will have us send out more information when he has answers.

Thank you so much,

USAT Administration
University of Science Arts & Technology
karen.baldwin@usat.edu
303.371.0252

---

**Karen Baldwin** <karen.baldwin@usat.edu>
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Sat, Sep 15, 2018 at 1:26 PM

Dear Students,

Please see this message from Dr. Tulp:

The ECFMG has just introduced a new format to determine student attendance of International students during completion of basic sciences. We are awaiting clarification from the ECFMG on how best to complete the form, what they are seeking to learn, and how to address the volcanic eruption item that permits off campus activities, which is covered in our Montserrat license. ( and has no cut-off date.) Please wait for us to obtain the necessary information from the ECFMG as to how to proceed. Note: we have until Nov 1st 2018 to resolve the issue.

We also noted that effective today, all USMLE applications must now be processed through web.notary rather than through USAT or any other medical school as in the past. They have increased the certification fee for new ECFMG applicants to $125 effective yesterday to accommodate the costs of the web.notary service. The fee for the examinations remains at the previous level of $910 each for Step I and Step 2 CK, and is expected to increase slightly to an undetermined amount on or about Jan 1st, 2019.

So in response to the new ECFMG regulations, just please be patient until we get clarification from the ECFMG, probably early next week. We will notify everyone when we get the clarification.

Kindest Regards,

Orien L Tulp, PhD, MD, FACN, CNS
Professor, USAT Montserrat
Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*

[Quoted text hidden]



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

---

## ECFMG - USAT update

2 messages

---

**USAT Lectures** <lectures@usat.edu>          Tue, Sep 18, 2018 at 5:04 PM
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Please see the message below from Dr. Tulp.

Dear Students,

USAT thanks you in advance for your patience in this matter. We are currently still researching the request from the ECFMG in regards to the affidavit. We are consulting experts in this area in order to move forward in helping you to complete the affidavit. Please trust that we are only taking this extra time because we have your best interests in mind. Please try to refrain from contacting Dr. Tulp as he is working diligently on this and is taken away from doing so by the numerous calls, emails and texts he is receiving.

It is our goal to provide you with updated information by the end of the week.

Thank you again,

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*

---

**USAT Lectures** <lectures@usat.edu>          Fri, Sep 21, 2018 at 6:11 PM
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Dear Students,

Please see the updated information in regards ECFMG from Dr. Tulp below.

Dear Students,

ECFMG is questioning our delivery of the basic sciences because some students didn't attend on Montserrat due to past volcanic activity on Montserrat. As you may know, there is a provision in the USAT license that does not require students to be on Island because of natural disasters like the volcano for safety reasons. Accordingly, many USAT lectures are delivered via a live, interactive webinar platform, a widely accepted blended instructional format which we have been using for many years without incident or comment from the ECFMG.

We will now begin offering the Basic Science portion of our program at our campus on Montserrat as early as October 1, 2018 and at our new British Virgin Islands campus as soon as January, 2019. Our University counsel will be in discussion with the ECFMG next week to allow current students and graduates to continue to take the Step Exams and proceed into the 2019 match.

It is strongly advised that you don't return the affidavit forms at this time because this situation is a gray area that still needs to be explored before we submit anything.

Thank you for your patience during this challenging time.

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*

---



## ᴇXÁMEN DE REVÁLIDA MÉDICOS EN PR

1 message

**Info Puerto Rico** <infopr@usat.edu>      Thu, Sep 20, 2018 at 2:28 PM
To: Adriana Hernandez <adriana.hernandez@usat.edu>, Ambar Perez <ambar.perez@usat.edu>, Andrae Echevarria <andrae.echevarria@usat.edu>, Angel Casillas <angel.casillas@usat.edu>, Angel Negron <angel.negron@usat.edu>, Angel Ortiz <angel.ortiz@usat.edu>, Anibal Pagan <anibal.pagan@usat.edu>, Ashley Ann Gordils <ashley.gordils@usat.edu>, Berenice Colon <berenice.colon@usat.edu>, Betzy Santiago <betzy.m.santiago@usat.edu>, Carlos Negron <carlos.negron@usat.edu>, Carlos Rivera <carlos.rivera@usat.edu>, Carlos Rodriguez <carlos.rodriguez@usat.edu>, Carola Bermúdez <carola.bermudez@usat.edu>, Cesar Roman <cesar.roman@usat.edu>, Chanelle Silva <chanelle.silva@usat.edu>, Christian Diaz <christian.diaz@usat.edu>, Christian Orama <christian.orama@usat.edu>, Cristina Vazquez <cristina.vazquez@usat.edu>, Christopher Robles <chris.robles@usat.edu>, Conchita Jacobo Oyola <conchita.jacobo@usat.edu>, Dagmary Groennou <dagmary.groennou@usat.edu>, Daniel Bernier <daniel.bernier@usat.edu>, David Febo <david.febo@usat.edu>, David Pagán Maldonado <david.pagan@usat.edu>, David Perez <david.perez.agosto@usat.edu>, Dayna Sorrentini Carlo <dayna.sorrentini@usat.edu>, Dempsey Garcia <dempsey.garcia@usat.edu>, Dianelisse Butler <dianelisse.butler@usat.edu>, Dorimar Nazario <dorimar.nazario@usat.edu>, Edmarie Vazquez <edmarie.vazquez@usat.edu>, Edwin Aponte <edwin.aponte@usat.edu>, Eliz Fuentes Perez <eliz.fuentesperez@usat.edu>, Elrick Cabrera <elrick.cabrera@usat.edu>, Elsa Santiago <elsa.santiago@usat.edu>, "Enny M. De Jesús Ureña" <enny.dejesus@usat.edu>, Erick Lopez <erick.lopez@usat.edu>, Esteban Caraballo Santos <esteban.caraballo@usat.edu>, Fernan E Munoz <fernan.munoz@usat.edu>, "Fernando A. Pena" <fernando.pena@usat.edu>, Franchel Cruz <franchel.cruz@usat.edu>, Francheska Pabón <francheska.pabon@usat.edu>, Gabriel Guzman <gabriel.guzman@usat.edu>, Gabriel Plaud <gabriel.plaud@usat.edu>, Gabriela Santiago <gabriela.santiago@usat.edu>, Genaro Marcial <g.marcial@usat.edu>, Georgianna Asencio <georgianna.asencio@usat.edu>, Giselle Perez <giselle.perez@usat.edu>, Heidi Rosas <heidi.rosas@usat.edu>, Hillary Manso <hillary.manso@usat.edu>, Hiroshi Rivera <hiroshi.rivera@usat.edu>, Ileana Calderon <ileana.calderon@usat.edu>, Israel Ferrer <israel.ferrer@usat.edu>, Ivanette Caraballo <ivanette.caraballo@usat.edu>, Izamar Martes <izamar.martes@usat.edu>, Jaime Arroyave <jaime.arroyave@usat.edu>, Janeira Quintana <janeira.quintana@usat.edu>, Javier Camacho <javier.camacho@usat.edu>, Jeanette Vazquez <jeanette.vazquez@usat.edu>, Jessica Chang <jessica.chang@usat.edu>, Jesus Rosado <jesus.rosado@usat.edu>, Jimnellys Diaz <jimnellys.diaz@usat.edu>, Joffre Gomez <joffre.gomez@usat.edu>, John Galarza Crespo <john.galarzacrespo@usat.edu>, John Pablos <john.pablos@usat.edu>, Jonathan Rivera Crespo <jonathan.riveracrespo@usat.edu>, Johnathan Serrano <jonathan.serrano@usat.edu>, Jorge Ernesto Condi Escala <jorge.condiescala@usat.edu>, Jorge Luis Sanchez <jorge.sanchez@usat.edu>, Jose De Leon <jose.deleon@usat.edu>, Jose Diaz <jose.diaz@usat.edu>, "Jose E. Almonte" <jose.almonte@usat.edu>, "Jose E. Blasco Jusino" <jose.blasco@usat.edu>, Jose Marin <jose.marin@usat.edu>, Jose Nigaglioni <jose.nigaglioni@usat.edu>, José Pérez <jose.perez@usat.edu>, Jose Santiago <jose.santiago@usat.edu>, Josean Sepulveda <josean.sepulveda@usat.edu>, Joselyn Rodriguez <joselyn.rodriguez@usat.edu>, Jossan Gomez <jossan.gomez@usat.edu>, Juliana Belen <juliana.belen@usat.edu>, Keishla Ocasio <keishla.ocasio@usat.edu>, Kenny Nieves <kenny.nieves@usat.edu>, Keyshla Cruz <keyshla.cruz@usat.edu>, Keyshla Santana <keyshla.santana@usat.edu>, Kimberly Martinez <kimberly.martinez@usat.edu>, Leenethsy Crespo <lee.crespo@usat.edu>, "Leishla Y. Vazquez" <Leishla.vazquez@usat.edu>, Lenianne Ramírez <lenianne.ramirez@usat.edu>, Liani Chiclana <liani.chiclana@usat.edu>, Lidmarie Rodriguez <lidmarie.rodriguez@usat.edu>, Lilianet Gonzalez <lilianet.gonzalez@usat.edu>, Lilybeth Figueroa <lilybeth.figueroa@usat.edu>, Lisa Irizarry <lisa.irizarry@usat.edu>, Lisa Torres <lisa.torres@usat.edu>, Loraima Rosado <loraima.rosado@usat.edu>, Loraine Bueno <loraine.bueno@usat.edu>, Lorena Valentin <lorena.valentin@usat.edu>, Lucero Rodriguez <lucero.rodriguez@usat.edu>, Luis Almodovar <luis.almodovar@usat.edu>, Luis Cuebas <luis.cuebas@usat.edu>, "Luis G. De Jesús III" <luis.dejesus@usat.edu>, Luis Perez <perez.marquez@usat.edu>, Manuel Acosta <manuel.acosta@usat.edu>, Mara Perez <mara.perez@usat.edu>, Marcos Collazo <marcos.collazo@usat.edu>, "Maria I. Alvarez" <maria.i.alvarez@usat.edu>, Mariafernanda Marquez <marife.marquez@usat.edu>, Marie Ramirez <marie.ramirez@usat.edu>, Mario Rojas <mario.rojas@usat.edu>, Marta Irizarry <marta.irizarry@usat.edu>, Mayraliz Enamorado <mayra.enamorado@usat.edu>, Michael Almodovar <michael.almodovar@usat.edu>, "Milaris M. Sanchez" <milaris.m.sanchez@usat.edu>, Monica Fumero <monica.fumero@usat.edu>, Nahir Perez <nahir.perez@usat.edu>, Nemesis Cardona <nemesis.cardona@usat.edu>, Neshenie Rodríguez <neshenie.rodriguez@usat.edu>, Neyshkalisse Perez <neyshka.perez@usat.edu>, Nilza Negron <nilza.negron@usat.edu>, Niren Valdesuso <niren.valdesuso@usat.edu>, Noel Santos <noel.santos@usat.edu>, Paola Prosper <paola.prosper@usat.edu>, Paulette Salas <paulette.salas@usat.edu>, "Priscilla M. Ruiz" <priscilla.ruiz@usat.edu>, Ramsel Irizarry <ramsel.irizarry@usat.edu>, Randall Castillo <randall.castillo@usat.edu>, Ray Cabrera <ray.cabrera@usat.edu>, Roberto Cedeno <roberto.cedeno@usat.edu>, Rocio Santana <rocio.santana@usat.edu>, Saul Alvarado <saul.alvarado@usat.edu>, Saul Fernandez <saul.fernandez@usat.edu>, Siule Martir <siule.martir@usat.edu>, Sujeil Peña Torres <sujeil.pena@usat.edu>, Sully Cintron <sully.cintron@usat.edu>, Tahlianna Almonte <tahlianna.almonte@usat.edu>, USAT Med <jose.arce@usat.edu>, Vanessa Ramos <vanessa.ramos@usat.edu>, Viana Cabrera <viana.cabrera@usat.edu>, Vonmarie Martinez Rodriguez <vonmarie.martinezrodriguez@usat.edu>, Waldemar Muniz Quinones <waldemar.muniz@usat.edu>, Waldo Muñiz Irizarry <waldo.muniz@usat.edu>, Wilcanor Lopez <wilcanor.lopez@usat.edu>, Wilmary Ortiz <wilmary.ortiz@usat.edu>, Xavier Domenech <xavier.domenech@usat.edu>, Xiomara Diaz <xiomara.diaz@usat.edu>, Yahaira Morales <yahaira.morales@usat.edu>, Yaima Barrabi <yaima.barrabi@usat.edu>, Yanira

Torres <yanira.torres@usat.edu>, Yari Ojeda Alvarado <yari.ojeda@usat.edu>, Yeilinette Cintrón González <yeilinette.cintron@usat.edu>, Yiam Dieppa <yiam.dieppa@usat.edu>, Zabdiel Nieves <zabdiel.nieves@usat.edu>
Cc: Yanire Bustillo <yanire.bustillo@usat.edu>, USAT Puerto Rico <manuel.ortizbustillo@usat.edu>, Omar Caro <o.caro@usat.edu>, Daniela Cabrera <daniela.cabrera@usat.edu>

Buenas tardes a todos:

Les queremos informar que se abrió convocatoria para el Exámen de Reválida de Medicina, para ejercer en P.R. (ver documento adjunto). La fecha límite para que los documentos estén sometidos en la Junta, es el 22 de octubre de 2018, hasta las 3:00pm.

Estudiantes interesados que hayan completado todas las ciencias básicas, deben ponerse en contacto con nuestras oficinas , para revisar los expedientes y corroborar que cumplan con todos los requisitos, **antes de la fecha límite establecida por la Junta.**

Cordialmente,


*Dhamaris Frias on behalf of,*
**Manuel J. Ortíz Bustillo, MD**
*Office of the Dean & Director*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919

Tel. (787) 300-2111 or (787) 300-2112

www.usat.edu

---

🗎 **Convocatoria Exámen de Reválida PR.pdf**
   379K

 **USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## USAT Conference Call Invitations

1 message

**USAT Lectures** <lectures@usat.edu>                          Mon, Sep 24, 2018 at 11:02 PM
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Dear Students and Graduates,

USAT would like to invite you to join the first of two conference calls, one that will take place tomorrow, September 25th, from 4pm-5pm eastern time and another that will take place on September 26th, from 4pm-5pm eastern time, please see below to determine which call applies to you. During this call we hope to answer some of the questions we know you have as well as provide you with more information. We ask that if you have additional questions during the call to please email them to Carla Konyk at c.konyk@usat.edu.

We are holding this first conference call for those students that have received the affadavit from ECFMG.

We ask that those students who have not received the affidavit to please join the conference call the following day, September 26th, at 4pm eastern time in order to better accommodate all students.

Please see below for the call instructions:
Dial in number: 712.432.3900
Participant ID: 585537#

Thank you,
USAT Administration

 **USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## ECFMG 2nd Affidavit Request
1 message

**USAT Lectures** <lectures@usat.edu>
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Thu, Oct 18, 2018 at 10:39 AM

Dear Students,

USAT has become aware of the 2nd affidavit request sent by the ECFMG. We are having counsel review the document and will provide you with more information by early next week. We ask that you please await further information before submitting this 2nd affidavit.
We are pleased to tell you that as of today, we have verified that several students have received email confirmations and restored access to ECFMG services, after their affidavits were reviewed.

USAT thanks you for your continued patience and understanding at this time.

USAT Administration
303.371.0252

11/15/2018    Universty of Science Arts and Technology Mail - Urgente!

Case 3:19-cv-01707-WGY    Document 152-50    Filed 07/27/23    Page 117 of 131



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## rgente!
1 message

**Lisa Torres** <lisa.torres@usat.edu>                                          Tue, Oct 23, 2018 at 8:01 PM
To: USAT Puerto Rico <manuel.ortizbustillo@usat.edu>, USAT Puerto Rico <m.ortizbustillo@usat.edu>, "Jose E. Blasco Jusino" <jose.blasco@usat.edu>, Paola Prosper <paola.prosper@usat.edu>

Buenas noches Dr. Bustillo, Le escribimos con el propósito de solicitar una cita con  USTED. Entendemos que posiblemente se encuentre fuera del país, en Tortola, pero solicitamos sea lo mas pronto posible. Si el caso es que se encuentra fuera del país, no tenemos ningún inconveniente de que la misma sea por videollamada ( SKYPE, FACETIME). La misma es respecto a la situación con el ECFMG y la universidad. Ya estuvimos reunidos con la registradora, la Sra. Bustillo, pero luego de esta nos surgieron otras inquietudes y necesitamos aclararlas con USTED lo mas pronto posible.


Esperamos su pronta respuesta,



Lisa Torres, Jose Blasco y Paola Prosper

Case 3:19-cv-01707-WGY   Document 152-50   Filed 07/27/23   Page 118 of 131



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

---

## FOLLOW UP EMAIL
1 message

---

**Info Puerto Rico** <infopr@usat.edu>     Wed, Oct 24, 2018 at 3:19 PM
Reply-To: prstudents+owners@usat.edu
To: PR Students - USAT <prstudents@usat.edu>, PR Staff <prstaff@usat.edu>

### PR STUDENTS

In light of the many calls and emails USAT has received since sending this email please see the updates below:

In regards to the details for the new school, we are currently working on the details and will send you more information as soon as it is available.

In regards to the clinical rotations, we are also finalizing those details and will also update you as soon as we have that information.

ECFMG has placed USAT and YOU in a very difficult position and we are working daily on this and will update you with more information as soon as we have it. Please remember that USAT was only made aware of these changes last week and your patience in this matter is greatly appreciated and we are working hard to help you.

Thank you,
Karen Baldwin
University of Science Arts & Technology
karen.baldwin@usat.edu
303.371.0252



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

---

## ECFMG Affidavit update

1 message

---

**Karen Baldwin** <karen.baldwin@usat.edu>
Reply-To: karen.baldwin@usat.edu
Bcc: oldgmail@usat.edu

Mon, Oct 29, 2018 at 2:19 PM

Dear Students,

The deadline to complete and submit the ECFMG affidavit by Nov 1st is fast approaching, if you are still in need of information in order to complete this please reply to this email and we will do our best to get you that information as fast as possible.

Thank you,
USAT Administration
University of Science Arts & Technology
lectures@usat.edu
303.371.0252



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## ECFMG Affidavit update
1 message

**USAT Lectures** <lectures@usat.edu>
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Mon, Oct 29, 2018 at 2:19 PM

Dear Students,

The deadline to complete and submit the ECFMG affidavit by Nov 1st is fast approaching, if you are still in need of information in order to complete this please reply to this email and we will do our best to get you that information as fast as possible.



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## Ecfmg update

1 message

**USAT Lectures** <lectures@usat.edu>                                      Fri, Nov 2, 2018 at 2:08 PM
Reply-To: Webinars+managers@usat.edu
Bcc: Webinars@usat.edu

Dear students,

USAT has heard that some students are being asked to provide additional information to ECFMG above and beyond the affidavit. If you are one of these students we ask that you please not send them any additional information at this time. We ask you to instead please send an email to Carla Konyk at c.konyk@usat.edu with the title "ecfmg additional information". She would like to refer you to work directly with USAT's counsel individually. Our attorney will get to all of you either today or over the weekend.


Thank you,
USAT Administration
lectures@usat.edu
303.371.0252



**USAT**
*This is Lifelong Learning*

Lisa Torres <lisa.torres@usat.edu>

## ECFMG & Graduation weekly update
1 message

**Karen Baldwin** <karen.baldwin@usat.edu>
Reply-To: karen.baldwin@usat.edu
Bcc: oldgmail@usat.edu

Wed, Nov 7, 2018 at 12:07 AM

Dear Students,

USAT has decided to reopen the graduation request survey until Friday, November 9th at midnight. Please use the link below to complete the graduation request survey only if you have not done so already. If you wish to make changes to your already submitted request please email karen.baldwin@usat.edu with the updates you would like made. The registrars are working diligently to process and review all graduation requests, please give them time to review your records and respond to you.

Graduation Request Survey Link:
https://www.surveymonkey.com/r/R7GP7CH

USAT also has a few openings for the November Anatomy Lab on the 12th and 13th if you are in need of this in order to graduate please send an email to karen.baldwin@usat.edu.

USAT would like you to know that we are aware of the last rather vague email from ECFMG. And that we have not sent information to them regarding any student or graduate. We would also like you to know that if you contact ECFMG too many times, or are rude or unprofessional to them in any way, they are likely to mark you with irregular behavior. We know that this is a trying time for everyone and although you may want to contact them for information. we just wanted to warn you in case you weren't aware of this.

The new school continues to make progress, please allow us the time we must take in order to open in January.

Thank you,
USAT Administration
University of Science Arts & Technology
lectures@usat.edu
303.371.0252

 USAT
*This is LifeLong Learning*

Lisa Torres <lisa.torres@usat.edu>

## MENSAJE IMPORTANTE DEL DECANO USAT PR

1 message

Info Puerto Rico <infopr@usat.edu>      Thu, Nov 8, 2018 at 12:59 PM
To: Adriana Hernandez <adriana.hernandez@usat.edu>, Ambar Perez <ambar.perez@usat.edu>, Andrae Echevarria <andrae.echevarria@usat.edu>, Angel Casillas <angel.casillas@usat.edu>, Angel Negron <angel.negron@usat.edu>, Anibal Pagan <anibal.pagan@usat.edu>, Berenice Colon <berenice.colon@usat.edu>, Betzy Santiago <betzy.m.santiago@usat.edu>, Carlos Negron <carlos.negron@usat.edu>, Carlos Rivera <carlos.rivera@usat.edu>, Carlos Rodriguez <carlos.rodriguez@usat.edu>, Carola Bermúdez <carola.bermudez@usat.edu>, Cesar Roman <cesar.roman@usat.edu>, Chanelle Silva <chanelle.silva@usat.edu>, Christian Diaz <christian.diaz@usat.edu>, Christian Orama <christian.orama@usat.edu>, Cristina Vazquez <cristina.vazquez@usat.edu>, Christopher Robles <chris.robles@usat.edu>, Conchita Jacobo Oyola <conchita.jacobo@usat.edu>, Dagmary Groennou <dagmary.groennou@usat.edu>, Daniel Bernier <daniel.bernier@usat.edu>, David Febo <david.febo@usat.edu>, David Pagán Maldonado <david.pagan@usat.edu>, David Perez <david.perez.agosto@usat.edu>, Dayna Sorrentini Carlo <dayna.sorrentini@usat.edu>, Dempsey Garcia <dempsey.garcia@usat.edu>, Dianelisse Butler <dianelisse.butler@usat.edu>, Dorimar Nazario <dorimar.nazario@usat.edu>, Edmarie Vazquez <edmarie.vazquez@usat.edu>, Edwin Aponte <edwin.aponte@usat.edu>, Eliz Fuentes Perez <eliz.fuentesperez@usat.edu>, Elrick Cabrera <elrick.cabrera@usat.edu>, Elsa Santiago <elsa.santiago@usat.edu>, "Enny M. De Jesús Ureña" <enny.dejesus@usat.edu>, Erick Lopez <erick.lopez@usat.edu>, Esteban Caraballo Santos <esteban.caraballo@usat.edu>, Fernan E Munoz <fernan.munoz@usat.edu>, "Fernando A. Pena" <fernando.pena@usat.edu>, Fernando Rivera <fernando.rivera@usat.edu>, Franchel Cruz <franchel.cruz@usat.edu>, Francheska Pabón <francheska.pabon@usat.edu>, Gabriel Guzman <gabriel.guzman@usat.edu>, Gabriel Plaud <gabriel.plaud@usat.edu>, Gabriela Santiago <gabriela.santiago@usat.edu>, Genaro Marcial <g.marcial@usat.edu>, Georgianna Asencio <georgianna.asencio@usat.edu>, Giselle Perez <giselle.perez@usat.edu>, Heidi Rosas <heidi.rosas@usat.edu>, Hillary Manso <hillary.manso@usat.edu>, Hiroshi Rivera <hiroshi.rivera@usat.edu>, Ileana Calderon <ileana.calderon@usat.edu>, Israel Ferrer <israel.ferrer@usat.edu>, Ivanette Caraballo <ivanette.caraballo@usat.edu>, Izamar Martes <izamar.martes@usat.edu>, Jaime Arroyave <jaime.arroyave@usat.edu>, Janeira Quintana <janeira.quintana@usat.edu>, Javier Camacho <javier.camacho@usat.edu>, Jeanette Vazquez <jeanette.vazquez@usat.edu>, Jessica Chang <jessica.chang@usat.edu>, Jesus Rosado <jesus.rosado@usat.edu>, Jimnellys Diaz <jimnellys.diaz@usat.edu>, Joffre Gomez <joffre.gomez@usat.edu>, John Galarza Crespo <john.galarzacrespo@usat.edu>, John Pablos <john.pablos@usat.edu>, Jonathan Rivera Crespo <jonathan.riveracrespo@usat.edu>, Johnathan Serrano <jonathan.serrano@usat.edu>, Jorge Ernesto Condi Escala <jorge.condiescala@usat.edu>, Jorge Luís Sanchez <jorge.sanchez@usat.edu>, Jose De Leon <jose.deleon@usat.edu>, Jose Diaz <jose.diaz@usat.edu>, "Jose E. Almonte" <jose.almonte@usat.edu>, "Jose E. Blasco Jusino" <jose.blasco@usat.edu>, Jose Marin <jose.marin@usat.edu>, Jose Nigaglioni <jose.nigaglioni@usat.edu>, José Pérez <jose.perez@usat.edu>, Jose Santiago <jose.santiago@usat.edu>, Josean Sepulveda <josean.sepulveda@usat.edu>, Joselyn Rodriguez <joselyn.rodriguez@usat.edu>, Jossan Gomez <jossan.gomez@usat.edu>, Juliana Belen <juliana.belen@usat.edu>, Keishla Ocasio <keishla.ocasio@usat.edu>, Kenny Nieves <kenny.nieves@usat.edu>, Keyshla Cruz <keyshla.cruz@usat.edu>, Keyshla Santana <keyshla.santana@usat.edu>, Kimberly Martinez <kimberly.martinez@usat.edu>, Leenethsy Crespo <lee.crespo@usat.edu>, "Leishla Y. Vazquez" <Leishla.vazquez@usat.edu>, Lenianne Ramírez <lenianne.ramirez@usat.edu>, Liani Chiclana <liani.chiclana@usat.edu>, Lidmarie Rodriguez <lidmarie.rodriguez@usat.edu>, Lilianet Gonzalez <lilianet.gonzalez@usat.edu>, Lilybeth Figueroa <lilybeth.figueroa@usat.edu>, Lisa Irizarry <lisa.irizarry@usat.edu>, Lisa Torres <lisa.torres@usat.edu>, Loraima Rosado <loraima.rosado@usat.edu>, Loraine Bueno <loraine.bueno@usat.edu>, Lorena Valentín <lorena.valentin@usat.edu>, Lucero Rodriguez <lucero.rodriguez@usat.edu>, Luis Almodovar <luis.almodovar@usat.edu>, Luis Cuebas <luis.cuebas@usat.edu>, "Luis G. De Jesús III" <luis.dejesus@usat.edu>, Luis Perez <perez.marquez@usat.edu>, Manuel Acosta <manuel.acosta@usat.edu>, Mara Perez <mara.perez@usat.edu>, Marcos Collazo <marcos.collazo@usat.edu>, "Maria I. Alvarez" <maria.i.alvarez@usat.edu>, Mariafernanda Marquez <marife.marquez@usat.edu>, Marie Ramirez <marie.ramirez@usat.edu>, Mario Rojas <mario.rojas@usat.edu>, Marta Irizarry <marta.irizarry@usat.edu>, Mayraliz Enamorado <mayra.enamorado@usat.edu>, Michael Almodovar <michael.almodovar@usat.edu>, "Milaris M. Sanchez" <milaris.m.sanchez@usat.edu>, Monica Fumero <monica.fumero@usat.edu>, Nahir Perez <nahir.perez@usat.edu>, Nemesis Cardona <nemesis.cardona@usat.edu>, Neshenie Rodriguez <neshenie.rodriguez@usat.edu>, Neyshkalisse Perez <neyshka.perez@usat.edu>, Nilza Negron <nilza.negron@usat.edu>, Niren Valdesuso <niren.valdesuso@usat.edu>, Noel Santos <noel.santos@usat.edu>, Paola Prosper <paola.prosper@usat.edu>, Paulette Salas <paulette.salas@usat.edu>, Patricia Figueroa <patricia.figueroa@usat.edu>, "Priscilla M. Ruiz" <priscilla.ruiz@usat.edu>, Ramsel Irizarry <ramsel.irizarry@usat.edu>, Randall Castillo <randall.castillo@usat.edu>, Ray Cabrera <ray.cabrera@usat.edu>, Roberto Cedeno <roberto.cedeno@usat.edu>, Rocio Santana <rocio.santana@usat.edu>, Saul Alvarado <saul.alvarado@usat.edu>, Saul Fernandez <saul.fernandez@usat.edu>, Siule Martir <siule.martir@usat.edu>, Sujeil Peña Torres <sujeil.pena@usat.edu>, Sully Cintron <sully.cintron@usat.edu>, Tahlianna Almonte <tahlianna.almonte@usat.edu>, USAT Med <jose.arce@usat.edu>, Vanessa Ramos <vanessa.ramos@usat.edu>, Viana Cabrera <viana.cabrera@usat.edu>, Vonmarie Martinez Rodriguez <vonmarie.martinezrodriguez@usat.edu>, Waldemar Muniz Quinones <waldemar.muniz@usat.edu>, Waldo Muñiz Irizarry <waldo.muniz@usat.edu>, Wilcanor Lopez <wilcanor.lopez@usat.edu>, Wilmary Ortiz <wilmary.ortiz@usat.edu>, Xavier Domenech <xavier.domenech@usat.edu>, Xiomara Diaz <xiomara.diaz@usat.edu>, Yahaira Morales <yahaira.morales@usat.edu>, Yaima Barrabi <yaima.barrabi@usat.edu>, Yanira Torres <yanira.torres@usat.edu>, Yari Ojeda Alvarado <yari.ojeda@usat.edu>, Yeilinette Cintrón González <yeilinette.cintron@usat.edu>, Yiam Dieppa <yiam.dieppa@usat.edu>, Zabdiel Nieves <zabdiel.nieves@usat.edu>, "Catalina C. Jiménez Cortes" <catalina.jimenezcortes@usat.edu>, Ana Berlingeri Ortiz <ana.berlingeri@usat.edu>, Soleil Rodriguez <soleil.rodriguez@usat.edu>, Daviana Rios <daviana.rios@usat.edu>, Alice Rodriguez <alice.rodriguez@usat.edu>, Fernando Rivera <fernando.rivera.dones@usat.edu>, Francelys Mercado <francelys.mercado@usat.edu>, Ivan Betancourt <ivan.betancourt@usat.edu>, Ivan Mercado <ivan.mercado@usat.edu>, Jasmary Lopez <jasmary.lopez@usat.edu>, Jeannelle Soto <jeannelle.soto@usat.edu>, Joan González <joan.gonzalez@usat.edu>, Joann Morales <joann.morales@usat.edu>, Laura Cobian <laura.cobian@usat.edu>, Surilo Acosta <surilo.acosta@usat.edu>, Xavier Orama <xavier.orama@usat.edu>, Yassem Mendez <yassem.mendez@usat.edu>, Ashley Ann Gordils <ashley.gordils@usat.edu>
Cc: USAT Puerto Rico <manuel.ortizbustillo@usat.edu>, Yanire Bustillo <yanire.bustillo@usat.edu>, Omar Caro <o.caro@usat.edu>, "Dr. Jeffrey Quiñones" <j.quinones@usat.edu>, "Dr. J Santiago" <j.santiago@usat.edu>, "Dr. Ivan Hourruitiner" <dr.i.hourruitiner@usat.edu>, "Dr. Mario Ferandez" <m.fernandez@usat.edu>, Indira Barbosa <indira.barbosa@usat.edu>, "Dr. Gustavo Sanchez Sanchez" <g.sanchez@usat.edu>, Daniela Cabrera <daniela.cabrera@usat.edu>

Estimados estudiantes:

Les extiendo un caluroso saludo de parte de todo nuestro equipo de trabajo y el mío propio.

Durante las pasadas semanas, se han diseminado comunicaciones de parte de la ECFMG, las cuales han causado mucha incertidumbre, especulación, pero sobre todo, desenfoque académico y es por esto por lo que me dirijo a ustedes. Según la información que este servidor ha recibido de parte de la alta administración de nuestra institución, ellos al igual que sus estudiantes, fueron sorpresivamente notificados *sin previo aviso alguno*.

Afligido en mi carácter personal y como empleado directivo local, ajeno a más información fuera de la que se les ha comunicado a todos los estudiantes mediante correo electrónico, me sentí en la obligación de trasladarme a Colorado y hacer sentido de los eventos ocurridos. Estando reunido con todo el equipo administrativo, es que logro presenciar que efectivamente este acto de parte de la ECFMG había tomado a la más alta administración por sorpresa y al igual que nosotros, éstos se encuentran afectados inmensamente por el mismo. No obstante, éstos se mantienen arduamente trabajando en conjunto con su batería de representantes legales, en poder esclarecer lo ocurrido y tomar cualquier acción requerida.

En el ínterin de tiempo en el cual los altos administrativos puedan brindar más información concreta, se han comenzado a establecer mecanismos preventivos que se estarán difundiendo en las próximas semanas por venir para el beneficio de sus estudiantes; esto tomando en consideración las limitaciones particulares de cada uno de los estudiantes. Debo enfatizar que de ninguna manera la institución tiene intención alguna de cerrar sus puertas y/o cesar sus ofrecimientos académicos. Nuestros administrativos están tomando todas las debidas acciones con autoridades locales y del exterior para que esto tenga una pronta resolución.

Habiendo dicho todo lo anterior, sería irresponsable de mi parte especular y ofrecerles información adicional la cual no poseo y/o no sea certera en este momento. Pero deseo que tengan la certeza que contarán con mi transparencia absoluta en el manejo de toda información obtenida durante este transcurso. Espero aprecien entender que este servidor, en capacidad personal y profesional inconsecuente a todas las ataduras y límites que eso representa, me encuentro incansablemente trabajando en posibles alternativas efectivas para sobre todas las cosas, asegurar el bienestar de ustedes los estudiantes y futuros colegas.

Finalmente les exhorto encarecidamente a que continúen su ejemplar desempeño académico como de costumbre y se les agradece inmensamente su continua cooperación y paciencia. Estaremos en constante comunicación con el Consejo de Estudiantes y todo el estudiantado sobre cualquier novedad que surja en los próximos días por venir.

Confiado en Dios se despide,


Dr. Manuel Ortiz Bustillo

**Associate Dean of Clinical Sciences**

Case 3:19-cv-01767-WGY   Document 152-50   Filed 07/27/23   Page 124 of 131



## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919

Tel. (787) 300-2111

www.usat.edu



**SCH**

# IN-SCHOOL DEFERMENT REQUEST

**William D. Ford Federal Direct Loan (Direct Loan) Program / Federal Family Education Loan (FFEL) Program / Federal Perkins Loan (Perkins Loan) Program**

OMB No. 1845-0011
Form Approved
Exp. Date 9/30/2018

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ **Check this box if any of your information has changed.**

| | |
|---|---|
| SSN | 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 |
| Name | LISA TORRES COLON |
| Address | URB. LA VEGA CALLE C #85 |
| City | VILLALBA          State  PR     Zip Code 00766 |
| Telephone - Primary | (787) 342-9102 |
| Telephone - Alternate | |
| Email (Optional) | leiram_1712@hotmail.com |

## SECTION 2: BORROWER DETERMINATION OF DEFERMENT ELIGIBILITY

**Carefully read the entire form before completing it.**

You are always eligible for this deferment if you are enrolled full time at an eligible school.

You are eligible for this deferment when you are enrolled at least half time, but less than full time, at an eligible school, only if you are:

- A Direct Loan borrower;
- A Perkins Loan borrower; or
- A FFEL Program borrower who did not have an outstanding balance on a FFEL Program loan that was first disbursed *before* July 1, 1987 when you obtained a loan *on or after* July 1, 1987.
  Federal PLUS Loans that were first disbursed *on or after* July 1, 2008 are eligible for this deferment regardless of prior borrowing in the FFEL Program.

## SECTION 3: BORROWER REQUESTS, UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATION

**I request:**

- To defer repayment of my loans for the period during which I meet the eligibility criteria outlined in Section 2 and as certified by the authorized official in Section 4.
- ☐ If indicated, to make interest payments on my loans during my deferment.
- ☐ If I am eligible and if indicated, to defer repayment of the PLUS Loan for the 6-month period after the I am no longer enrolled on at least a half-time basis, graduates, or withdraws.

**Borrower Name**  LISA TORRES COLON    **Borrower SSN**  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

**SECTION 3: BORROWER REQUESTS, UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATION (CONTINUED)**

**I understand that:**

- I am not required to make payments of loan principal or interest during my deferment.
- My deferment will begin, as certified by the authorized official, on the date I became eligible for the deferment.
- My deferment will end, as certified by the authorized official, on the date I no longer qualify for the deferment.
- If I am a Perkins Loan borrower, I will receive a 6-month post-deferment grace period beginning on the date I no longer qualify for the deferment.
- If I am a graduate or professional student borrower of a Direct or Federal PLUS Loan, I will also receive a deferment on my Direct or Federal PLUS Loan(s) first disbursed *on or after* July 1, 2008 during the 6-month period after I cease to be enrolled on at least a half-time basis.
- If I am a parent borrower of a Direct or Federal PLUS Loan first disbursed *on or after* July 1, 2008, and I request it above, another deferment will begin on the date after I cease to be enrolled on at least a half-time basis and will end 6 months after that date.
- Interest may capitalize on my loans during or at the expiration of my deferment or forbearance, but interest never capitalizes on Perkins Loans.

**I certify that:**

- The information I have provided on this form is true and correct.
- I will provide additional documentation to my loan holder, as required, to support my deferment eligibility.
- I will notify my loan holder immediately when my eligibility for the deferment ends.
- I have read, understand, and meet the eligibility requirements in Section 2.

**I authorize** the entity to which I submit this request and its agents to contact me regarding my request or my loans at any cellular telephone number that I provide now or in the future using automated telephone dialing equipment or artificial or prerecorded voice or text messages.

**Borrower's Signature** _____    **Date**  01 / 08 / 18

**SECTION 4: AUTHORIZED OFFICIAL'S CERTIFICATION**

**Note:** As an alternative to completing this section, you may attach separate documentation from an authorized official that includes all of the information requested below or have your school report your enrollment to the National Student Loan Data System (NSLDS) at **nsldsfap.ed.gov**.

- The student is/was enrolled at the school below:
  - ☒ Full time
  - ☐ At least half time, but less than full time

- Is the student enrolled at the school below as a regular student?
  - ☒ Yes
  - ☐ No

- The student's enrollment status begins/began on:
  09/15/2017

- The student's enrollment status ends/ended on:
  06/16/2021

- The student is expected to complete his/her program requirements on:
  06/16/2021

**I certify, to the best of my knowledge and belief,** that the information that I have provided in this section is accurate.

Name of School  Univ. of Science, Arts & Technology USAT    OPEID  092-06 900

Address  4288 Youngfield St.    City  Wheat Ridge    State  CO    Zip Code 80033

Official's Name/Title  Hilda Capó, CPL/Med/NCC    Telephone  (303) 371-0252

**Official's Signature** _____    **Date** 12/20/2017

Page 2 of 4



**SCH**

# IN-SCHOOL DEFERMENT REQUEST

**William D. Ford Federal Direct Loan (Direct Loan) Program / Federal Family Education Loan (FFEL) Program / Federal Perkins Loan (Perkins Loan) Program**

OMB No. 1845-0011
Form Approved
Exp. Date 9/30/2018

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ **Check this box if any of your information has changed.**

| | |
|---|---|
| SSN | 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 |
| Name | LISA TORRES COLON |
| Address | URB. LA VEGA CALLE C #85 |
| City | VILLALBA   State PR   Zip Code 00766 |
| Telephone - Primary | (787) 342-9102 |
| Telephone - Alternate | |
| Email (Optional) | leiram_1712@hotmail.com |

## SECTION 2: BORROWER DETERMINATION OF DEFERMENT ELIGIBILITY

**Carefully read the entire form before completing it.**

You are always eligible for this deferment if you are enrolled full time at an eligible school.

You are eligible for this deferment when you are enrolled at least half time, but less than full time, at an eligible school, only if you are:

- A Direct Loan borrower;
- A Perkins Loan borrower; or
- A FFEL Program borrower who did not have an outstanding balance on a FFEL Program loan that was first disbursed *before* July 1, 1987 when you obtained a loan *on or after* July 1, 1987.
  Federal PLUS Loans that were first disbursed *on or after* July 1, 2008 are eligible for this deferment regardless of prior borrowing in the FFEL Program.

## SECTION 3: BORROWER REQUESTS, UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATION

**I request:**

- To defer repayment of my loans for the period during which I meet the eligibility criteria outlined in Section 2 and as certified by the authorized official in Section 4.
- ☐ If indicated, to make interest payments on my loans during my deferment.
- ☐ If I am eligible and if indicated, to defer repayment of the PLUS Loan for the 6-month period after the I am no longer enrolled on at least a half-time basis, graduates, or withdraws.

Borrower Name    LISA TORRES COLON                    Borrower SSN    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

**SECTION 3: BORROWER REQUESTS, UNDERSTANDINGS, CERTIFICATIONS, AND AUTHORIZATION (CONTINUED)**

I understand that:

- I am not required to make payments of loan principal or interest during my deferment.
- My deferment will begin, as certified by the authorized official, on the date I became eligible for the deferment.
- My deferment will end, as certified by the authorized official, on the date I no longer qualify for the deferment.
- If I am a Perkins Loan borrower, I will receive a 6-month post-deferment grace period beginning on the date I no longer   qualify for the deferment.
- If I am a graduate or professional student borrower of a Direct or Federal PLUS Loan, I will also receive a deferment on my Direct or Federal PLUS Loan(s) first disbursed *on or after* July 1, 2008 during the 6-month period after I cease to be enrolled on at least a half-time basis.
- If I am a parent borrower of a Direct or Federal PLUS Loan first disbursed *on or after* July 1, 2008, and I request it above, another deferment will begin on the date after I cease to be enrolled on at least a half-time basis and will end 6 months after that date.
- Interest may capitalize on my loans during or at the expiration of my deferment or forbearance, but interest never capitalizes on Perkins Loans.

I certify that:

- The information I have provided on this form is true and correct.
- I will provide additional documentation to my loan holder, as required, to support my deferment eligibility.
- I will notify my loan holder immediately when my eligibility for the deferment ends.
- I have read, understand, and meet the eligibility requirements in Section 2.

**I authorize** the entity to which I submit this request and its agents to contact me regarding my request or my loans at any cellular telephone number that I provide now or in the future using automated telephone dialing equipment or artificial or prerecorded voice or text messages.

**Borrower's Signature** _____    **Date** _____

**SECTION 4: AUTHORIZED OFFICIAL'S CERTIFICATION**

Note: As an alternative to completing this section, you may attach separate documentation from an authorized official that includes all of the information requested below or have your school report your enrollment to the National Student Loan Data System (NSLDS) at **nsldsfap.ed.gov**.

- The student is/was enrolled at the school below:
  ☒ Full time
  ☐ At least half time, but less than full time

- Is the student enrolled at the school below as a regular student?
  ☒ Yes
  ☐ No

- The student's enrollment status begins/began on:
  09/15/2017

- The student's enrollment status ends/ended on:
  06/16/2021

- The student is expected to complete his/her program requirements on:
  06/16/2021

**I certify, to the best of my knowledge and belief,** that the information that I have provided in this section is accurate.

Name of School    Univ. of Science, Arts & Technology USAT    OPEID    05206900

Address    4288 Youngfield St.    City    Wheat Ridge    State    CO    Zip Code 80033

Official's Name/Title    Hilda Capó, CPL/Med/NCC    Telephone    (303) 371-0252

**Official's Signature** _____    **Date** 12/20/2017

**USAT, Montserrat, LLC.**

Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033

| Phone # | 727-252-6205 | carla.konyk@gmail.com |
| Fax # | 303-399-4106 | |

**Statement**

| Date |
|---|
| 9/4/2018 |

To:

Lisa Torres Colon
Urb. La Vega Street C #85
Villalba, PR 00766

**Please Mail  Payments to:**

**USAT Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033**

| | EIN# 46-1491367 |
|---|---|

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2016 | Balance forward | | 0.00 |
| 08/30/2017 | INV #2791. | 52,270.00 | 52,270.00 |
| | --- Application Fee USD 125.00 | | |
| | --- Matriculation Fee USD 600.00 | | |
| | --- Graduation Charge USD 900.00 | | |
| | --- Insurance USD 895.00 | | |
| | --- Lab Fee Sept USD 500.00 | | |
| | --- Technology USD 250.00 | | |
| | --- MD Program, 10 @ USD 4,900.00 = 49,000.00 | | |
| 08/30/2017 | PMT #40280481545. | -125.00 | 52,145.00 |
| 09/14/2017 | PMT #400257. | -600.00 | 51,545.00 |
| 11/10/2017 | PMT #2585. | -500.00 | 51,045.00 |
| 12/28/2017 | PMT #2587. | -500.00 | 50,545.00 |
| 01/31/2018 | PMT #2589. | -500.00 | 50,045.00 |
| 04/01/2018 | PMT #Loan Proceeds. | -12,667.00 | 37,378.00 |
| 04/18/2018 | INV #3233. | 7,777.00 | 45,155.00 |
| | --- Tuition USD 7,767.00 | | |
| | --- Shipping USD 10.00 | | |
| 08/15/2018 | PMT #Loan Proceeds. | -25,333.00 | 19,822.00 |
| 08/15/2018 | INV #3475. | 15,533.00 | 35,355.00 |
| | --- Tuition USD 15,533.00 | | |

**Thank you for your payment.**

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 15,533.00 | 0.00 | 0.00 | 19,822.00 | USD 35,355.00 |

**USAT, Montserrat, LLC.**

USAT Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033

| Invoice Date | Invoice # | |
|---|---|---|
| 8/15/2018 | 3475 | **TUITION INVOICE** |

**Phone #**  727-252-6205    **Fax #**  303-399-4106

**Bill To:**

Lisa Torres Colon
Urb. La Vega Street C #85
Villalba, PR 00766

**PLEASE PAY**

**THIS AMOUNT**    See Amount Below

Make checks payable to:    **USAT, Montserrat, LLC.**

☐ Please check box if address is incorrect or has changed, and indicate change(s) on reverse side.

Have E-Mail? _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
· PLEASE DETACH AND RETURN TOP PORTION WITH PAYMENT

**USAT, Montserrat, LLC.**

USAT Administration Office
4288 Youngfield Street
Wheat Ridge, CO 80033

| Due Date: | Upon Receipt |
|---|---|

**Please Pay Amount Below**

| Qty | Item | Description | Rate | Amount |
|---|---|---|---|---|
| | *Tuition* | Semester Tuition added back after Loan Proceeds Refund. | 15,533.00 | 15,533.00 |

We are proud to have you as our student.
Please remember that all tuition accounts must be paid in full prior to graduation. Thank you.

| | |
|---|---|
| **Total** | USD 15,533.00 |
| **Payments/Credits** | USD -9,578.00 |
| **Balance Due** | USD 5,955.00 |

**Billing Inqueries? Call**    727-252-6205

Case 3:19-cv-01707-WGY   Document 152-50   Filed 07/27/23   Page 131 of 131

:onyk@usat.edu

ne ▾

Jan 9, 2019, 3:22 AM (1 day ago)

## USAT, Montserrat, LLC.

**Invoice**   *Due:08/15/2018*

*3475*

Amount Due: **$5,955.00**

Dear Lisa Torres:

Your invoice-3475 for $5,955.00 is attached. Please remit payment at your earliest convenience.

Thank you for your tuition payment - we appreciate it very much.

Sincerely,
USAT, Montserrat, LLC.

727-252-6205
www.usat.edu

**View & Pay Invoice**