**EXHIBIT 51**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Lucero Rodriguez-Fernandez; ET ALS**<br><br>PLAINTIFFS<br><br>VS.<br><br>**UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; ET ALS**<br><br>DEFENDANTS | CIVIL NO. 19-1707<br><br><br>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);<br>FRAUDULENT INDUCEMENT;<br>BREACH OF CONTRACT;<br>UNJUST ENRICHMENT;<br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

UNSWORN DECLARATION UNDER PENALTY OF PERJURY

1.  My name is LUCERO RODRIGUEZ FERNANDEZ. I am of legal age, student, single, domiciled and resident of San Juan, Puerto Rico.

2.  My address is the following: Urb. Levittown Lakes AM 16 Toa Baja PR, 00949.

3.  In (21/03/2018), I was searching for a medical school to apply in order to get into a career in medicine.

4.  On or around (04/04/2018), I applied via online to the medical program of USAT PR, campus. From April/2018 to May/2018) I was in contact for all the admissions process with Manuel José Ortiz-Bustillo ("Ortiz") and Damaris Frías (USAT Officials).

5.  Ortiz represented themselves as officials of the medical school known as University of Science, Arts and Technology ("USAT").

6.  Ortiz represented to me that USAT was an accredited college of medicine in Puerto Rico.

7.  On (22/03/2018, 28/03/2018, 04/04/2018) I received various materials regarding USAT, such as a brochures, applications and enrollment agreements. These materials made representations that USAT was an accredited college of medicine in Puerto Rico, as well as other states.

8.  Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Orien L. Tulp ("Tulp") is the President of USAT,

Carla M. Konyk ("Konyk") is the Vice-President and Director of Administration and Finances of USAT, and Karen Baldwin ("Baldwin") is the Administrator of USAT.

9. Based on the various materials and the representations made by Ortiz and Cabrera on behalf of USAT, I understood that Ortiz is the Dean of the USAT College of Medicine in Puerto Rico, and that Cabrera is the Clinical Coordinator of Student Affairs of the USAT College of Medicine in Puerto Rico.

10. As such, my understanding was that Tulp, Konyk, Baldwin, Ortiz and Cabrera (jointly "USAT Officials") were all officials and representatives of USAT.

11. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT was accredited by the Educational Commission for Foreign Medical Graduates ("ECFMG") so that USAT students may be able to take the United States Medical Licensing Examinations.

12. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that being a student of USAT would allow me to take the United States Medical Licensing Examinations.

13. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT also had other satellite campuses or schools in other states in the United States, such as in Florida, Maryland and Texas.

14. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I understood that USAT had its main Administrative Office in the state of Colorado, in the United States.

15. I understood that the USAT officials have been working at USAT for some time.

16. The USAT Officials made representations that USAT's purpose was to provide me an education in medicine if I applied to be a student.

17. In consideration of providing me an education in medicine if I became a student, USAT would request payments from me.

18. The USAT Officials made representations that once the payments would be received, they would provide the education in medicine and I would be able to take the United States Medical Licensing Examinations.

19. Based on the various materials and the representations made by the USAT Officials on behalf of USAT, I was induced and made the decision to apply to USAT, thinking that I was going to be able to receive a valid medical education in Puerto Rico and will be able to apply for and take the United States Medical Licensing Examinations.

20. On (04/04/2018, 05/04/2018, 06/04/2018, 10/04/2018, 11/04/2018) I submitted all the required documents and required payments to USAT in order to apply.

21. On (17/04/2018), I received a letter from Tulp which informed me that I was admitted to the medical doctor program of USAT. The letter said it was a typical four-year program of scientific and medical education. The Letter indicated that I must pay no less than five thousand four hundred dollars ($6,495), per semester plus other expenses such as a Matriculation Fee, Medical Student Malpractice Insurance Fee, Anatomy Lab Fee, Technology Fee, Clinical Fee and Graduation Fee which amounted to approximately nine thousand one hundred forty-five dollars ($9,145.00).

22. Once I was admitted by USAT, USAT Officials from both Puerto Rico and Colorado came to attend the White Coat Ceremony making the representation that we were going to start a valid medical education in Puerto Rico and I was going to be able to apply for and take the United States Medical Licensing Examinations.

23. Once I was admitted by USAT, the USAT officials oriented me as to the manner of payment and the possibility of taking out a loan.

24. I did not take loans to cover the expenses of tuition. I made all the payments directly with Dhamaris Frías (USAT Officials) via telephone call and also at the facilities of USAT PR campus.

25. On (06/04/2018), I paid $125 for the application fee.

26. On (10/05/2018), I paid $600 for enrollment fee and $1,400 for tuition.

27. On (14/08/2018), I paid $1,800 for tuition.

28. On (21/09/2018), I was notified by the USAT Officials of the ECFMG irregularities.

29. On September 24th of 2018, the USAT Officials notified me of a telephone conference to be held on September 26th of 2018 to discuss the ECFMG irregularities.

30. On (24/10/2018), I received an email from USAT presenting their position regarding the recent emails from the ECFMG irregularities.

31. During September, October and November of 2018, the USAT Officials dodged and evaded questions by me and other students regarding their lack of eligibility for the United States Medical Licensing Examination.

32. During early November of 2018, the USAT Officials instructed me and the other students to not send additional information to ECFMG outside the instructions of USAT.

33. During early November of 2018, the USAT Officials instructed me and the other students to send all information regarding ECFMG to Konyk, who would then refer me and the other students to USAT's attorney.

34. During early November of 2018, the USAT Officials also tried to invite me and the other students to transfer to start again at other medical schools suggested by USAT.

35. On November 8th of 2018, Ortiz sent an e-mail regarding ECFMG's decision to find me and the other students not eligible for the United States Medical Licensing Examination. In that e-mail, Ortiz falsely represented to me and the other students that USAT was "surprised" by ECFMG's decision.

36. Subsequent to this e-mail, me and the other students demanded a physical meeting with Ortiz to discuss face to face these surprising events.

37. On November 16th, 2018, USAT Officials sent an electronic mail to some Plaintiffs invoking a meeting on that same date at around 5:30 pm.

38. On December of 2018, I noticed that USAT Officials vacated the USAT college of medicine school in Puerto Rico.

39. USAT took me and the other students medical school documents to an unknown location.

40. However, USAT never resolved me, and the other student's situation and we were unable to take the United States Medical Licensing Examination via USAT.

41. On (11/12/2018) I requested USAT to deliver certain transcripts about my medical education and they did not provide the same.

42. Instead, on (31/12/2018) USAT began to send me invoices from their Colorado Office with fabricated expenses and costs, requesting me to make more payments.

43. However, these transcripts of medical education from USAT were not accepted by other medical schools.

44. On (April/2020), I applied to my new school Universidad Autónoma de Guadalajara, which did not accept the USAT medical education, also I applied to other schools that neither accepted the USAT medical education.

45. Therefore, I had to start my medical education again as if I did not receive any.

46. Based on the above, USAT received a sum amount of ($3,925) from my (personal savings), without providing a valid medical education in Puerto Rico.

47. Based on the above, USAT received a sum amount of ($3,925) from my (personal savings), for providing an invalid medical education that resulted in my inability to take the United States Medical Licensing Examinations.

48.   All the USAT Officials participated in the false representation that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

49.   USAT falsely represented to me and many other students throughout 2017 and 2018 that it would provide a valid medical education and I would be able to take the United States Medical Licensing Examinations.

50.   However, the reality is that USAT did not provide to me and the other students a valid medical education, which resulted in me being unable to take the United States Medical Licensing Examinations.

51.   From the (05/17/2018) until (15/12/2018), USAT and the USAT officials kept repeating their false statements that they were providing a valid medical education and I would be able to take the United States Medical Licensing Examination. USAT received the sum amount of ($3,925) from my (personal savings)

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. sec. 1746.

Dated at San Juan, PR, this 29 day of March, 2021.

_____

(Lucero Rodríguez Fernández)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **SUJEIL PEÑA-TORRES; et als.**<br><br>PLAINTIFFS<br><br>VS.<br><br>**UNIVERSITY OF SCIENCE, ARTS AND TECH a/k/a USAT a/k/a MEDICAL COLLEGE OF LONDON a/k/a MALINA MEDICAL COLLEGE a/k/a METROPOLITAN INNOVATIVE GROUP, INC. a/k/a USAT MONTSERRAT LLC; et als.**<br><br>DEFENDANTS | CIVIL NO. 19-1707<br><br>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO);<br>FRAUDULENT INDUCEMENT;<br>BREACH OF CONTRACT;<br>UNJUST ENRICHMENT;<br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**ANSWERS TO FIRST SET OF INTERROGATORIES AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:  CO-DEFENDANT, DANIELA CABRERA PUJADAS
Through its legal counsel,
CHARLES A. CUPRILL, P.S.C. LAW OFFICES

FROM:  LUCERO RODRIGUEZ-FERNANDEZ
Through his legal counsel,
VICTOR M. RIVERA-RIOS

Comes now, **Lucero Rodriguez-Fernandez**, hereinafter referred as "Plaintiff" and/or as "me, myself, or "I", through counsel, hereby submits his Answers to Co-Defendant, **Daniela Cabrera Pujadas** ("Co-Defendant") First Set of Interrogatories and Request for Production of Documents.

**PRELIMINARY STATEMENT**

Plaintiff has not completed the investigation, discovery, or analysis, of all the facts of this case and has not completed preparation for trial. Accordingly, all of the following responses are provided without prejudice to Plaintiff's right to supplement or amend discovery responses

pursuant to the terms of the Federal Rules of Civil Procedure, or introduce at trial any evidence that is subsequently discovered relating to proof of presently known facts and to produce and introduce all evidence whenever discovered relating to the proof of subsequently discovered material facts. Moreover, facts, documents and things now known may be imperfectly understood and accordingly, such facts, documents, and things, may not be included in the following responses. Plaintiff reserves the right to reference, discover or offer into evidence at the time of trial any and all facts, documents and things notwithstanding the initial responses and objections interposed herein. Plaintiff further reserves the right to reference, discover, or offer into evidence at the time of trial any and all facts, documents and things which it does not presently recall but may recall at some time in the future.

## DEFINITIONS

The following definitions are incorporated by reference in all of Plaintiff's specific responses and objections to Plaintiff's Answers to Defendants First Set of Interrogatories, Request for Admissions and Requests for Production of Documents:

1.      "Irrelevant" means not relevant to the claims or defenses of any party involved in the pending action and not reasonably calculated to lead to the discovery of evidence admissible as to those issues.

2.      "Impermissibly overbroad" means irrelevant, burdensomely and unnecessary to the extent the set of interrogatories seek: (1) information about individuals or entities not parties to this action; and/or (2) information pertaining to persons' activities and/or events that are outside the scope of the present litigation.

3.      "Vague" means ambiguous or not specified with reasonable particularity.

4.      "Unduly burdensome and oppressive" means that: (1) it is impossible to produce

2

such document or information in a complete and sufficient manner without making a complex or onerous investigation; (2) the collection or reproduction of such document or information is financially burdensome or unfeasible; or (3) the document or information sought has been previously produced to a party within this action and served upon every attorney involved in the litigation.

5.      "Not discoverable" means outside of the scope of the present litigation because it is either, and/or irrelevant, impermissibly overbroad and/or vague.

6.      "Defendants" mean the named individuals in the caption of the complaint.

## GENERAL OBJECTIONS

1.      Plaintiff objects to Defendant's interrogatories on the grounds that they seek disclosure of information protected by the attorney-client, work product, and self-critical analysis privileges. To the extent that Plaintiff inadvertently discloses information that may arguably be protected from discovery under attorney-client privileged the work product doctrine, the self-critical analysis privileged or any other applicable privilege, such inadvertent disclosure does not constitute a waiver of any such privilege.

2.      Plaintiff objects to Defendant's interrogatories to the extent that Defendants' definitions and instructions purport to impose requirements beyond the Federal Rules of Civil Procedure anchor purport to give meaning to terms beyond Plaintiff's normal connotation.

3.      Plaintiff objects to Defendant's interrogatories insofar as they seek information concerning matters unrelated to the subject matter of this lawsuit, on the ground that it is overly broad, unduly burdensomely and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Plaintiff objects to Defendant's interrogatories to the extent that they are not limited

3

in time frame and are overly broad and unduly burdensome because they are more than inclusive of the relevant time period at issue in this case.

5.    Plaintiff objects to Defendant's interrogatories to the extent that they call for information that is not currently in her possession, custody, or control.

6.    The responses set forth below are made without in any manner waiving (a) the right to object to the use of any response for any purpose in this action or any other actions, on the grounds of privilege, relevance materiality, or any other appropriate grounds; and (b) the right to revised corrects supplement, or clarify any of the responses provided below at any time.

These General Objections are applicable to each and every one of the following responses and objections, and failure to repeat an objection in response to a specific request is not a waiver of the objection. Further, when Plaintiff specifically repeats one or more of these general objections in response to a specific interrogatory, such specific response is not a waiver of these general objections.

Subject to and without waiving these general objections, and subject to and without waiving the specific objections noted below, Plaintiff responds as follows:

## INTERROGATORRIES

**INTERROGATORY 1**

1. As to the person who answers these Interrogatories state:

a. Your full name, including your two last names and any nickname;

b. Physical and postal address, as well as a telephone number where you can be contacted.

c. Identify the following circumstances if you exercise any profession, work or business: (i) nature, type or classification of profession, work or business; (ii) exact name and address of your

4

place of business; (iii) if you are an employee, state the name of your employer as well as the exact address of your current job.

d. State your relationship with USAT.

**RESPONSE:**

    a.  Lucero Rodríguez Fernández.

    b.  Calle Lisa Este AM 16 Toa Baja PR.

    c.  Medical student at Universidad Autónoma de Guadalajara. Located at Av. Patria No. 1201, Col. Lomas del Valle C.P 45129, Zapopan, Jalisco, Mexico.

    d.  Ex alumna State your relationship with USAT.

**INTERROGATORY 2**

State the basis for your statement at paragraph 2 of the Third Amended Complaint (the "Complaint") to the effect that Cabrera was an officer and director of USAT and submit all documents in support thereof

**RESPONSE:**

Daniela Cabrera ("Cabrera") was the Clinical Coordinator- Student Affairs of Puerto Rico. I only received e-mails from her related to information as to the student council.

See Attachment.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 3**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

5

**RESPONSE:**

The Plaintiff identifies the following individuals who may have discoverable information and may be used to support the Plaintiff's theories:

1.    Sujeil Peña-Torres ("Peña") -

a.    Peña must be contacted through the undersigned counsel.

b.    Peña was a student applicant and student of the USAT PR Branch.

c.    Peña has personal knowledge of the facts alleged in the Complaint. In summary, Peña has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the Puerto Rico Branch ("PR Branch") of the University of Science, Arts and Tech a/k/a USAT a/k/a Medical College of London a/k/a Malina Medical College a/k/a Metropolitan Innovative Group, Inc a/k/a USAT Montserrat LLC (jointly referred as "USAT"), 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the joint owners of USAT, who are Orien L. Tulp ("Tulp") and Carla M. Konyk ("Konyk")  Manuel José Ortiz-Bustillo ("Ortiz"), Yanire Bustillo ("Bustillo"), Daniela Cabrera-Pujadas ("Cabrera") and Karen Baldwin ("Baldwin") (jointly referred as "USAT Officers"), amongst other unknown persons. 3) how USAT and the USAT Officers (jointly "Defendants") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USC sec. 1961, *et seq.* because the Defendants caused injuries to the Plaintiffs and various other medical students ("RICO victims") because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from banking institutions ("Banks") that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4)

6

how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from United States Regulatory Agencies ("Regulatory Agencies"), 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the

7

tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the Educational Commission for Foreign Medical Graduates ("ECFMG") because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

2.     Jose E. Blasco-Jusino ("Blasco") -

a.     Blasco must be contacted through the undersigned counsel.

b.     Blasco was a student applicant and student of the USAT PR Branch.

c.     Blasco has personal knowledge of the facts alleged in the Complaint. In summary, Blasco has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so

and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and

9

certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

3.    Lucero Rodriguez-Fernández ("Rodriguez") -

a.    Rodriguez must be contacted through the undersigned counsel.

b.    Rodriguez was a student applicant and student of the USAT PR Branch.

c.    Rodriguez has personal knowledge of the facts alleged in the Complaint. In summary, Rodriguez has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their

10

purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

4.      Lisa M. Torres-Colon ("Torres") -

11

a.      Torres must be contacted through the undersigned counsel.

b.      Torres was a student applicant and student of the USAT PR Branch.

c.      Torres has personal knowledge of the facts alleged in the Complaint. In summary, Torres has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though

12

the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

5.     Joffre E. Gómez-Frontera ("Joffre") -

a.     Joffre must be contacted through the undersigned counsel.

b.     Joffre was a student applicant and student of the USAT PR Branch.

c.     Joffre has personal knowledge of the facts alleged in the Complaint. In summary, Joffre has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and

13

studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality

14

they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

6.  Zabdiel A. Nieves-Rivera ("Zabdiel") -

a.  Zabdiel must be contacted through the undersigned counsel.

b.  Zabdiel was a student applicant and student of the USAT PR Branch.

c.  Zabdiel has personal knowledge of the facts alleged in the Complaint. In summary, Zabdiel has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the

15

Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the

16

medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

7.      Enny de Jesús-Ureña ("Enny") -

a.      Enny must be contacted through the undersigned counsel.

b.      Enny was a student applicant and student of the USAT PR Branch.

c.      Enny has personal knowledge of the facts alleged in the Complaint. In summary, Enny has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers

17

participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a

18

licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

8.    Loraima M. Rosado-Villafañe ("Loraima") -

a.    Loraima must be contacted through the undersigned counsel.

b.    Loraima was a student applicant and student of the USAT PR Branch.

c.    Loraima has personal knowledge of the facts alleged in the Complaint. In summary, Loraima has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would

take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred

20

by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

9.     Paola M. Prosper-Crespo ("Prosper") -

a.     Prosper must be contacted through the undersigned counsel.

b.     Prosper was a student applicant and student of the USAT PR Branch.

c.     Prosper has personal knowledge of the facts alleged in the Complaint. In summary, Prosper has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations

21

and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

10.     Wendoly M. Vazquez Oliveras ("Vazquez") -

a.     Vazquez must be contacted through the undersigned counsel.

22

b.      Vazquez was a student applicant and student of the USAT PR Branch.

c.      Vazquez has personal knowledge of the facts alleged in the Complaint. In summary, Vazquez has personal knowledge as to: 1) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 2) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 3) how USAT was composed by the USAT Officers, amongst other unknown persons. 3) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 4) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 5) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations

23

from Regulatory Agencies because USAT was not licensed and certified, 6) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 7) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 8) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 9) any other matter deemed necessary that arises from the facts alleged in the Complaint.

11.    Orien L. Tulp ("Tulp") -

a.    Tulp was the Owner and President of USAT.

b.    Tulp has personal knowledge of the facts alleged in the Complaint. In summary, Tulp has personal knowledge as to: 1) how Tulp created USAT in Montserrat, 2) how Tulp created locations within the United States to open USAT branches, 3) how Tulp created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Tulp located the main USAT

24

offices in Colorado, 5) how Tulp directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Tulp directed that Konyk handle and receive all Tuition payments, 7) how Tulp directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the

25

RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

12.     Carla M. Konyk ("Konyk") -

a.      Konyk was the Owner and Vice President of USAT.

b.      Konyk has personal knowledge of the facts alleged in the Complaint. In summary, Konyk has personal knowledge as to: 1) how Konyk created USAT in Montserrat, 2) how Konyk

26

created locations within the United States to open USAT branches, 3) how Konyk created USAT branches in Florida, Texas, Maryland, Colorado and Puerto Rico, 4) how Konyk located the main USAT offices in Colorado, 5) how Konyk directed that all student tuition and fee payments be made to the USAT offices in Colorado, 6) how Konyk handle and receive all Tuition payments, 7) how Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 8) how Ortiz created and structured the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that

27

they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

13.     Manuel José Ortiz-Bustillo ("Ortiz") -

a.     Ortiz was the Associate Dean of the PR Branch of USAT.

b.    Ortiz has personal knowledge of the facts alleged in the Complaint. In summary, Ortiz has personal knowledge as to: 1) how Ortiz was originally a student of USAT, 2) how Ortiz reached and agreement with Tulp to create the PR Branch of USAT, 3) how Ortiz coordinated with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Ortiz recruited students to apply to the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an

enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

30

14.     Yanire Bustillo ("Bustillo") -

a.     Bustillo was an employee of the PR Branch of USAT.

b.     Bustillo has personal knowledge of the facts alleged in the Complaint. In summary, Bustillo has personal knowledge as to: 1) how Bustillo worked as an employee of the PR Branch of USAT, 2) how Bustillo coordinated with Konyk who was located the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and

31

certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

15.     Daniela Cabrera-Pujadas ("Cabrera") -

a.      Cabrera was an employee of the PR Branch of USAT.

b.      Cabrera has personal knowledge of the facts alleged in the Complaint. In summary, Cabrera has personal knowledge as to: 1) how Cabrera and Ortiz coordinated with Tulp and Konyk who were located the main USAT offices in Colorado, 4) how Cabrera and Ortiz directed that all student tuition and fee payments be made to the USAT offices in Colorado, 5) how Cabrera and Ortiz handle and receive all Tuition payments, 6) how Tulp & Konyk directed and delegated to Ortiz as Associate Dean to create and handle the PR branch of USAT, 7) how Ortiz created and structured the USAT branch, 8) how Cabrera and Ortiz recruited students to apply to the USAT branch, 9) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 10) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 11) how USAT was composed by the USAT Officers, amongst other unknown persons, 12) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 13) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 14) how the USAT officers were part of an enterprise because their purpose was to continue to recruit

33

the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 15) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 16) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 17) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 18) any other matter deemed necessary that arises from the facts alleged in the Complaint.

16.    Karen Baldwin ("Baldwin") -

a.    Baldwin was an employee of USAT.

b.    Baldwin has personal knowledge of the facts alleged in the Complaint. In summary, Baldwin has personal knowledge as to: 1) how Baldwin worked as an employee of USAT, 2) how Baldwin worked with USAT from the main USAT offices in Colorado, 3) how the Plaintiffs are medical students whom applied and studied at the PR Branch of the USAT, 4) how USAT is a foreign medical school from the island of Montserrat that did not have any licenses or certifications to provide medical school education to any persons within the United States, 5) how USAT was composed by the USAT Officers, amongst other unknown persons. 6) how Defendants violated RICO because the Defendants caused injuries to the RICO victims because they received money from the RICO victims, including Plaintiffs, whom also would incur in loans from Banks that would be given directly to the Defendants based on the false representation that they could provide medical school education to any persons within the United States when in fact they couldn't, 7) how the USAT Officers participated jointly in the operation and management of the enterprise, USAT, by continuing to actively recruit RICO victims, including the Plaintiffs based on the false representations that they could provide medical education within the United States when they were not certified to do so and by collecting payments from the prospective RICO victims whom would take loans from Banks, wire transferring said loans directly to Defendants bank accounts in Colorado, even though the RICO victims would later not be allowed to take medical examinations from Regulatory Agencies, 8) how the USAT officers were part of an enterprise because their purpose was to continue to recruit the Plaintiffs and other RICO victims under false representations and continue to collect wire transfer payments from Banks based on the false representations that they were licensed and certified to provide medical education, the USAT officers met at various times to actively recruit and collect money from the Plaintiffs, the RICO victims and Banks, even

35

though the Plaintiffs and other RICO victims would not be allowed to take medical examinations from Regulatory Agencies because USAT was not licensed and certified, 9) how the Defendants continued to recruit RICO victims, including the Plaintiffs, under the false representations that they were licensed and certified to provide medical education in the United States when in reality they were not licensed or certified and the RICO victims were unable to take any medical examinations from Regulatory Agencies because the Defendants were not licensed and certified to provide said medical education, 10) how during approximately two years, 2071 and 2018, the Defendants falsely represented to the Plaintiffs and RICO victims that they could pay for the medical school by taking out loans from Banks, such that the Defendants would provide the same false representations to Banks that the Plaintiffs and RICO victims would receive a valid medical education, so that the Banks would wire transfer to USAT accounts at Colorado the loan payments under the false pretense that it was for the payment of the tuition and any other expenses of a licensed and certified medical institution, even though later on the Plaintiffs and other RICO Victims to their surprise would be notified that they were unable to take any medical examinations of the Regulatory Agencies such as the ECFMG because USAT is not considered a licensed and certified medical school in the United States, 11) how these patterns of fraudulent activities incurred by the Defendants caused injuries to the Plaintiffs, such as economic and emotional damage, and 12) any other matter deemed necessary that arises from the facts alleged in the Complaint.

Plaintiff reserves the right to announce any other witnesses during the process of discovery. Plaintiff reserves the right to call any individuals named by the Defendants whose name becomes known through discovery or otherwise. Plaintiff reserves the right to call any individuals to testify for impeachment purposes.

36

**INTERROGATORY 4**

State the facts supporting your allegations of paragraph 3 of the Complaint

**RESPONSE:**

The USAT and USAT officials violated the RICO Act, because they received approximately three thousand nine hundred twenty-five dollars ($3,925.00) from direct payments I made to USAT directly to Colorado. The payment for the student tuition and fees issued to USAT was based on the false representation that they could provide medical education within the United States when they were not certified to do so and later, I was not allowed to take the United States Medical Licensing Examinations.

USAT is also trying to collect from me the sum amount of eleven thousand three hundred ninety-five dollars ($11,395.00) for taking their classes, when said classes are not validly accredited.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 5**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 6**

State the facts supporting your allegations of paragraph 4 of the Complaint.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 4.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 7**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 8**

As to paragraph 34 of the Complaint state the nature and extent of Cabrera's contact with you and your interview by her, specifically stating date, time and place of all contacts and interviews in chronological order, narrating what Cabrera told you as to each, including her representations as to USAT.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please

refer to the previous Answer of Interrogatory 2.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 9**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 10**

State Cabrera's involvement with the facts alleged in paragraph 35 of the Compliant.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 11**

39

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 12**

Separately as to paragraph 36 and 37 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2.



The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 13**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons separately as to paragraphs 36, 37 and 38.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 14**

As to paragraph 38 of the Complaint, state the specific materials in which the name of Cabrera appears, and the representations made by her in each, that induced you to make the decision to apply to USAT, thinking that you were going to receive the education in medicine and that you would be able to take the United States Medical Licensing Examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 2.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 15**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 16**

As to paragraph 43 of the Complaint, state Cabrera's participation in the White Coat Ceremony, if any.

**RESPONSE:**

Cabrera was present on USAT White Coat Ceremony like Faculty Member. I saw Cabrera

42

there. I hereby attach photographs.





See attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

in order to include any other newly discovered evidence.

**INTERROGATORY 17**

As to paragraph 44 of the Complaint, state Cabrera's participation in the facts alleged therein, indicating if Cabrera was located in Colorado.

**RESPONSE:**

Cabrera was not located in Colorado. She was located in Puerto Rico. Notwithstanding, all the payments that I made for the PR Branch of USAT were going to Colorado. I used a credit card and when I received the credit card receipt, it mentioned that it was sent to Colorado.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 18**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 19**

As to paragraph 45 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

**RESPONSE:**

44

I was assisted by an USAT official in order to make the payments utilizing a credit card. All payments made to USAT with the credit card were confirmed by a printed receipt. I kept a copy of the receipts which states that the credit card payment was sent to the USAT office in Colorado. USAT has in their possession evidence of them receiving my credit card payments which confirms that the payment was sent to Colorado. I have the original credit card receipts.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 20**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each and state the name of USAT's attorneys.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 21**

As to paragraph 59 of the Complaint, state Cabrera's participation or involvement in the facts alleged therein.

**RESPONSE:**

On September of 2018, I was notified with other Plaintiffs by the USAT Officials of the ECFMG irregularities. On September of 2018, the USAT Officials notified me and the other

45

Plaintiffs of a telephone conference to be held on or around September 25 and 26 of 2018 to discuss the ECFMG irregularities.

I was not present in the telephone conference. However, the other Plaintiffs did participate in the telephone conference and have knowledge of the same. I was told around that time by the Plaintiffs what occurred in the telephone conference.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 22**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 23**

As to paragraph 60 of the Complaint, state to whom the communications referred to therein were forwarded and by whom as to each communication and submit copies thereof.

**RESPONSE:**

I asked several questions to USAT officials requesting information related to ECFMG accreditation which is related to the possibility of taking the USMLE. They never responded and were evasive.

46

I later received information related to the lack of eligibility for the United States Medical Licensing Examination, for students who expect to graduate after January 1, 2019, as in my case.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 24**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is being repetitive. Please refer to the previous Answer of Interrogatory 3.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 25**

As to paragraph 61 of the Complaint, state Cabrera's participation and/or involvement in the allegations set forth therein.

**RESPONSE:**

I received an email with instructions that we do not send additional information to ECFMG and to send all information regarding ECFMG to Karla Konyk.

See Attachments.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

47

**INTERROGATORY 26**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 27**

As to paragraph 65 of the Complaint, what were the false representations made by Cabrera to you, chronologically stating the time and date thereof and their nature.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I requested information from Medical Schools in Dominican Republic, the Caribbean and Mexico, to verify whether they would accept the credits and transcript from USAT. These medical schools informed me that they will not accept any credits from USAT. I eventually applied to a Medical School in Guadalajara, Mexico. However, they did not accept any of the USAT credits. Therefore, I had to start from scratch my medical education.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

48

in order to include any other newly discovered evidence.

**INTERROGATORY 28**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 29**

As to paragraph 68 of the Complaint, state chronologically by time and date Cabrera's participation and/ or involvement in the false representations by mail and wire representing that USAT would provide a valid medical education to you and that you would be able to take the United States Medial Licensing Examinations, setting forth the nature thereof, and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 30**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 31**

As to paragraph 71 of the Complaint, chronologically by time and date indicate all payments made by you to Cabrera and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 32**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

50

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 33**

As to paragraph 72 of the Complaint, state how you were fraudulently induced by Cabrera into applying, studying and paying for a medical education at the USAT PR Branch.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 34**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 35**

As to paragraph 73 of the Complaint, state how Cabrera orchestrated the scheme to defraud with the knowledge to deceive you by means of false or fraudulent pretenses, representations, promises or other deceptive conduct.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 36**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 37**

52

As to paragraph 74 of the Complaint, state how Cabrera falsely represented that the "satellite" schools were licensed and certified to assist you to be eligible for the medical licensing examinations.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 38**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 39**

As to paragraph 75 of the Complaint, state how Cabrera knowingly and frequently used interstate mail and wire transfer in furtherance of a fraudulent scheme and submit copies thereof.

**RESPONSE:**

53

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 40**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 41**

As to paragraph 76 of the Complaint, state how Cabrera requested payments for the "medical education" via interstate mail and wire transfer, requesting that all payments be made to USAT at the Colorado office, inducing you and other RICO Victims to understand that you were paying for a proper medical education because USAT had its proper licenses and certification and submit copy thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33

of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 42**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 43**

As to paragraph 77 of the Complaint, state how Cabrera directed mail and interstate wire transfers with Banks in furtherance of scheme and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 44**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 45**

As to paragraph 78 of the Complaint, state how Cabrera requested that the Banks give you and other RICO Victims student loans to pay for the USAT PR Branch medical education.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 46**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 47**

As to paragraph 79 of the Complaint, state how Cabrera fabricated certain costs and expenses when directing invoices to you and the other RICO Victims, demanding more payment for additional services for the "medical education" and submit copies thereof.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 48**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 49**

As to paragraph 80 of the Complaint, based on the above-mentioned facts, state how Cabrera incurred in fraudulent acts in violation of RICO.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 50**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 51**

58

As to paragraph 94 of the Complaint, indicate how Cabrera falls in the definition of an enterprise as defined by RICO.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 52**

As to paragraph 95 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 53**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33

59

of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 54**

As to paragraph 97 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 55**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

60

**INTERROGATORY 56**

As to paragraph 98 of the Complaint, state in detail in chronological sequence Cabrera's involvement and/or participation in the allegations of said paragraph.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 57**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 58**

As to paragraph 100 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

61

more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I paid USAT student tuition and fees. I paid approximately three thousand nine hundred twenty -five dollars ($3,925.00) to USAT for a fraudulent education. I would not have incurred in this payment of approximately three thousand nine hundred twenty -five dollars ($3,925.00), if I had knowledge that USAT was not authorized to operate a medical school in Puerto Rico.

I was paying the rent of $375 each month, WIFI, the food, the school supplies, the apartment supplies, and the gasoline for transportation. The scrubs, the white coat, and the expensive white coat tickets my family had to pay. We spent a lot of money for nothing. It was not only financial damages; it was also emotional.

Almost 5 years after and I am in constant worry, thinking, crying, nights without sleeping and stressing on how this is going to affect my future. We trusted them, we put our future on their hands.

In my case I started from zero, I had to spend money again in application for a new school of medicine and all that applies to be able to continue my career in a new school.

I suffered emotional damages when I found out that USAT was not authorized to operate a medical school in Puerto Rico.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 59**

As to paragraph 103 of the Complaint, state how Cabrera obtained your consent to enter

62

into an agreement with USAT through deceptive means.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 60**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 61**

As to paragraph 104 of the Complaint, state how Cabrera used false words and/or insidious machinations, describing each, to induce you to enter into an agreement with USAT, which without the existence of false words and insidious machination you would not have entered in the agreement.

**RESPONSE:**

63

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 62**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 63**

As to paragraph 105 of the Complaint, state how Cabrera knowingly did not disclose to you the lack of licenses and credentials of the USAT PR Branch and that USAT did not comply with rules pursuant to ECFMG.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 64**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 65**

As to paragraph 106 of the Complaint, state how Cabrera falsely represented to you the costs and expenses taken during the USAT PR Branch community.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 66**

Identify all persons who may have personal knowledge of the facts referred to in your

65

answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE**:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 67**

As to paragraph 107 of the Complaint, state how Cabrera entered into a valid contract with you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 68**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33

66

of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 69**

As to paragraph 108 of the Complaint, state how a valid contract exists because you and Cabrera consented to bind yourselves with regard to one another, in which you would pay Cabrera a sum amount of money in exchange for services.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 70**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory,

67

in order to include any other newly discovered evidence.

## INTERROGATORY 71

As to paragraph 109 of the Complaint, how as a result of Cabrera's fraudulent inducement, or in the alternative, breach of contract, and the nature thereof Cabrera is liable for compensatory, statutory, treble and liquidated damages pursuant to RICO, 18 USC 1962, et seq.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 72

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

## RESPONSE:

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

## INTERROGATORY 73

As to paragraph 112 of the Complaint, state how Cabrera's actions constitute an act or

68

omission which caused damage to you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 74**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 75**

As to paragraph 113 of the Complaint, state how Cabrera is liable to you pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no

69

more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 76**

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 77**

As to paragraph 121 of the Complaint, state how Cabrera is jointly and severally liable to for negligent and intentional tort actions.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 78**

70

Identify all persons who may have personal knowledge of the facts referred to in your answer to the preceding interrogatory, setting forth the particulars of those facts as to each such persons.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

**INTERROGATORY 79**

As to paragraph 122 of the Complaint, itemize the damages claimed by you.

**RESPONSE:**

The Plaintiff objects to this interrogatory on the grounds that it is in violation of Rule 33 of the Federal Rules of Civil Procedure which states that a party may serve on any other party no more than 25 written interrogatories.

Notwithstanding the objection, I suffered economic damages because I was induced by the false representations of USAT Officials that I was able to obtain a medical education in Puerto Rico in order to take the USMLE. Based on those false representations, I paid USAT student tuition and fees. I paid approximately three thousand nine hundred twenty -five dollars ($3,925.00) to USAT for a fraudulent education. I would not have incurred in this payment of approximately three thousand nine hundred twenty -five dollars ($3,925.00), if I had knowledge that USAT was not authorized to operate a medical school in Puerto Rico.

I was paying the rent of $375 each month, WIFI, the food, the school supplies, the

71

apartment supplies, and the gasoline for transportation. The scrubs, the white coat, and the expensive white coat tickets my family had to pay. We spent a lot of money for nothing. It was not only financial damages; it was also emotional.

Almost 5 years after and I am in constant worry, thinking, crying, nights without sleeping and stressing on how this is going to affect my future. We trusted them, we put our future on their hands.

In my case I started from zero, I had to spend money again in application for a new school of medicine and all that applies to be able to continue my career in a new school.

I suffered emotional damages when I found out that USAT was not authorized to operate a medical school in Puerto Rico.

The Plaintiff reserves the right to supplement or amend this Response to the Interrogatory, in order to include any other newly discovered evidence.

Pursuant to 28 U.S.C. Sec. 1746, I state, under penalty of perjury, that after reviewing the foregoing answers with my attorney, who assisted me with the translation of the English Questions and my Spanish Answers to English, the foregoing answers are true and correct.

In San Juan, Puerto Rico, on this 12 day of June, 2023.

_____
LUCERO RODRIGUEZ FERNANDEZ

72

**I HEREBY CERTIFY** that on this same date a true copy of this Answer to First Set of Interrogatories and Request for Production of Documents has been sent to Defendants' counsels.

In San Juan, Puerto Rico, on this 12 day of June, 2023.

*/S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
Mobile: (787) 565-3477
E-Mail: victorriverarios@rcrtrblaw.com
info.vrr@rcrtrblaw.com

73



## Proceso de Admision

**Admisiones Puerto Rico** <admisiones.pr@usat.edu>                    2 de abril de 2018, 11:04
Para: Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

Saludos Lucero,

Gracias por su interes, Estamos aceptando estudiantes transfer en su caso tendria que aplicar online como le informamos anteriormente los pasos adjuntos y en el area de transcripcion de creditos subir una foto o screenshoot de las notas y clases que a tomado y esta cursando para asi evaluar en que semestre caeria. Contestando su pregunta referente a prestamos no contamos con prestamos federales hasta el momento, en ese caso le ofrecemos prestamos estudiantiles privados el cual le administrare el link. Cualquier duda o pregunta no dude en comunicarse.

http://reliamax.hs-sites.com/edmed-program

Bonito Dia,

[El texto citado está oculto]
—
[El texto citado está oculto]

# USAT <span>MONTSERRAT</span>



## UNIVERSITY OF SCIENCE ARTS AND TECHNOLOGY, MONTSERRAT

## OLVESTON CAMPUS, FLORIDA and COLORADO; MD TRANSITION PROGRAM

### Enrollment Agreement and Academic Regulations for the Students of University of Science, Arts and Technology, Montserrat

**Regulations approved by the Governing Body on: 01 November 2010. Updated on 25 July 2014.**

#### Mission Statement

The University of Science, Arts and Technology, Montserrat is dedicated to the advancement of the learning, knowledge and understanding of medicine, science and fine arts. To help establish the highest standards in private education and prepare our students for the challenges they'll face in this increasingly complicated world.

#### Equal Opportunities Statement

The University's Equal Opportunities statement makes clear the University's commitment to equality of opportunity in all its activities and is consistent with the aims that its Race Equality policy makes clear. The University's Equal Opportunities statement is as follows:

University of Science, Arts and Technology, Montserrat is committed in all its activities to promoting and developing equality of opportunity in all areas of its work. In order to achieve this aim, the University seeks to:

make every effort to ensure that applicants, prospective and current students, and members of faculty and staff are valued on the basis of their merits, abilities and potential without discrimination on grounds of age, sex, disability, race, color, nationality, ethnic origin, social and economic status, religious belief, sexual orientation, marital status or other distinction;

work to foster good relationships between individuals from different groups;

observe and develop the diversity of skills and talents within its student body, current faculty and staff;

build an environment based on trust and mutual respect;

undertake a plan of action to make and enforce equality procedures;

regularly monitor the effectiveness of equal opportunity policies;

communicate to students, faculty, staff and others the support of equal opportunities within University policies.

**Academic Regulations**
**General Academic Regulations**
**Conduct of Students in all Programs**
**University Policies**
**Policies for Student Clinical Training**

Equal Opportunity in Education

All students must submit application and supporting documents along with the required fees in order to be considered for acceptance. Upon issuance of the letter of acceptance, students are required to attend orientation for new students and agree to adhere to the Academic Regulations of the University.

Registration and matriculation of students takes place at orientation. Students must read and understand Academic Regulations of the University. The University will document reception of the regulations by requiring the student's signature of such reception and keeping the same on file. No student shall be permitted to attend classes until properly registered.

All students are expected to adhere to the University's attendance policy as follows:
University of Science, Arts and Technology, Montserrat requires an attendance in all programs of 80%. All students are expected to arrive on time to all classes and examinations. Lateness may also accrue to represent possible absence at the discretion of the instructor.

Daily attendance lists will be used to track attendance. These lists shall be monitored on a monthly basis and held on file in the Administration Office and made available for inspection as necessary.

Initials: _LRF_

1

Students in violation of the attendance policy shall be required to appear for the following disciplinary procedures:

1. Student shall be verbally counseled by the instructor to determine the reasons for non-attendance, lateness, etc.
2. Student shall be given a written counseling if the situation does not resolve after verbal counsel.
3. Student shall be given an academic suspension notice if the situation is still unresolved after a verbal and a written counseling.
4. Student shall be required to withdraw from the program and no longer permitted to sit examinations as a final resort after all of the former procedures have been implemented without resolution.

**International Students**

Students from other Nations will be given the appropriate documentation to prepare application for student visas. Once the necessary visa is obtained, the student will be instructed on travel and arrival arrangements into Montserrat.

Any student who has been accepted to the University is required to register and matriculate into their program no later than two weeks after their arrival is confirmed. In the event of non-arrival, the student's next of kin shall be contacted to verify the student's whereabouts. If it is determined that the student is not planning to attend the University after being given documentation to join the program the student will be issued a letter of non-acceptance and the proper authority shall he alerted to the potential fraudulent activity.

Under the authority of the Government of Montserrat, the Honorable Premier has granted The University of Science, Arts and Technology, Montserrat the authority for its constituent Colleges to award first and higher degrees. The following regulations have been made in accordance with those provisions.
(These Regulations apply to all students of the University irrespective of their program of study,)

Have completed to the satisfaction of the relevant teaching staff the program of study prescribed in the regulations for the award for which the student is registered;

Have successfully completed all parts of the examination prescribed for the award and shown a competent knowledge in the examination as a whole;

Where a degree is classified, have shown evidence of sufficient work at or above the pass mark for all classes awarded.

b. A student who has not made satisfactory arrangements to settle, in accordance with the relevant Regulations, all outstanding debts or other financial obligations to the College, or to any central body of the University of Science. Arts and Technology, Montserrat will not be:

1.)    Informed of the results of any examination taken;
2.)    Awarded any degree or other qualification, to include official transcripts.

**D. Withdrawal from examinations**

1.)    A student who is registered for an award, has completed satisfactorily the prescribed period of study and any other conditions as given in Regulation D above, will be regarded as eligible for admission to the relevant examination of examinations unless he/she provides satisfactory evidence of illness or other good cause to the Dean of the relevant program  not less than seven days before the date of the examination as published by the College, which the student is expected to sit at the discretion of the Dean of the relevant program.  The student maybe permitted to be examined as if for the first time normally at the next occasion when the examination is offered. The passing grade for all examinations shall be 70% or a letter grade of "C."

2.)    A student who is eligible to sit an examination and who is absent from that examination without having been permitted to withdraw according to the provisions of Regulation above, will be regarded as having attempted the examination, and will be awarded a mark of zero for that examination. Such a student may be permitted to attempt the examination again if the regulations for the award permit such reassessment and at the discretion of the relevant Dean.

3.)    At the discretion of the Chairman or the relevant Dean, a student who is eligible to sit an examination who is absent from that examination without having been granted permission to withdraw according to the provisions of Regulation above, or a student who is present at the examination but unable to complete the examination, nay submit, evidence of illness or other good cause which affected his/her ability to sit the examination at the required time and which he/she was unable, for reasons found acceptable to the Dean of Academic Affairs, to present in advance of the examination.

4.)    Schools may define circumstances in which a student may continue to attend a course or other element of a program of study after having been permitted to withdraw from the examination-for that course or program element.

5.)    The Dean of Academic Affairs of the relevant College will advise the Head of School in cases where a student who is permitted to be examined as if for the first time after having been permitted to withdraw from the examination (or the second/third time if the examination in question is itself a second/third attempt) is not considered to be eligible to sit the examination without further attendance on the program of study.

**E. Reassessment/failure**

A student who fails an examination at the first attempt may be permitted, at the discretion of the relevant Dean, to attempt the examination again on not more than two occasions. Any conditions regarding reassessment will be specified before the examination and the examination must be taken at the next occasion when the examination is offered. When such reassessment requires further attendance, the Dean of the relevant College will advise the appropriate Head of School.

**F. Illness**

Special provision for illness of other good cause is given in individual program regulations, including provisions for undergraduate programs based on course units. Where illness has affected a student's ability to sit the examination, see Regulation D above.

**G. Methods & Timing of Assessment**

The timing of examination shall be specified in individual program regulations; however, the timing on examination held for the purpose of reassessment may be determined by the relevant Dean of Academic Affairs.
Assessment methods may include the following:

Written examinations;
Practical examinations;

Initials: ___LRF____                                                                    2

Essays and/or reports;
Dissertations;
Written accounts of laboratory experiments or of fieldwork;
Multiple-choice questions;
Oral examinations;
Assessment of laboratory, fieldwork or clinical practice or of other aspects of a
candidate's performance during a course.

The venues for formal written examinations will be designated by the College and published in advance of the examination.

Candidates are required to present themselves at the designated venue for the examination(s) for which they are required. Candidates unable to present themselves for examination at the designated venue due to exceptional circumstances may be considered by the Dean of Academic Affairs for the relevant College for alternative arrangements. Requests for alternative venue arrangements should be submitted to the Dean of Students, with the details of the request written, signed and submitted within seven days of the date of the examination.

On application to the Dean of Students special arrangements may be made for students who are timetabled for two examinations which overlap or coincide.

Where a candidate has been granted alternative examination arrangements, the Dean of Students will determine timing of the alternate arrangements. All alternative arrangements will be scheduled for the earliest opportunity following the published examination date and in no case shall a candidate be permitted to sit an examination before the normal scheduled time.

The use of examination answer books or other examination stationery by students for any purpose or any occasion other than participation in a recognized college examination may constitute misconduct under the College regulations and be liable to disciplinary procedures.

**H. Representations concerning decisions of the Board of Examiners**

Except as provided below, no decision of a properly convened and constituted Board of Examiners, acting in accordance with these and any other relevant College regulations may be modified. Representations concerning decisions of Boards of Examiners, which are based solely upon a challenge to the academic judgment embodied in any such decision will not be considered.
A Board of Examiners may, at its discretion, reconsider a decision in the following circumstances:

a) Where a candidate requests such reconsideration and provides adequate evidence which is acceptable to the Board of Examiners that the candidate's examination was adversely affected by illness or other factors which the candidate was unable, or for valid reasons unwilling, to divulge before the Board of Examiners reached its decision;

b) Where there is clear evidence produced by the candidate or any other person of administrative error or that the examination was not conducted in accordance with the Instructions/Regulations.

**I. AWARDS**
1.1     Awards of the University of Science, Arts and Technology, Montserrat conferred by University of Science and Medicine (hereinafter referred to as "the College")
1.2
A) UNDERGRADUATE DEGREES
        Bachelor of Science (BSc)
        Bachelor of Arts (BA)
        Bachelor of Medicine and Bachelor of Surgery (MBBS)
        Bachelor of Dental Surgery (BDS)
B) GRADUATE DEGREES
        Master of Science (MSc)
        Master of Arts (MA)
        Master of Public Health (MPH)
        Doctor of Public health (DPII)
        Medical Doctor (MD)
        Doctor of Dental Medicine and Surgery (DDS)
        Doctor of Philosophy (PhD)
C) OTHER
        The Faculty and Board of Directors of the University may establish other-related degrees and diplomas.

Initials: __LRF__  _(signature)_                                                                    3

## II. General Regulations for Examinations

### A. General

A student taking an examination leading to an award conferred by the College either under its own authority or that delegated to it to confer awards of the University of Science, Arts and Technology, Montserrat, whether at a first or subsequent attempt, shall be examined in accordance with such regulations as are current when the student enrolls.

### B. Admission to Examinations

a. Annual enrollment for a program of study and its constituent courses includes registration for the relevant examinations.

b. In order to be eligible for admission to an examination, a student must complete to the satisfaction of teaching staff the prescribed period of study and satisfy any other conditions which may be prescribed by the College in the Regulations or otherwise, including making full payment of College fees or other charges and settling all outstanding financial obligations including confirming at the specified time to the School where the student is registered the details of the examination or examinations which he/she expects to sit. The passing score for all examinations shall be 70% or the letter grade of "C."

c. The use of examination answer books or other examination stationery by students for any purpose or any occasion other than participation in a recognized college examination may constitute misconduct under the College regulations and be liable to disciplinary procedures.

All students must adhere to the following USAT University Policies while enrolled in all programs:

**Behavioral Policies:** *Alcoholic Beverages, Narcotics, and Drugs* USAT does not permit the use, possession, or serving of alcoholic beverages, narcotics, or drugs in or around any college building/property or at any college sponsored event held off campus. This policy applies to all social functions or events that are held in or around college buildings. Any student or group of students who are under the influence of intoxicants and fail to conduct themselves in a reasonable manner by violating recognized standards of conduct are subject to disciplinary action and/or dismissal from the school. *Campus Disruptions and Violence* Any act of violence or intimidation, any seizing of any portion of property, or any unauthorized activity which prevents the normal operation of the college in any way by any individual or group will be considered in direct opposition to the necessary operation of the college. Action will be taken immediately, including the probability of expulsion, regardless of the number involved. Similar action will be taken against those who advocate such described activities.

**Discipline Appeal:** USAT will establish a committee composed of students, faculty, and staff to deliberate student discipline appeals. The entire appeal process is focused on fairness and "due process" for students. NOTE: All discipline appeals must be formally submitted to the College no later than 10 working days after the discipline has been imposed.

**Firearms and Fireworks:** Possession of firearms on the college campus at any time will result in immediate dismissal from the college and/or expulsion from the campus. Law enforcement officers may have firearms in their possession while on campus. Students or visitors arriving on campus with firearms in their possession must check them in at Campus Security and may pick them up when leaving campus. Campus Security must approve any exception. Possession and use of fireworks on the college campus is prohibited. Occupants of off-campus housing are subject to city, county, and state ordinances governing the use of firearms and fireworks.

**Gambling:** Gambling of all sorts is prohibited on campus. The privilege of playing card games is given on the assumption that no gambling takes place. However, if gambling does take place and is detected, this privilege will be unconditionally withdrawn.

**Harassment:** USAT is committed to maintaining a working and educational environment, which fosters appropriate and respectful conduct and communication between all persons within the college community. Conduct that is deemed inappropriate, offensive, or disrespectful toward others will not be tolerated and may be cause for suspension or expulsion from the program.

**Honesty:** Students are expected to be honest in all aspects of their college education. All work is evaluated on the assumption that the work presented is the student's own. Anything less is unacceptable. Students are subject to disciplinary action at the teacher's discretion. For student appeal, refer to Discipline Appeal. Examples of dishonest practice include but are not limited to: *Cheating* - The improper use of books, notes, other students' tests, or other aids during an examination. It is the responsibility of the student to obtain approval for the use of such aids prior to the time of the examination; otherwise, they will be considered improper. An "examination" is defined as "any testing situation in which the score will be used for credit in a course." *Plagiarism* - Submission or presentation of a student assignment as one's own in which substantial portions are paraphrased without documentation or are identical to published or unpublished material from another source (including another student's work). An assignment is defined as "any materials submitted or presented by a student for credit in a course."

**Initiations and/or Hazing:** The College does not approve of any form of hazing. Hazing is defined as any action taken or situation created intentionally to provide mental or physical discomfort or in any way to degrade the dignity of the individual student.

**Mandatory Behavioral or Medical Withdrawal:** It is the responsibility of the College to order a medical examination or behavioral evaluation if the director has reason to believe that a student has a serious medical or behavioral disability that substantially threatens or interferes with the welfare of the student, other members of the college community, or the educational process of the college. The director shall notify the student and appropriate agency (counselor, medical consultant, etc.) that such an evaluation is to be conducted. Any member of the Student Services division may initiate this process for students who are under his/her care or counseling. In this case, the student must be notified and the request submitted to the College. The student will have 24 hours before beginning the evaluation process. When appropriate, parents, guardians, or spouses will be notified of the process for the protection of the student. If the student refuses to consult with the evaluating agency, the College will, if practical, seek the help of the student's family in persuading the student to undergo the evaluation. If unsuccessful, the College will summarize the steps taken to secure the needed information and the reasons for withdrawal and then begin the withdrawal process. A copy of this order will be sent to the student. *Evaluation Conference* - The student will be provided written notice of a time and place at which the student,

Initials: LRF

4

the evaluating agency, and the College will confer on the final determination for mandatory withdrawal. The student has the option to have representation at this meeting, such as his/her own doctor, counselor, parents, or spouse. The director will refer to recommendations, reports, and evaluations as they relate to the case being considered.

**Power of Contract:** If it is determined that mandatory withdrawal is not appropriate, the College in consultation with other appropriate college personnel, doctor, or other resource person's) will provide a contract outlining the terms by which the student may remain enrolled at USAT. All parties involved will sign this document, including the student. If the terms of the contract are followed, the student may continue the educational process at USAT. If the terms are not followed, the College may then process the mandatory withdrawal. *Appeal* - As with other college policies, the student may appeal mandatory withdrawal through the Information Office and may have the evaluation process reopened.

**Policies for Student Clinical Training:**
1. Students must complete a total of 80 weeks of clinical training as follows: 50 weeks of core required specialties and 30 weeks of elective specialties.
2. For each week to be valid, a minimum of 12 hours per week must be documented and certified by each physician preceptor.
3. All students are required to have one Clinical Evaluation form completed and signed for each specialty in order to be given credit.
4. Any fees requested by the clinical sites related to the training shall be paid by the student directly to the designated representative of the clinical site.
5. Students shall be given a USAT Student ID Badge ONLY after paying the application, matriculation and the professional liability insurance policy fees.

**Issuance of Transcripts:**
**USAT retains the right to withhold student transcripts if the student defaults on his or her financial obligations to USAT.**

**Finality** - Decisions made by the College are final.

**Refund Policy: A pro-rated refund policy applies to all tuition payments and fees, with the exception of the application fee and the matriculation fee which are NON-Refundable. If credit card payments are refunded, a 3% processing fee may be charged to the student or applicant.**

**Smoking/Use of Tobacco:** Smoking is prohibited inside all college buildings.

**Soliciting:** any student, solicitor, agent, or salesperson operating in his/her own interests and for purposes not directly connected with college interests is not permitted to advertise on campus or participate in any college function without approval.

**Student Health Insurance:** The College does not provide health insurance for students. While it is not mandatory for students to have health insurance, it is strongly advised.

**I hereby understand and agree to the foregoing regulations and policies stated in this enrollment agreement and I acknowledge reading them and receiving a copy.**

*Student Signature:* Lucero Rodriguez Fernandez

*Printed Name:* Lucero Rodriguez Fernandez

*Date:* april 4, 2018

Initials LRF

5



# CREDIT CARD AUTHORIZATION FORM

Date _April 5, 2018_

I _Lucero Rodríguez Fernández_ hereby authorize the University of Science, Arts and
(NAME)       Technology (USAT) to charge my credit card listed below, not to exceed the amount shown.

☐ Please make this a recurring monthly charge on the _____ day of the month until further notice.

AMOUNT: $ _____ USD. AP Fee _X_ Mat. Fee _____ Lab Fee _____ Tuition Fee _____ Other _____

CREDIT CARD TYPE _Master Card_

CREDIT CARD # _5118 5850 3036 1925_

EXPIRATION DATE _11 / 20_

3/4 DIGIT CODE _379_

BILLING ADDRESS _Urb. Cumbres III - IV_
_Calle Kennedy #5 San Juan P.R. 00924_

BILLING ZIP CODE _____

NAME ON CARD _Lucero Rodríguez Fernández_
(As it appears on card)

YOUR EMAIL ADDRESS (for receipt) _lucero.rodriguez@upr.edu_

_____
(PRINT STUDENT NAME IF DIFFERENT FROM ABOVE)

_____     _April 5, 2018_
SIGNATURE                          DATE

**FAX OR MAIL TO:** USAT
Administration Office
4288 Youngfield Street
Wheat Ridge, CO  80033
Ph: 303-371-0252
Fax: 303-371-0117
Cell: 727-252-6205

Lucero Rodríguez, Application Fee

**USAT**
**1288 YOUNGFIELD ST.**
**WHEAT RIDGE, CO 80033**
**303-371-0252**

04 06 2018                    09:57:27

CREDIT CARD

MC SALE

| | |
|---|---|
| Card # | XXXXXXXXXXXX1925 |
| SEQ #: | 1 |
| Batch #: | 1 |
| Trans #: | 1 |
| Approval Code: | 253569 |
| TRANS ID: | MIUZ78AM00406 |
| Entry Method: | Manual |
| Mode: | Online |
| Avs Code: | S |

**SALE AMOUNT          $125.00**

THANK YOU

CUSTOMER COPY

**USAT, Montserrat, LLC.**

| USAT Administration Office |
|---|
| 4288 Youngfield Street |
| Wheat Ridge, CO 80033 |

**Invoice Date**
4/6/2018

**Invoice #**
3660

**TUITION INVOICE**

**Phone #**    727-252-6205    **Fax #**    303-399-4106

**Bill To:**

Lucera Rodriguez Fernandez
Calle Arturo Cadilla EB-20
Apt 1 Urb. Levitown
Toa Baja, PR 00949

**PLEASE PAY**

**THIS AMOUNT**

See Amount Below

Make checks payable to:    **USAT, Montserrat, LLC.**

☐ Please check box if address is incorrect or has changed, and indicate change(s) on reverse side.

Have E-Mail? _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PLEASE DETACH AND RETURN TOP PORTION WITH PAYMENT

**USAT, Montserrat, LLC.**

| USAT Administration Office |
|---|
| 4288 Youngfield Street |
| Wheat Ridge, CO 80033 |

| Due Date: | Upon Receipt |
|---|---|

**Please Pay Amount Below**

| Qty | Item | Description | Rate | Amount |
|---|---|---|---|---|
| 1 | Application Fee | One-time, Non-refundable Fee. | 125.00 | 125.00 |
| | Matriculation Fee | Matriculation Fee. Non-refundable one time fee. | 600.00 | 600.00 |
| | Insurance Fee. | Professional Liability Insurance for Medical Students | 995.00 | 995.00 |
| 2.7 | Technology Fees | Technology, Data Storage per Year. | 710.00 | 1,917.00 |
| 8 | Clinical Fees | Clinical Science Fee per Semester. | 690.00 | 5,520.00 |
| 8 | PR MD Program | Total of Required Semesters | 6,495.00 | 51,960.00 |
| | PR Anatomy Lab | Anatomy Lab (Required for all Students) | 895.00 | 895.00 |

We are proud to have you as our student.
Please remember that all tuition accounts must be paid in full prior to graduation. Thank you.

| **Total** | USD 62,012.00 |
|---|---|
| **Payments/Credits** | USD -45,330.00 |
| **Balance Due** | USD 16,682.00 |

**Billing Inqueries? Call**    727-252-6205



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registrar*

April 17, 2018

Re: Admission to MD Program

Dear Lucero Rodríguez:

Congratulations! On behalf of the Admissions Committee it is my pleasure to offer you a place to the MD program at the University of Science, Arts and Technology. This is typically a 4 years program of scientific and medical education, which includes not less than 6 semesters of basic medical sciences refreshers and updates as well as up to 2 academic years of clinical training in hospitals and clinics in various locations. You have been offered admission with advanced standing starting with a projected minimum of **8 semesters** to graduate based on your previous education and qualifications.

The tuition for the MD program is currently USD $6,495.00 per semester plus the following one-time fees, (Government) Matriculation fee (USD $600), Medical Student Malpractice Insurance fee (USD $995.00), Anatomy Lab fee (USD $895.00/lab), a Technology fee (USD $710.00), and a Graduation fee of (USD $900.00). The University will require official transcripts or validated copies of all college, university, postgraduate courses and undergraduate studies, if not previously submitted, within 6 weeks of receiving this acceptance letter so that maximum transfer credit may be computed and authenticated. The transcripts and records should be submitted to the USAT Admission Department, PO Box 364363, San Juan, Puerto Rico USA 00936-4363. We will then house them in a secure database where permanent academic records are maintained.

We look forward to your matriculation at our University and your progression through the MD program. Congratulations again on your acceptance to the University of Science, Arts and Technology.

Kindest Regards,

Orien L. Tulp, Ph.D., M.D., F.A.C.N., C.N.S.
Professor and President
University of Science Arts and Technology
MONTSERRAT
Cc: Dr. Konyk

*Located in Beautiful Montserrat, the 'Emerald Isle of the Caribbean'.*
*Registered in the USA (FL N07000011864), & Montserrat (Co Nr 17-2003)  USAT has been favorably listed by*
*The International Medical Education Directory (USA:IMED/FAIMER), and others.*
*An Equal Opportunity Employer - Excellence and Professionalism in Medical Education  © 2010 USAT*



**UPR**
Universidad de Puerto Rico

## Admission decision

**Gigi Capo** <g.capo@usat.edu>   17 de abril de 2018, 16:15
Para: lucero.rodriguez@upr.edu

Lucero:

Please discard previous admission letter for USAT PR.  Our apologies for the inconvenience.

Sincerely,



Lic. Hilda M. Capo Iriarte, CPL, MEd, NCC
**Registrar / Professional Counselor**
**USAT - Puerto Rico Campus**
Tel. 787-300-2111
Fax 787-300-2049

On Tue, Apr 17, 2018 at 1:43 PM, Gigi Capo <g.capo@usat.edu> wrote:
Dear Lucero:

Please see attached admission  letter for USAT - School of Medicine, MD Program.  Welcome to the USAT PR
Family!!  Please call us if you have any questions or concerns.

Sincerely,



Lic. Hilda M. Capo Iriarte, CPL, MEd, NCC
**Registrar / Professional Counselor**
**USAT - Puerto Rico Campus**
Tel. 787-300-2111
Fax 787-300-2049

📄 **Lucero Rodriguez - LOA May 2018.pdf**
150K



Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

## (sin asunto)

**Admisiones Puerto Rico <admisiones.pr@usat.edu>**                     23 de abril de 2018, 10:18
Para: Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

Saludos Lucero,

Comunicate lo antes posible con nosotros via telefono para discutir una opcion con tu caso de metodo financiero si aun estas interesada.


Cordialmente,
[El texto citado está oculto]
--

*Office of Admissions*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR  00919

Tel. (787) 300-2111    Fax (787) 300-2049

www.usat.edu

Case 3:19-cv-01707-WGY    Document 152-52    Filed 07/27/23    Page 91 of 108



# Cita con Decano

---

**Info Puerto Rico** <infopr@usat.edu>      25 de abril de 2018, 11:12
Para: Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

Buenos días Lucero:

Puedes pasar hoy por USAT si necesitas aclarar dudas con tu préstamo.

Por favor nos avisas si puedes venir y a que hora.

Gracias,

*Dhamaris Frías*
*Office of the Dean & Director*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919

Tel. (787) 300-2111 or (787) 300-2112

www.usat.edu

USAT
4288 YOUNGFIELD ST.
WHEAT RIDGE, CO 80033
303-371-0252 .

05/10/2018                          11:35:18
MID: XXXXXXXXXXX597        TID: XXXXX787

CREDIT CARD

VISA SALE

Card #                     XXXXXXXXXXXX2784
SEQ #:                                    1
Batch #:                                  8
Trans #:                                  1
Approval Code:                       695069
TRANS ID:                   388130628832252
Entry Method:                        Manual
Mode:                                Online
Avs Code:                                 G

SALE AMOUNT              $1100.00

THANK YOU

MERCHANT COPY

USAT
4288 YOUNGFIELD ST.
WHEAT RIDGE, CO 80033
303-371-0252
05/10/2018                    11:38:13
MID: XXXXXXXXXXXX597    TID: XXXXX787

CREDIT CARD

MC SALE

| | |
|---|---|
| Card # | XXXXXXXXXXXX1925 |
| SEQ #: | 2 |
| Batch #: | 8 |
| Trans #: | 2 |
| Approval Code: | 360880 |
| TRANS ID: | MIUL1IWOM0510 |
| Entry Method: | Manual |
| Mode: | Online |
| Avs Code: | S |

SALE AMOUNT            $900.00

X _Lucero Radríguez_
_Mat. / Tuition_
THANK YOU

MERCHANT COPY



Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

## Fwd: HORARIO DE COMIENZO DE CLASES - MAYO 2018

**Info Puerto Rico** <infopr@usat.edu>                     14 de mayo de 2018, 13:36
Cc: USAT Puerto Rico <manuel.ortizbustillo@usat.edu>, Omar Caro <o.caro@usat.edu>, Hilda Capo <g.capo@usat.edu>
Cco: lucero.rodriguez@upr.edu

Estimados estudiantes:

Por este medio les queremos informar que el próximo miércoles 16 de mayo de 2018, todos los estudiantes deberán presentarse a las facilidades de USAT PR, desde las **8:00am** hasta las **12:00** del mediodía.

Los esperamos.

Cordialmente,

*Dhamaris Frías on behalf of,*

*Dr. Manuel J. Ortiz Bustillo*
*Office of the Dean & Director*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR  00919

Tel. (787) 300-2111 or (787) 300-2112

www.usat.edu



**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY**
P.O. Box 364363. San Juan PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111   Fax (787) 300-2049
www.usat.edu
admisiones.pr@usat.edu

*Office of Admissions*

Estimado estudiante:

¡Saludos cordiales!

Revisando nuestros récords, hemos identificado que no has completado el proceso de admisión.

Si continúas interesado en ser parte de la Universidad de Ciencias, Arte y Tecnología de Puerto Rico (USAT), deberás completar los documentos requeridos en o antes del **16 de abril de 2018.** El próximo semestre comienza en **mayo 16, 2018.**

De no estar interesado en continuar recibiendo estas comunicaciones, agradeceremos nos dejes saber por e-mail (infopr@usat.edu) o por teléfono al 787-300-2111 o 787-300-2112.

En USAT queremos conocerte.

¡Te esperamos!

Departamento de Admisiones

*The University of Science, Arts & Technology does not discriminate based on race, creed, color, sex, sexual orienation, gender identity, national origin, disability or religion in its programs, activities or employment practices*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registrar*

May 23, 2018

## CERTIFICATION

This is to certify that ***Lucero Rodríguez,*** is currently enrolled as a full time student (17 credits) at the University of Science, Arts and Technology, Puerto Rico Extension. Lucero is a student in good standing in the MD program at our Institution.   I certify that the information of the student is correct to the best of my knowledge.

Please feel free to contact our Administrative office with any questions you may have regarding this student at 787-300-2111 or by email at hilda.capo@usat.edu .

Sincerely,

Hilda M. Capó-Iriarte
Registrar

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*

USAT
4288 YOUNGFIELD ST.
WHEAT RIDGE, CO 80033
303-371-0252

08/14/2018                          11:15:23
CREDIT CARD

VISA SALE

Card #:              XXXXXXXXXXXX2784
SEQ #:                             2
Batch #:                           6
Trans #:                           2
Approval Code:                582769
TRANS ID:           308226615042373
Entry Method:                 Manual
Mode:                         Online
Avs Code:                          G

# SALE AMOUNT          $1800.00

THANK YOU

CUSTOMER COPY



**UPR**

Universidad de Puerto Rico

Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

---

## sin asunto)

---

**Lucero Rodriguez Fernandez** <lucero.rodriguez@upr.edu>                30 de diciembre de 2018, 15:02
Para: lectures@usat.edu

My name is Lucero Rodriguez from USAT Puerto Rico, I am not interest in the offer to transfer to a new school. I want to withdraw from USAT. I sended a prior message with the same request.

Thanks.



**UPR**

**Universidad de Puerto Rico**

Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

---

## ...voice 3660 from USAT, Montserrat, LLC.

---

**c.konyk@usat.edu** <c.konyk@usat.edu>
Para: lucero.rodriguez@upr.edu

31 de diciembre de 2018, 21:13

## USAT, Montserrat, LLC.

**Invoice** *Due:04/06/2018*
*3660*

Amount Due: **$16,682.00**

Dear Lucera Rodriguez Fernandez:

Your invoice-3660 for 16,682.00 is attached. Please remit payment at your earliest convenience.

Sincerely,
USAT, Montserrat, LLC.

727-252-6205
www.usat.edu

View & Pay Invoice

**Inv_3660_from_USAT_Montserrat_LLC._7616.pdf**
146K



**UPR**
**Universidad de Puerto Rico**

Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

---

## nvoice 3660 from USAT, Montserrat, LLC.

---

**Lucero Rodriguez Fernandez** <lucero.rodriguez@upr.edu>
Para: c.konyk@usat.edu

2 de enero de 2019, 15:41

Hi, I did the payments of App fee and Matriculation fee with some payments of the tuition. Can you please review my payments because there is an error in the total debt. I have all the recipts of the paymenys that I done.


Thanks for your help.

[El texto citado está oculto]



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Dean*

## USAT-PR Tuition & Fee Schedule

| EDUCATION COST | BASIC SCIENCES | | CLINICAL SCIENCES | |
|---|---|---|---|---|
| | First Year | Second Year | Third Year | Fourth Year |
| Tuition* (3 per year) | $19,485 | $19,485 | $19,485 | $19,485 |
| Fees: | | | | |
| Technology Fee | 710 | 710 | 710 | 710 |
| Clerkship Fee ($690 each) | - | - | 2,070 | 2,070 |
| Mal-Practice Insurance | - | - | 995 | 995 |
| Student Activity Fee | 75 | 75 | 75 | 75 |
| Maintenance Fee | 95 | 95 | 95 | 95 |
| Graduation Fee | - | - | - | 900 |
| Total | $20,365 | $20,365 | $23,430 | $24,330 |

NOTES:
(*) Includes: Three semesters per year of $6,495.

The following one-time fees are due at the moment of admission and are not included above:

    a.  Application Fee............$125
    b.  Matriculation Fee......... $600
    c.  Anatomy Lab Fee..........$895

The Government Matriculation fee of $600.00 must be paid before a student can begin the program and receive educational credits or attend anatomy labs.

## ALL STUDENT ACCOUNT BALANCES MUST BE PAID IN FULL BEFORE GRADUATION COMMENCEMENT

After graduation, all students with a zero-balance due will receive 2 sets of their University transcripts at no charge. No degrees or transcripts will be released if there is still a balance due. After the initial sets of transcripts, the student will be charged $25.00 per set. Transcript fees must be paid before the transcripts are sent with no exceptions.

**If you are planning to transfer and immediately begin clinical rotations these fees must be paid in full before you will be allowed to begin your clinical rotations.**

Please retain a copy of this schedule for your reference.
I hereby understand and agree to the terms of the fee schedule and acknowledge reading this document and receiving a copy.

Printed Name: _Rucero Rodriguez Fernandez_

Signature: _____    Date: _4 / April / 2018_

*The University of Science, Arts & Technology does not discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability or religion in it's programs, activities or employment practices.*

*(handwritten signature across top)*

# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registrar*

## TRANSCRIPT EVALUATION SHEET

**BASIC SCIENCES COURSES**

*First Term*

**BSC 501 Human Body Structure & Development**
- ☑ Gross Anatomy/ Anatomy Dis.
- ☑ Medical Embryology
- ☑ Histology
- ☑ Neuroanatomy
- ☑ Medical Imaging

**GPS 502 General Principles I**
- ☑ Molecular Biology
- ☑ Intr. to Physiology
- ☑ Intr. to Pharmacology
- ☑ Intr. to Microbiology
- ☑ Medical Genetics

_____ CSC 503 Test Taking Strategies I

*Second Term*
- ✓ **BSC 504 Medical Physiology**
- ✓ **BSC 506 Pharmacology**

**GPS 507 General Principles II**
- ✓ Microbiology & Immunology
- ✓ General Pathology
- ✓ Biochemistry Nutrition & Metabolism

_____ CSC 508 Test Taking Strategies II

*Third Term*

**ORG 509 Organ Systems I ✶**
- _____ Blood & Lymphoreticular system
- _____ Cardiovascular System
- _____ Respiratory System
- _____ Renal & Urinary System

**BHS 510 Public Health Sciences ✶**
- _____ Biostatistics
- _____ Epidemiology
- _____ Well Patient & Preventive Medicine
- _____ Healthcare Delivery
- _____ Quality & Safety

_____ **BHS 511 Psychology ✶**
- ☑ **CSC 512 Clinical Skills I**

*Fourth Term*

**ORG 513 Organ Systems II**
- _____ Nervous System & special senses
- _____ Endocrine System
- _____ Musculoskeletal System
- _____ Skin & Subcutaneous Tissue

_____ **BHS 514 Medical Ethics & Professional Skills**
_____ **BSC 515 Psychiatry ✶**
- ☑ **CSC 516 Clinical Skills II**

*Fifth Term*

**ORG 513 Organ Systems III**
- _____ Male Reproductive System
- _____ Female Reproductive System & Breast
- _____ Pregnancy, Childbirth & Puerperium
- _____ **ELE 524 Elective**
- _____ ELE 526
- _____ ELE 528
- _____ ELE 530

*Sixth Term*

**BSC 522 Integrated Course on Basic Sciences & Clinical Strategies**

**CLINICAL SCIENCES COURSES**

*Seventh Term*

**CKS 600 Clinical Knowledge I**
- _____ Infectious Disease
- _____ Cardiology
- _____ Endocrinology
- _____ Pulmonology

_____ **CKS 602 Obstetrics & Gynecology**

*Eight Term*

**CKS 604 Clinical Knowledge II**
- _____ Rheumatology
- _____ Hematology & Oncology
- _____ Gastroenterology
- _____ Neurology
- _____ Nephrology

_____ **CKS 606 Pediatrics & Neonatology**
_____ **CKS 608 Surgery**

Elective Specialties
- ⇞ Orthopedics
- ⇞ Dermatology
- ⇞ Radiology
- ⇞ Cardiology
- ⇞ Rheumatology
- ⇞ Gastroenterology
- ⇞ Otolaryngology
- ⇞ Pulmonology
- ⇞ Tropical Medicine
- ⇞ Preventive Medicine
- ⇞ Clinical Nutrition
- ⇞ Critical Care
- ⇞ Wound Care & Management
- ⇞ Neurology
- ⇞ Pathology
- ⇞ Urgent care
- ⇞ Clinical Research
- ⇞ General / Fam. Medicine
- ⇞ Pain Management
- ⇞ Ophthalmology
- ⇞ Alternative medicine Clinic



**UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR**
PO Box 364363. San Juan PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel: (787) 300-2111  Fax: (787) 300-2049
admisiones.pr@usat.edu

*Office of Admissions*

Welcome!

We appreciate your interest in our campus. You could find more information at www.usat.edu and apply online, following these steps:

### APPLICATION CHECKLIST

- ✓ Apply online at https://usat.maestrosis.com/FECreateAccount.aspx
- ✓ Background Check
- ✓ Resume
- ✓ Two (2) letters of recommendation
- ✓ One (1) digital photographs
- ✓ Immunization Records
- ✓ Enrollment Agreement
- ✓ Fee schedule
- ✓ Admission Interview
- ✓ Family Educational Rights and Privacy Act of 1974 ("FERPA")
- ✓ Application fee of $125.00
- ✓ Official Transcripts from previous schools (can accept unofficial for acceptance review, but officials are required within the first 6 weeks after starting the program).
- ✓ To apply for financial aid, go to: http://reliamax.hs-sites.com/edmed-program

All documents should be uploaded directly by applicants to our *MaestroSIS* online portal. We will only receive immunization reports and photographs via email, postal mail, and/or in person at our administrative offices with prior announcement.

**\*\*Please note that without all the items mentioned above, submitted applications will not be considered for interview and/or acceptance\*\***

*The University of Science, Arts & Technology does not to discriminate on the basis of race, creed, color, sex, sexual orientation, gender identity, national origin, disability, or religion in its programs, activities, or employment practices.*

**STUDENT'S LAST NAME, SECOND LAST NAME & MIDDLE NAME**

Rodriguez, Lucero



# USAT
## SCHOOL OF MEDICINE

598 Ave. Barbosa Esq. Guayama

San Juan, PR 00919

Tel: (787) 300-2111

**GRADE REPORT**

TERM: NOV. 2017 - JAN. 2018

| | COURSE | INSTRUCTOR | GRADE | CRD |
|---|---|---|---|---|
| BSC 501 | HUMAN BODY STRUCTURE | O. CARO | | 14.00 |
| | Gross Anatomy Anatomy Dis. | | | |
| | Medical Embryology | | | |
| | Histology | | | |
| | Neuroanatomy | | | |
| | Medical Imaging | | | |
| GPS 502 | GENERAL PRINCIPLES I | O. CARO | | 9.00 |
| | Molecular Biology | | | |
| | Intr. to Physiology | | | |
| | Intr. to Pharmacology | | | |
| | Intr. to Microbiology | | | |
| | Medical Genetics | | | |
| CSC 503 | Test Taking Strategies I | M. ORTIZ | | 2.00 |
| BSC 504 | Medical Physiology | | 90 | 6.00 |
| PHA 600 | Pharmacology | J.QUINONES | 87 | 6.00 |
| GPS 507 | GENERAL PRINCIPLES II | M. FERNANDEZ | | 11.00 |
| | Microbiology & Immunology | | | |
| | General Pathology | | 93 | |
| | Biochemistry | | 90 | |
| CSC 508 | Test Taking Strategies II | M.ORTIZ | | 0.50 |
| | | | | |
| ORG 509 | ORGAN SYSTEMS I | M. FERNANDEZ | | 9.00 |
| BHS 510 | Public Health Sciences | | | |
| | Biostatistics | | | |
| | Epidemiology | | | |
| | Well Patient & Preventive Med. | | | |
| | Healthcare Delivery | | | |
| | Quality & Safety | | | |
| CSC 512 | Clinical Skills I | | | 2.50 |
| ORG 513 | ORGAN SYSTEMS II | | | 9.00 |
| BHS 514 | Medical Ethics | | | 2.00 |
| BHS 511 | Psychology | R. VELEZ | | 3.00 |

**OUTSTANDING ACTIVITIES AND ACHIEVEMENTS**

ENTRY:
GRADUATION:
TRANSFER:

**AT THE END OF**

| GPA | |
|---|---|
| NUMBER OF CREDITS EARNED | |
| ELECTIVES | |
| | |
| | |
| | |
| OTHER | |

NOTE: **This is not an official Transcript

OFFICIAL CERTIFYING THIS REPORT

DATE: September 4, 2018



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registrar*

## REGISTRATION

Student Name: Rodriguez Fernandez, Lucero                    Student ID: 1986
Sept-Dec. 2018

| Hour | MON | TUE | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|
| 8:00-9:00am | | | | PHS | | |
| 9:00-10:00am | | | | ǁ | | |
| 10:00-11:00am | | | | ǁ | | |
| 11:00-12:00md | | | | ǁ | | |
| 12:00-1:00pm | | | LUNCH | | LUNCH | LUNCH |
| 1:00-2:00pm | | PSYCHOLOGY | OS-2 | | | |
| 2:00-3:00pm | | ǁ | ǁ | | | |
| 3:00-4:00pm | OS-2 | | ǁ | | | |
| 4:00-5:00pm | ǁ | | ǁ | | | |
| 5:00-6:00pm | | | | | | |
| 6:00-7:00pm | | | | | | |

| COURSE # | SEC # | COURSE TITLE | RM # | DAY/TIME |
|---|---|---|---|---|
| ORG 601 | 001 | Organ Systems- II | 204 | M 3:00pm-5:00pm |
| BHS 600 | 001 | Psychology | 204 | T 1:00pm-3:00pm |
| ORG 601 | 001 | Organ Systems- II | 204 | T 3:00p-6:00pm |
| PHS 601 | 001 | Public Health Science | 205 | K 8:00am-12:00pm |

Student: _____                    Date_____

Date: _____



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363
598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR 00919
Tel. (787) 300-2111    Fax (787) 300-2049
www.usat.edu

*Office of the Registrar*

## REGISTRATION

Student Name:  Rodríguez Fernández, Lucero                    Student ID: PR-01-18-1002
May-August. 2018  Second Term

| Hour | MON | TUE | WED | THURS | FRI | SAT |
|---|---|---|---|---|---|---|
| 10:00-11:00am | | | | | | |
| 11:00-12:00md | | | | | | |
| 12:00-1:00pm | | | | | | |
| 1:00-2:00pm | | Gen. Pathology | | Pharmacology | Physiology | |
| 2:00-3:00pm | | Gen. Pathology | | Pharmacology | Physiology | |
| 3:00-4:00pm | | Gen. Pathology | | Pharmacology | Physiology | |
| 4:00-5:00pm | | Biochem | | Pharmacology | Physiology | |
| 5:00-6:00pm | | Biochem | | | | |
| 6:00-7:00pm | | Biochem | | | | |
| 7:00-8:00pm | | | | | | |

| COURSE # | SEC # | COURSE TITLE | RM # | DAY/TIME |
|---|---|---|---|---|
| BSC 501 | 001 | General Pathology | 203 | K 1:00pm-4:00pm |
| BSC 501 | 001 | Biochemistry | 203 | K 4:00pm-7:00pm |
| BSC 501 | 001 | General Principles I-(Pharmacology) | 203 | T 1:00pm-5:00pm |
| PHS 510 | 001 | General Principles I – (Physiology) | 203 | F 1:00pm-5:00pm |

Student: _____

Processed By: _____          Date: 5/17/2018



Lucero Rodriguez Fernandez <lucero.rodriguez@upr.edu>

## USAT SCHOOL OF MEDICINE
1 mensaje

**Admisiones Puerto Rico** <admisiones.pr@usat.edu>                 22 de marzo de 2018, 14:03
Para: lucero.rodriguez@upr.edu

We appreciate your interest in our campus.

You could find more information at www.usat.edu, and could easily apply online.

Our facilities are located in the Hato Rey Area (part of San Juan) and classes are live (no webinars or online).

You would take two years of Basic Sciences and two more years of Clinical Rotation.

The classes that you need to have completed as pre-requisites, to be accepted at USAT are:

| | |
|---|---|
| *Chemistry* | 16 credits |
| *Physics* | 8 credits |
| *General Biology* | 8 credits |
| *Humanities (Behavioral Sciences, Social Sciences, Sociology, Pathology, Political Sciences, Economy and Anthropology)* | 16 credits |
| *Spanish* | 6 credits |
| *English* | 6 credits |
| *Elective courses (at least 4 credits in Ethics)* | 28 credits |

**TOTAL**          90 credits*

If you consider USAT as the place for you, feel free to apply online ($125 application fee).  You could also apply online for the loan.

Please let us know about yourself and how can we assist you better.

Cordially,

*Office of the Dean & Director*



# UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY, PR

PO Box 364363, San Juan, PR 00936-4363

598 Ave. Barbosa, Esq. Calle Guayama, San Juan, PR  00919

Tel. (787) 300-2111     Fax (787) 300-2049

www.usat.edu