UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO (San Juan)

No. 3:19-cv-01707-WGY

SUJEIL PENA-TORRES, et al
            Plaintiffs

vs.

UNIVERSITY OF SCIENCE, ARTS AND TECH, et al,
            Defendants

* * * * * * * *

For Zoom Hearing Before:
Judge William G. Young

Summary Judgment

United States District Court
District of Massachusetts (Boston)
One Courthouse Way
Boston, Massachusetts 02210
Thursday, July 27, 2023

* * * * * * *

REPORTER: RICHARD H. ROMANOW, RPR
        Official Court Reporter
      United States District Court
One Courthouse Way, Room 5510, Boston, MA 02210
          rhrbulldog@aol.com

A P P E A R A N C E S


VICTOR MANUEL RIVERA-RIOS, ESQ.
   1420 Fernandez Juncos Ave.
   San Juan, PR 00909
   (787) 727-5710
   Email: Victorriverarios@rcrtrblaw.com
   For Plaintiffs


CHARLES A. CUPRILL-HERNANDEZ, ESQ.
   356 Fortaleza Street, Second Floor
   San Juan, PR 00901
   (787) 977-0515
   Email: Ccuprill@cuprill.com
   For Defendant Daniela Cabrera-Pujadas


CHRIS PAULSEN, ESQ.
   5400 Ward Road, Building 3-L30
   Arvada, CO 8002-1836
   (303) 284-9800
   Email: Chris@paulsenlaw.com
   For Defendants Dr. Tulp, Dr. Konyk,
   and the University of Science, Arts and Technology

P R O C E E D I N G S

(Begins, 3:00 p.m.)

THE CLERK:  Now hearing Civil Matter 19-01707, Pena-Torres versus the University of Science Arts and Tech.

THE COURT:  Good afternoon.  This is a hearing on the defense's motion for summary judgment.  It's held on our zoom platform.  Our host for the hearing is Courtroom Deputy Clerk, Jennifer Gaudet.  The proceedings are taken down by our Official Court Reporter, Rich Romanow.  I have law clerks on the line.

These proceedings are open to the public.  Should any members of the public be present, I must remind you to keep your microphone muted and that the rules of court remain in full force and effect, that is to say there is no taping, streaming, rebroadcast, screen shots, or other transcription of these proceedings.

With that stated, would counsel introduce themselves, starting with the plaintiffs.

MR. RIVERA-RIOS:  Yes, good afternoon, your Honor.  For the record, this is Counselor Victor Manuel Rivera-Rios on behalf of the plaintiffs, Sunjeil Pena-Torres, et al.

THE COURT:  And good afternoon to you.

MR. CUPRILL-HERNANDEZ:  Good afternoon to all, my

name is Charles A. Cuprill, and I represent the defendant, Daniela Cabrera-Pujadas.

THE COURT:  Thank you.

MR. PAULSEN:  Good afternoon, your Honor, it's Chris Paulsen.  I represent Dr. Orien Tulp, Dr. Carla Konyk, Karen Baldwin, and the University of Science, Arts and Technology.

THE COURT:  Well good afternoon.

All right.  Before we go forward, there is a late-filed -- actually a couple of late-filed motions.  The plaintiff has filed a motion to reconsider -- consideration of Docket Numbers 145 and 146.  That's denied.

Thinking that it might be allowed, the plaintiff has filed a motion requesting leave to exceed the page limit for briefs.  That's denied.

Nevertheless, as a matter of grace, but nothing else, the Court accepts for filing the omnibus response in opposition to Dockets 137 and 138, motions for summary judgment.  I've not only accepted it, I've read it.

And I'll turn to -- it's the defense's motion, but given the facts that are established here, um, tell me -- focus on this continuity requirement in the racketeering claim.  You see it seems to me that the

racketeering -- your case rises or falls on the racketeering claim.  If the racketeering claim survives summary judgment, well we're in this court and we're coming on for trial in September.  But if it doesn't, um, the best thing for me to do is to remand the case, not exercise supplemental jurisdiction, um, having granted summary judgment on the racketeering claim.

So since that's my focus, why ought I not grant summary judgment on the racketeering claim?  There will be no more than 10 minutes a side.  I'll hear the plaintiff.

MR. RIVERA-RIOS:  Yes, your Honor, um, thank you very much.

So as I, um -- we filed -- we took the depositions around May, um, there were a couple of admissions.  One, obviously that you have Carla Konyk and Orien Tulp, who are the founders of this medical school allegedly, they admitted that they had different places and locations where they were providing medical education, be it Texas, Florida, and Puerto Rico.  Tulp admitted and Konyk admitted that the -- (Unintelligible.) to, um, Manuel Jose Ortiz-Bustillo, who was named as the Associate Dean of the Puerto Rico medical school.

Now they claimed that they have no idea what Bustillo said, but they did admit that Bustillo was

allowed the task to recruit students, and Bustillo then, in his deposition, which we filed as Exhibit 43, um, admits that he traveled to the Dominican Republic with Daniela Cabrera and he would continuously talk and recruit with prospective students.

All of the plaintiffs, around 10, they were recruited around the ranges of mid 2017 all the way, one year, up to the summer of 2018, that's because the understanding was at least the admission -- what comes from the evidence is that the school in Puerto Rico was established around April of 2017, it ran the course for about a year, and then around August or September was the time that ECFMG, um, notified talk about their irregularities. And the pattern of racketeering, well for about the scope of that year it would have continued if it would not have been for ECFMG giving a notice to USAT that they were --

THE COURT: But is that -- you see -- wait. Wait. Wait.

Is that enough for a claim of racketeering in the United States District Court? Because the whole, um, premise of the seminal case of *H.J.*, the Supreme Court case, the premise is that -- and taking things your way, saying that this is an organization and it's subject to the racketeering statute, is that there be a -- that

unless stopped by the litigation, there is a continuation of this, um, the specified element, such as mail fraud, that constitute racketeering.  Here the -- even taking everything your way, it would appear that the threat of continued misconduct terminated in a little over a year.

MR. RIVERA-RIOS:  Well this was going on for -- way before a year, your Honor, the thing is that in Puerto Rico --

THE COURT:  But it terminated, that's the point. But it did terminate long before you brought suit.

MR. RIVERA-RIOS:  Well there's the -- there's different versions, there's closed continuity and open continuity.  Closed continuity is a series of related predicates extending over a substantial period of time.

THE COURT:  Right, I've read your brief, I understand the legal principles.  Now the question is, you think you fit this?  Why?

MR. RIVERA-RIOS:  Well as we were mentioning, because the racketeering -- as far as racketeering goes, my understanding is that whether it encourages some type of fraud, a federal fraud, as we understand that mail fraud and wire fraud occurred here.  With regards to the --

THE COURT:  Assume that's so, assume that you have

evidence of that -- yes, assume that's so, that's not enough to have a racketeering claim.

You've got claims under the common law of Puerto Rico for these frauds?

MR. RIVERA-RIOS:  Well we did include the supplemental claims, as always I try to include all claims --

THE COURT:  And I don't fault that.  Well let's see what the defendants have to say about this continuity issue, because to me that's the key issue here.

And I'll hear the defense briefly.

MR. PAULSEN:  Your Honor, turning to ECF Number 137-3, Page 2, this is the ECFMG medical school policy, this was established or handed down by their board of trustees in August of 2018.

Now up until that time what USAT had been doing for far more than a decade was not a problem and it doesn't constitute mail fraud or wire fraud to collect tuition fees and costs from students, that's -- it's -- that's not what tuition fees and costs are.  This change in policy is what brought about this "tumult," as I put it in my brief, it is not something that USAT had been doing wrong.

And as far as the continuity goes, even if -- I

know what you granted the plaintiffs, you've set a year, but actually if we're going to really count this and really count the time, then the fair amount of time -- even though my client didn't know about this particular policy change until September of 2018 at the earliest, and so if we go from the date on the document, it's August of 2018, and from August of 2018 to December 31, 2018 is the period that might be applicable here, except after that my client no longer collected tuition fees and costs from people for classes that were held after December 31, 2018.  There is no fraud present.  And it doesn't meet the continuity requirements, that's an element for 1952(c).

THE COURT:  Well your point is, I don't know that on these facts -- taking all the facts in the plaintiffs' favor, which I have to do, that it doesn't meet the elements of mail fraud.  Your more selling point is we're only talking about a few months?

MR. PAULSEN:  A short span of time, your Honor, yes.

THE COURT:  All right.  And that does appear to be undisputed, correct?

MR. PAULSEN:  It does, your Honor.

In fact you can find the same document -- I'd have to pull it up, um, it's in that 600-and-some-odd page

filing that, um, plaintiffs did in March of 2021.  It should be within the first 10 or 15 pages of their own exhibits.

THE COURT:  All right.

MR. PAULSEN:  So it should be undisputed.

THE COURT:  Very well.

And the co-defendant joins in that?

MR. CUPRILL-HERNANDEZ:  Not only that -- it's Charles Cuprill on behalf of Daniela Cabrera, and not only do I join, your Honor, I add to that, that in the case of my client, there's no factual scenario whatsoever that ties her in with any activity that would amount to fraud under the auspices of the RICO Act.

Factually speaking, you know, plaintiffs do not tie my client with any wrongful activity as such.  The mere fact that she -- (Unintelligible) the Dominican Republic with some or one of the co-defendants in the case doesn't amount to any activity of the nature that would fall within RICO.

So, your Honor, joining Mr. Paulsen, that from a factual standpoint, or for practical purposes, my client was just a clerk in the administrative process of, um -- that is been claimed for, so that I sustain that the complaint should be dismissed against her.

THE COURT:  I understand.  Very well.

I have reviewed these matters with care and, um, it is the Court's conclusion that, drawing all inferences on the undisputed facts in favor of the plaintiffs, there is insufficient evidence here to make out a RICO claim.  The RICO claim is the tie to federal jurisdiction.  The Court declines to enter -- to exercise supplementary jurisdiction.

The Court does not rule that summary judgment -- the Court expresses no opinion as to whether summary judgment is appropriate as to any of the claims under the laws of the Commonwealth of Puerto Rico, but it dismisses this case on the RICO claim only.  And since we've been engaged here in federal court, the statute of limitations has not run in the courts of the Commonwealth of Puerto Rico, and if the plaintiffs seek to continue there, it would appear to be open to them.

That's the ruling of the Court.  The case is dismissed as to the RICO claim and the Court does not exercise jurisdiction over the claims arising under the laws of the Commonwealth of Puerto Rico.  That's the order of the Court.  We'll stand in recess.

(Ends, 3:15 p.m.)

C E R T I F I C A T E


I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

do hereby certify that the foregoing record is a true

and accurate transcription of my stenographic notes

before Judge William G. Young, on Thursday, July 27,

2023, to the best of my skill and ability.


/s/ Richard H. Romanow 03-26-24
_____
RICHARD H. ROMANOW    Date